## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **PETROBRAS AMERICA, INC.,** | § § | **Case No. 4:19-cv-01410** |
| *Plaintiff*, | § § | |
| v. | § § | |
| **SAMSUNG HEAVY INDUSTRIES CO., LTD.,** | § § § | |
| *Defendant.* | § § | |

___

## DEFENDANT SAMSUNG HEAVY INDUSTRIES CO., LTD.'S
## BRIEF REGARDING THE NON-DISCLOSURE AGREEMENT WITH PLAINTIFF
___

Defendant Samsung Heavy Industries Co., Ltd. ("SHI") respectfully submits this brief in response to the Court's Order dated July 12, 2019 to explain "when disclosure is allowed under the nondisclosure agreement on an order issued by a court, and why the agreement precludes the court-ordered disclosure Petrobras seeks" (Dkt. Entry No. 33).

## INTRODUCTION

More than two years ago, in July 2017, Plaintiff Petrobras America Inc.—along with its affiliate, Petrobras International B.V. (together with Plaintiff, "Petrobras")—executed a Non-Disclosure Agreement ("NDA") with Defendant SHI.  The background for this agreement was that a third-party, Ensco (formerly Pride), had initiated a confidential arbitration proceeding against Petrobras and a confidential arbitration proceeding against SHI.  Petrobras and SHI thus "agreed to exchange certain documents from the Ensco-Petrobras Arbitration and the Ensco-SHI Arbitration (collectively, the 'Arbitration Materials')" and at the same time "to protect the confidential status of the Arbitration Materials and prevent their disclosure to third parties in accordance with the terms of this Agreement."  NDA, Recitals.  *See also id.* § 3 ("Confidential Treatment and Non-Disclosure of Arbitration Materials").

## ARGUMENT

I.  **The NDA Expressly Prohibits Petrobras From Using the Arbitration Materials In This Litigation**

The NDA explicitly limits the parties' use of the Arbitration Materials.  It provides that "[t]he Ensco-SHI Arbitration Materials disclosed pursuant to this Agreement may be used by Petrobras or any Recipient solely in connection with the Ensco-Petrobras Arbitration and *may not be used for any other purpose*."  *Id.* § 4 (emphasis added).  Thus, the NDA clearly and

1

unmistakably prohibits Petrobras' present request to incorporate the Arbitration Materials into its pleading in the litigation that it initiated in this Court.[1]

Section 5 of the NDA specifies the limited circumstances in which disclosure of the Arbitration Materials to third parties is permitted. In its request for this Court to issue an order permitting a contractually prohibited use of the Arbitration Materials, Petrobras relies on language providing that Petrobras may disclose the Ensco-SHI Arbitration Materials to a third party "if such disclosure is *required by law* in the reasonable opinion of Petrobras' counsel, provided however that Petrobras shall promptly notify SHI of any such *disclosure obligation* prior to such disclosure, and provided further that Petrobras shall cooperate with SHI in reasonable efforts to protect the confidential status of the Ensco-SHI Arbitration Materials." *Id.* § 5(g) (emphasis added).

The plain language of Section 5(g) does not contemplate Petrobras' requested use of the Arbitration Materials. Petrobras is not "required by law" to disclose the Arbitration Materials in a private lawsuit that it voluntarily brought against SHI in relation to a commercial transaction. Nor does Petrobras have a "disclosure obligation": Petrobras is not *obligated* to *disclose* the Arbitration Materials to a third party; rather, Petrobras *desires* to *use* them, for a purpose expressly prohibited by the NDA.

Case law supports a finding that Petrobras is not "required by law" to disclose or use the Arbitration Materials here. In *Vringo, Inc. v. ZTE Corp.*, 14-CV-4988 LAK, 2015 WL 3498634, (S.D.N.Y. June 3, 2015), ZTE argued that it was "legally required" to use confidential materials, which it had obtained from Vringo pursuant to an NDA, in litigation that ZTE subsequently initiated against Vringo. The court rejected ZTE's argument, reasoning:

---

[1] Section 4 of the NDA includes a reciprocal provision governing SHI's permitted uses of the Arbitration Materials.

> ZTE does not—and could not—claim that Chinese or any other law required it to bring its private lawsuit against Vringo. If in fact Chinese law would have required disclosure of Confidential Information in any such complaint, ZTE could have complied with Chinese law by not filing the action. That course certainly was open to it, and ZTE would have been bound to follow it if that were the only means of discharging the obligation of confidentiality it voluntarily assumed by signing the NDA.

*Id.* at *6. Petrobras likewise does not and cannot claim that it is required by law to incorporate the Arbitration Materials into its pleadings in a private lawsuit it brought against SHI. If foregoing the use of the Arbitration Materials in this litigation is necessary to discharge the obligations it voluntarily assumed by signing the NDA, then Petrobras must do so.

Prejudice to Petrobras in the very litigation it initiated is no reason to release Petrobras from the obligations it undertook in the NDA. The Fifth Circuit agrees. In *ITT Education Services v. Arce*, 533 F.3d 342 (5th Cir. 2008), the Fifth Circuit upheld an order enjoining one party to an arbitration from disclosing evidence and rulings from that arbitration to third parties in violation of an NDA. Although appellants there argued, as Petrobras does here, that the order enforcing the NDA deprived them of the ability to introduce all relevant and admissible evidence and would hamper their ability to prove their case, the Fifth Circuit held that that was "exactly what they voluntarily contracted for" when they signed the NDA. *Id.* at 347-348. *See also Volkswagen Group of America, Inc. v. Soroka*, 86 Mass. App. Ct. 1126, 22 N.E.3d 177 (2014) (holding that an exception to contractual confidentiality obligations for "disclosures 'required by law' does not authorize the [parties] to respond to discovery requests made within an action they voluntarily initiated").

The governing law of the NDA, moreover, recognizes that "[a]n express confidentiality agreement is normally enforceable unless signed under duress or drawn so widely that it unreasonably restricts one party's actions." *Halsbury's Laws of England*, Confidence, ¶ 15.

3

Indeed, "[t]here [is] an important public interest in the observance of duties of confidence." *Associated Newspapers Ltd v HRH Prince of Wales*, [2006] EWCA Civ 1776, ¶ 67.

Permitting Petrobras to use the Arbitration Materials, on its own initiative, for its own purported benefit in private litigation, effectively guts the NDA. It frustrates the very purpose of the contract freely entered into by Petrobras and destroys the right of SHI to receive the benefit of the bargain.[2]

## II. The Circumstances In Which Disclosure To a Third Party May Be Permitted Are Not Present Here

To be sure, there are circumstances under which Section 5(g) of the NDA permits disclosure to a third party, including upon the issuance of a court order. Disclosure to a third party under Section 5(g) of the NDA may be permitted, for example, to comply with a valid subpoena from a third party. *See Vringo, Inc. v. ZTE Corp.*, 14-CV-4988 LAK, 2015 WL 3498634, at *2 (S.D.N.Y. June 3, 2015) (discussing how "[t]he NDA contemplated the possibility that a governmental entity or another *stranger* to the agreement might seek access to Confidential Information" (emphasis added)). Thus, a court order enforcing a subpoena from a third party could be an occasion for allowing disclosure pursuant to Section 5(g).

Disclosure of confidential information also may be "required by law" under the NDA where a failure to disclose is reasonably likely to result in statutory penalties, regulatory penalties, or contempt of court. For example, in *Duse v. International Business Machines Corporation*, the Second Circuit held that IBM did not breach a confidentiality provision of a settlement agreement by filing a Form 1099 with the Internal Revenue Service ("IRS") reporting the amount of the settlement where the agreement permitted disclosure "as may be required by

---

[2] We note that Petrobras itself has opposed the discovery of materials it exchanged confidentially in a separate proceeding, arguing that its adversary should not be allowed to "piggyback" on the work of third parties. *See* Petrobras's Memorandum of Law, *In re: Petrobras Securities Litig.*, 1:14-cv-09662, Dkt. Entry No. 830 (S.D.N.Y. June 21, 2019).

4

law or business necessity." 252 F.3d 151, 162-63 (2d Cir. 2001). The court reasoned that disclosure to the IRS may well have been required by the IRS Code and regulations, and even if IBM's legal obligations were unclear, the potential penalty that might result from non-disclosure was "at least a business necessity" and thus fell within one of the agreement's explicit exceptions to confidentiality. *Id.* at 162.

Here, Petrobras faces no risk of penalties or contempt of court from avoiding disclosure of the Arbitration Materials. Moreover, the NDA does not permit disclosure (or use) of the confidential information for a "business necessity," let alone to affirmatively pursue claims for damages from SHI. Petrobras is a sophisticated international company that could have written additional exceptions into the NDA, but it did not so. Petrobras must live with the obligations it voluntarily assumed—obligations it voluntarily assumed in July 2017 long *after* it was on notice of its alleged injury from the transaction at issue in this case. *See, e.g.*, SHI's Motion to Dismiss, Dkt. Entry No. 13 (May 29, 2019), at 6-7, 23-34.[3]

### III. Petrobras Agreed to Arbitrate This Very Dispute

This Court need not—and indeed, should not—resolve the parties' present dispute. Section 8(b) of the NDA provides: "All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of the London Court of International Arbitration by three arbitrators appointed in accordance with the said Rules. The seat of the arbitration shall be London, and the language of the arbitration shall be English." This broad arbitration provision is clear as day and plainly covers the dispute at hand. *See Pennzoil Expl. and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (finding an arbitration clause that

---

[3] It should also be noted that the confidential partial arbitration award Petrobras apparently wants to introduce into this proceeding is of limited, if any, relevance here. It has not been recognized or enforced by any court, and, in any event, was decided under foreign law.

5

uses the phrase "arising out of" and "in connection with" to be broad and therefore applicable to any dispute that touches matters covered by the contract).

Indeed, if Petrobras wished to use the Arbitration Materials for a purpose other than the Ensco-Petrobras Arbitration without consent from SHI, Petrobras could and should have taken up the issue through the London Court of International Arbitration, as it agreed to do. Petrobras has had years to seek the relief it now requests. Petrobras could have done so before filing this lawsuit in March 2019. Petrobras could have done so after SHI removed the suit to federal court in April 2019. Petrobras could have done so after SHI moved to dismiss in May 2019 and could still do so today. Instead, Petrobras waited until July 2, 2019—a mere ten days before its amended complaint was due—to ask a federal court in Texas, not arbitrators appointed in accordance with the Rules of the London Court of International Arbitration, to resolve a "dispute arising out of or in connection with" the NDA. Thus, any time sensitivity claimed by Petrobras is a problem of Petrobras' own making.

## CONCLUSION

For the reasons as set forth above, and as may be explained in response to Petrobras' simultaneous submission, Petrobras should be held to its contractual obligation and not permitted to use the Arbitration Materials in an amended pleading.

Dated: July 22, 2019

Respectfully submitted,

*/s/ Christopher M. Odell*

**Christopher M. Odell**
Texas Bar No. 24037205
S. D. Tex. Bar No. 33677
christopher.odell@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Tel: 713-576-2400
Fax: 713-576-2499

**Marcus A. Asner**
**Daniel R. Bernstein**
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel: 212-836-8000
Fax: 212-836-8689

**Soo-Mi Rhee**
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: 202-942-5000
Fax: 202-942-5999

**COUNSEL FOR DEFENDANT**
**SAMSUNG HEAVY INDUSTRIES CO., LTD.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2019, the foregoing document was electronically filed with the Clerk of Court using CM/ECF. I also certify that, on July 22, 2019, the foregoing document is being served on the following counsel of record by email:

Eric J. Cassidy
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
Bank of America Center
700 Louisiana, Suite 3950
Houston, Texas 77002
(832) 331-6778
ecassidy@gcfirm.com

*Counsel for Plaintiff*
*Petrobras America, Inc.*

/s/ *Christopher M. Odell*
Christopher M. Odell

8