United States District Court
Southern District of Texas
**ENTERED**
June 19, 2020
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PETROBRAS AMERICA, INC., Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-19-1410 |
| SAMSUNG HEAVY INDUSTRIES CO., LTD., Defendant. | § | |

**MEMORANDUM AND OPINION**

Petrobras America alleges that Samsung Heavy Industries conspired to engage in a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(c) and (d), and committed common-law fraud under Texas state law. (Docket Entry No. 51 ¶¶ 104–153). Petrobras filed its original petition in March 2019 in Texas state court. Samsung timely removed to this court and moved to dismiss. (Docket Entry Nos. 1, 13). Petrobras amended its complaint, and Samsung moved to dismiss the amended complaint on the basis of limitations, among other grounds. (Docket Entry Nos. 48, 51–52). After careful consideration of the pleadings, the parties' arguments, the record, and the applicable law, the court grants Samsung's motion because Petrobras's lawsuit is time-barred. The case is dismissed, with prejudice, by separate order.

The reasons are explained below.

## I. Background

The factual summary is taken from the amended complaint. Samsung and Pride Global entered into a drillship-construction contract in 2007. (Docket Entry No. 51 at ¶ 2). The contract included an option for Samsung to build a drillship if Pride secured a drilling-services contract for

Pride to operate the drillship. (*Id.*). Pride and Petrobras later entered into a drilling-services contract, which triggered the drillship-construction option in the Samsung-Pride contract. (*Id.* at ¶ 3). Samsung built the drillship at issue for approximately $640 million. (*Id.*). Petrobras alleges that Samsung bribed two of its officers to obtain the Pride-Petrobras contract for drilling services so that Samsung could build the drillship under its construction contract with Pride. (*Id.* at ¶¶ 2–3).[1]

Petrobras claims that a "broker" told Brazilian federal prosecutors that the broker had facilitated a bribery scheme totaling $20 million. (*Id.* at ¶¶ 5, 59–60). Samsung concealed, and received, the money for the bribe payments from Pride by raising the price of its initial option to reflect increased "labor & material cost." (*Id.* at ¶¶ 59–66). Petrobras and Pride signed their drilling-services contract soon after Pride agreed to the $20 million option-price increase under its contract with Samsung. (*Id.* at ¶¶ 66–75). Pride exercised its option with Samsung to build the drillship, which became operational in 2011. (*Id.* at ¶¶ 66, 77). "[N]ot long after [the drillship] became operational, there was virtually no drilling work for [it]. Petrobras eventually placed [the drillship] on permanent standby" in 2015. (*Id.* at ¶¶ 4, 78).

A May 2015 Petrobras audit revealed many problems supporting an inference of corruption: the drillship was unnecessary; the Petrobras board had not authorized the negotiations with Pride; there were no records of the negotiations; and Petrobras did no market survey to see if it needed the drillship. (*Id.* at ¶¶ 82–85). In January 2016, Petrobras cancelled its drilling-services contract with Pride, which by then had been acquired by Ensco Deepwater USA, Inc. (*Id.* at ¶¶ 98–99). Ensco initiated arbitration against Petrobras and a separate arbitration against Samsung. (*Id.* at ¶¶ 99–100). The second arbitration panel found that Samsung had paid bribes to two

[1] The amended complaint states that Samsung contracted to build "three deep sea drillships" for Petrobras, but this lawsuit involves only one of the three. (Docket Entry No. 51 at ¶ 1)

Petrobras officers and that Pride and Ensco were unaware of the bribes. (*Id.* at ¶ 101). The panel "issued an award on liability fully in . . . favor" of Ensco. (*Id.*).

## II. The Legal Standards

### a. The Racketeer Influenced and Corrupt Organizations Act

To bring a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d), a plaintiff must allege facts showing that there is: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (citation omitted). To establish a "pattern of racketeering activity," a plaintiff must demonstrate "at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139–40 (5th Cir. 1992), *superseded on other ground as recognized in Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003). The plaintiff must plead the elements of the criminal offenses that are alleged as the predicate acts. *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). "[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Tel-Phonic Servs.*, 975 F.2d at 1140 (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990)).

In the Fifth Circuit, a civil RICO claim accrues on the date "when a plaintiff knew or should have known of his injury." *See Rotella v. Wood*, 528 U.S. 549, 553–55 (2000); *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 176 (5th Cir. 2012); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 773–74 (5th Cir. 2000). The statute of limitations is four years. *Bernegger v. Dep't of Revenue*, 785 F. App'x 209, 212 (5th Cir. 2019) (citing *Agency Holding Corp. v. Malley-Duff &*

*Assocs., Inc.*, 483 U.S. 143, 152 (1987)). The Fifth Circuit has adopted a "separate accrual" rule, which "allows a civil RICO claim to accrue for each injury [in a continuing series of separate injuries] when the plaintiff discovers, or should have discovered, that injury." *Love*, 230 F.3d at 773–75. "Separate accrual" does not allow "the plaintiff [to] use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 186–87, 190 (1997) (rejecting a "last predicate act" rule in civil RICO cases that would allow the plaintiff to recover for injuries caused by all acts in a pattern of racketeering activity if one predicate act occurred in the limitations period); *Love*, 230 F.3d at 772–73.

"A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014). "Summary judgment and motions to dismiss are often ill-suited to questions of constructive knowledge and inquiry notice." *In re Energy Transfer Partners Nat. Gas Litig.*, 2009 WL 2633781, at *15 (S.D. Tex. Aug. 26, 2009). Although "the question of when the statute of limitations began to run on the plaintiffs' cause of action is a factual one,"[2] the Fifth Circuit has held that "[w]here events receive . . . widespread publicity, plaintiffs may be charged with knowledge of their occurrence." *United Klans of Am. v. McGovern*, 621 F.2d 152, 154 (5th Cir. 1980).

**b. The State-Law Fraud Claims**

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and

[2] *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1170 (5th Cir. 1979).

without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co. Ltd., v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

Like the applicable civil RICO statute of limitations, the statute of limitations for a fraud claim under Texas state law is four years. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). Limitations does not begin to run "until [the fraud] is discovered, or by the exercise of reasonable diligence might have been discovered." *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015) (quoting *Ruebeck v. Hunt*, 142 Tex. 167, 170 (1943)).

When a plaintiff has "actual or constructive notice," or if "information is readily accessible and publicly available," limitations begins to run "as a matter of law." *Id.* at 58–59 (internal quotation marks and citation omitted). If a plaintiff is aware or should be aware of an injury, "and that it was likely caused by the wrongful acts of another," then the limitations period begins "even if the plaintiff does not know the exact identity of the wrongdoer." *Lazo Techs., Inc. v. Hewlett-Packard Co.*, No. 05-14-01060-CV, 2016 WL 80952, at *3 (Tex. App. — Dallas 2016, pet. denied).

## III. Analysis

Petrobras filed the lawsuit more than four years after its claims accrued. Samsung contends that the limitations period began to run on Petrobras's RICO and state-law fraud claims "[b]y no later than 2014." (Docket Entry No. 52 at 12). Samsung cites a Petrobras annual report for the year 2014, filed in 2015 with the U.S. Securities and Exchange Commission, stating that "[a]ccording to testimony from Brazilian criminal investigations that became available beginning

[in] October 2014, senior Petrobras personnel conspired with contractors, suppliers and others from 2004 through April 2012 to establish and implement an illegal cartel that systematically overcharged the Company." (*Id*. at 12–13); Petrobras Form 20-F Annual Report, U.S. SEC. & EXCHANGE COMM'N (May 15, 2015), https://www.sec.gov/Archives/edgar/data/1119639/000129281415001242/pbraform20f_2014.htm.[3] The report named the same two executives accused of receiving bribes in this case and acknowledged that they "have been or are expected to be charged as a result of the investigation." Petrobras Form 20-F Annual Report. Petrobras wrote off over $2.5 billion in the third quarter of 2014, "representing amounts that Petrobras overpaid for the acquisition of property, plant and equipment in prior years." (*Id*.).

Petrobras argues that the limitations period for its federal and state-law claims did not begin to run until it "kn[ew] that it had suffered an injury with respect to [the specific drillship at issue], regardless of whether that injury was . . . a result of Samsung's misconduct." (Docket Entry No. 54 at 13 (emphasis omitted)). Petrobras argues that any bribery associated with the other two drillships Samsung built for Petrobras, or general information about the "enormous bribery scandal in Brazil," is not relevant to determining when Petrobras should have known about its injury relating to the drillship at issue in this case. (*Id*. at 14).

Federal and Texas law hinge on a "knew or should have known" standard. Based on its own report, by 2014 Petrobras knew or should have known about the bribery and corruption within the company, and knew or should have known that the bribery and corruption extended to the

[3] The court takes judicial notice of the report as a matter of public record under Federal Rule of Evidence 201. FED. R. EVID. 201(b)(2); *see Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) ("[W]e may take judicial notice of matters of public record."); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand.").

drillship at issue here. The "separate accrual" rule does not help Petrobras because Petrobras knew or should have known of the fraud and bribery in 2014. *See Love*, 230 F.3d at 772–75; *see also Owens v. BAC Homes Loans Servicing, LP*, No. H-11-2742, 2013 WL 1345209, at *7 (S.D. Tex. 2013), *"disapprove[d] of" on other ground by Nghiem v. Sajib*, 567 S.W.3d 718, 723 n.29 (Tex. 2019) (citation omitted) ("Knowledge of facts, conditions, or circumstances that would cause a reasonable person to make inquiry . . . is equivalent to knowledge of the cause of action for limitation purposes.").

Samsung cites November and December 2014 news articles that name the Petrobras employees accused of taking bribes in this case. (Docket Entry No. 52 at 13 n.7; Docket Entry No. 55 at 8–9). One of the articles identifies Samsung as the source of the bribes.[4] Petrobras agrees that news reports discussed bribes relating to two Samsung-built drillships, but argues that notice did not extend to the third drillship, which is the focus of this case. (Docket Entry No. 54 at 14). Petrobras argues that the Petrobras-Pride contract, to which Samsung was not a party, effectively camouflaged Samsung's scheme, because Petrobras had no reason to suspect Pride of wrongdoing. (*Id.* at 15). This argument fails. The Petrobras officer who "receive[d] drillship proposals from operating companies and builders for operations outside Brazil" from 2005 to 2008 was one of the executives who Brazilian prosecutors and news outlets identified in 2014 as having been allegedly bribed. (Docket Entry No. 51 at ¶ 20; Docket Entry No. 55 at 8–9). Petrobras knew

[4] The court takes judicial notice of these articles as well. *See* Caroline Stauffer, *Another Former Petrobras Executive Charged in Brazil Scandal*, REUTERS (Dec. 15, 2014), https://www.reuters.com/article/us-brazil-petrobras/another-former-petrobras-executive-charged-in-brazil-scandal-idUSKBN0JT1QY20141215 (reporting that Brazilian prosecutors had charged Nestor Cerveró, one Petrobras official who Petrobras claims took bribes, for crimes relating to a bribery scheme involving Samsung and a drillship contract); Dom Phillips, *'Operation Carwash' in Brazil Causes Normally Staid Business Meeting to Go Off Script*, WASH. POST (Nov. 17, 2014), https://www.washingtonpost.com/news/worldviews/wp/2014/11/17/operation-carwash-in-brazil-causes-normally-staid-business-meeting-to-go-off-script/ (reporting the arrest of Renato Duque, the other Petrobras official Petrobras claims took bribes).

or should have discovered that contracts involving this executive were not justified. Waiting for a formal audit of each contract was not necessary to establish the required notice or knowledge. Indeed, the amended complaint states that "not long after [the drillship] became operational [in 2011], there was virtually no drilling work for [it]." (Docket Entry No. 51 at ¶ 4; Docket Entry No. 54 at 11). The specific drillship in this case is not subject to its own limitations clock.

Petrobras's complaint is time-barred because the four-year statutes of limitation began to run in 2014, at the latest, and Petrobras did not begin this litigation until March 2019. (Docket Entry No. 1).

## IV. Conclusion

Samsung's motion to dismiss Petrobras's amended complaint, (Docket Entry No. 52), is granted. The complaint is dismissed as time-barred. Because amendment would be futile, the dismissal is with prejudice. An order of dismissal with prejudice is separately entered.

SIGNED on June 19, 2020, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge