# United States Court of Appeals for the Fifth Circuit

United States Courts
Southern District of Texas
FILED
*September 02, 2021*
Nathan Ochsner, Clerk of Court

United States Court of Appeals
Fifth Circuit
**FILED**
August 11, 2021
Lyle W. Cayce
Clerk

No. 20-20338

Petrobras America, Incorporated,

*Plaintiff—Appellant*,

*versus*

Samsung Heavy Industries Company, Limited,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-1410

Before Elrod, Willett, and Engelhardt, *Circuit Judges*.

Per Curiam:

Petrobras appeals the Rule 12(b)(6) dismissal of its fraud claims, arguing that Samsung did not establish that Petrobras's claims are barred by the applicable statute of limitations. Because the pleadings do not establish as a matter of law that Petrobras had actual or constructive notice of its injury before March 2015, dismissal at the pleading stage was improper. Therefore, we REVERSE and REMAND.

## I.

Petrobras America, Inc. is the American subsidiary of a Brazilian oil and gas producer. It alleges that Samsung Heavy Industries, a Korean shipbuilding company, secretly bribed Petrobras executives to finalize a drilling-services contract between Petrobras and Pride Global Limited—the lynchpin to Samsung's own construction contract with Pride.

In 2007, Samsung entered into a construction contract with Pride Global Limited.[1] The contract contained an option for Samsung to build a deep-sea drillship if Pride secured a drilling-services contract with another company. Hamylton Padilha Jr., an independent consultant retained by Pride, initiated negotiations between Pride and Petrobras to secure the drilling-services contract that would trigger the Samsung–Pride construction option. Nestor Cuñat Cerveró and Renato de Souza Duque, Petrobras executives, represented Petrobras in these negotiations.

Employees of the Petrobras International Division, headed by Cerveró, objected that there was no need for drilling services from another drillship. To overcome this hurdle, Padilha contacted a Samsung executive in Houston, Texas to arrange a bribe. Samsung arranged to pay $10 million to Cerveró and Duque and $10 million to Padilha as a commission. To fund the bribes, Samsung increased the labor and material costs charged to Pride for what later would become the "DS-5." Pride passed these costs to Petrobras by modifying its drilling-services contract proposal to reflect a $20 million cost increase.

Cerveró accepted this proposal on behalf of Petrobras. In December of 2007, the Samsung–Pride contract for the construction of the DS-5 was

[1] We construe all facts in the light most favorable to Petrobras, as we must at this stage. *Arnold v. Williams*, 979 F.3d 262, 265 n.1 (5th Cir. 2020).

signed. In January 2008, the Petrobras–Pride drilling-services contract for the DS-5 was finalized.

After the construction of the DS-5 was complete in 2011, Petrobras had no work for the vessel. Petrobras therefore assigned the drilling-services contract to two other companies to mitigate losses. In 2015, Petrobras decided to put the DS-5 on permanent standby.

In March 2015, Petrobras began an internal audit to review the contracting procedures for the DS-5 and three other drillships.[2] The audit team discovered that a broker and Padilha visited with Cerveró during the DS-5 negotiations. The team concluded that the DS-5 contract's terms were unfavorable to Petrobras and based on inaccurate forecasts. Lastly, they recommended that Petrobras inform prosecutors of the audit's findings. The audit report was released May 18, 2015.

In October 2015, Brazilian prosecutors unsealed a plea agreement that Padilha had entered into in July 2015. In the plea agreement, Padilha revealed the details of the DS-5 bribery scheme. Three months later, Petrobras notified Pride that they were cancelling the DS-5 drilling-services contract as a product of fraud.

Meanwhile in 2014, news broke of "Operation Carwash,"[3] a widespread investigation into corruption throughout Brazil. Operation Carwash included a separate bribery scheme—which is not the subject of this

---

[2] At the 12(b)(6) stage, the court may consider the complaint in its entirety, including "documents incorporated into the complaint by reference." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)); *accord Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017). Petrobras referenced the audit report in its amended complaint, and the parties do not dispute that it is properly before the court on this motion to dismiss.

[3] "Operação Lava Jato" in Portuguese.

case—in which Samsung contracted directly with Petrobras to construct two other ships. According to a Reuters article, Samsung bribed Petrobras's Cerveró to finalize a contract between Petrobras and Samsung for the construction of the *Vitória 10,000* and the *Petrobras 10,000*. *See* Caroline Stauffer, *Another Former Petrobras Executive Charged in Brazil Scandal*, Reuters (Dec. 15, 2014). A Washington Post article reported that Petrobras's Duque was arrested in March 2014 for his actions in Operation Carwash. *See* Dom Phillips, *'Operation Carwash' in Brazil Causes Normally Staid Business Meeting to Go off Script*, Wash. Post (Nov. 17, 2014). Petrobras noted the *Vitória 10,000* and *Petrobras 10,000* bribery scheme, as well as related criminal charges against its executives Duque and Cerveró, in a May 2015 filing with the Securities and Exchange Commission. Neither the newspaper articles nor the SEC filing mentioned the DS-5.

On March 5, 2019, Petrobras filed a complaint in Texas state court against Samsung for its role in the bribery that led to the Petrobras–Pride contract for the DS-5's drilling services. The complaint alleged that Samsung engaged in both common-law fraud under Texas state law and racketeering under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d).

Samsung removed the case to federal court and moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on statute-of-limitations grounds. The district court took judicial notice of Petrobras's 2014 SEC filing and the two newspaper articles from the Washington Post and Reuters. Each of these documents detailed the bribery scheme underlying the Samsung–Petrobras contract for the construction of the *Vitória 10,000* and *Petrobras 10,000*, but they did not mention the Petrobras–Pride contract for the DS-5's drilling services. From these, the district court inferred that Petrobras was on notice in 2014, at the latest, that the DS-5 contract was suspect. Holding that "the specific drillship in this case is not subject to its

own limitations clock," the district court granted Samsung's motion to dismiss. Petrobras timely appealed.

II.

We review orders on 12(b)(6) motions to dismiss for failure to state a claim *de novo*. *Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 116 (5th Cir. 2019). We accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Arnold v. Williams*, 979 F.3d 262, 265 n.1, 266 (5th Cir. 2020). We consider all "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Rule 12(b)(6) dismissal under a statute of limitation is proper only when the complaint makes plain that the claim is time-barred and raises no basis for tolling. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

III.

Petrobras argues that the district court erred in its determination that Petrobras was on notice in 2014 of the facts that gave rise to its RICO claims. The statute of limitations is four years for both Texas fraud claims and civil RICO claims. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4); 18 U.S.C. §§ 1962(c)–(d), 1964(c); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987). The statute of limitations for a RICO claim does not accrue until a plaintiff discovers, or through reasonably diligent investigation should discover, the injury.[4] *Rotella v. Wood*, 147 F.3d 438, 440

[4] Knowledge of the wrongdoer is not required to start the clock on the statute of limitations; knowledge of the injury alone suffices for the claim to accrue. *See Love v. Nat'l Med. Enters.*, 230 F.3d 765, 773 (5th Cir. 2000) (citing *Rotella v. Wood*, 147 F.3d 438, 440 (5th Cir. 1998), *aff'd*, 528 U.S. 549 (2000)) ("[A] civil RICO claim accrues when the plaintiff discovers, or should have discovered, the injury."). However, the plaintiff may be

(5th Cir. 1998), *aff'd*, 528 U.S. 549 (2000); *Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988) ("A plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, and is charged with the knowledge of all facts such an investigation would have disclosed."). The Texas discovery rule similarly requires the limitations period to "run from the date the plaintiff [(1)] discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury," or (2) "had knowledge of such facts as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action." *Hoover v. Gregory*, 835 S.W.2d 668, 671 (Tex. App.—Dallas 1992, writ denied); *accord Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 209 (Tex. 2011) ("Knowledge of injury initiates the accrual of the cause of action and triggers the putative claimant's duty to exercise reasonable diligence to investigate the problem, even if the claimant does not know the specific cause of the injury or the full extent of it.").

In Petrobras's view, it did not and could not have discovered its injury until May of 2015, when it completed an internal audit of the drilling services contract for DS-5. Samsung disagrees, arguing that Petrobras knew as far back as 2007, and certainly no later than 2014, that it had been injured. Because a "statute of limitations is an affirmative defense for which the [defendant] has the burden of proof," we will address Samsung's proposed dates of notice in turn. *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 486 (5th Cir. 2016); *accord* Fed. R. Civ. P. 8(c)(1).

---

entitled to tolling by fraudulent concealment when: (1) the wrongdoer fraudulently conceals the "facts forming the basis for the claim," including the wrongdoer's own identity as the wrongdoer; and (2) the plaintiff cannot access these facts through reasonably diligent investigation. *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1533–34 (5th Cir. 1988).

A.

In asserting that Petrobras had notice in 2007, Samsung argues that Cerveró's and Duque's knowledge of the bribes is imputed to Petrobras. According to Petrobras, only Cerveró and Duque knew about the DS-5 bribes; no other officials at Petrobras knew that Petrobras had been defrauded in the DS-5 contract. Samsung says this is enough because Petrobras is charged with the knowledge of its officers. *See Askanase v. Fatjo*, 130 F.3d 657, 666 (5th Cir. 1997).[5]

An officer's knowledge will not be imputed to his employer if he "was acting adversely to the [employer] and entirely for his own or another's purpose." *Id.* Taking the complaint's factual allegations as true, Cerveró and Duque acted in their own interests by accepting $10 million in bribes and in Samsung's interest "by causing Petrobras to hire a drillship it did not need." Thus, Cerveró and Duque are clearly adverse agents of Petrobras. Their knowledge cannot be imputed to Petrobras. *See id.*

On appeal, Samsung presents another basis for dismissal that the district court did not rely on in its order: Petrobras's injury lies in being stuck with the unfavorable terms of the DS-5 contract despite not having enough work for the vessel; Petrobras officials knew as early as 2007 that it might not need the DS-5; thus Petrobras knew about its injury as far back as 2007.

In its reply, Petrobras attacks this argument on two fronts. First, Petrobras contests the assertion that it knew from the start that there would

[5] Samsung also points to a non-prosecution agreement Petrobras entered into in which it accepted responsibility for certain corruption schemes involving Cerveró and Duque. This agreement, however, did not address the DS-5 bribery scheme. The non-prosecution agreement is simply inapplicable to this case.

not be enough work for the DS-5. Second, Petrobras objects to Samsung's characterization of its injury as a lack of work for the DS-5.

On the first front, Petrobras contests the inferences drawn from Samsung's evidence. Samsung relies primarily on internal Petrobras e-mails from 2007,[6] in which the Petrobras International Division "discussed and agreed that there was no need for a third drillship." Petrobras, however, says that those e-mails and related documents also included projections and drilling plans that would support the need for the DS-5.

Regardless of whether Petrobras or Samsung is correct in its reading of these e-mails and documents, they do not conclusively establish that the statute of limitations had run by March 5, 2019. Rather, they create a fact issue about Petrobras's knowledge. The 2007 e-mails and related documents are not a proper basis for 12(b)(6) dismissal. *Cf. Trinity Marine*, 812 F.3d at 490; *Sec. Indus. Ins. Co. v. United States*, 702 F.2d 1234, 1251 (5th Cir. 1983).

On the second front, Petrobras contends that Samsung mischaracterizes Petrobras's injury. In Samsung's view, Petrobras was injured by the "unfavorable terms" in the DS-5 contract, which it ultimately did not need. In its reply brief, Petrobras characterizes the injury as "a wholly unnecessary contract that was procured through Samsung's *fraud*."

Fraud is the key to Petrobras's injury. An unfavorable contract alone is not a legally cognizable injury. A contract procured through fraud is. *See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)); *Nat'l Enters., Inc. v. Mellon Fin. Servs. Corp. No. 7*, 847 F.2d 251, 254 (5th Cir. 1988) (determining that simple non-

---

[6] Petrobras referred to these e-mails in its amended complaint and attached them as exhibits 5, 7, 10, 13, and 14. Thus, they may be considered on 12(b)(6) review.

payment under a contract, without more, does not amount to "a cognizable injury" under RICO). Petrobras's complaint clearly alleges an injury of fraud. We hold that Samsung "has not met its burden of conclusively establishing that" Petrobras knew or should have known about its injury as far back as 2007. *Trinity Marine*, 812 F.3d at 490.

B.

In support of its argument that Petrobras knew of its injury no later than 2014, Samsung presented to the district court two newspaper articles and Petrobras's 2014 Form 20-F Annual Report, filed in 2015 with the U.S. Securities and Exchange Commission. The district court took judicial notice of these documents. We review a district court's decision whether to take judicial notice for abuse of discretion. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998).

Under Federal Rule of Evidence 201, a district court may take judicial notice of facts that are "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). The newspaper articles in this case were not proper material for judicial notice. It was not established that the accuracy of the articles could not reasonably be questioned, nor that the facts were "generally known within the" district court's jurisdiction. *Id.*; *see also Eberhardt v. Merck & Co.*, 106 F. App'x 277, 279 (5th Cir. 2004).

The SEC filings, however, may be properly judicially noticed to the extent that they are "considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996). Petrobras itself prepared the SEC filings, so they are relevant to Petrobras's knowledge of the statements in the documents. Assuming that

the district court considered the documents only as evidence of what Petrobras knew or should have known at the time, it did not abuse its discretion. *See id.*

Regardless of whether it was proper to consider these documents, they do not conclusively establish that the statute of limitations began running prior to March 5, 2015. The SEC filing and news articles do not mention Pride or DS-5 at all. Pride—not Samsung—entered into the DS-5 contract with Petrobras. Samsung's involvement was "camouflaged." The Samsung–Petrobras contract involved the construction of the *Vitória 10,000* and *Petrobras 10,000*; the Petrobras–Pride contact involved the drilling services of the DS-5. The separate bribery schemes involved separate parties, separate contracts, and separate ships.

Because of the nature of the DS-5 bribery scheme, a reasonable person may not have thought to inquire into the Pride drilling-services contract after Cerveró was criminally charged in connection with the *Vitória 10,000* and *Petrobras 10,000* fraud. *See Jensen*, 841 F.2d at 607. Nor can it be said as a matter of law that a reasonably diligent investigation at the time, without the benefit of a full audit or the details of Padilha's plea agreement, would have uncovered the basis for Petrobras's fraud claim.

In short, Samsung's arguments at best raise fact questions not suitable for disposition under Rule 12(b)(6). *See Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 200 (5th Cir. 2021) (reversing 12(b)(6) dismissal on statute-of-limitations grounds because Defendants failed to conclusively establish that Plaintiffs should have discovered their injury through a diligent inquiry); *cf. Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis*, 706 F.2d 638, 640 (5th Cir. 1983) ("While a statute-of-limitations defense may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), such a motion should not be granted unless 'it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977))).

* * *

Samsung has not conclusively established at the 12(b)(6) stage that Petrobras's RICO and Texas fraud claims accrued before March 5, 2015. Accordingly, we REVERSE and REMAND for proceedings consistent with this opinion.