United States District Court
Southern District of Texas
**ENTERED**
August 09, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PETROBRAS AMERICA, INC., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-1410 |
| | § | |
| SAMSUNG HEAVY INDUSTRIES | § | |
| CO., LTD., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This case goes back in time; how much time is the issue the pending motion presents. In 2007, Samsung Heavy Industries Co., Ltd., entered into a construction contract with Pride Global Limited. Under the construction contract, Samsung had the option to build a drillship for Pride if Pride secured a drilling-services contract to operate the ship. (Docket Entry No. 51 at ¶ 2). Samsung bribed two officials with Petrobras America, Inc., a subsidiary of Petroleo Brasileiro S.A., to award Pride a drilling-services contract. (*Id.*). Pride received a drilling-services contract from Petrobras, and Samsung exercised its option with Pride to build a drillship, known as the DS-5, for $640 million. (*Id.* at ¶ 3). In this lawsuit, and in arbitration proceedings, Petrobras alleged that but for the bribes paid to its corrupt officials, payments that Petrobras discovered in 2015, it would not have entered into the drilling-services contract with Pride. (*Id.* at ¶ 5). In January 2016, Petrobras cancelled its drilling-services contract with Pride, which by then had been acquired by Ensco Deepwater USA, Inc. (*Id.* at ¶¶ 98–99).

Samsung answered this lawsuit and counterclaimed for contribution from Petrobras, alleging that Petrobras was aware of and had engaged in the bribery scheme. Samsung sought the

money awarded to Ensco (formerly, Pride) in a related but separate arbitration that Ensco had initiated against Samsung for losses arising from the cancellation of the contracts.  (Docket Entry No. 85).

Petrobras moved to dismiss Samsung's contribution counterclaim on two grounds:  the counterclaim is untimely, and the counterclaim fails to state a basis for relief.  (Docket Entry No. 91).  Samsung has responded, and Petrobras has replied.  (Docket Entry Nos. 100, 105).  In the briefs and at oral argument, the parties agreed that Texas, not English law, governs limitations.[1] At oral argument, the parties confirmed their agreement that English law governs the substantive elements of the counterclaim, and that if the court finds that the counterclaim is not time barred, Samsung has stated a claim for relief under English law.  (Docket Entry No. 119).  After oral argument, the parties submitted supplemental briefs and replies on the only remaining issue— whether Samsung's counterclaim for contribution is time-barred.  (Docket Entry Nos. 120, 121, 128, 130).

After careful consideration of the pleadings, the parties' arguments, the record, and the applicable law, the court denies Petrobras's motion to dismiss because Samsung's counterclaim is not time-barred under Texas law.  The reasons are explained below.

## I.    Background

---

[1]  In Samsung's response and Petrobras's reply, the parties agreed that English law would govern the substantive claim and that Texas law, which treats statutes of limitations as procedural, would govern limitations.  (*See* Docket Entry No. 100 at 12; Docket Entry No. 105 at 6); *see In re Air Disaster at Ramstein Air Base, Germany, on 8/29/90*, 81 F.3d 570, 577 (5th Cir. 1996) ("Because both parties agree that either Texas or Georgia law applies, this Court's inquiry is limited to the substantive law of those two states." (citing *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 249 (5th Cir.1990); *Crisman v. Cooper Industries*, 748 S.W.2d 273, 276 (Tex. App.–Dallas 1988))); *see also O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 Fed. Appx. 308, 311 (5th Cir. Apr. 28, 2020) (per curiam) (applying Utah law because the parties agreed that it applied); *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 224–26 (5th Cir. 2005) (similar).

Petrobras America and Petrobras International Braspetro B.V., together referred to as Petrobras, are subsidiaries of Petróleo Brasileiro S.A. (Docket Entry No. 85 at 23). In 2007, Samsung entered into a construction contract with Pride Global Limited. Under the construction contract, Samsung had the option to build a drillship if Pride secured a drilling-services contract to operate the ship. (*Id.* at 49). Hamylton Padilha acted as an agent of Pride in the negotiations to secure the drilling-services contract. (*Id.*) To help Pride receive a drilling-services contract, Samsung bribed two Petrobras officials, Nestor Cuñat Cerveró and Renato de Souza Duque. (*Id.* at 4). Pride received a drilling-services contract from Petrobras America, and Samsung exercised its option with Pride to build a drillship, called the DS-5, for $640 million. (*Id.*).

Samsung alleges that the payments it made to Petrobras to facilitate the drilling-services contract between Pride and Petrobras were only a small part of a "massive" bribery scheme facilitated by Petrobras, in which Petrobras generated over $2 billion in corrupt payments to pay Brazilian politicians and political parties. (*Id.* at 24). Samsung alleges that this decade-long bribery scheme was planned, directed, and carried out by high-level officials at Petrobras, not limited to Cerveró and Duque. (*Id.*).

In a nonprosecution agreement with the United States Department of Justice, Petrobras admitted that from at least 2004 to 2012, its executives and managers "participated in the facilitation and direction of portions of the corrupt payments to Brazilian politicians and Brazilian political parties, some of which could affect [Petrobras], including because they had oversight over the location in which a [Petrobras] project was being completed." (*Id.* at 30–31). Petrobras admitted to two transactions that violated the Foreign Corrupt Practices Act. (*Id.* at 39–40). One "transaction related to the purchase of a Texas oil refinery in 2006, and another related to a drillship charter brokered by Padilha in 2009." (*Id.* at 39). Samsung alleges that members of Petrobras's

3

Board of Directors and Executive Board knew of the DS-5 bribery scheme, and that Petrobras admitted that it "falsified books and records and failed to implement internal controls in furtherance of the bribery scheme at issue in this counterclaim." (*Id.* at 30, 53).

Samsung alleges that in addition to Petrobras's admissions, its agent, Cerveró, told Brazilian investigators that "that 'all Petrobras businesses were a source of bribes,' that Petrobras's CEO and the rest of the Executive Board were aware that Cerveró was receiving payments from transactions, including transactions involving [Samsung], and that Petrobras's CEO knew that this was how business was conducted at Petrobras." (*Id.* at 33). Samsung alleges that an executive who worked as a manager in Petrobras's engineering department from 2003 to 2011 told Brazilian investigators that "bribery and kickbacks were 'built in' to many Petrobras contracts with suppliers," and that requiring some form of bribe or kickback in its business dealings was Petrobras's "modus operandi." (*Id.*). Samsung also alleges that another member of Petrobras's executive board, Paulo Roberto Costa, stated that Petrobras's directors and executives all knew that to maintain their jobs, they had to permit the company to make payments to Brazilian politicians. (*Id.* at 34–35).

In January 2016, Petrobras terminated the drilling-services contract with Pride, asserting that the contract was void because it had been procured through corruption. Petrobras refused to pay the $152 million it still owed Pride under the contract. (*Id.* at 57–58). After Petrobras ended the drilling-services contract, Ensco—Pride's successor—initiated two London-based arbitrations. The first was against Petrobras, asserting wrongful termination of the drilling-services contract. (*Id.* at 58). Petrobras faced more than $150 million in liability for cancelling the contract. Samsung alleges in this case that Ensco and Petrobras decided to team up against Samsung in the arbitration. One Ensco Senior Vice President wrote in an internal email that the company should

4

promote a "story whereby [Samsung] are the only bad guys and Ensco and Petrobras settle their claims clearing the way for Ensco to do business with Petrobras and shift their focus towards [Samsung] (independently or jointly . . .)." (*Id.* at 59). The Ensco-Petrobras arbitration settled in August 2018; neither party paid anything. (*Id.*).

Ensco then filed a second arbitration, this time against Samsung, for making the bribery payments. (*Id.* at 60). In January 2018, the arbitration tribunal found that Samsung had paid the bribes, that Ensco was unaware of the payments, that Samsung had paid those bribes for the benefit of Padilha, Cerveró and Duque, and that Samsung misrepresented $20 million dollars worth of costs in building the drillships to cover the costs of the bribes. (Docket Entry No. 92-11 at ¶¶ 367, 370–71, 513). In August 2018, the tribunal issued a second award ordering Samsung to pay costs incurred up to the First Award. (Docket Entry No. 92-12 at ¶ 25). In May 2019, the tribunal issued its third and final award, determining that Samsung owed Ensco a total of $200 million in damages. The award included over $152 million in losses for "the value of the claim given up in the Petrobras settlement [with Ensco]," that is, the amount due to Ensco from Petrobras under the drilling-services contract. (Docket Entry No. 85 at 60). In December 2019, Samsung settled with Ensco, paying $200 million in damages. (*Id.*).

In March 2019, while the second arbitration was pending, Petrobras filed this suit against Samsung. Petrobras sought to recover the amounts it had paid to acquire the drillship from Pride. (Docket Entry No. 1). Petrobras acknowledged that two of its employees had demanded and received personal payments from Samsung through Pride's agent, Hamylton Padilha. (Docket Entry No. 51 at ¶¶ 42–43, 134). In November 2021, Samsung filed its original answer and counterclaim. (Docket Entry No. 85). The counterclaim seeks contribution from Petrobras for

some or all of the $200 million that Samsung paid Ensco as a result of the DS-5 transaction with Petrobras.

The pending motion seeks to dismiss the counterclaim as barred by limitations.

## II.    The Legal Standard for Dismissal

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

 "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the

parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co*., 920 F.3d 890, 900 (5th Cir. 2019).

"A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014).

## III.    The Statute of Limitations

Petrobras argues that under Texas law, the statute of limitations for Samsung's counterclaim is two years, that the claim accrued when the tribunal issued the damages award against Samsung in May 2019 in the Ensco-Samsung arbitration, and that the limitations period ended before Samsung filed this counterclaim in November 2021. Samsung argues that under Texas law, the applicable limitations period is four years, making its counterclaim clearly timely. Samsung also argues that even if a two-year period applies, Samsung's counterclaim did not accrue until December 2019, when Ensco and Samsung settled their arbitration, or, at the earliest, March 2019, relating back to the date Petrobras filed this lawsuit. (Docket Entry No. 1-3).

### A.    Counterclaim Limitations v. Underlying Action Limitations

The first question under Texas law is whether the limitations period governing contribution actions should be the same as the limitations period that applies to the underlying claim. Samsung argues that under Texas law, this court must determine the limitations period for the underlying substantive claim and apply that period to the contribution counterclaim. Ensco's substantive

claims against Samsung in the arbitration were for bribery, dishonest assistance in the breach of fiduciary duty, deceit and fraudulent misrepresentation, and conspiracy to injure by unlawful means.  Analogous claims have four-year limitations periods under Texas law.  *E.g.,* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4), (5); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 138 (Tex. 2019).  Samsung argues that the same four-year limitations period that applies to the substantive claims here should also apply to the contribution counterclaim.  Petrobras argues that Texas courts have routinely applied a two-year limitations period to contribution claims, regardless of the limitations period for the underlying substantive claim.

Under Texas law, [a] "defendant's claim of contribution is derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought." *Varela v. Am. Petrofina Co. of Tex., Inc.*, 658 S.W.2d 561, 562 (Tex. 1983).  The issue is whether the derivative nature of a contribution claim means that it is governed by the same limitations period that applies to the underlying substantive claim.

The parties do not cite a case making clear whether the contribution counterclaim in this case is governed by the same limitations period that applies to the underlying claims.  Samsung cites two Texas Supreme Court cases that apply the limitations period of an underlying cause of action to a derivative cause of action, but these cases are distinguishable from the contribution context present in this case.

Samsung first relies on *Guillot v. Hix*, 838 S.W.2d 230 (Tex. 1992).  *Guillot* concerned a provision of the Texas Workers' Compensation Act that subrogated the insurance carrier "to the rights of the injured employee" and permitted the carrier to "enforce the liability of the person who caused the injury." *Id.* at 231.  The carrier paid the injured employee and then filed a subrogation action against the employer.  The Texas Supreme Court held that because the carrier "merely

8

succeed[ed]" to the interests of the injured employee, the limitations period for the insurance carrier's derivative action was the same period that would apply had the injured employee brought the action.  *Id.* at 232–33.

Subrogation claims are analytically different from contribution claims.  Bringing a subrogation claim entails standing in the shoes and asserting the rights of the injured party.  *See Bay Rock Op. Co. v. St. Pail Surplus Lines Ins. Co.*, 298 S.W.3d 216, 223 (Tex. App.—San Antonio 2009, pet. denied) ("Under both [equitable and contractual] subrogation, the insurer stands in the shoes of the insured, and may assert only those rights held by the insured against the third party, subject to any defenses of the third party against the insured.").  Because the same rights are asserted, the applied limitations period should be the same, as the Texas Supreme Court recognized in *Guillot*.  But contribution claims do not involve the same right asserted in the underlying action. The underlying action could be for a personal injury, fraud, or a breach of contract, but the right asserted in the contribution action is for payment from another liable party.  *See* ROBERT N. KELLY, *Insurer v. Insurer: Subrogation and Contribution Claims Against Other Insurers*, 15 TORTSOURCE 1, 6 (2013) ("[E]quitable contribution allows a recovery, not from the party primarily responsible for a loss, but from a co-obligor who shares such liability with the party seeking contribution."); 18 AM. JUR. 2D CONTRIBUTION § 1 (a claim for contribution allows a defendant to "distribute[] a loss caused by more than one person by requiring each person to pay a proportionate share of the damages on a comparative fault basis").  *Guillot* does not support Samsung's position.

Samsung also relies on *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136 (Tex. 2019).  In *Agar*, the Texas Supreme Court concluded that because civil conspiracy is a derivative tort, in which "the plaintiff seeks to hold the defendant liable for an injury caused by a third party who has acted in combination with the defendant for a common purpose," the

limitations period for conspiracy is the same as for the underlying tort.  *Id.* at 139–40.  The Court

explained that making the limitations periods different could lead to a bizarre result:

> [W]hy should co-conspirators who participate in a scheme to defame a person but who do not commit any defamatory acts themselves be subject to suit for a longer period than the primary tortfeasor upon whom their liability is premised?  *See* TEX. CIV. PRAC. & REM. CODE § 16.002(a) (applying a one-year limitations period for libel and slander).
>
> Equating the limitations period for civil conspiracy with that of the underlying tort also accords with the Legislature's statute-of-limitations scheme.  The Legislature has defined different statutes of limitations for various claims, such as "suit[s] for trespass or injury," "suit[s] on ... fraud," "suit[s] for ... libel" or "suit[s] for misappropriation of trade secrets."  TEX. CIV. PRAC. & REM. CODE §§ 16.002–.004, .010.  The scheme thus assigns statutes of limitations based on the type of wrong, but it does not assign different limitations for parties who may be liable through different theories for the same wrong.  Because civil conspiracy is a theory of vicarious liability, a lawsuit alleging a civil conspiracy that committed some intentional tort is still a "suit for" that tort.

*Id.* at 142.  *Agar* does not help Samsung here.  As the Texas Supreme Court explained, there is no

reason to give a defendant who is vicariously liable for conspiring to commit a tort a different

limitations period than the defendant who directly commits the tort.  The plaintiff asserts the same

right against both defendants, under different theories of liability.  In the case of contribution, the

plaintiff asserts the underlying right, but it is the defendant that asserts the right of contribution.

Although the Texas Supreme Court has held that subrogation and civil conspiracy claims

should have the same limitations period as the underlying claims, the Texas Supreme Court has

not decided this issue as to contribution.  "In the absence of a controlling decision" by the state's

highest court, the court must "make an '*Erie [R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)] guess' as

to how the state's highest court would resolve the issue."  *In re Franchise Servs. of N. Am., Inc.*,

891 F.3d 198, 209–10 (5th Cir. 2018), *as revised*, (June 14, 2018) (quoting *Temple v. McCall*, 720

F.3d 301, 307 (5th Cir. 2013)).  "Unless persuaded that the state's highest court would decide the issue differently, [the court] also defer[s] to the decisions of the state's intermediate appellate courts." *Id.*

The Texas Supreme Court in *Agar* and *Guillot* asked whether there was any reason for subrogation claims and civil conspiracy claims to have different limitations periods than the underlying claims from which they arise.  It answered that question by comparing the rights asserted in the subrogation or conspiracy claims and the underlying claims.  Applying the same reasoning, the Texas Supreme Court would likely recognize that the rights asserted in a contribution claim are distinct from those in an underlying claim, warranting a different limitations period for contribution claims that does not vary with the underlying claim.  This is consistent with Texas intermediate appellate court case law that has applied one limitations period to contribution claims without considering the limitations period that applies to the underlying claims.  *See, e.g.*, *Potter v. Kaufman & Broad Home Sys. of Tex., Inc.*, 137 S.W.3d 701, 705 (Tex. App.—San Antonio 2004, no pet.); *Atchison, Topeka & Santa Fe Ry. Co. v. Payne*, No. 14-94-00628-CV, 1996 WL 283067, at *1 (Tex. Civ. App.—Houston [14th Dist.] 1996, writ. denied); *Caldwell v. Stevenson*, 567 S.W.2d 278, 280 (Tex. Civ. App.—Austin 1978, no pet.).  *See also Robbins v. Port of $ale, Inc.*, 62 V.I. 151, 158–59 (Super. Ct. 2015, March 6, 2015) ("[T]he practice in the Virgin Islands and elsewhere favors treating limitations of actions for indemnity and contribution differently than limitations on their predicate torts."); Restatement (Third) of Torts: Apportionment of Liability § 23 cmt. k ("[A] person is not protected from contribution by the fact that the plaintiff would be precluded from recovery because of a statute of limitation.").  The underlying claim is a right asserted by plaintiff, and the derivative, or contribution action, is a right asserted by the defendant against a separate potential obligor.

Because the limitations period for the underlying substantive claims does not determine the period for the contribution claim, the next issue is whether a two or four year limitations period applies to that claim.

### B.    Two v. Four Years

Petrobras argues for a two-year period, citing TEX. CIV. PRAC. & REM. CODE § 16.003(a), which provides:

> (a) Except as provided by Sections 16.010, 16.0031, and 16.0045, a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.

This provision does not refer to claims for contribution.

Texas has a four-year statute of limitation for lawsuits involving contractual obligations. Breach of contract, certain debt collection suits, and breach of fiduciary duty claims are all subject to the four-year limitation.   The four-year limitation also applies to certain transfers of real property.  A short list of claims subject to this rule are:

- breach of fiduciary duty, TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5);

- claims in which no other statute of limitation is expressly applicable, TEX. CIV. PRAC. & REM. CODE § 16.051;

- claims for debt, TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3);

- fraud,  TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4);

- specific performance of contract for conveyance of real property,  TEX. CIV. PRAC. & REM. CODE § 16.004(a)(1); and

- breach of contract, TEX. CIV. PRAC. & REM. CODE § 16.004(3), § 16.051, or TEX. BUS. & COM. CODE § 2.725.

12

Texas state court cases have consistently treated claims for contribution as claims based on an implied contract—an unwritten agreement for the payment of a debt.  *See Barton v. Farmers' State Bank of Bertram*, 263 S.W. 1093, 1095, 1097 (Tex. Civ. App.—Austin, 1924), *overruled on other grounds*, 276 S.W. 177 (Commission of Appeals of Texas, Section A, 1925) ("It is well settled in this state that payment by one co-obligor of more than his proportionate part of a common debt must be made before a cause of action exists in favor of him against another co-obligor for contribution. . . . The limitation applicable to an action for contribution is that fixed for an implied contract."); *Nelms v. Chazanow*, 404 S.W.2d 359, 362 (Tex. Civ. App.—Houston, 1966, no pet.) ("The law is well settled in this State that each joint obligor in a contract is liable to the other for contribution to indemnify him for any payments made in excess of his prorata share. The joint obligor making such payment in excess of his share has a right of action upon the implied promise of the other joint obligor for reimbursement. . . . In the instant case appellant's cause of action upon the implied promise arising out of the relationship of the parties and not upon a written contract was barred in two years from the date when the right of action upon each payment accrued." (citing Article 5526)); *Victor Refining Co v. City Nat'l Bank of Commerce*, 263 S.W. 622, 624 (Tex. Civ. App.—Amarillo 1924), *aff'd*, 274 S.W. 561 (Tex. 1925) ("The right of contribution exists only on compulsory payment of the debt by the one claiming the right. *Glasscock v. Hamilton*, 62 Tex. 143, 151; 13 C.J. p. 823, § 6.  It follows that when one is sued for contribution, he may show that the other party was not legally bound to pay the debt, and consequently is without right of contribution.").  Applying this approach to the Texas statutory provisions setting four-year statutes of limitation supports a four-year limitations period.

This is consistent with other jurisdictions, in which courts have described contribution as a way to apportion costs after liability has been established, a remedy given to the party who pays

a debt that is concurrently owed by another party, and a doctrine that requires persons under a common burden to share that burden equitably.  Liability for contribution is coextensive with liability for a debt, and a contribution action is an action to collect that unwritten debt.  *See* 18 AM. JUR. 2D CONTRIBUTION § 1 (citations omitted); *see also Jones v. Meat Packers Equip. Co.*, Civ. A. No. 81–871–N, 1984 WL 2877, at *3 (E.D. Va. July 5, 1984) ("While derived from the plaintiff's original action, in this instance a tort claim of negligence, a contribution action sounds in contract, specifically as an implied promise to pay." (citing cases)); *Reddy v. PMA Ins. Co.*, 20 A.3d 1281, 1284 (Del. 2011) ("Contribution is the right of one who has discharged a common liability to recover from another who is also liable."); *In re Individual 35W Bridge Litig.*, 806 N.W.2d 811, 815 (Minn. 2011) ("Contribution is an equitable remedy that then allows 'one who has discharged more his fair share of a common liability or burden to recover from another who is also liable the proportionate share which the other should pay or bear.'" (citation omitted)); *Sayles v. Bates*, 5 A. 497, 498 (1886) ("[T]he liability to contribution is co–extensive with the liability for the debt.").

Petrobras cites several older Texas state cases that cited and relied on the now-repealed section of the Texas Civil Practice and Remedies Code, Article 5526, as support for the argument that a two-year limitations period applies to contribution claims. Article 5526, the predecessor of §16.003, set a two-year limitations period for personal injury actions.  (Docket Entry No. 105 at 13 n.8).  But Article 5526, unlike its successor, also provided a limitations period for actions to recover debts not evidenced in writing.  Article 5526 stated in full:

> Actions to be commenced in two years.–There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:
>
> 1. Actions of trespass for injury done to the estate or the property of another.

14

2. Actions for detaining the personal property of another, and for converting such property to one's own use.

3. Actions for taking or carrying away the goods and chattels of another.

4. Actions for debt where the indebtedness is not evidenced by a contract in writing.

5. Actions upon stated or open accounts, other than such mutual and current accounts as concern the trade of merchandise between merchant and merchant, their factors or agents. In all accounts, except those between merchant and merchant, as aforesaid, their factors and agents the respective times or dates of the delivery of the several articles charged shall be particularly specified, and limitation shall run against each item from the date of such delivery, unless otherwise specially contracted.

6. Action for injury done to the person of another.

7. Action for injury done to the person of another where death ensued from such injury and the cause of action shall be considered as having accrued at the death of the party injured.

8. Actions of forcible entry and forcible detainer.

VERNON'S TEXAS STAT. 1948, Art. 5526, *available at* https://www.sll.texas.gov/library-resources/collections/historical-texas-statutes/bookreader/1948-1/#page/1646/mode/2upp. The current version of this statute, TEX. CIV. PRAC. & REM. CODE § 16.003(a), does not include "actions for debt where the indebtedness is not evidenced by a contract in writing."

Turning to the cases that rely on now-repealed Article 5526, in *Caldwell v. Stevenson*, 567 S.W.2d 278 (Tex. Civ. App.—Austin 1978, no pet.), a bank sued four co-signers to recover the balance on a promissory note. *Id.* at 279. A judgment was issued, and one of the co-signers, Caldwell, paid the judgment. Caldwell then sued another co-signor for contribution. *Id.* at 279–80. The Texas Civil Appeals Court cited Article 5526 as providing the limitations period for the contribution action because it was an action for "assumpsit" or "implied promise to pay,"

describing the action as one for a "debt." *Id.* at 280.  It appears that the Texas Court of Civil Appeals cited Article 5526 as providing the two-year limitations period because the court considered contribution to be an "[a]ction[] for debt where the indebtedness is not evidenced by a contract in writing," not because it considered contribution to be a claim for "injury" or "trespass." *See also Miller v. Miles*, 400 S.W.2d 4, 9 (Tex. Civ. App.—Tyler 1966, writ ref'd n.r.e.) (applying the two-year statute of limitations under Article 5526 of the Texas Civil Practice and Remedies Code because "a cause of action for contribution [is] brought on the theory of implied contract"); *Littlefield v. Scott*, 244 S.W. 824, 826 (Tex. Civ. App. 1922, writ ref'd) (recognizing that the two-year limitations period for a debt action was based on "implied contract").

Although these older Texas state cases did not address limitations periods for contribution actions in the context of tort claims, the cases provide additional support that contribution claims in Texas have been understood as actions based on an implied, unwritten promise for a debt.  Until 1979, these actions were subject to the two-year limitations period set out in Article 5526.  Article 5526 was repealed in 1979, when the legislature placed actions for debt under a four-year limitations statutory provision.  *See* TEX. CIV. PRAC. & REM. CODE § 16.004; *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164–65 (Tex. App.—El Paso 1997, no writ.) (recognizing that the recodification of Texas statutes replaced the two-year limitations period for debt actions with a four-year limitations period).

The parties' supplemental briefs appear to agree that Texas state courts have consistently recognized that a claim for contribution is a claim for breach of an implied contract, at times described as an action for a debt or breach of an implied promise to pay, known as an action in assumpsit.  *See Caldwell*, 576 S.W.2d at 280 ("The cause of action for contribution is in assumpsit, or implied promise to pay. . . ."); *Nelms*, 404 S.W.2d at 362 (contribution is a "right of action upon

the implied promise of the other joint obligor for reimbursement").  The parties also agree that under Texas law, debt and implied contract actions were governed by a two-year limitations period until 1979, when the Texas legislature amended Article 5526 and made the four-year limitations period applicable to debt actions.  TEX. CIV. PRAC. & REM. CODE § 16.004; *Crego v. Lash*, No. 13–12–00100–CV, 2014 WL 1272220, at *5 (Tex. App.—Corpus Christi, Mar. 27, 2014) (applying a four-year limitations period to a claim to recover the unpaid balance of an unwritten note).

Petrobras nonetheless argues that the Texas Supreme Court's holding in *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869 (Tex. 2007) (per curiam), which applied a two-year limitations period to unjust enrichment claims, extends to contribution claims.  In *Elledge*, a county contracted with the defendant to improve waterline service to rural residents.  *Id.* at 869.  The defendant was required to provide his own insurance and equipment, but instead he charged one of the residents for these costs.  *Id.*  The resident brought an action seeking restitution under an unjust enrichment theory.  *Id.*  The Texas Court of Appeals had reasoned that unjust enrichment claims were like claims for a "debt," and that considering the 1979 amendments, the applicable statute of limitations was four years.  *Id.* at 870; *see also Amoco*, 946 S.W.2d 162 (reasoning that unjust enrichment actions developed from assumpsit actions, which were actions for promise or contract implied by law, and should be considered a "cause of action for debt not evidenced in writing").

In a short per curiam opinion, the Texas Supreme Court reversed the intermediate appellate court because the Supreme Court had stated in a 1998 and a 2001 case, although without explanation, that a two-year limitations period applied to claims for unjust enrichment.  The

*Elledge* Court did offer an an additional explanation, which, contrary to Petrobras's argument,

supports applying a four-year limitations period to the contribution claim at issue here:

> Even without the benefit of our prior decisions, we would conclude
> that unjust enrichment claims should fall under the two-year statute.
> The most logical reading of sections 16.003 and 16.004 is to treat
> "debt" actions under section 16.004 as breach-of-contract actions
> that fall under the four-year statute of limitations for such claims,
> *see also* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(1) (four-year
> statute for claims seeking specific performance of contract to
> convey real estate); TEX. BUS. & COM. CODE § 2.725 (four-year
> statute for breach-of-contract claims under Texas Uniform
> Commercial Code), while construing the two-year statute's
> reference to actions for "taking or detaining the personal property of
> another" as applicable to extra-contractual actions for unjust
> enrichment. This construction harmonizes the two statutes and
> gives meaning to each.

*Id.* at 870–71.

Petrobras interprets this part of the opinion as evidencing the Texas Supreme Court's intent

to treat every type of extracontractual claim, not only an extracontractual claim for unjust

enrichment, as subject to the two-year limitations period under §16.003. This appears overbroad.

The Texas Supreme Court read the §16.003 reference to actions for "taking or detaining the

personal property of another" to include extracontractual actions for unjust enrichment. The Court

distinguished extracontractual claims for unjust enrichment from debt actions, which are actions

for breach of contract and subject to a four-year limitations period. An action for unjust enrichment

is an action to recover a benefit that another has improperly obtained. *See Heldenfels Bros., Inc.

v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ("A party may recover under the unjust

enrichment theory when one person has obtained a benefit from another by fraud, duress, or the

taking of an undue advantage."); *see also* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST

ENRICHMENT § 1 cmt. a ("Liability in restitution derives from the receipt of a benefit whose

retention without payment would result in the unjust enrichment of the defendant at the expense

of the claimant.").   That is separate and different from an action for breach of an express or implied contract, such as breach of an implied contract to pay a debt—including a debt sought by way of contribution.

*Elledge* does not hold that contribution claims, which Texas and other courts treat as claims for breach of an implied contract to pay a debt, which would be subject to a four-year limitations period under §16.004, should also be treated as claims for unjust enrichment, which *Elledge* characterized as claims for taking or detaining the property of another and subject to a two-year limitations period under §16.003.  *See Nghiem v. Sajib*, 567 S.W.3d 718, 722 n.20 (Tex. 2019) (recognizing that while the Texas Supreme Court had indicated in *Elledge* that breach of contract actions are subject to a four-year limitation period under § 16.004, the Court had also indicated, without analysis, in other cases, that breach of contract actions fell under the residual four-year limitations statute).

The historical analysis is consistent with treating contribution claims as claims for breach of an implied contract to pay a debt, not claims for taking or holding another's property.   Article 5526 also had a provision for "taking or detaining the personal property of another," but despite the availability of that provision, lower intermediate courts considered contribution actions to be actions for debts not evidenced by a contract in writing.   Treating a claim for unjust enrichment as a claim for a taking by another, while treating contribution as a claim for a debt owed by a party liable to another party who has overpaid its share of a judgment, is consistent with Texas law.  *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 33.015 (describing a defendant's right of contribution for "overpayment"); *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 21 (Tex. 1987) (describing as a prerequisite for contribution the payment of "a disproportionate share of the common liability").

The *Elledge* Court cited another Texas Supreme Court decision, *Williams v. Khalaf*, 802 S.W.2d 651 (Tex. 1990).  The issue in *Khalaf* was what limitations period should apply to actions for fraud, which was not then set by statute.  *Id.* at 654.  The *Khalaf* Court noted a 1909 case that had stated in "unequivocal terms" that an action for fraud was an action for a "debt."  *Id.* (citing *Gordon v. Rhodes & Daniel*, 116 S.W. 40, 41–42 (1909)).  The *Khalaf* Court was asked to treat fraud like a tort or a trespass, with a two-year limitations period, rather than like a debt, with a four-year limitations period.  The Court refused, reasoning that fraud claims had evolved out of contractual or quasi-contractual actions.  *Id.* at 655–56.  Because the Texas legislature had amended Article 5526 to apply four-year limitations period to actions for debt—a contract or quasi-contract claim—the Texas Supreme Court reasoned that the four-year period should apply to actions for fraud.  *Id.* at 657.

The *Elledge* Court noted that the interpretation in *Khalaf* was no longer "warranted" because the Texas legislature had later amended the limitations statute to expressly state that fraud actions were subject to a four-year limitations period.  But the *Elledge* Court did not otherwise find fault with the reasoning in *Khalaf*.  *See Elledge*, 240 S.W.3d at 870 n.1.  And Texas intermediate appellate courts have characterized contribution claims as implied contracts for debt actions.  *See, e.g., Victor Refining*, 263 S.W. at 624 (relying on *Glasscock v. Hamilton*, 62 Tex. 143, 151 (Tex. 1884), and referring to a contribution claim as seeking a "debt"); *Caldwell*, 567 S.W.2d at 280.  Treating a contribution claim as a debt action or as a claim for breach of an implied contract to pay a debt make the four-year limitations period apply, a conclusion that is consistent with the *Elledge* Court's treatment of a claim for unjust enrichment as a claim for the "taking or detaining" of the property of another and subject to a two-year limitations period.

20

Petrobras cites several Texas and federal cases that have applied a two-year limitations period to contribution claims, but these decisions did not explain the reason for doing so.  In *Fed. Ins. Co. v. Northfield Ins. Co.*, No. 4:14-0262, 2019 WL 13039283 (S.D. Tex. Aug. 29, 2019), the "parties d[id] not contest that contribution claims are subject to a two-year statute of limitations." *Id.* at *4.  That court cited *Evanston Ins. Co. v. Nat'l Union Fire Ins. Co.*, No. 1:09-CV-909, 2012 WL 12977322, (E.D. Tex., Mar. 19, 2012), in which it was similarly "undisputed that Texas law establishes a two-year statute of limitations for contribution claims such as this one."  *Id.* at *6. The *Evanston* court cited *Kelley v. Wal–Mart Stores, Inc.*, 224 F. Supp. 2d 1082 (E.D. Tex. 2002), and *Potter v. Kaufman & Broad Home Sys. of Tex., Inc.*, 137 S.W.3d 701 (Tex. App.—San Antonio 2004, no pet.), but neither is helpful here.  *Kelley* discussed the separate issue of when the cause of action for contribution accrued, not what the limitations period would be.  224 F. Supp. 2d at 1083.  *Potter* stated that "common law contribution claims" must be brought "two years from the date the cause of action accrues," but cited only § 16.003(a) without explaining how that section applied to "common law contribution."  *Id.* at 705; *see also Atchison, Topeka & Santa Fe Ry. Co. v. Payne*, No. 14-94-00628-CV, 1996 WL 283067, at *1 (Tex. Civ. App.—Houston [14th Dist.] 1996, writ. denied) (applying the two-year limitations period to a contribution action, without explanation).

One other ground supports applying a four-year limitations period. There is no express limitations period for a contribution claim.  Under Tex. Civ. Prac. & Rem. Code Ann. § 16.051, "[e]very action for which there is no express limitations period . . . must be brought not later than four years after the day the cause of action accrues."  *See Nationstar Mortgage LLC v. Barefoot*, NO. 14-19-00750-CV, 2021 WL 5001660, at *2–4 (Tex. App.—Houston [14th Dist.] Oct. 28, 2021) (applying a residual limitations period to claims under the Texas Debt Collection Act

because it was not clear what limitations period applied, despite the fact that several other courts had applied the two-year personal-injury limitations period, without explanation).

A four-year limitations period applies to Samsung's counterclaim. Samsung seeks contribution for the damages it paid to Ensco under a settlement agreement that resolved arbitration awards and appeals for which Petrobras had responsibility. (Docket Entry No. 85, Counterclaim, at ¶¶ 10, 211–14, 221, 224). The counterclaim asserts a breach of an implied obligation to pay Samsung for some or all of the amount Samsung paid Ensco because of Petrobras's acts. This obligation is a breach of an implied promise to pay, or a claim on a debt, not a claim from a tortious detention of Samsung's property. The four-year limitations period is appropriate. Because Samsung brought its counterclaim in November 2021, less than four years after the third arbitral award, the court need not decide when Samsung's counterclaim accrued or whether it relates back to the date of Petrobras's original complaint.

## IV.    Conclusion

Petrobras's motion to dismiss Samsung's contribution counterclaim, (Docket Entry No. 91), is denied.

SIGNED on August 8, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge