United States District Court
Southern District of Texas

**ENTERED**

September 21, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PETROBRAS AMERICA, INC.,** | § | **Case No. 4:19-cv-01410** |
| | § | |
| ***Plaintiff-Counterclaim Defendant,*** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **SAMSUNG HEAVY INDUSTRIES CO., LTD.,** | § | |
| | § | |
| ***Defendant-Counterclaimant.*** | § | |

**ORDER APPOINTING ALEXANDER BLUMROSEN AS COMMISSIONER TO SUPERVISE DEPOSITION OF NUNO CORREIA IN FRANCE PURSUANT TO CHAPTER II, ARTICLE 17 OF THE HAGUE CONVENTION**

This Court, having reviewed the Motion for Order Appointing Commissioner and Issuance of Letter of Request Pursuant to the Hague Evidence Convention (the "Motion"), any responses or replies thereto, any argument of counsel, and applicable law, and finding it proper to appoint a commissioner in France pursuant to 28 U.S.C. § 1781 and Chapter II of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 28 U.S.T. 2555 (the "Hague Convention"), HEREBY ORDERS THAT:

1. The Motion is GRANTED.

2. The Court will sign and date the English and French versions of the proposed Letter of Request attached to the Motion as Exhibit 1.

3. After the Court dates and signs the English and French versions of the Letter of Request, the Clerk is directed to authenticate the Court's signatures on each version by affixing the Court's seal thereto, and to return the English and French versions of the Letter of Request to counsel

for SHI, who will have the Letter of Request promptly transmitted to the French Ministère de la Justice for execution in France.

4. Pursuant to Article 17 of the Hague Convention, Alexander Blumrosen, an attorney admitted to the Bars of Paris and New York and whose address is Polaris Law, 4 avenue Hoche, 75008, Paris, France (the "Commissioner"), is hereby duly appointed, pending the approval of the French Ministère de la Justice and subject to the terms of the Letter of Request issued contemporaneously herewith, as Commissioner to, in a neutral capacity:

a. Supervise the taking of evidence without compulsion in the form of a deposition of Mr. Correia pursuant to Article 17 of the Hague Convention and in conformity with the procedure set forth in the Letter of Request issued contemporaneously herewith; and

b. Upon completion to inform the French Ministère de la Justice.

5. This signed Order and the signed Letter of Request will be given to Arnold & Porter Kaye Scholer LLP, counsel for Defendant Samsung Heavy Industries Co., Ltd., which will file or request the Commissioner to file both documents, along with French translations, with the Ministère de la Justice, Direction des Affaires Civiles et du Sceau, Bureau de l'entraide civile et commerciale international (D3), 13, Place Vendôme, 75042 Paris Cedex 01, France.

6. The costs of this Hague Convention process, including the fee of the Commissioner, translation fees for these motion papers, and any related costs, will be borne by Defendant Samsung Heavy Industries Co., Ltd. Each party will be responsible for the fees and expenses, if any, of its own attorneys relating to any proceedings arising from this Hague Convention process, including the deposition of Mr. Correia.

7. Any unresolved disputes between the parties and/or Mr. Correia regarding the conduct of the deposition shall be determined exclusively by this Court. The Commissioner will

adhere to any such order issued by this Court relating to the conduct of the deposition of Mr. Correia in the above-captioned action.

8. Neither this Order nor the terms of the Court's Letter of Request shall constitute or operate as a waiver of the attorney-client privilege, the work product doctrine, or any other privileges, rights, or protections that may apply to evidence under the laws of France or the United States.

Signed on this 21st day of September, 2022.

Lee H. Rosenthal

The Honorable Lee H. Rosenthal

# Exhibit 1

# English

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PETROBRAS AMERICA, INC.,** | § | **Case No. 4:19-cv-01410** |
| | § | |
| ***Plaintiff-Counterclaim Defendant,*** | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **SAMSUNG HEAVY INDUSTRIES CO., LTD.,** | § | |
| | § | |
| | § | |
| ***Defendant-Counterclaimant.*** | § | |

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL MATTERS**
**<u>TO OBTAIN EVIDENCE FROM NUNO CORREIA</u>**

In conformity with Articles 3 and 17 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), the United States District Court for the Southern District of Texas respectfully requests assistance from the French Ministère de la Justice in obtaining evidence to be used in a civil proceeding now pending before this Court in the above-captioned matter (the "U.S. Action" or "Action"). Specifically, this Court seeks the assistance of the French Ministère de la Justice in authorizing the appointment of a commissioner to supervise the voluntary deposition of an individual witness and resident of France, Mr. Nuno Correia, under Article 17 of the Hague Convention. The evidence is sought by the Defendant in this action, Samsung Heavy Industries Co., Ltd. ("SHI").

As set forth below, Mr. Correia is a critical fact witness whose testimony is highly relevant to allegations by Plaintiff Petrobras America, Inc.'s ("PAI") in this Action, SHI's defenses to those allegations, and SHI's counterclaim, and it is necessary for the purposes of justice and the due

determination of the matters in question between the parties that Mr. Correia be examined under oath or affirmation.

The U.S. Action is a civil proceeding in which PAI alleges that SHI violated the U.S. Racketeer Influenced and Corrupt Organizations Act ("RICO") and committed fraud by making certain payments that were demanded by Petrobras officials in connection with a transaction for an SHI drillship called the DS-5. Through the U.S. Action, PAI seeks reimbursement for amounts it paid for the DS-5 drillship, which Petrobras procured pursuant to a drilling services contract with Pride.[1] PAI claims that it never needed the drillship—for which it alleges it received unfavorable contract terms—and asserts that it would not have procured the drillship but for the payments certain "rogue" Petrobras officials demanded and received from SHI. SHI has also filed an answer and counterclaim under which it seeks contribution from Plaintiff for $200 million in damages that SHI paid as a result of its involvement in Petrobras's scheme involving the DS-5 transaction and would not have paid absent Petrobras's demands.

At all times relevant to this dispute, Mr. Correia was Pride's Director of International Business Development and served as Pride's lead negotiator in its negotiations with Petrobras over the DS-5 drilling services contract. In the course of discovery in this proceeding, PAI has identified Mr. Correia as having first-hand knowledge regarding the contract negotiations for the construction of the DS-5, the contract negotiations for the drilling services contract, and regarding "the facts alleged in Plaintiff's Complaint." Mr. Correia's knowledge encompasses, among other things, Petrobras's communications regarding its need for a drillship, Petrobras's specifications and anticipated use for the drillship, the involvement of officials at all levels of Petrobras's organization in negotiations with Pride, Pride's view of the terms of the drilling services contract, and the state of

---

[1] "Pride" as used herein refers to Pride International, Inc. or one or more of its subsidiaries, as appropriate.

the energy market at the time of negotiations over the DS-5. That evidence is directly relevant to Plaintiff's core allegations in this case—that Petrobras unknowingly and unwillingly entered an unfavorable drilling services contract at the hands of certain "rogue" officials who received incentive payments from SHI—as well as the allegations in SHI's counterclaim concerning Petrobras's responsibility for the DS-5 scheme.

The assistance requested is for the French Ministère de la Justice to approve the appointment of Mr. Alexander Blumrosen of Polaris Law, 4 avenue Hoche, 75008, Paris, France, as commissioner to supervise the taking of evidence from Mr. Correia relevant to the claims and defenses in the Action, under the terms set forth in this Letter of Request.

**1. Sender/Requesting Judicial Authority:**

The Honorable Lee H. Rosenthal, Chief Judge
United States District Court for the Southern District of Texas
515 Rusk Avenue
Houston, Texas 77002
United States of America

**2. Central Authority of the Requested State:**

Ministère de la Justice
Direction des Affaires Civiles et du Sceau
Département de l'entraide, du droit international privé et européen (DEDIPE)
13, Place Vendôme
75042 Paris Cedex 01
France

**3. Persons to Whom the Executed Request Is To Be Returned:**

Christopher M. Odell
Ryan P. Hartman
Amanda S. Thomson
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002
United States of America

Email: Christopher.Odell@arnoldporter.com

Email: Ryan.Hartman@arnoldporter.com
Email: Amanda.Thomson@arnoldporter.com
Tel.: +1 713 576 2401
Fax: +1 713 576 2499

Caroline Derache
HMN Partners
7, Place d'lèna
75115, Paris, France

Email: CDerache@hmn-partners.com
Tel.: +33 (0)1.53.57.50.34
Fax: +33 (0)1.53.57.50.30

**4. Names and Addresses of the Parties and Their Representatives:**

**a. Plaintiff:**

Petrobras America, Inc.
10350 Richmond Avenue
Houston, Texas 77042
United States of America

Counsel for Plaintiff:
Eric J. Cassidy
Curtis, Mallet-Prevost, Colt & Mosle LLP
2 Houston Center
909 Fannin Street, Suite 3800
Houston, Texas 77010

Jonathan J. Walsh
Grace Condro
Robert Garcia
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

**b. Defendant:**

Samsung Heavy Industries Co., Ltd.
SHI R&D Center, 23, Pangyo-ro 227 beon-gil, Bundang-gu,
Seongnam-si, Gyeonggi-do, 463-400
13486 Republic of Korea

Counsel for Defendant:
Christopher M. Odell

Ryan P. Hartman
Amanda S. Thomson
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002

Soo-Mi Rhee
Daniel Bernstein
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001

Caroline Derache
HMN Partners
7, Place d'lèna
75115, Paris, France

**5. Nature of the Proceedings and Summary of the Facts:**

The parties to the U.S. Action have alleged the following:

The U.S. Action is a civil lawsuit that arises out of one of the largest corporate bribery schemes in history. Between at least 2004 and 2012, Petróleo Brasileiro S.A. ("Petrobras S.A.") and its subsidiaries (collectively "Petrobras") orchestrated one of the largest corporate corruption schemes in history. Petrobras orchestrated a $2 billion scheme pursuant to which it used corporate procurement—including in the company's acquisition of drillships—to generate funds to pay Brazilian politicians and political parties for Petrobras's benefit. The scheme was the subject of a wide-ranging investigation ("Operation Car Wash") that resulted in the conviction of many of Petrobras's most senior executives.

Petrobras America, Inc. ("PAI") filed the U.S. Action against SHI in 2019, asserting causes of action under the U.S. Racketeer Influenced and Corrupt Organizations Act ("RICO") and for fraud and implicit fraud after purportedly discovering that one of the transactions in which Petrobras demanded payments from companies involved an SHI drillship called the DS-5, which Petrobras

procured pursuant to a drilling services contract with Pride.[2] Through the U.S. Action, PAI seeks reimbursement for amounts it paid for the DS-5 drillship, claiming that it never needed the drillship—for which it alleges it received unfavorable contract terms—and would not have procured it but for the payments certain "rogue" Petrobras officials demanded and received from SHI.

SHI in turn filed a counterclaim against Plaintiff, seeking contribution from Plaintiff for $200 million in damages that SHI paid to Pride's successor Ensco Global IV Ltd. as a result of SHI's involvement in Petrobras's scheme involving the DS-5 transaction.

At all times relevant to the dispute, Mr. Nuno Correia, Pride's former Director of International Business Development, served as Pride's lead negotiator in the discussions with Petrobras that resulted in the DS-5 contract. Mr. Correia is therefore a critical fact witness. In its Initial Disclosure, Plaintiff identified Mr. Correia as having discoverable information concerning the facts alleged in Plaintiff's Complaint, the contract negotiations for the construction of the DS-5, and the contract negotiations for the drilling services contract. Moreover, in a related arbitration between SHI and Ensco Global IV Ltd. (formerly Pride Global Ltd.), Mr. Correia gave a 61-page witness statement in which he detailed his involvement in negotiations with Petrobras regarding the DS-5 drillship that Petrobras alleges resulted in a contract unfavorable to it. Mr. Correia also described his knowledge of Petrobras's internal organizational structure, approval processes, and bidding processes, among other topics.

This information is critical to the key issues in this case. Although SHI has a copy of the Witness Statement, that testimony is not admissible in the U.S. Action because it is considered hearsay under the Federal Rules of Evidence of the United States of America. Moreover, that witness statement was obtained in an arbitration between SHI and Ensco Global IV Ltd. to which PAI was

[2] "Pride" as used herein refers to Pride International, Inc. or one or more of its subsidiaries, as appropriate.

not a party, and thus does not cover the full set of issues relevant to this case. As a result, an admissible form Mr. Correia's testimony cannot be acquired by means other than through a letter of request.

**6. Evidence To Be Obtained or Other Judicial Act to Be Performed and Purpose:**

**a. Judicial Act To Be Performed and Evidence to Be Obtained:**

Through this Letter of Request, this Court seeks an order from the French Ministère de la Justice approving this Court's appointment of Mr. Alexander Blumrosen of Polaris Law, 4 avenue Hoche, 75008, Paris, France, as commissioner to supervise the taking of evidence from Mr. Correia under Article 17 of the Hague Convention and the terms set forth in this Letter of Request.

The evidence to be obtained under the supervision of the commissioner is the oral testimony of Mr. Correia for use in the U.S. Action. The parties have satisfied this Court that Mr. Correia, who engaged in direct negotiations with Petrobras and its representatives on behalf of Pride, is in unique possession of evidence relevant to Plaintiff's allegations in the Action and SHI's defenses thereto. Appendix A sets forth the topics of oral testimony sought from Mr. Correia.

**b. Purpose of the Evidence Sought:**

This Court has found that Mr. Correia has material information related to the U.S. Action and that justice cannot be completely done between the parties without an opportunity to obtain his testimony. For at least the following reasons, Mr. Correia is in unique possession of critical evidence that bears on essential elements of PAI's claims, SHI's defenses to those claims, and SHI's counterclaim:

*First*, Mr. Correia's knowledge bears directly on the issue of whether PAI's alleged damages were caused by SHI's conduct, an essential element of each of PAI's claims in the U.S. Action. Because PAI contends that SHI's actions caused it to agree to an unfavorable contract for a drillship

it did not need, PAI must establish among other things that, absent the payments its officials demanded and received from SHI, it would not have (i) entered a contract with terms like those in the drilling services contract, or (ii) contracted for a drillship at all. As a direct participant in Pride's negotiations with Petrobras concerning the DS-5, Mr. Correia has direct knowledge of the then-prevailing market conditions and Petrobras's communications regarding its need for and intended uses of the DS-5, among other things. This knowledge is directly relevant to proving or disproving whether PAI's alleged damages were caused by SHI's conduct.

*Second*, Mr. Correia's knowledge is relevant to questions of fact concerning SHI's defense that PAI did not bring the U.S. Action within the applicable four-year statute of limitations. Because the accrual of a civil RICO claim is delayed until the PAI is aware, or should have been aware, of the injury, a key issue is when PAI became (or should have become) aware of the allegedly unfavorable terms of the drilling services contract or corrupt activity involved in the transaction. As a key participant in negotiations with Petrobras over the DS-5, Mr. Correia's testimony will bear directly on these issues.

**7. Identity and Address of the Person To Be Examined:**

Nuno Correia
Address (to be added by counsel for SHI):

________________________________________________

________________________________________________

________________________________________________.

**8. Questions To Be Put to the Person To Be Examined or Statement of the Subject Matter About Which He Is To Be Examined:**

It is requested that Mr. Correia be questioned by lawyers for SHI and lawyers for PAI with respect to the topics set forth in Appendix A.

**9. Documents and Other Property To Be Inspected:**

No inspection of documents or property is requested.

**10. Any Requirement That the Evidence Be Given on Oath or Affirmation and Any Special Form To Be Used:**

This Court respectfully requests that Mr. Correia testify under oath or affirmation, that he be duly sworn in accordance with the applicable procedures of France, that the testimony be transcribed by a qualified court reporter to be selected by the legal representative of SHI, and that a videographic record be taken of the deposition.

**11. Special Methods or Procedure To Be Followed:**

The following is respectfully requested:

a. That the deposition be conducted without compulsion pursuant to Article 17 of the Hague Convention, with Mr. Alexander Blumrosen of Polaris Law, 4 avenue Hoche, 75008, Paris, France presiding as commissioner in a neutral capacity;

b. That SHI's U.S. and French counsel be permitted to attend the deposition and that SHI's U.S. and French counsel be authorized to conduct the deposition (*i.e.*, examine the witness on the topics listed in Appendix A) while the commissioner Mr. Blumrosen is present in a supervisory role;

c. That U.S. and French counsel for the PAI be permitted to attend the deposition and that U.S. and French counsel for the Plaintiff (if any) be permitted examine the witness on the topics listed in Appendix A while the commissioner Mr. Blumrosen is present in a supervisory role;

d. That Mr. Correia be permitted to be represented by his own counsel at his own expense at the deposition should he wish to do so, and that he not be required to give evidence that is privileged against disclosure under the laws of either the United States or France;

e. That the deposition be taken under the Federal Rules of Civil Procedure of the United States of America ("FRCP"), except to the extent such procedure is incompatible with the law of France;

f. That the questions and testimony be translated into English, French, and the witness's native language if requested and if different than English or French, and that an interpreter be permitted to attend the deposition in order to translate the proceedings;

g. That the testimony be recorded verbatim by stenographic and videographic means in English, that a stenographer and videographer be permitted to attend the deposition in order to record the testimony, and that the parties' representatives be provided with a copy of the transcript and recording;

h. That the parties be permitted to designate certain portions of the testimony as Confidential or Attorneys' Eyes Only in accordance with the governing terms of the Protective Order in place in the U.S. Action, a copy of which is attached as Appendix B, and that such designations will operate to bar the dissemination of the designated testimony other than as permitted under the Protective Order;

i. That there be excluded from the deposition, if permitted under the law of France, all persons other than the witness, the commissioner, the attorneys conducting the examination, other attorneys for the parties, attorneys for the witness, the stenographer, the videographer, and the interpreter during any portion of the witness examination regarding materials covered by the Protective Order;

j. That the examination be conducted orally; and

k. That the deposition be allowed to continue until completed, except that the deposition shall not exceed a total of seven hours on the record per party, plus an additional seven hours per party to account for the translation if the deposition proceeds in a language other than English.

**12. Request for Notification of the Time and Place of Execution of the Request and Identity and Address of Any Person To Be Notified:**

It is requested that the deposition be taken as soon as can practicably be arranged. It is further requested that the deposition be conducted at the offices of HMN Partners, 7 Place d'léna, 75116, Paris, France, or at a location mutually agreed upon by the parties and the witness, and that the witness and counsel listed below be notified of the date, time, and place of the deposition as soon as the location and date are mutually agreed.

<u>Counsel for Defendant</u>:
Christopher M. Odell
Ryan P. Hartman
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002
Email: Christopher.Odell@arnoldporter.com
Email: Ryan.Hartman@arnoldporter.com
Tel.: +1 713 576 2401

Soo-Mi Rhee
Daniel Bernstein
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Email: Soo-Mi.Rhee@arnoldporter.com
Email: Daniel.Bernstein@arnoldporter.com

Caroline Derache
HMN Partners
7, Place d'lèna
75115, Paris, France
Email: CDerache@hmn-partners.com

<u>Counsel for Plaintiff</u>:
Eric J. Cassidy
Curtis, Mallet-Prevost, Colt & Mosle LLP

2 Houston Center
909 Fannin Street, Suite 3800
Houston, Texas 77010
Email: ECassidy@curtis.com
Tel.: +1 832 331 6788

Jonathan J. Walsh
Robert Garcia
Grace Condro
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178
Email: JWalsh@curtis.com
Email: Gcondro@curtis.com
Email: Rgarcia@curtis.com
Tel.: +1 212 696 6000

**13. Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request:**

No attendance of United States judicial personnel is requested.

**14. Specification of Privilege or Duty to Refuse to Give Evidence Under the Law of the United States:**

The witness may refuse to give evidence only insofar as he has a privilege or duty to refuse to give evidence under the laws of the United States or the laws of France.

The parties to the U.S. Action have agreed, and this Court has ordered, that any confidential material produced or disclosed by the parties or any third parties will be kept confidential, according to the Protective Order entered in the case.

**15. Fees and Costs:**

The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Convention shall be borne by SHI.

**16. Specification of the Date By Which the Requesting Authority Requires Receipt of the Response to the Letter of Request:**

The Requesting Authority requests that the deposition take place as soon as practicable after the Requested State receives this Letter of Request, in order to be taken with adequate time before the December 31, 2022 close of fact discovery in this case. Expedient treatment of this Letter of Request will allow the parties and the witness to arrange a mutually agreeable date for testimony and avoid disruption to the witness's business or personal plans.

**17. Signature and Seal of the Requesting Authority:**

This court expresses its appreciation for the assistance and courtesy of the Courts of France in this matter, and states that it shall be ready and willing to assist the courts of France in a similar manner when required.

Signed on this 21st day of September, 2022.

The Honorable Lee H. Rosenthal

Cou

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

**Appendix A**
**Topics for Oral Testimony By Mr. Nuno Correia**

1. Mr. Correia's education, training, professional background, experience, and current employment;

2. Negotiations relating to the DS-5, including the substance of those negotiations and any Petrobras officers or employees who were involved in or aware of them;

3. Communications with Petrobras between 2005 and 2008 relating to its (a) need for and anticipated uses for the DS-5, or (b) anticipated future drilling activities;

4. Discussions between Petrobras and other companies relating to drillship contracts from 2005 through 2016;

5. Petrobras's procedures for negotiating domestic and international contracts;

6. Petrobras officers and employees required to approve contracts relating to the DS-5, including any approvals by the Petrobras executive board;

7. Economics of the DS-5 transaction, including both the drilling services contract and its amendments, and the drillship construction contract;

8. The global energy market from 2005 through 2016, including but not limited to oil price and drillship demand;

9. Mr. Correia's May 26, 2017 Witness Statement;

10. Mr. Correia's November 3, 2017 Witness Statement;

11. Mr. Correia's December 6, 2017 Witness Statement;

12. Petrobras's termination of the DS-5 drilling services contract; and

13. Communications with Samsung regarding the DS-5 drilling services contract.

# Appendix B

## Protective Order

United States District Court
Southern District of Texas
**ENTERED**
June 18, 2019
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PETROBRAS AMERICA, INC.,** *Plaintiff,* v. **SAMSUNG HEAVY INDUSTRIES CO., LTD.,** *Defendant.* | § § § § § § § § § § | **Case No. 4:19-cv-01410 (LHR)** |

# AGREED PROTECTIVE ORDER

The Court issues this Agreed Protective Order to facilitate document disclosure and production under the Federal Rules of Civil Procedure. Unless modified pursuant to the terms contained in this Order, this Order shall remain in effect through and following the conclusion of this litigation, as described herein.

In support of this order, the Court finds that:

1. The proceedings in this action may involve the discovery and use of confidential, non-public, and/or proprietary business, employment, tax, financial, and personally identifiable documents, information, and other materials ("Confidential Information"), and the parties to this action have agreed to limit the disclosure of Confidential Information as provided herein; and

2. To protect the respective interests of the parties and to facilitate the progress of disclosure and discovery in this case, the following Order should issue:

IT IS THEREFORE ORDERED THAT that any person subject to this Order—including without limitation the parties to this action, their representatives, agents, experts and consultants,

all third parties providing discovery in this action, and all other interested persons with actual or constructive notice of this Order—shall adhere to the following terms, upon pain of contempt:

1. Any party or non-party to this action (the "Designating Party") shall have the right to designate as "Confidential" any materials, documents, discovery responses, things, or testimony that the Designating Party believes, in good faith, contain or represent confidential personal, medical, financial, proprietary, competitive, trade secret, or other information that the Designating Party normally would require third parties to maintain as confidential, provided that such documents have not previously been voluntarily disclosed by the Designating Party to anyone except those in its employment or those retained by it or those who have received such documents pursuant to confidentiality protections. This includes information provided to the Designating Party by a customer or other third party on condition that it be maintained as confidential.

2. A Designating Party may also designate all or portions of any materials, documents, discovery responses, things, or testimony as "Attorney's Eyes Only." Materials designated as Attorney's Eyes Only constitute highly sensitive and proprietary business information of the Designating Party.

3. Nothing shall be regarded as Confidential or Attorney's Eyes Only information if it is information that:

(a) is in the public domain at the time of disclosure, as evidenced by a written document;

(b) becomes part of the public domain through no fault of the other party, as evidenced by a written document;

(c) the receiving party can show by written document that the precise information was in its rightful and lawful possession at the time of disclosure.

4. Except as otherwise indicated below, all materials, documents, discovery responses, things, or testimony designated by the producing party as Confidential or Attorney's Eyes Only, and which are disclosed or produced to the attorneys for the other parties to this litigation, are entitled to confidential treatment as described herein.

5. A Designating Party shall designate materials as "Confidential" or "Attorney's Eyes Only" by placing the word(s) "Confidential" or "Attorney's Eyes Only" on each page of the materials, or otherwise making a pronouncement in writing at the time of disclosure.

6. Information disclosed at (a) the deposition of a party or one of its present or former officers, directors, employees, agents, or independent experts retained by counsel for purpose of this litigation, or (b) the deposition of a non-party (which information pertains to a party) may be designated by a Designating Party as Confidential or Attorney's Eyes Only information by indicating on the record at the deposition that the testimony is Confidential or Attorney's Eyes Only and is subject to the provisions of this Order. The Designating Party shall have the right to exclude all persons except the deponent, his or her counsel, counsel of record for the named parties, the court reporter, and those persons listed in Paragraphs 9 and/or 10 below from the portion of a deposition during which the witness testifies concerning Confidential or Attorney's Eyes Only matters. In the event that deposition testimony is designated Confidential or Attorney's Eyes Only, the transcript of the designated testimony shall be bound in a separate volume and marked "Confidential Information Governed by Protective Order" by the court reporter.

7. A party or non-party may also designate information disclosed at a deposition as Confidential or Attorney's Eyes Only by notifying all of the parties in writing within fifteen (15) days of receipt of the transcript of the specific pages and lines of the transcript which should be treated as Confidential or Attorney's Eyes Only thereafter. Parties shall attach a copy of such written notice or notices to the face of the transcript and each copy thereof in their possession, custody, or control. All deposition transcripts shall be treated as Attorney's Eyes Only for a period of fifteen (15) days after the receipt of the transcript.

8. No person subject to this Order other than the Designating Party shall disclose any Confidential or Attorney's Eyes Only materials to any person except as set forth in this Agreed Protective Order. No person shall use any material designated Confidential or Attorney's Eyes Only for any purpose other than to assist in the preparation, trial, and appeal, if any, of this action.

9. Except as provided in this Order, material designated Confidential and the information contained therein shall not be provided, shown, made available, or communicated in any way to any person or entity with the exception of the Qualified Persons listed below:

(a) the parties to this action;

(b) counsel retained specifically for this action, including any paralegal, clerical and other assistant employed by such counsel and assigned to this matter;

(c) as to any document, its author, its addressee, any other person indicated on the face of the document as having received a copy, and any custodian of records required to authenticate the document;

(d) any witness who counsel for a party in good faith believes may be called to testify at trial or deposition in this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as Exhibit A hereto;

(e) any person retained by a party to serve as an expert witness or otherwise provide specialized advice to counsel in connection with this action, provided

such person has first executed a Non-Disclosure Agreement in the form annexed as Exhibit A hereto;

(f) stenographers engaged to transcribe depositions conducted in this action and any outside copy service under contract to provide copy service to counsel for any party;

(g) the Court and its support personnel;

(h) in-house counsel for any party; and

(i) any individual designated by any party as its representative.

10. Material and information that has been designated Attorney's Eyes Only may only be shared with Qualified Persons identified in Paragraphs 9(b)-(h) above and only pursuant to the restrictions set forth in those paragraphs.

11. The Parties shall cooperate in good faith should the need arise to broaden the definition of Qualified Persons. In the event a party objects to another party's treatment of a person as a Qualified Person, the objecting party may challenge the other party's right to share Confidential or Attorney's Eyes Only material with that person by filing an appropriate motion with the Court. Before filing such a motion, the objecting party shall meet and confer with the other party about the issue, and the parties shall in good faith attempt to resolve the dispute. Until the Court has resolved any such motion, the person at issue shall not be treated as a Qualified Person.

12. Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Agreed Protective Order and shall be responsible upon breach of such duty for the failure of such person to observe the terms of this Agreed Protective Order.

13. Copies of Attorney's Eyes Only information provided to a receiving party shall be maintained in the offices of its outside counsel. Any documents produced in this litigation,

regardless of classification, which are provided to Qualified Persons as defined in Paragraph 9 shall be maintained only at the offices of such Qualified Person and only working copies shall be made of any such documents. Copies of documents produced under this Agreed Protective Order may be made, or exhibits prepared by, independent copy services, printers, or illustrators for the purpose of this litigation.

14. Any party that objects to the designation of certain material as Confidential or Attorney's Eyes Only may challenge such designation by filing an appropriate motion with the Court. Prior to filing such motion, the objecting party shall meet and confer with the Designating Party about the issue, giving the Designating Party notice of the challenge and an opportunity to respond. Until the Court has resolved any such motion, the material in question shall retain its Confidential or Attorney's Eyes Only designation and be treated accordingly. The failure of a party to challenge a designation at a particular time shall not preclude that party from challenging the designation at a later time.

15. All Confidential or Attorney's Eyes Only material filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose such Confidential or Attorney's Eyes Only material, shall be filed under seal with the Clerk of the Court and kept under seal until further order of the Court. The parties will use their best efforts to minimize such sealing. In any event, any party filing a motion or any other papers with the Court under seal shall also publicly file a redacted copy of the same, via the Court's Electronic Case Filing system, that redacts only the Confidential or Attorney's Eyes Only material itself, and not text that in no material way reveals the Confidential or Attorney's Eyes Only material. The party who initially designated the materials Confidential or Attorney's Eyes Only shall have the burden of establishing the necessity of sealing the materials. Failure to carry this burden or

otherwise ensure the materials remain sealed shall be the sole responsibility of the Designating Party.

16. To the extent that Confidential or Attorney's Eyes Only materials or information are used in depositions, at hearings, or at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony referring to the Confidential or Attorney's Eyes Only materials or information.

17. In the event any party is served with a subpoena or similar request demanding production of material or information that has been designated Confidential or Attorney's Eyes Only under this Agreed Protective Order, that party shall immediately notify the Designating Party to give the Designating Party the opportunity to interpose and defend any objection to production of the Confidential or Attorney's Eyes Only information.

18. Subject to the Federal Rules of Evidence, materials or information designated Confidential or Attorney's Eyes Only may be offered in evidence at any court hearing provided that the proponent of the evidence gives notice to counsel for all other parties prior to the commencement of the hearing. Subject to the Federal Rules of Evidence, materials or information designated Confidential or Attorney's Eyes Only may be offered in evidence at trial provided that the proponent of the evidence gives five (5) business days' advance notice to counsel for all other parties. Inclusion on the tendering party's exhibit list with a notation that the proposed exhibit contains information designated Confidential or Attorney's Eyes Only constitutes sufficient notice. Any party may move the Court for an order that such evidence be received *in camera* or under other conditions necessary to prevent and/or limit disclosure.

19. Each person who has access to Confidential or Attorney's Eyes Only materials shall take all due precautions to prevent the unauthorized or inadvertent disclosure of such materials.

20. Inadvertent or unintentional production of documents or information containing Confidential Information which are not designated Confidential or Attorney's Eyes Only shall not be deemed a waiver in whole or in part of a claim for Confidential or Attorney's Eyes Only treatment. A party or non-party may designate previously produced materials as Confidential or Attorney's Eyes Only that the party or non-party failed to designate initially through written notice to counsel of record for the receiving party or parties. The Designating Party shall supply copies of the material marked Confidential or Attorney's Eyes Only.

21. Inadvertent or unintentional disclosure of information subject to a legally recognized claim of privilege, including without limitation the attorney-client privilege and the attorney work product protection shall not constitute or be deemed a voluntary disclosure of such information or a waiver or forfeiture of any claim of privilege, evidentiary protection, or other protection with respect to the information and its subject matter, and shall not result in any waiver, including subject matter waiver, of any kind.

22. If, during the course of this action, any party or non-party determines that any document produced by another party or non-party is or may reasonably be subject to a legally recognizable privilege or evidentiary protection ("Protected Document"):

(a) The receiving party shall (A) refrain from reading the Protected Document any more closely than is necessary to ascertain that it is privileged or otherwise protected from disclosure; (B) immediately notify the producing party in writing that it has discovered documents believed to be privileged

or protected; (C) specifically identify the Protected Documents by Bates number range or hash value; and (D) within ten (10) days of discovery by the receiving party, return, sequester, or destroy all copies of such Protected Documents, along with any notes, abstracts, or compilations of the content thereof. To the extent that a Protected Document has been loaded into a litigation review database under the control of the receiving party, the receiving party shall have all electronic copies of the Protected Document extracted from the database. Where such Protected Documents cannot be destroyed or separated, they shall not be reviewed, disclosed, or otherwise used by the receiving party. Notwithstanding the obligations that arise should a receiving party determine that any document produced by another party or non-party is or may reasonably be subject to a legally recognizable privilege or evidentiary protection, the receiving party is under no obligation to search or review the producing party's documents to identify potentially privileged or work product Protected Documents.

(b) If the producing party intends to assert a claim of privilege or other protection over documents identified by the receiving party as Protected Documents, the producing party will, within ten (10) days of receiving the receiving party's written notification described above, inform the receiving party of such intention in writing and shall provide the receiving party with a log for such Protected Documents that is consistent with the requirements of the Federal Rules of Civil Procedure, setting forth the basis for the claim of privilege or other protection. In the event that any

portion of a Protected Document does not contain privileged or protected information, the producing party shall also provide to the receiving party a redacted copy of the document that omits the information the producing party believes is subject to a claim of privilege or other protection.

23. If, during the course of this litigation, a party or non-party determines it has produced a Protected Document:

(a) The producing party may notify the receiving party of such inadvertent production in writing, and demand the return of such documents. Such notice shall be in writing; however, it may be delivered orally on the record at a deposition, promptly followed up in writing. The producing party's written notice will identify the inadvertently produced Protected Document by Bates number range or hash value, the privilege or protection claimed, and the basis for the assertion of the privilege, and shall provide the receiving party with a log for such Protected Documents that is consistent with the requirements of the Federal Rules of Civil Procedure, setting forth the basis for the claim of privilege or other protection. *In the event that any portion of the Protected Document does* not contain privileged or protected information, the producing party shall also provide to the receiving party a redacted copy of the document that omits the information that the producing party believes is subject to a claim of privilege or other protection.

(b) The receiving party must, within ten (10) days of receiving the producing party's written notification described above, return, sequester, or destroy

the Protected Document and any copies, along with any notes, abstracts, or compilations of the content thereof. To the extent that a Protected Document has been loaded into a litigation review database under the control of the receiving party, the receiving party shall have all electronic copies of the Protected Document extracted from the database.

24. To the extent that the information contained in a Protected Document has already been used in or described in other documents generated or maintained by the receiving party prior to the date of receipt of written notice by the producing party as set forth in Paragraphs 22(b) and 23(a), then the receiving party shall sequester such documents until the claim has been resolved. If the receiving party disclosed the Protected Document before being notified of its inadvertent production, it must take reasonable steps to retrieve it.

25. The receiving party's return, sequestering, or destruction of Protected Documents as provided herein will not act as a waiver of the receiving party's right to move for the production of the returned, sequestered, or destroyed documents on the grounds that the documents are not, in fact, subject to a viable claim of privilege or protection. However, the receiving party is prohibited and estopped from arguing that:

(a) the disclosure or production of the Protected Documents acts as a waiver of an applicable privilege or evidentiary protection;

(b) the disclosure of the Protected Documents was not inadvertent;

(c) the producing party did not take reasonable steps to prevent the disclosure of the Protected Documents; or

(d) the producing party failed to take reasonable or timely steps to rectify the error.

26. Either party may submit Protected Documents to the Court under seal for a determination of the claim of privilege or other protection. The producing party shall preserve the Protected Documents until such claim is resolved. The receiving party may not use the Protected Documents for any purpose absent this Court's Order.

27. Upon a determination by the Court that the Protected Documents are protected by the applicable privilege or evidentiary protection, and if the Protected Documents have been sequestered rather than returned or destroyed by the receiving party, the Protected Documents shall be returned or destroyed within ten (10) days of the Court's order. The Court may also order the identification by the receiving party of Protected Documents by search terms or other means.

28. Nothing contained herein is intended to, or shall serve to limit a party's right to conduct a review of documents, data (including electronically stored information) and other information, including without limitation, metadata, for relevance, responsiveness and/or the segregation of privileged and/or protected information before such information is produced to another party.

29. This Agreed Protective Order shall survive the termination of the litigation. Within thirty (30) days of the final disposition of this action, all Confidential and Attorney's Eyes Only material, and all copies thereof, shall upon request be promptly returned to the producing person, or, upon permission of the producing person, destroyed to the extent reasonably possible taking into account backup systems and retention protocols, except that the attorneys receiving Confidential or Attorney's Eyes Only material may keep pleadings, transcripts, exhibits, and work product that refers to or relates to any Confidential or Attorney's Eyes Only material, subject to the obligations imposed by this Agreed Protective Order, which

shall remain in effect and binding on any such retained Confidential or Attorney's Eyes Only documents or information.

30. After termination of this litigation, the provisions of this Order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This Court retains and shall have continuing jurisdiction over the parties and recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this litigation.

31. This Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

SIGNED this 17th day of June, 2019.

Honorable Lee H. Rosenthal
United States District Court Judge

| | | |
|---|---|---|
| **PETROBRAS AMERICA, INC.,** | § | **Case No. 4:19-cv-01410 (LHR)** |
| *Plaintiff,* | § | **Non-Disclosure Agreement** |
| v. | § | |
| **SAMSUNG HEAVY INDUSTRIES CO., LTD.,** | § | |
| *Defendant.* | § | |

I, ____________, acknowledge that I have read and understand the Agreed Protective Order in this action governing the non-disclosure of materials designated as Confidential or Attorney's Eyes Only. I agree that I will not disclose Confidential or Attorney's Eyes Only materials to anyone other than for purposes of this litigation in accordance with the terms of the Agreed Protective Order, and that at the conclusion of the litigation, I will return all discovery information within fifteen (15) days to the party or attorney from whom I received it. By acknowledging these obligations under the Agreed Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of Texas for the purpose of any issue or dispute arising hereunder and that my willful violation of any term of the Agreed Protective Order could subject me to punishment for contempt of Court.

____________________
Signature

____________________
Date

# French

**AU TRIBUNAL DE DISTRICT DES ÉTATS-UNIS**
**POUR LE DISTRICT SUD DU TEXAS**
**DIVISION DE HOUSTON**

| | | |
|---|---|---|
| **PETROBRAS AMERICA, INC.,**<br><br>***Demanderesse-Défenderesse reconventionnelle,***<br><br>**Vs.**<br><br>**SAMSUNG HEAVY INDUSTRIES CO., LTD.,**<br><br>***Défenderesse-Demanderesse reconventionnelle.*** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Affaire No. 4:19-cv-01410** |

**LETTRE DE DEMANDE D'ENTRAIDE JUDICIAIRE INTERNATIONALE EN APPLICATION DE LA CONVENTION DE LA HAYE DU 18 MARS 1970 SUR L'OBTENTION DES PREUVES À L'ÉTRANGER EN MATIÈRE CIVILE POUR OBTENIR DES PREUVES DE NUNO CORREIA**

Conformément aux articles 3 et 17 de la Convention de La Haye du 18 mars 1970 sur l'obtention des preuves à l'étranger en matière civile ou commerciale (« Convention de La Haye »), le Tribunal de district des États-Unis pour le district sud du Texas demande respectueusement l'assistance du Ministère français de la Justice pour obtenir des preuves à utiliser dans une procédure civile actuellement en instance devant le tribunal dans l'affaire susmentionnée (« Action américaine » ou « Action »). Plus précisément, ce Tribunal demande l'assistance du Ministère français de la Justice pour autoriser la nomination d'un commissaire chargé de superviser la déposition volontaire M. Nuno Correia, un témoin individuel et résident de France, en vertu de l'article 17 de la Convention de La Haye. Les preuves sont recherchées par Samsung Heavy Industries Co., Ltd. (« SHI »), la défenderesse dans cette action.

Comme indiqué ci-dessous, M. Correia est un témoin des faits critiques, son témoignage étant très pertinent pour les allégations par la demanderesse Petrobras America, Inc. (« PAI ») dans

cette action, les défenses de SHI à cet égard et la demande reconventionnelle de SHI. Il est nécessaire que M. Correia soit interrogé sous serment ou affirmation solennelle aux fins de la justice et pour déterminer des affaires en cause entre les parties.

L'action judiciaire américaine est une procédure civile dans laquelle PAI allègue que SHI a violé la loi américaine sur les organisations influencées par les racketteurs et corrompues [*U.S. Racketeer Influenced and Corrup Organization Act*] (« RICO »), ayant commis fraude en effectuant certains paiements exigés par les responsables de Petrobras dans le cadre de la transaction pour un navire de forage SHI dénommé DS-5. Par le biais de l'action américaine, PAI demande le remboursement des montants payés pour le navire de forage DS 5, que Petrobras avait acquis en vertu d'un contrat de services de forage avec Pride.[1] PAI affirme qu'elle n'a jamais eu besoin du navire de forage—pour lequel elle prétend avoir reçu des conditions contractuelles défavorables—et affirme que la société n'aurait pas acheté le navire de forage n'eût été les paiements que les cadres ont exigés et reçus de SHI. SHI a également déposé une réponse et une demande reconventionnelle en vertu desquelles elle demande une contribution de la demanderesse pour 200 millions de dollars de dommages-intérêts que SHI a payés en raison de son implication dans le stratagème de Petrobras impliquant la transaction DS-5 et n'aurait pas payé en l'absence des demandes de Petrobras.

À tout moment pertinent à ce différend, M. Correia était le directeur du développement commercial international de Pride et a servi de négociateur principal de Pride avec Petrobras sur le contrat de services de forage DS-5. Au cours de la découverte dans cette procédure, PAI a identifié M. Correia comme ayant une connaissance de première main concernant les négociations du contrat pour la construction du DS-5, les négociations du contrat de services de forage et concernant « les

1 « Pride », tel qu'utilisé ici, fait référence à Pride International, Inc. ou à une ou plusieurs de ses filiales, selon le cas.

faits allégués par la demanderesse dans sa plainte ». Les connaissances de M. Correia englobent, entre autres, les communications de Petrobras concernant son besoin d'un navire de forage, ses spécifications et l'utilisation que la société attendait du navire de forage, l'implication de cadres à tous les niveaux de l'organisation de Petrobras dans les négociations avec Pride, le point de vue de Pride sur les conditions des services du contrat de forage, et l'état du marché de l'énergie au moment des négociations sur le DS-5. Ces preuves sont directement pertinentes pour les principales allégations de la demanderesse dans cette affaire – que Petrobras avait conclu sans le savoir et contre son gré un contrat de services de forage défavorable aux mains de certains fonctionnaires « voyous » qui ont reçu des paiements incitatifs de SHI– ainsi que les allégations dans la demande reconventionnelle de SHI concernant la responsabilité de Petrobras dans le stratagème DS-5.

L'assistance demandée consiste en ce que le ministère de la Justice français approuve la nomination de M. Alexander Blumrosen, du cabinet Polaris Law, 4 avenue Hoche, 75008, Paris, France, en tant que commissaire chargé de superviser l'obtention des preuves de M. Correia ayant rapport avec les demandes et défenses dans l'action, selon les conditions énoncées dans la présente Commission rogatoire.

**1. Expéditeur/autorité judiciaire requérante :**

The Honorable Lee H. Rosenthal, Chief Judge
United States District Court for the Southern District of Texas
515 Rusk Avenue
Houston, Texas 77002
United States of America

**2. Autorité centrale de l'État requis :**

Ministère de la Justice
Direction des Affaires Civiles et du Sceau
Département de l'entraide, du droit international privé et européen (DEDIPE)
13, place Vendôme

75042 Paris Cedex 01
France

**3. Personnes à qui la demande exécutée doit être retournée :**

Christopher M. Odell
Ryan P. Hartman
Amanda S. Thomson
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002
United States of America

Courriel : Christopher.Odell@arnoldporter.com
Courriel : Ryan.Hartman@arnoldporter.com
Courriel : Amanda.Thomson@arnoldporter.com
Tel.: +1 713 576 2401
Fax: +1 713 576 2499

Caroline Derache
HMN Partners
7, place d'Ièna
75115, Paris, France

Courriel : CDerache@hmn-partners.com
Tel.: +33 (0)1.53.57.50.34
Fax: +33 (0)1.53.57.50.30

**4. Noms et adresses des parties et de leurs représentants :**

**a. Demanderesse :**

Petrobras America, Inc.
10350 Richmond Avenue
Houston, Texas 77042
United States of America

<u>Avocats de la Demanderesse :</u>
Eric J. Cassidy
Curtis, Mallet-Prevost, Colt & Mosle LLP
2 Houston Center
909 Fannin Street, Suite 3800
Houston, Texas 77010

Jonathan J. Walsh
Grace Condro
Robert García
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

**b. Défenderesse :**

Samsung Heavy Industries Co., Ltd.
SHI R&D Center, 23, Pangyo-ro 227 beon-gil, Bundang-gu,
Seongnam-si, Gyeonggi-do, 463-400
13486 Republic of Korea

Avocats de la Défenderesse :
Christopher M. Odell
Ryan P. Hartman
Amanda S. Thomson
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002

Soo-Mi Rhee
Daniel Bernstein
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001

Caroline Derache
HMN Partners
7, place d'Ièna
75115, Paris, France

**5. Nature de la procédure et résumé des faits :**

Les parties à l'action américaine ont allégué ce qui suit :

L'action américaine est une poursuite civile qui découle de l'un des plus grands stratagèmes de corruption d'entreprise de l'histoire. Entre 2004 et 2012 au moins, Petróleo Brasileiro S.A. (« Petrobras S.A. ») et ses filiales (collectivement « Petrobras ») ont orchestré l'un des plus grands stratagèmes de corruption d'entreprise de l'histoire. Petrobras a mis sur pied un stratagème de 2 milliards de dollars en vertu duquel elle a utilisé des achats d'entreprise–y compris l'acquisition de

navires de forage par la société–pour générer des fonds pour payer des politiciens et des partis politiques brésiliens au profit de Petrobras. Le stratagème a fait l'objet d'une enquête de grande envergure (« Opération Car Wash ») qui a abouti à la condamnation de nombreux cadres supérieurs de Petrobras.

Petrobras America, Inc. (« PAI ») a intenté une action aux États-Unis contre SHI en 2019, faisant valoir des causes d'action en vertu de la loi américaine sur les organisations influencées par des racketteurs et corrompues (« RICO Act ») et pour fraude et fraude implicite après avoir prétendument découvert que l'une des transactions dans lesquelles Petrobras exigeait des paiements de la part des entreprises impliquait un navire de forage SHI appelé DS-5, acquis par Petrobras dans le cadre d'un contrat de services de forage avec Pride.[2] Par le biais de l'action américaine, PAI exige le remboursement des montants payés pour le navire de forage DS-5, affirmant qu'elle n'a jamais eu besoin d'un navire de forage - pour lequel elle allègue, d'ailleurs, avoir reçu des conditions contractuelles défavorables - et ne l'aurait pas acheté n'eût été les paiements que certains cadres « voyous » ont exigés et reçus de SHI.

A son tour, SHI a déposé une demande reconventionnelle contre la demanderesse, sollicitant le paiement par celle-ci de 200 millions de dollars en dommages-intérêts que SHI avait payés à Ensco Global IV Ltd., le successeur de Pride en raison de l'implication de SHI dans le stratagème de Petrobras impliquant la transaction DS-5.

A tout moment pertinent au différend, M. Nuno Correia, ancien directeur du développement des affaires internationales de Pride, a été son négociateur principal dans les discussions avec Petrobras ayant abouti au contrat DS-5. M. Correia est donc un témoin de faits crucial. Dans sa divulgation initiale, la demanderesse a identifié M. Correia comme ayant des informations à

---

[2] « Pride » tel qu'utilisé ici fait référence à Pride International, Inc., ou à une ou plusieurs de ses filiales, selon le cas.

découvrir concernant les faits allégués dans la plainte de la demanderesse, les négociations contractuelles pour la construction du DS-5 et les négociations contractuelles pour le contrat de services de forage. De plus, dans un arbitrage connexe entre SHI et Ensco Global IV Ltd. (auparavant Pride Global Ltd.) M. Correia avait fait une déclaration de témoin de 61 pages, dans laquelle il décrit en détail sa participation aux négociations avec Petrobras concernant le navire de forage DS-5 lesquelles, selon Petrobras, ont abouti à un contrat qui lui a été défavorable. M. Correia a également décrit sa connaissance de la structure organisationnelle interne de Petrobras, des processus d'approbation et d'appel d'offres, entre autres sujets.

Ces informations sont essentielles pour les questions clés dans cette affaire. Bien que SHI ait une copie de la déclaration du témoin, ce témoignage n'est pas recevable dans l'action américaine car il est considéré comme du ouï-dire en vertu des règles fédérales de preuve des États-Unis d'Amérique. De plus, cette déclaration de témoin a été obtenue dans le cadre d'un arbitrage entre SHI et Ensco Global IV Ltd. auquel PAI n'était pas partie, et ne couvre donc pas l'ensemble des questions pertinentes en l'espèce. Par conséquent, une forme recevable du témoignage de M. Correia ne peut être acquise par d'autres moyens que par le biais d'une Commission rogatoire.

**6. Preuves à obtenir ou autre acte judiciaire à accomplir et leurs objets :**

**a. Acte judiciaire à accomplir et preuves à obtenir :**

Par la présente Commission rogatoire, ce Tribunal sollicite une ordonnance du Ministère français de la Justice approuvant la nomination par le Tribunal de M. Alexander Blumrosen du cabinet Polaris Law, 4 avenue Hoche, 75008, Paris, France, en tant que commissaire chargé de superviser l'obtention des preuves de M. Correia en vertu de l'article 17 de la Convention de La Haye et des conditions énoncées dans cette lettre de demande.

Les preuves à obtenir sous la supervision du commissaire sont le témoignage oral de M. Correia, à utiliser dans l'action américaine. Les parties ont convaincu le Tribunal que M. Correia, qui s'était engagé dans des négociations directes avec Petrobras et ses représentants au nom de Pride, est en possession unique d'éléments de preuve pertinents pour les allégations de la demanderesse dans l'action et les défenses de SHI à cet égard. L'annexe A énonce les sujets du témoignage oral demandé à M. Correia.

**b. Objet des preuves recherchées :**

Ce Tribunal a conclu que M. Correia dispose d'informations matérielles liées à l'action américaine et que justice ne peut être complètement rendue entre les parties sans la possibilité d'obtenir son témoignage. Pour au moins les raisons suivantes, M. Correia est en possession unique d'éléments de preuve critiques qui portent sur des éléments essentiels des réclamations de PAI et des défenses de SHI à ces réclamations, et la demande reconventionnelle de SHI :

*Premièrement,* les connaissances de M. Correia portent directement sur la question de savoir si les dommages allégués par PAI ont été causés par la conduite de SHI, un élément essentiel de chacune des réclamations de PAI dans l'action américaine. Étant donné que PAI soutient que les actions de SHI l'ont amenée à accepter un contrat défavorable pour un navire de forage dont elle n'avait pas besoin, PAI doit établir, entre autres, que sans les paiements que ses fonctionnaires ont exigés et reçus de SHI, elle n'aurait pas (i) conclu un contrat avec des conditions comme celles du contrat de services de forage, ou (ii) contracté pour un navire de forage. En tant que participant direct aux négociations de Pride avec Petrobras concernant le DS-5, M. Correia a connaissance directe des conditions du marché en vigueur à l'époque, et des communications de Petrobras concernant son besoin et les utilisations prévues du DS-5, entre autres choses. Cette connaissance est directement

pertinente pour prouver ou réfuter si les dommages allégués par PAI ont été causés par la conduite de SHI.

*En second lieu,* les connaissances de M. Correia sont pertinentes pour les questions de fait concernant la défense de SHI selon laquelle PAI n'a pas intenté l'action américaine dans le délai de prescription applicable de quatre ans. Étant donné que l'accumulation d'une réclamation civile RICO est retardée jusqu'à ce que le demandeur soit au courant, ou aurait dû être au courant, du préjudice, une question clé est de savoir à quel moment PAI a pris (ou aurait dû prendre) connaissance des conditions prétendument défavorables du contrat de services de forage ou leurs activités de corruption impliqués dans la transaction. En tant que participant clé dans les négociations avec Petrobras sur le DS-5, le témoignage de M. Correia portera directement sur ces questions.

**7. Identité et adresse de la personne à interroger :**

Nuno Correia
Adresse (à ajouter par l'avocat de SHI)

______________________________
______________________________
______________________________

**8. Questions à poser à la personne à interroger, ou énoncé de l'objet sur lequel elle doit être interrogée :**

Il est demandé que M. Correia soit interrogé par les avocats de SHI et les avocats de PAI en ce qui concerne les sujets énoncés à l'annexe A.

**9. Documents et autres biens à examiner :**

Aucune inspection des documents ou des biens n'est demandée.

**10. Toute exigence que la preuve soit donnée sous serment ou affirmation solennelle et tout formulaire spécial à utiliser :**

Ce Tribunal demande respectueusement que M. Correia témoigne sous serment ou affirmation solennelle, et qu'il soit dûment assermenté conformément aux procédures applicables en

France, que le témoignage soit transcrit par un sténographe judiciaire qualifié qui sera choisi par le représentant légal de SHI, et que qu'un enregistrement vidéo soit pris de la déposition.

**11. Méthodes spéciales ou procédure à suivre :**

Nous demandons respectueusement ce qui suit :

a. Que la déposition se réalise sans contrainte conformément à l'article 17 de la Convention de La Haye, avec M. Alexander Blumrosen du cabinet Polaris Law, 4 avenue Hoche, 75008, Paris, France présidant en tant que commissaire à titre neutre ;

b. Que les avocats américains et français de SHI soient autorisés à assister à la déposition et à procéder à la déposition (c'est-à-dire interroger le témoin sur les sujets énumérés à l'annexe A) pendant que le commissaire M. Blumrosen est présent dans un rôle de supervision ;

c. Que les avocats américains et français de PAI soient autorisés à assister à la déposition et (le cas échéant) à interroger le témoin sur les sujets énumérés à l'annexe A en présence du commissaire M. Blumrosen dans un rôle de supervision ;

d. Que M. Correia soit autorisé à être représenté lors de la déposition par son propre avocat, à ses propres frais, s'il le souhaite, et qu'il ne soit pas tenu de donner un témoignage privilégié contre la divulgation en vertu des lois des États-Unis ou France ;

e. Que la déposition soit prise en vertu des règles fédérales de procédure civile des États-Unis d'Amérique (« FRCP »), sauf dans la mesure où cette procédure est incompatible avec la loi française ;

f. Que les questions et le témoignage soient traduits en anglais, en français et dans la langue maternelle du témoin si cela est demandé et si différent de l'anglais ou du

français, et qu'un interprète soit autorisé à assister à la déposition afin de traduire les débats ;

g. Que le témoignage soit enregistré textuellement par des moyens sténographiques et vidéographiques en anglais, qu'un sténographe et un vidéaste soient autorisés à assister à la déposition afin d'enregistrer le témoignage, et que les représentants des parties reçoivent une copie de la transcription et de l'enregistrement ;

h. Que les parties soient autorisées à désigner certaines parties du témoignage comme confidentielles ou réservées aux avocats, conformément aux conditions régissant l'ordonnance de protection en place dans l'action américaine, dont une copie est jointe en annexe B ; et que ces désignations serviront à interdire la diffusion du témoignage désigné, sauf dans la mesure permise par l'ordonnance de protection ;

i. Que soient exclus de la déposition, si la loi française le permet, toutes personnes autres que le témoin, le commissaire, les avocats chargés de l'interrogatoire, les autres avocats des parties, les avocats du témoin, le sténographe, le vidéaste, et l'interprète pendant toute partie de l'interrogatoire des témoins concernant les matériaux couverts par l'ordonnance de protection ;

j. Que l'interrogatoire se déroule oralement ; et

k. Que la déposition soit autorisée à se poursuivre jusqu'à ce qu'elle soit terminée, mais ladite déposition ne doit pas dépasser un total de sept heures au dossier par partie, plus sept heures supplémentaires par partie pour tenir compte de la traduction si la déposition se déroule dans une langue autre que l'anglais.

**12. Demande de notification de l'heure et du lieu d'exécution de cette demande, ainsi que de l'identité et de l'adresse de toute personne à notifier :**

Il est demandé que la déposition se réalise dès que possible. En outre, il est demandé que la déposition ait lieu dans les bureaux de HMN Partners, 7 place d'Iéna, 75116, Paris, France, ou à un endroit convenu d'un commun accord entre les parties et le témoin ; et que le témoin et les conseils énumérés ci-dessous soient notifiés de la date, de l'heure et du lieu du dépôt dès que ceux-ci seront convenus d'un commun accord.

<u>Avocats de la Défenderesse</u> :
Christopher M. Odell
Ryan P. Hartman
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002
Courriel : Christopher.Odell@arnoldporter.com
Courriel : Ryan.Hartman@arnoldporter.com
Tel.: +1 713 576 2401

Soo-Mi Rhee
Daniel Bernstein
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Courriel : Soo-Mi.Rhee@arnoldporter.com
Courriel : Daniel.Bernstein@arnoldporter.com

Caroline Derache
HMN Partners
7, Place d'Ièna
75115, Paris, France
Courriel : CDerache@hmn-partners.com

<u>Avocats de la Demanderesse</u> :
Eric J. Cassidy
Curtis, Mallet-Prevost, Colt & Mosle LLP
2 Houston Center
909 Fannin Street, Suite 3800
Houston, Texas 77010
Courriel : ECassidy@curtis.com
Tel.: +1 832 331 6788

Jonathan J. Walsh
Robert García
Grace Condro
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178
Courriel : JWalsh@curtis.com
Courriel : Gcondro@curtis.com
Courriel : Rgarcia@curtis.com
Tel.: +1 212 696 6000

**13. Demande de présence ou de participation du personnel judiciaire de l'autorité requérante à l'exécution de la Commission rogatoire :**

Aucune présence du personnel judiciaire des États-Unis n'est requise.

**14. Spécification du privilège ou de l'obligation de refuser de témoigner en vertu de la loi des États-Unis :**

Le témoin ne peut refuser de témoigner que dans la mesure où il aurait le privilège, ou le devoir, de refuser de le faire en vertu des lois des États-Unis ou des lois françaises.

Les parties à l'action américaine ont convenu, et ce Tribunal ordonne, que tout matériel confidentiel produit ou divulgué par les parties ou des tiers sera gardé confidentiel, conformément à l'ordonnance conservatoire rendue dans l'affaire.

**15. Honoraires et frais :**

Les honoraires et frais encourus qui sont remboursables en vertu de l'article 14, deuxième alinéa, ou de l'article 26 de la Convention de La Haye sont à la charge de SHI.

**16. Spécification de la date à laquelle l'autorité requérante exige la réception de la réponse à la Commission rogatoire :**

L'autorité requérante demande que la déposition ait lieu dès que possible après que l'État requis a reçu la présente Commission rogatoire, afin qu'il y ait un délai suffisant avant le 31 décembre 2022, date de clôture de la découverte des faits dans cette affaire. Le traitement rapide de cette Commission rogatoire permettra aux parties et au témoin de convenir d'une date mutuellement

acceptable pour le témoignage et d'éviter de perturber les projets commerciaux ou personnels du témoin.

**17. Signature et sceau de l'autorité requérante :**

Ce Tribunal exprime son appréciation pour l'assistance et la courtoisie des tribunaux français dans cette affaire, et déclare sa disponibilité et volonté de les assister de la même manière en cas de besoin.

Signé ce 21st jour de September 2022.

Lee H. Rosenthal

M. le Juge Lee H. Rosenthal

Scea

UNITED STATES DISTRICT COURT * SOUTHERN DISTRICT OF TEXAS *

## Annexe A

## Sujets pour le témoignage oral de M. Nuno Correia

1. Education et formation de M. Correia, parcours professionnel, expérience et emploi actuel ;

2. Négociations relatives au DS-5, y compris la substance de ces négociations et tous les dirigeants ou employés de Petrobras qui y ont participé ou en ont eu connaissance ;

3. Communications avec Petrobras entre 2005 et 2008 concernant (a) le besoin et les utilisations prévues du DS-5, ou (b) les futures activités de forage prévues ;

4. Discussions entre Petrobras et d'autres sociétés concernant les contrats de forage de 2005 à 2016 ;

5. Procédures de Petrobras pour la négociation de contrats nationaux et internationaux ;

6. Dirigeants et employés de Petrobras tenus d'approuver les contrats relatifs au DS-5, y compris toute approbation par le conseil d'administration de Petrobras ;

7. Aspects économiques de la transaction DS-5, y compris le contrat de services de forage et ses avenants, et le contrat de construction du navire de forage ;

8. Le marché mondial de l'énergie de 2005 à 2016, y compris, mais sans s'y limiter, le prix du pétrole et la demande de forage ;

9. Déclaration de témoin de M. Correia du 26 mai 2017 ;

10. Déclaration de témoin de M. Correia du 3 novembre 2017 ;

11. Déclaration de témoin de M. Correia du 6 décembre 2017 ;

12. Résiliation par Petrobras du contrat de services de forage DS-5 ; et

13. Communications avec Samsung concernant le contrat de services de forage DS-5.

**Annexe B**

**Ordonnance de non-divulgation**

Tribunal de District des
Etats-Unis
District Sud du Texas
**SAISI**
18 juin 2019
David J. Bradley, Greffier

**AU TRIBUNAL DE DISTRICT DES ÉTATS-UNIS**
**POUR LE DISTRICT SUD DU TEXAS**
**DIVISION DE HOUSTON**

| | | |
|---|---|---|
| **PETROBRAS AMERICA, INC.,** | § | **Affaire No. 4 :19-cv-04140 (LHR)** |
| | § | |
| ***Demanderesse*** | § | |
| | § | |
| **Vs.** | § | |
| | § | |
| **SAMSUNG HEAVY INDUSTRIES CO., LTD.,** | § | |
| | § | |
| | § | |
| ***Défenderesse*** | § | |

**ORDONNANCE DE PROTECTION CONVENUE**

Ce Tribunal émet cette ordonnance de protection convenue pour faciliter la divulgation et la production de documents en vertu des règles fédérales de procédure civile. À moins qu'elle ne soit modifiée conformément aux conditions contenues ici, la présente ordonnance restera en vigueur pendant et après la conclusion de ce litige, comme décrit dans les présentes.

A l'appui de cette ordonnance, le Tribunal constate que :

1. La procédure dans le cadre de cette action peut impliquer la découverte et l'utilisation de documents, d'informations et d'autres éléments confidentiels, non publics et/ou exclusifs, commerciaux, d'emploi, fiscaux, financiers et personnellement identifiables (« informations confidentielles »), et les parties à cette action ont convenu de limiter la divulgation des informations confidentielles comme prévu dans les présentes ; et

2. Afin de protéger les intérêts respectifs des parties et de faciliter le déroulement de la divulgation et de la communication dans cette affaire, l'ordonnance suivante devrait émettre :

IL EST DONC ORDONNÉ QUE toute personne soumise à la présente ordonnance - y compris, sans s'y limiter, les parties à cette action, leurs représentants, agents, experts et consultants, tous les tiers fournissant une découverte dans cette action, et toutes les autres personnes intéressées avec un avis réel ou implicite de la présente ordonnance - respectera, sous peine d'outrage, les conditions suivantes :

1. Toute partie ou tiers à cette action (la « Partie Désignative ») aura le droit de désigner comme « Confidentiel » tout matériel, document, réponse de découverte, chose ou témoignage que la partie désignative croit, de bonne foi, contenir ou représentant des informations confidentielles personnelles, médicales, financières, exclusives, concurrentielles, commerciales ou autres que la partie désignative exigerait normalement que des tiers maintiennent confidentielles, à condition que ces documents n'aient pas été volontairement divulgués auparavant par la partie désignative à quiconque à l'exception de ceux qui sont à son emploi, ou de ceux qu'elle a retenus ou de ceux qui ont reçu ces documents conformément aux protections de la confidentialité. Cela inclut les informations fournies à la partie désignative par un client ou un autre tiers à condition qu'elles restent confidentielles.

2. Une partie désignative peut également désigner tout ou partie de tout matériel, document, réponse à la découverte, chose ou témoignage comme « pour les yeux de l'avocat uniquement ». Les documents désignés comme étant réservés aux yeux de l'avocat constituent des informations commerciales hautement sensibles et exclusives de la partie qui désigne.

3. Aucune information ne sera considérée comme confidentielle ou réservée aux yeux d'un avocat s'il s'agit d'informations :

a) étant dans le domaine public au moment de la divulgation, comme preuve par un document écrit ;

b) qui tombent dans le domaine public sans faute de l'autre partie, comme en témoigne un document écrit ;

c) dont la partie destinataire peut démontrer par un document écrit que l'information précise était en sa possession légitime au moment de la divulgation.

4. Sauf indication contraire ci-dessous, tous les éléments, documents, réponses de découverte, choses ou témoignages conçus par la partie productrice comme confidentiels ou réservés aux yeux d'un avocat, et qui sont divulgués ou produits aux avocats des autres parties à ce litige, ont droit à un traitement confidentiel tel qu'il y est décrit.

5. Une partie désignative désignera les documents comme « confidentiels » ou « réservés aux yeux de l'avocat » en plaçant le(s) mot(s) « confidentiel » ou « réservé aux yeux d'un avocat » sur chaque page des documents, ou autrement en faisant une déclaration écrite au moment de la divulgation.

6. Les informations divulguées lors (a) de la déposition d'une partie ou de l'un de ses dirigeants, administrateurs, employés, agents ou experts indépendants, actuels ou anciens, retenus par un avocat aux fins de ce litige, ou (b) de la déposition d'un non- partie (dont les informations se rapportent à une partie) peuvent être désignées par une partie désignative comme des informations confidentielles ou réservées aux yeux d'un avocat en versant dans le dossier, lors de la déposition, que le témoignage est confidentiel ou réservé aux yeux d'un avocat, et soumis aux dispositions de la présente ordonnance. La partie désignative a le droit d'exclure toutes les personnes, à l'exception du déposant, de son avocat, de l'avocat inscrit au dossier des parties nommées, du sténographe judiciaire et des personnes énumérées aux paragraphes 9 et/ou 10 ci-dessous, d'une partie de la déposition au Tribunal dans laquelle le témoin témoigne concernant des questions confidentielles ou réservées aux yeux d'un avocat. Dans le cas où le témoignage de déposition est désigné confidentiel ou réservé aux yeux d'un avocat, la transcription du témoignage doit être reliée dans un volume séparé, portant la

mention « Informations confidentielles régies par une ordonnance de protection » faite par le sténographe judiciaire.

7. Une partie, ou un tiers, peut également désigner les informations divulguées lors d'une déposition comme étant confidentielles ou réservées aux yeux d'un avocat en indiquant a toutes les parties par écrit, dans les quinze (15) jours suivant la réception de la transcription, les pages et les lignes spécifiques de la transcription qui doivent par la suite être traitées comme confidentielles ou réservées aux yeux d'un avocat. Les parties doivent joindre une copie de ces avis écrits au recto de la transcription et de chaque copie de celle-ci en leur possession, garde ou contrôle. Toutes les transcriptions de déposition seront traitées comme réservées aux yeux d'un avocat pendant une période de quinze (15) jours après la réception de la transcription.

8. Aucune personne soumise à la présente ordonnance, autre que la partie désignée, ne doit divulguer des documents confidentiels ou réservés aux yeux d'un avocat à qui que ce soit, sauf comme indiqué dans la présente ordonnance de protection convenue. Nul ne doit utiliser tout matériel désigné confidentiel ou réservé aux yeux d'un avocat à d'autres fins que d'aider à la préparation, au procès et à l'appel, le cas échéant, de cette action.

9. Sauf disposition contraire à la présente Ordonnance, le matériel désigné comme confidentiel et les informations qu'il contient ne doivent pas être fournis, montrés, mis à disposition ou communiqués de quelque manière que ce soit à des personnes ou entités, à l'exception des personnes qualifiées énumérées ci-dessous ;

a) les parties à cette action ;

b) l'avocat retenu spécifiquement pour cette action, y compris tout assistant para juridique, de bureau et autres employés par cet avocat et affectés à cette affaire ;

c) quant à tout document, son auteur, son destinataire, toute autre personne indiquée au recto du document comme ayant reçu une copie, et tout dépositaire des archives requis pour authentifier le document ;

d) tout témoin que l'avocat d'une partie estime de bonne foi pouvoir être appelé à témoigner au procès ou à déposer dans cette action, à condition que cette personne ait d'abord signé un accord de non-divulgation sous la forme jointe en pièce A aux présentes ;

e) toute personne retenue par une partie pour servir de témoin expert, ou autrement fournir des conseils spécialisés à un avocat dans le cadre de cette action, à condition que cette personne ait d'abord signé un accord de non-divulgation sous la forme jointe en pièce A aux présentes ;

f) les sténographes engagés pour transcrire les dépositions effectuées dans le cadre de cette action et tout service de copie externe sous contrat pour fournir un service de copie aux avocats de toute partie ;

g) le Tribunal et son personnel de soutien ;

h) l'avocat interne de toute partie ; et

i) toute personne désignée par une partie comme son représentant.

10. Le matériel et les informations étant désignés comme réservés aux yeux d'un avocat ne peuvent être partagés qu'avec les personnes qualifiées identifiées aux paragraphes 9 (b) à (h) ci-dessus et uniquement conformément aux restrictions énoncées dans ces paragraphes.

11. Les parties coopéreront de bonne foi s'il s'avérait nécessaire d'élargir la définition des personnes qualifiées. Dans le cas où une partie s'oppose au traitement par une autre partie d'une personne en tant que personne qualifiée, la partie qui s'y oppose peut contester le droit de l'autre partie de partager des informations confidentielles ou réservées aux yeux d'un avocat avec cette personne en déposant une requête appropriée auprès du tribunal. Avant de déposer une telle requête, la partie qui s'y oppose doit rencontrer et s'entretenir avec l'autre partie au sujet de la question, et les parties doivent de bonne foi tenter de résoudre le différend. Jusqu'à ce que le Tribunal ait résolu une telle requête, la personne en cause ne sera pas traitée comme une personne qualifiée.

12. Toute partie désignant une personne comme personne qualifiée a le devoir de s'assurer raisonnablement que cette personne respecte les termes de la présente ordonnance de protection convenue et sera responsable en cas de manquement à cette obligation pour le non-respect par cette personne des termes de la présente ordonnance.

13. Les copies d'informations réservées aux yeux d'un avocat et fournies à une partie destinataire doivent être conservées dans les bureaux du conseiller externe de cette partie. Tous les documents produits dans le cadre de ce litige, quelle que soit leur classification, qui sont fournis à des personnes qualifiées telles que définies au paragraphe 9, doivent être conservés uniquement dans les bureaux de cette personne qualifiée et seules des copies de travail peuvent en être faites. Des copies des documents produits en vertu de la présente ordonnance de protection peuvent être faites, ou des pièces peuvent être préparées par des services de copie indépendants, des imprimeurs ou des illustrateurs, aux fins de ce litige.

14. Toute partie s'opposant à la désignation de certains documents comme confidentiels ou réservés aux yeux d'un avocat peut contester cette désignation en déposant une requête appropriée auprès du Tribunal. Avant de déposer une telle requête, la partie qui s'oppose doit rencontrer et s'entretenir avec la partie désignative au sujet de la question, en informant la partie désignative de la contestation et en lui donnant la possibilité de répondre. Jusqu'à ce que le Tribunal ait résolu une telle requête, le matériel en question conservera sa désignation confidentielle ou réservée aux yeux d'un avocat et sera traité en conséquence. Le défaut d'une partie de contester une désignation à un moment donné n'empêche pas cette partie de contester la désignation ultérieurement.

15. Tous les documents confidentiels ou réservés aux yeux d'un avocat déposés auprès du Tribunal, et tous les actes de procédure, requêtes ou autres documents déposés auprès du Tribunal qui divulguent ces documents confidentiels ou réservés aux yeux d'un avocat doivent être déposés sous scellés auprès du greffier du Tribunal et conservés sous scellés jusqu'à nouvel ordonnance du

Tribunal. Les parties feront de leur mieux pour minimiser ce scellement. Dans tous les cas, toute partie déposant une requête ou tout autre document auprès du Tribunal sous scellés doit également déposer publiquement une copie expurgée de celle-ci, via le système de classement électronique des affaires du Tribunal, qui expurge uniquement le matériel confidentiel ou réservée aux yeux d'un avocat. La partie qui a initialement désigné les matériaux confidentiel ou réservés aux yeux d'un avocat aura la charge d'établir la nécessité de sceller les matériaux. Le défaut de porter cette charge ou de s'assurer que les documents restent scellés relève de la seule responsabilité de la partie désignative.

16. Dans la mesure où des documents ou des informations confidentiels ou réservés aux yeux d'un avocat sont utilisés dans des dépositions, lors d'audiences ou lors d'un procès, ces documents ou informations resteront soumis aux dispositions de la présente ordonnance, ainsi que les pages de transcription du témoignage de déposition et/ou un témoignage au procès faisant référence aux documents ou informations confidentiels ou réservés aux yeux d'un avocat.

17. Dans le cas où une partie recevrait une assignation à comparaître ou une demande similaire exigeant la production de matériel ou d'informations qui ont été déclarés confidentiels ou réservés aux yeux d'un avocat en vertu de la présente ordonnance de protection convenue, cette partie en avisera immédiatement la partie désignative pour lui donner la possibilité d'interposer et défendre toute objection à la production d'information confidentielle ou réservée aux yeux d'un avocat.

18. Sous réserve des règles fédérales de preuves, les documents ou informations désignés confidentiels ou réservés aux yeux d'un avocat peuvent être présentés en preuve lors de toute audience du tribunal, à condition que le promoteur de la preuve en avise les avocats de toutes les autres parties avant le début de l'audience. Sous réserve des règles fédérales de preuves, les documents ou informations désignés confidentiels ou réservés aux yeux d'un avocat peuvent être présentés en preuve au procès à condition que le promoteur de la preuve donne un préavis de cinq

(5) jours ouvrables aux avocats de toutes les autres parties. L'inclusion sur la liste des pièces à conviction du soumissionnaire avec une mention indiquant que la pièce à conviction proposée contient des informations désignées confidentielles ou réservées aux yeux d'un avocat constitue un avis suffisant. Toute partie peut demander au Tribunal d'ordonner que ces preuves soient reçues à huis clos ou dans des conditions nécessaires pour empêcher et/ou limiter leur divulgation.

19. Toute personne ayant accès au matériel confidentiel ou réservé aux yeux d'un avocat doit prendre toutes les précautions nécessaires pour empêcher sa divulgation non autorisée ou par inadvertance.

20. La production par inadvertance ou involontaire de documents ou d'informations contenant information confidentielle, qui ne sont pas désignées confidentiels ou réservés aux yeux d'un avocat, ne sera pas considérée comme une renonciation totale ou partielle à une demande de traitement confidentiel ou réservée aux yeux d'un avocat. Une partie, ou un tiers, peut désigner des documents précédemment produits comme confidentiels ou réservés aux yeux d'un avocat qui n'avaient pas été désignés confidentiels initialement par notification écrite à l'avocat inscrit au dossier de la ou des parties destinataires. La partie désignative fournira des copies du matériel marqué confidentiel ou réservé aux yeux d'un avocat.

21. La divulgation accidentelle, ou non intentionnelle, d'information faisant l'objet d'une revendication de confidentialité légalement reconnue, y compris, sans s'y limiter, le secret professionnel de l'avocat et la protection du produit du travail de l'avocat ne constitue pas ou ne doit pas être considérée comme une divulgation volontaire de ces informations, ou une renonciation, ou la confiscation de tout revendication de confidentialité, de protection de la preuve ou de toute autre protection concernant les informations et leur objet, et n'entraînera aucune renonciation, y compris une renonciation à l'objet, de quelque nature que ce soit.

22. Si, au cours de cette action, une partie, ou un tiers, détermine qu'un document produit par une autre partie peut raisonnablement être soumis à une confidentialité légalement reconnaissable ou à la protection de la preuve (« Document Protégé ») :

a) la partie destinataire doit (A) s'abstenir de lire le document protégé plus attentivement qu'il n'est nécessaire pour s'assurer qu'il est confidentiel ou autrement protégé contre la divulgation ; (B) notifier immédiatement par écrit à la partie productrice qu'elle a découvert des documents considérés comme confidentiels ou protégés ; (C) identifier spécifiquement les documents protégés la plage Bates de numéros ou la valeur de hachage ; et (D) dans les dix (10) jours suivant la découverte par la partie destinataire, restituer, mettre sous séquestre ou détruire toutes les copies de ces documents protégés, ainsi que toutes les notes, résumés ou compilations de leur contenu. Dans la mesure où un document protégé a été chargé dans une base de données d'examen des litiges sous le contrôle de la partie destinataire, cette partie destinataire doit faire extraire toutes les copies électroniques du document protégé de la base de données. Lorsque ces documents protégés ne peuvent pas être détruits ou séparés, ils ne doivent pas être examinés, divulgués ou autrement utilisés par la partie destinataire. Nonobstant les obligations qui surviennent si une partie destinataire détermine qu'un document produit par une autre partie ou un tiers est, ou peut raisonnablement être soumis à une confidentialité juridiquement reconnaissable, ou à une protection de la preuve, la partie destinataire n'est pas tenue de rechercher ou d'examiner les documents de la partie productrice pour identifier les documents protégés potentiellement confidentiels.

b) Si la partie productrice a l'intention de revendiquer la confidentialité ou autre protection sur des documents identifiés par la partie destinataire comme des documents protégés, la partie productrice devra, dans les dix (10) jours suivant la réception de notification écrite de la partie destinataire décrite ci-dessus, informer la partie

par écrit de cette intention et fournir un journal de ces documents protégés conforme aux exigences des règles fédérales de procédure civile, énonçant le fondement de la revendication de la confidentialité ou de toute autre protection. Dans le cas où une partie d'un document protégé ne contient pas d'information privilégiée ou protégée, la partie productrice doit également fournir à la partie destinataire une copie expurgée du document, où l'information que la partie productrice estime faire l'objet d'une revendication de la confidentialité ou autre protection sera omise.

23. Si, au cours de ce litige, une partie ou un tiers détermine qu'elle a produit un document protégé :

a) La partie productrice pourra notifier par écrit à la partie destinataire de telle production par inadvertance et exiger la restitution de ces documents. Cet avis doit être écrit ; cependant, il peut être prononcé oralement sur dossier lors d'une déposition, suivi rapidement par écrit. L'avis écrit de la partie productrice identifiera le document protégé produit par inadvertance par la plage Bates de numéros ou valeur de hachage, la confidentialité ou la protection revendiquée et la base de l'affirmation de confidentialité, et fournira à la partie destinataire un journal pour ces documents protégés conformément aux exigences des règles fédérales de procédure civile, énonçant le fondement de la réclamation ou du privilège ou de toute autre protection. Dans le cas où une partie du document protégé ne contient pas d'information confidentielle ou protégée, la partie productrice doit également fournir à la partie destinataire une copie expurgée du document, où l'information que la partie productrice estime faire l'objet d'une revendication de la confidentialité ou autre protection sera omise.

b) La partie destinataire doit, dans les dix (10) jours suivant la réception de la notification écrite de la partie productrice décrite ci-dessus, retourner, mettre

sous séquestre ou détruire le document protégé et toute copie, ainsi que toutes notes, résumés ou compilations du contenu de celui-ci. Dans la mesure où un document protégé a été chargé dans une base de données d'examen des litiges sous le contrôle de la partie destinataire, la partie destinataire doit faire extraire toutes les copies électroniques du document protégé de la base de données.

24. Dans la mesure où les informations contenues dans un document protégé ont déjà été utilisées ou décrites dans d'autres documents générés ou conservés par la partie destinataire avant la date de réception de l'avis écrit par la partie productrice, comme indiqué aux paragraphes 22(b) et 23(a), la partie réceptrice doit mettre ces documents sous séquestre jusqu'à ce que la réclamation ait été résolue. Si la partie destinataire a divulgué le document protégé avant d'être avisée de sa production par inadvertance, elle doit prendre des mesures raisonnables pour le récupérer.

25. Le retour, la mise sous séquestre ou la destruction par la partie réceptrice de documents protégés, comme prévu dans les présentes, ne constituera pas une renonciation au droit de la partie réceptrice de se déplacer pour la production des documents retournés, mis sous séquestre ou détruits au motif que les documents ne sont pas, en fait, sous réserve d'une revendication viable de privilège de protection. Toutefois, il est interdit et forclos à la partie destinataire de faire valoir que :

a) la divulgation ou la production des documents protégés agit comme une renonciation à un privilège applicable ou à la protection de la preuve ;

b) la divulgation des documents protégés n'a pas été faite par inadvertance ;

c) la partie productrice n'a pas pris de mesures raisonnables pour empêcher la divulgation des documents protégés ; ou

d) la partie productrice n'a pas pris de mesures raisonnables ou dans les délais pour rectifier l'erreur.

26. L'une ou l'autre des parties peut soumettre des documents protégés sous sceau au Tribunal pour une décision sur la revendication de la confidentialité ou autre protection. La partie

productrice conservera les documents protégés jusqu'à ce que cette réclamation soit résolue. La partie destinataire ne peut utiliser les documents protégés à aucune fin en l'absence de l'ordonnance du Tribunal.

27. Une fois que le tribunal a déterminé que les documents protégés sont protégés par la confidentialité ou la protection de la preuve applicable, et si ces documents ont été mis sous séquestre plutôt que restitués ou détruits par la partie destinataire, ils doivent être restitués ou détruits dans les dix (10) jours suivant l'ordonnance du Tribunal. Le tribunal peut également ordonner l'identification par la partie destinataire des documents protégés par des termes de recherche ou d'autres moyens.

28. Rien dans les présentes n'est destiné, ou ne servira à limiter le droit d'une partie de procéder à un examen des documents, des données (y compris les informations stockées électroniquement) et d'autres informations, y compris, sans s'y limiter, les métadonnées, pour la pertinence, la réactivité et/ou la ségrégation d'informations privilégiées et/ou protégées avant que ces informations ne soient communiquées à une autre partie.

29. La présente ordonnance de protection convenue survivra à la fin du litige. Dans les trente (30) jours suivant la décision finale de cette action, tout matériel confidentiel et réservé aux yeux d'un avocat, et toute copie de celui-ci, doit, sur demande, être rapidement retourné à la personne productrice ou, avec l'autorisation de la personne productrice, être détruit dans la mesure raisonnable possible en tenant compte des systèmes de sauvegarde et des protocoles de conservation ; sauf que les avocats recevant du matériel confidentiel et réservée aux yeux d'un avocat peuvent conserver les actes de procédure, les transcriptions, les pièces et le produit du travail faisant référence ou liés à tout matériel confidentiel et réservée aux yeux d'un avocat, sous réserve des obligations imposées par la présente ordonnance de protection, qui restera en vigueur et engageante pour tous les documents ou informations confidentiels et réservés aux yeux d'un avocat.

30. Après la fin de ce litige, les dispositions de la présente ordonnance continueront d'être engageantes, sauf en ce qui concerne les documents et les informations qui deviennent du domaine public. Ce tribunal conserve sa compétence sur les parties et les destinataires des documents protégés pour l'application des dispositions de la présente ordonnance après la fin de ce litige.

31. La présente ordonnance lie les parties et leurs mandataires, successeurs, exécuteurs testamentaires, représentants personnels, administrateurs, héritiers, représentants légaux, ayants droit, filiales, divisions, employés, agents, entrepreneurs indépendants ou autres personnes ou organisations sur lesquelles ils ont contrôle.

SIGNE le 17 juin 2019.

[*Signé*]

Lee H. Rosenthal
Juge, Tribunal de District des Etats-Unis

| | | |
|---|---|---|
| **PETROBRAS AMERICA, INC.,** | § | **Affaire No. 4 :19-cv-04140 (LHR)** |
| | § | |
| *Demanderesse* | § | **Accord de non-divulgation** |
| | § | |
| **Vs.** | § | |
| | § | |
| **SAMSUNG HEAVY INDUSTRIES CO., LTD.,** | § | |
| | § | |
| | § | |
| *Défenderesse* | § | |

Je, __________________, reconnais avoir lu et compris l'ordonnance de protection convenue dans cette action régissant la non-divulgation des matériaux conçus comme confidentiels ou réservés aux yeux d'un avocat. J'accepte de ne pas divulguer de matériel confidentiel ou réservée aux yeux d'un avocat à qui que ce soit, sauf aux fins de ce litige conformément aux termes de l'ordonnance de protection convenue, et qu'à la fin du litige je rendrai à la partie, ou à l'avocat de qui je l'ai reçu, toutes information de découverte dans les quinze (15) jours. En reconnaissant ces obligations en vertu de l'ordonnance de protection convenue, je comprends que je me soumets à la juridiction du Tribunal de District des États-Unis pour le District Sud du Texas aux fins de tout problème ou litige découlant des présentes, et que ma violation délibérée de tout terme de l'ordonnance de protection agréée pourrait me soumettre à une peine pour outrage au tribunal.

________________________
Signature

________________________
Date

# CERTIFICATION

I, Aura M. Colmanni, hereby certify under penalty of perjury that I hold a Master's Degree in Translation from Sorbonne University (E.S.I.T.), Paris France; that I am competent to translate from English into French; and that my translation of the Letter of Request document is true and accurate to the best of my abilities.



AURA M. COLMANNI - Translator

601 Massachusetts Avenue, NW
Washington, DC 20001

September 8, 2022