IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PETROBRAS AMERICA, INC., Plaintiff, | |
| VS. | CIVIL ACTION NO. 4:19-CV-1410 |
| SAMSUNG HEAVY INDUSTRIES CO., LTD., Defendant. | 1:08 P.M. |

**REDACTED**
MOTION HEARING
BEFORE THE HONORABLE LEE H. ROSENTHAL
UNITED STATES DISTRICT JUDGE
JULY 24, 2023

APPEARANCES:

**FOR PLAINTIFF:**
MR. JONATHAN J. WALSH
MR. ROBERT B. GARCIA
MS. GRACE E. CONDRO
MR. FELIX GILMAN
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178
(212)696-6000

MR. ERIC J. CASSIDY
Curtis, Mallet-Prevost, Colt & Mosle LLP
2 Houston Center
909 Fannin Street, Suite 3800
Houston, Texas 77010
(832)331-6778

**FOR DEFENDANT:**
MR. CHRISTOPHER MOHR ODELL
MR. RYAN P. HARTMAN
MR. JOSHUA W. MCCOLLUM
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002
(713)576-2401

APPEARANCES CONTINUED:

**ALSO PRESENT:**
MS. CATHERINE HODGES

**COURT REPORTER:**
Heather Alcaraz, CSR, FCRR, RMR
Official Court Reporter
515 Rusk, Suite 8004
Houston, Texas 77002
(713)250-5584

Proceedings recorded by mechanical stenography, transcript produced by computer.

PROCEEDINGS

13:08:16 **THE COURT:** Good afternoon.

13:08:19 Go ahead and state your appearances. Then you can all be seated.

13:08:23 **MR. WALSH:** Good afternoon, Your Honor. Jonathan Walsh for Petrobras America. With me are Robert Garcia, Grace Condro, Felix Gilman, and Eric Cassidy.

13:08:35 **THE COURT:** Okay. Thank you.

13:08:38 **MR. ODELL:** Good afternoon, Your Honor. For defendant/counterclaimant Samsung Heavy Industries, Christopher Odell. With me are my partner, Ryan Hartman; our associate, Joshua McCollum; and our senior paralegal, Catherine Hodges.

13:08:54 **THE COURT:** Thank you very much. You may all be seated.

13:08:56 Who's going to argue?

13:08:59 **MR. WALSH:** Your Honor, if it is okay with the Court, we thought we'd deal with the privilege issue because it was fairly discrete. Ms. Condro can start with that.

13:09:08 **THE COURT:** All right. Tell me the connection between the privilege issue and the merits.

13:09:12 **MR. WALSH:** To be honest, I don't see one. It was Samsung's motion to --

13:09:14 **THE COURT:** I'm sorry?

13:09:16 **MR. WALSH:** I don't see the connection. Perhaps Samsung could elucidate us on that. It seems the e-mail isn't

really relevant to anything in this case.

13:09:24 **MR. ODELL:** Mr. McCollum is going to argue the privilege issue for us.

13:09:26 **THE COURT:** Well, I first want to know why it matters to the summary judgment motions.

13:09:33 **MR. MCCOLLUM:** Your Honor, the --

13:09:33 **THE COURT:** And if it doesn't, let's go to the summary judgment motions. If it matters for settlement posturing, then let's go to the summary judgment motions, and then talk about whether there are benefits to further discussion depending on what happens.

13:09:52 **MR. MCCOLLUM:** Your Honor, the document isn't in the summary judgment record. So I don't think it -- it's dispositive for the summary judgment motion.

13:09:58 **THE COURT:** Okay. Let's go to what matters most.

13:10:04 **MR. ODELL:** And, Your Honor, before we began today, Mr. Walsh and I were talking and thought that it might make sense -- although, obviously, your input is dispositive here -- if we were to tackle the RICO issue first --

13:10:16 **THE COURT:** I agree.

13:10:17 **MR. ODELL:** -- and then the counterclaim.

13:10:19 **THE COURT:** I agree.

13:10:20 **MR. ODELL:** Then that's what we'll do.

13:10:21 **THE COURT:** Good. So let me start by telling you that I think the RICO issue is a real stretch, the claim. Tell me

why I'm wrong.

13:10:30 **MR. WALSH:** Well, Your Honor, I have a couple of handouts, if I could just pass those up.

13:10:33 **THE COURT:** All right.

13:10:34 **MR. WALSH:** Very short handouts.

13:10:36 **THE COURT:** Hand them to my clerk, please.

13:10:38 *(Document handed to the Court.)*

13:10:49 **MR. WALSH:** Your Honor, I'm happy to start with any particular issue that gives the Court concern on the RICO claim. In my view, the proximate cause issue seems to be the one that dominated the papers.

13:11:00 **THE COURT:** Yep.

13:11:01 **MR. WALSH:** Let me explain why proximate cause exists here. The dispositive case on this is the case called *Holmes* --

13:11:08 **THE COURT:** By "proximate cause," do you mean the same thing as direct relationship?

13:11:12 **MR. WALSH:** Direct relationship test. That's exactly where I was going, Your Honor.

13:11:14 The *Holmes* case set out the direct relation test, and it looks at three factors. And in the PowerPoint, we've provided those three factors.

13:11:23 First, is there a direct -- a more direct victim of the alleged misconduct who can be counted on to vindicate the law? Your Honor, in this case there is no more direct victim than Petrobras America. Petrobras America was the party that

paid the drilling services fees under the fraudulently procured contract; paid over $600 million to Pride. Unbeknownst to Petrobras America, the officials at the parent entity, PBSA -- and just for the -- Your Honor's reference, there are a number of Petrobras entities. When I refer to PBSA, I'm referring to Petrobras SA. When I'm referring to Petrobras America, it's the plaintiff, obviously.

13:12:06 **THE COURT:** You know what? I really hate acronyms.

13:12:09 **MR. WALSH:** So I'll avoid them.

13:12:10 **THE COURT:** Just avoid them. And even --

13:12:11 **MR. WALSH:** So Petrobras --

13:12:11 **THE COURT:** -- if it takes a few extra breaths and a few extra pages, use the whole names --

13:12:17 **MR. WALSH:** Fair point, Your Honor.

13:12:18 **THE COURT:** Enough of the whole names to make clear which one you're referring to.

13:12:21 **MR. WALSH:** Understood.

13:12:22 The other Petrobras entity that's relevant here is Petrobras International, Braspetro. If it's okay with Your Honor, I'll refer to that as Braspetro.

13:12:30 **THE COURT:** Why don't you refer to it as Petrobras International.

13:12:34 **MR. WALSH:** Fair enough.

13:12:34 Petro- --

13:12:34 **THE COURT:** It's hard enough to keep up with the

arguments and the personalities.

**MR. WALSH:** Understood.

Petrobras International, Your Honor, is the party to the drilling services contract. In 2011, when it realized that there was no work in Angola, the original location for this drillship, it assigned the contract to the only entity that was able to use it in a cost-effective way, Petrobras America.

The parties all understood that this contract was going to be assigned. In the depositions and in the declaration that we submitted, it's clear that Bras- -- Petrobras International --

**THE COURT:** Thank you.

**MR. WALSH:** -- does not operate drilling contracts. They're assigned to subsidiaries, such as Petrobras America.

The contract was assigned --

**THE COURT:** Are these wholly owned, or does it matter?

**MR. WALSH:** They are wholly owned.

**THE COURT:** Okay.

**MR. WALSH:** So Petrobras SA is the ultimate parent, wholly owns Petrobras International, which wholly owns Petrobras America. So there was no surprise when, in 2011, the parties agreed to assign the contract to Petrobras America. In fact, the contract itself had an assignment provision, which said if the contract was assigned to a subsidiary, there was no need for the counterparty, Pride.

13:13:43 And, Your Honor -- for Your Honor's benefit, Pride later changed its name to Ensco, but I'll refer to it as Pride.

13:13:51 **THE COURT:** Pride.

13:13:52 **MR. WALSH:** Pride did not have to give consent in order for that assignment to occur. So, again, there was no -- there was no, basically, intervening event, which is what Samsung seems to hang its hat on. It was a direct relationship because the contract was signed by Braspetro, who was always going to assign it to Petrobras America, who paid the drilling services fees for four years.

13:14:15 There are three factors in the *Holmes* status which we've highlighted in our papers. The first, as I mentioned: Is there any more direct victim? There really isn't. It's Petrobras America. They're the party that paid hundreds of millions for a contract it didn't need.

13:14:33 Next, the Court asked: Is it difficult to ascertain the amount of damages? Here, again, it is not. Only one party paid the fees under the drilling services contract, Petrobras America.

13:14:44 Now, there's a reimbursement provision that appears years later in the third and fourth amendments. This reimbursement provision provides that Petrobras International will reimburse Petrobras America for certain fees. That is not an issue on liability, Your Honor, that's an issue on damages. We think the collateral source rule applies. So the

13:15:09 reimbursement is irrelevant.

Again, it's not difficult to ascertain the damages here. It's the 600 million that was paid for a contract that they didn't need.

13:15:17 Finally, the court, in *Holmes*, asks whether courts will have to adopt complicated rules to apportion damages. Here again, there are no complicated rules. There's only one party that paid the contract fees. They've cited a number of cases where there is a pass-through. For example, the third-party payor cases where the patient is the one that paid the fees, but there's a third-party payor who, ultimately, was reliable for it, and the courts found that there's no proximate cause. That's not this case. There was only one party.

13:15:50 There's nothing between the contract's obligation to pay and the damages, the RICO violation. Similarly, the cases about competitors are not relevant here, Your Honor. *Anza's* not relevant. This is not a case where a competitor has basically avoided paying taxes or avoided providing accurate information to a tax authority. That's not this case.

13:16:14 This is more similar to the *Bridge* case, which we've highlighted in our papers and is a dispositive case on proximate cause. Your Honor may be familiar with this case. It is a case where there are competitors -- sorry. There are multiple bidders in an auction, and the defendant was basically submitting multiple bids fraudulently. The Supreme Court said

in that case that there was a direct relationship between the RICO violation and the injury, which is the inability to win those auctions.

13:16:42 So, again, we think this case is more similar to *Bridge* than the other cases.

13:16:49 I want to address the -- Your Honor, did you have a question?

13:16:56 **THE COURT:** Tell me where in the record the best facts are to support a finding of direct harm.

13:17:02 **MR. WALSH:** Exactly where I was headed. Our witness, Pedro Albuquerque --

13:17:08 **THE COURT:** Say it again.

13:17:10 **MR. WALSH:** Pedro Albuquerque submitted a declaration in connection with our summary judgment paper -- motions. Mr. Albuquerque is the person most knowledgeable about the rig assignments and, specifically, the assignment to Petrobras America. He testified, in his affidavit, that Braspetro was never going to operate this rig. It was always the intention of Petrobras SA, the parent entity who controls the businesses of these other subsidiaries, to assign this drillship to another entity, and that Petrobras America was the entity best situated to take on this contract.

13:17:50 Now, they've cited Mr. Albuquerque's testimony about an independent decision. We think they've cherry-picked that testimony because they never really asked him the question about

this assignment: Why did Petrobras America accept this assignment? What Mr. Albuquerque says in his declaration is it had no -- it had no way of rejecting it.

13:18:11 It was a parent entity; parent entity decides where the drillships will be assigned. Petrobras America is a wholly-owned subsidiary; had to take this drillship and had to make the best use of it.

13:18:22 Now, they even concede, in their reply papers, that Mr. Albuquerque's language is entirely consistent with the standard role that a parent company plays vis-a-vis its subsidiary. This is how major oil companies, like Petrobras, like Exxon, like Shell, deal with drilling rigs that are going to be located in various jurisdictions around the world.

13:18:47 **THE COURT:** So your argument of industry custom or routine or practice avoids the necessity of veil piercing. Is that where you're going?

13:18:57 **MR. WALSH:** Correct. There's no need to pierce the veil. This is a very straightforward case of -- of a corporate family where the parent is deciding where the rig is best situated.

13:19:09 The testimony in the case and the expert reports have dealt with the various locations that this rig was going to be located, originally, in Angola. If it was assigned to Angola, it would have been assigned to a Petrobras entity with the authority to operate in Angola. As you can imagine, there are

tax and regulatory issues in each jurisdiction.

Braspetro, as a Netherlands entity, could not necessarily operate a drillship in Angola. When Angola was no longer a viable location for drilling, Petrobras SA, in conjunction with Braspetro, made the decision to move the rig to the Gulf of Mexico. Again, Braspetro could not operate this drillship in the Gulf of Mexico.

The entity with the authority, permitting, regulatory approvals is Petrobras America. Petrobras America had other rigs already operating in the Gulf of Mexico and was the best situated to operate this rig.

Now, Mr. Albuquerque was consistent through his testimony and in his declaration. He explained how the executive board made the decision about assignments. The executive board, basically, is the one that decides where a rig is going to go. The only time that a board approval is needed to, basically, change that is if the price changes. That's not what happened here.

Pride's contract remained the same: $500,000 a day no matter where it was assigned. So when the rig was not -- when the rig was delivered in 2011, the best place to locate it was the Gulf of Mexico, and the executive director made that decision on his own.

Now, they have a ratification argument that I think is distracting, Your Honor. I don't think it relates to proximate

cause at all. I'm happy to address it, if Your Honor has questions.

13:21:01 This is not a ratification case. It's not a breach of contract case. It is, basically, a case where the Court has to look at is there a direct relationship between the RICO violation and the injury, and here there is a direct relationship.

13:21:16 And they concede but-for causation, Your Honor, page 10 of their brief.

13:21:21 **THE COURT:** So is but-for the same as direct cause?

13:21:23 **MR. WALSH:** No. They are legally distinct.

13:21:26 **THE COURT:** Yeah. So how many direct causes can there be, one; and, two, are there here?

13:21:34 **MR. WALSH:** There can be multiple causes. In this case --

13:21:36 **THE COURT:** Direct causes?

13:21:37 **MR. WALSH:** Direct causes.

13:21:37 **THE COURT:** Okay.

13:21:38 **MR. WALSH:** There could be, but here there's only one. That's the bribery scheme. It's very straightforward. The witnesses have said this. Samsung has conceded it. They've conceded it in the -- the deferred prosecution agreement, [redacted]

13:21:53 If they had not bribed these officials, Petrobras SA

would not have taken this contract, and it's clear. They've conceded it in the -- in what they've said to the government. So that's the but-for. There's no dispute that there's but-for. How is but-for different?

13:22:08 But-for looks at basically, as a factual matter, would the contract have been signed but for the bribery? The answer is of course. It would only have been signed but -- it would not have been signed but for the bribery. Proximate cause is a legal doctrine, right, that looks at, basically, as the Supreme Court says, is it appropriate to hold this defendant liable for the consequences of his act? And, therefore, they look at, basically, the relationship between the violation and the injury. Again, we see a direct connection.

13:22:38 They signed the contract in 2008. It takes three years to build, which, by the way, is not intervened. Obviously, it takes time to build a drillship like this. In 2011, there's no need for the drillship. So the wholly owned -- sorry, the parent of the wholly-owned entity basically delegates the ship to a subsidiary, which is best positioned.

13:22:57 Everyone knew that this rig was going to be assigned somewhere. It ended up being assigned to Petrobras America. It was a natural consequence of, basically, the fraudulent procurement of this contract that it would end up in someone's hands and, here, it was Petrobras America.

13:23:11 **THE COURT:** What about the foreseeability of the

damages to the extent it's tied to demand and the fluctuations in the market price? We're really talking about who's assuming that risk.

13:23:25 **MR. WALSH:** Right. And here Petrobras assumed a five-year contract. So they assumed the risk of, basically, market fluctuations. Again, they've cited cases about stock sales and, you know, fluctuation in the stock market. That's not this. This is a long-term contract for a drillship at $500,000 a day.

13:23:41 The evidence that, basically, it was not needed is that it was immediately assigned. Two years later -- or less than two years later, it was assigned to Murphy, and then Repsol, and then, finally, put on standby. Petrobras America, when it took this contract at the direction of its parents, took on the risk that the market would crash. It did crash.

13:24:01 Likewise, the market could have gone up. Who knows what the price of oil is, right?

13:24:04 **THE COURT:** Exactly my point.

13:24:05 **MR. WALSH:** I think everyone here will concede the price of oil is difficult to predict. The fact that there is a foreseeable risk of market fluctuation shouldn't impact the proximate cause issue. In this -- the *Hemi* case, which is the Supreme Court case on proximate cause, they basically acknowledge that foreseeability is not part of this analysis.

13:24:23 It goes back to the *Holmes* test. Do you look at

the -- basically, this plaintiff as the most direct plaintiff to vindicate the rights as a private attorney general? Two, is it easy for the Court to ascertain the damages? Yes, of course. It's the entire amount paid under the DSC. Three, are there any difficult rules that have to be applied to apportion damages? No, it's very straightforward.

13:24:45 If you look at the direct relationship test in *Holmes* -- and we've put that in our presentation -- Samsung can't deny that the answers to each of these questions go -- go into Petrobras America's favor. There is a direct connection between the RICO violation and the harm in this case.

13:25:00 **THE COURT:** So let's talk about when Petrobras America first knew of the problem.

13:25:10 **MR. WALSH:** That will become an issue in the counterclaim, but I'm happy to address it here as well. They've a statute of limitations event, which is kind of inconsistent with what they said on the counterclaim.

13:25:19 So as we pled and, I think, as discovery has demonstrated, no one knew that Pride was involved in a fraudulent transaction until October of 2014 -- 2015, rather. So just -- and, again, we have a timeline in our presentation, which you're more than welcome to refer to, Your Honor.

13:25:36 There's an audit in March of 2015. At this time, the only thing Petrobras SA knows is that they have three ships on standby. The Petrobras 10000, another drillship that was

fraudulently procured; the Vitoria 10000, another ship that Samsung bribed officials to accept; and our drillship, the DS-5. They don't know why the ships are on standby. They don't know why these ships have not, basically, been supported and have the necessary drilling requirements that they need.

13:26:07 When they dig into the file, they realize that there was a study done at the time of each of these drillships, and it was repeatedly used over and over again and never updated, and our expert gets into this. Their expert doesn't even address this study, but the study basically says this was 30 percent likelihood of success, which is unprecedented in this field. A 30 percent likelihood of success just isn't going to happen.

13:26:31 **THE COURT:** What's the minimum usually required?

13:26:33 **MR. WALSH:** Our expert would say anywhere between 5 and 15 percent depending on where you're drilling, obviously. If you're drilling in a very developed area, there's probably higher likelihood, but we're looking now across all of their -- all of their portfolio, not just one area. So -- and they already know that Angola has been a tremendous failure. They've had no success in Angola. There's also a presumption that they're going to require two blocks a year.

13:26:57 They know, by the time that the DS-5 is approved, that that hasn't happened. They have not acquired two blocks in the last three years.

13:27:04 The study is basically inconclusive and insufficient

to support a third drillship after they've already acquired two. So there's no question that at the time that the audit was done, there was a problem. Basically, a commercial problem. This was a bad contract.

13:27:21 When the audit is finished, the audit confirms that the -- the contract was not supported by technical data. It also questions the way that the contract was procured; that Mr. Cervero was the only one, basically, negotiating the contract; and there's a recommendation, at least with respect to V10 -- Vitoria 10000 and Petrobras 10000, the audit report be provided to the prosecutors.

13:27:45 At that point, it's silence. It's only until October of 2015 that Petrobras receives the indictment of Hamylton Padilha, who is the broker who is in the middle of all this. Hamylton Padilha says that he was the facilitator of the bribes from Samsung to Cervero and Duque, the two officials at Petrobras SA. That's the first indication -- clear indication that this -- this contract is a fraudulent contract.

13:28:14 And I want to highlight one difference in this contract between the other two. Pride is the counterparty here, and no one believes that Pride -- there were suspicions, obviously. No one believes that Pride, in fact, knew about the fraud scheme.

13:28:29 [redacted]

[redacted]

13:28:48 So I mentioned the counterclaim. They've changed their position on the counterclaim, as you'll hear. They originally argued that there was vicarious liability and that what Petrobras SA did should be attributed to the -- Petrobras America, even though Petrobras America was not the party that signed the contract.

13:29:06 They've changed their position, as you'll hear. Their new argument is that Petrobras America did not know, until July of 2015, when they receive an indictment regarding another official that mentions the Padilha indictment. They don't have the Padilha indictment.

13:29:22 So if July 2015 is the first time Petrobras America heard of this scheme, there is no statute of limitations issue. We filed the claim -- complaint in March of 2019, and there's a four-year statute.

13:29:36 **THE COURT:** This argument about being forced to accept an assignment, these are big companies run by sophisticated people. Forced to accept an assignment is kind of a novel argument.

13:29:50 **MR. WALSH:** I don't think it is, Your Honor, not in this industry, and, really, not in any industry. If we were talking about Apple or Microsoft, and the parent entity was,

basically, directing what the subsidiary did and what businesses the subsidiary was going to engage in, there wouldn't be a question about whether that was something the subsidiary had to follow.

13:30:06 There's a board --

13:30:06 **THE COURT:** But that's -- yes. Those are separate entities, but --

13:30:10 **MR. WALSH:** But there's a board.

13:30:11 **THE COURT:** There's a parent subsidiary relationship.

13:30:13 **MR. WALSH:** There is, but there's a board at the Petrobras SA level that controls the drilling operations of the whole company, which makes sense when you think about it, right?

13:30:21 **THE COURT:** Seven-member board?

13:30:22 **MR. WALSH:** Yes.

13:30:22 **THE COURT:** Got two people here.

13:30:23 **MR. WALSH:** Yes.

13:30:23 **THE COURT:** Not a majority.

13:30:24 **MR. WALSH:** No, but they're clearly directing the activities of the board with respect to drilling activities.

13:30:28 **THE COURT:** So you've got a rubber-stamping board, basically?

13:30:32 **MR. WALSH:** I don't think it's rubber-stamping, but presenting to the board, basically, information that says, We need another drillship, when, in fact, the underlying information doesn't support the need for a third drillship.

13:30:41 They haven't made that argument that the -- Mr. Cervero was acting, you know, on his own accord. He was clearly acting to, basically, approve the drillship and receive the bribes that he was promised from Samsung.

13:30:52 In any event, the direct relationship is still apparent even if there is some issue about what they were forced to do or not forced to do because, again, the Braspetro entity was never going to operate this drillship. Some entity had to take it. There was already a commitment. There was no getting around the five-year commitment. They had to place the drillship somewhere. Petrobras America is the entity that ultimately received it, and that was a natural consequence of the bribery scheme that occurred. Someone was going to take this drillship. It was Petrobras America.

13:31:22 **THE COURT:** So there's no requirement that there was knowledge at the time of who was going to have to -- which entity was going to have to accept the assignment?

13:31:30 **MR. WALSH:** No, as long as -- and, by the way, Petrobras --

13:31:33 **THE COURT:** Because no entity could profit, is that --

13:31:36 **MR. WALSH:** No entity could profit. There was no -- Angola was a failure. Other locations in Tanzania weren't an option. The Gulf of Mexico was the last place that this could go, and Petrobras America, you know, had the ability to take on the ship.

13:31:49 And there are two other drillships that also had assignment provisions. So, again, Samsung is the counterparty in the two -- the Petrobras 10000 contract and the Vitoria 10000 contract. It is a common provision in these types of drilling services contracts and construction contracts that the drillship could be assigned, without need for consent, to a subsidiary.

13:32:10 So everyone knew that someone was going to get this. If -- again, if -- I'll refer back to Exxon. If Exxon, basically, the U.S. had to put this drillship in the Gulf of Mexico or, perhaps, in -- in Tanzania, the Exxon U.S. is not going to operate that drillship in Tanzania. It's going to assign it to an Exxon Tanzania subsidiary so that it can operate that drillship without any issues of taxes or, as I said, local permitting requirements.

13:32:36 They have to have an entity that is permitted to operate in these jurisdictions, and Petrobras America was that entity.

13:32:43 **THE COURT:** So what do I have to find and what evidence would support that finding to show culpable corporate knowledge?

13:32:52 **MR. WALSH:** For purposes of either the statute of limitations or the -- are you now turning to the *in pari delicto*?

13:32:59 **THE COURT:** Both.

13:32:59 **MR. WALSH:** Well, the *in pari* -- I think it's the

same. It's the adverse agent-principal, Your Honor, which we had as an issue in our motion to dismiss many years ago and was, ultimately, addressed by the Fifth Circuit; was one of the bases that the Fifth Circuit returned the case to here.

13:33:12 There is no evidence that there was any benefit --

13:33:16 **THE COURT:** Because between now and then, you've done discovery.

13:33:18 **MR. WALSH:** Yes.

13:33:18 **THE COURT:** So you have an expanded record.

13:33:20 **MR. WALSH:** We do. We do. They never took Cervero's deposition. They never took Mr. Duque's deposition. But we now have [redacted], and the deferred prosecution agreement, which Samsung entered with the DOJ after the motion to dismiss phase.

13:33:34 In both cases, they make it crystal clear that this was a but-for cause of -- of the -- of, basically, the approval of this contract, and there is no evidence that they've procured to support that there was any benefit provided. They'll cite that -- the year and a half that the ship was actually operating, but we have testimony from Pedro Albuquerque, again, the same witness, who says Petrobras had another -- Petrobras SA has another drillship sitting, ready to operate in the Gulf of Mexico. They would have just used that drillship.

13:34:07 So, again, there's no evidence that there was any

benefit procured for the benefit of Petrobras SA. The fact of the matter is Cervero and Duque were acting on their own and for their own benefit.

**THE COURT:** I'm sorry?

**MR. WALSH:** Cervero and Duque, the two officials, were acting on their own and only for their own benefit.

**THE COURT:** So there -- was Cervero, if that's how you pronounce his name -- was he acting in a way that was completely adverse to Petrobras's interest?

**MR. WALSH:** He was. He saddled this company with a drillship contract it did not need, a five-year drillship contract for $500,000 a day, which ended up being assigned immediately to Petrobras America, and then, ultimately, assigned to two third parties, and then was put on standby.

They -- again, we come back to this idea that they already had two drillships from Samsung. There was no support for a third drillship, as the internal Petrobras correspondence confirms, and they haven't -- again, they've taken depositions of our witness, but they have not taken on that study. They have not offered an expert to basically say the study is support -- is valid. They have not even tried to address the conclusions that our expert had that the study is completely invalid; that there was no technical survey done to support it; no geological survey; that the assumptions of 30 percent and two blocks a year and four wells per block could be supported.

13:35:35 And they didn't take into account what actually happened. The first time that this was prepared in 2015 -- it was again presented in 2016, and again in 2017, and they never updated the study. So the study itself, basically, is useless. So you're left, basically, with no support for a third drillship, and the facts prove to be true. They didn't need this drillship.

13:35:56 **THE COURT:** When does the contribution claim begin to run, the statute of limitations?

13:36:04 **MR. WALSH:** That's -- I'm going to turn to my colleague, if we're going to get into that, Your Honor. Are there any questions on the RICO claim?

13:36:10 **THE COURT:** I think you've answered them for the time being.

13:36:12 **MR. WALSH:** Okay. If there are, I'm happy to return. Thank you. So my colleague, Robert Garcia, will address this.

13:36:17 **THE COURT:** Well, do you want to, first, get a response to the claimed -- the argument made, and then we'll go on to the next issue?

13:36:23 **MR. WALSH:** That's fine.

13:36:24 **THE COURT:** Go ahead.

13:36:25 Since you were standing up expecting that.

13:36:28 **MR. ODELL:** And, Your Honor, we also have a PowerPoint presentation. May I approach?

13:36:31 **THE COURT:** Yes, of course.

13:36:37 *(Document handed to the Court.)*

13:36:55 **THE COURT:** Is this -- are the screenshots the same as the slide?

13:36:59 **MR. ODELL:** They're the same. So if the Court would prefer to just follow along, I can give the Court the slide numbers.

13:37:05 **THE COURT:** Go ahead, please.

13:37:06 **MR. ODELL:** Thank you, Your Honor.

13:37:08 **THE COURT:** Everybody agrees that *Holmes* is the critical case?

13:37:10 **MR. ODELL:** Well, it's an interesting point, Your Honor, and I'll begin there, if that's all right with the Court. So --

13:37:15 **THE COURT:** Why don't you fix that (indicating), first?

13:37:17 *(Zoom participant connecting to video feed.)*

13:37:19 **MR. ODELL:** This is actually very entertaining.

13:37:22 **THE COURT:** I'm not sure.

13:37:22 **MR. ODELL:** I'm not sure what's happening here.

13:37:26 **MR. WALSH:** That's not you, is it Chris?

13:37:28 **MR. ODELL:** That's not me.

13:37:33 **THE COURT:** Is that your client?

13:37:34 **MR. ODELL:** The joys of high-tech hearings, Your Honor.

13:37:39 So let's begin with the case law because I think it's

important. We heard from Petrobras America's counsel about the significance of the *Holmes* case, and we agree that *Holmes* is an important starting point; however, it is not the endpoint for the long line of case law from the Supreme Court and the Fifth Circuit on the importance of the direct relationship in RICO causation analysis between the alleged RICO predicate and the alleged injury.

13:38:10 And what we talked about in *Holmes* -- or what we heard about from Petrobras America's counsel, what he referred to as the three factors. In fact, in *Holmes* and in the cases that follow, including the *Hemi Group* case and the *Anza* case, the court makes it clear these aren't the factors; this is the rationale for the rule. This is why we have a direct relationship requirement, and it's because there needs to be a direct causal nexus between the two, and these three factors go to explain the rationale for that.

13:38:46 And so we can go through each of these elements, which I think are very helpful for Samsung's argument on this -- this issue. But just to look at them, the first question, "Are there more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law," well, here, there's no dispute who the direct victim was. We heard it in Petrobras America's opening. It was Petrobras SA.

13:39:14 Cervero and Duque, the two --

13:39:17 **THE COURT:** The bad guys.

13:39:17 **MR. ODELL:** -- employees who -- the bad guys, shall we call them, who took the bribes were Petrobras SA executives. They took the bribes. We say they demanded the bribes, but we'll get to that in the counterclaim.

13:39:32 But they took the bribes, and it was Petrobras International that entered into the contract for the DS-5, what we call the drilling services contract. And so the two most direct victims here are the ones who were directly affected by the predicate act and who entered into the contract that's at issue here. So do we have two more direct victims of the alleged wrongful conduct? We do, Petrobras SA and Braspetro.

13:40:02 Now, for whatever reason, strategy not known to us, they were not joined as plaintiffs in this case. [redacted]. So, presumably, they have a better and, certainly, a more direct claim under RICO, but they're not here.

13:40:31 And in essence, what we've got here is Petrobras America trying to bring a claim on behalf of something that happened to someone else.

13:40:41 **THE COURT:** Basic standing, is your argument.

13:40:43 **MR. ODELL:** Well -- and it is standing, and in the RICO context, the proximate cause and standing inquiries are merged, and we see that -- we see that in *Anza*. We see that in

*Hemi Group*. We see that in *Holmes* -- because under the statute, only a plaintiff who is injured by reason of the predicate act has standing to bring a claim. And so proximate cause and standing are one and the same.

13:41:06 And here, the only parties that have an argument for proximate cause, because of a direct relationship between the injury -- or between the predicate act and the injury are Petrobras SA and Petrobras International, and so we can't just elide the cases that follow *Holmes* as Petrobras America suggests.

13:41:30 *Anza* does control here. Other cases that control here are the Fifth Circuit's interpretation of those cases, and I would direct the Court -- I've got a slide. We'll do the law first, and then I'd like to talk with the Court about the facts.

13:41:48 But I would direct the Court to slide No. 5, which addresses the Fifth Circuit's most recent pronouncement on this issue in *Molina-Aranda versus Black Magic Enterprises*, and there, what the Fifth Circuit said, interpreting *Anza* and *Hemi Group* and *Holmes*, is that the plaintiff, in a RICO case, "must demonstrate that the alleged violation 'led directly' to the injuries... If some other conduct caused the harm, the plaintiff can't sustain a RICO claim."

13:42:17 In other words --

13:42:18 **THE COURT:** Well, how can there not be more than one direct cause?

13:42:22 **MR. ODELL:** That's right. So what we have -- we had a discussion -- or the Court had discussion with Petrobras America's counsel about this. There can certainly be more than one cause in fact. Here, we have many. Causes in fact for this are the construction of the DS-5; Petrobras's decision to hire Mr. Cervero; the list goes on.

13:42:44 But in terms of the proximate cause of the injury, the proximate cause, according to PI- -- pardon me, Petrobras America's own pleadings was that -- and we see that in the outline that was provided by Petrobras America to the Court, the bribe to Mr. Cervero and Mr. Duque caused Petrobras International to enter into a contract. Well, okay. So that suggests that the direct victim of the bribe is none other than Petrobras International, but we know Petrobras International isn't a plaintiff in this case.

13:43:24 And so then we have the question: How do we get to Petrobras America? And this is where I think we have to talk about the facts. So if the Court will look at slide No. 6, we've tried to explain the causal factors that come into play here.

13:43:43 So we've got the violation. How do we get to the harm? We heard from Petrobras America's counsel that the drilling services contract was signed by Petrobras International in January of 2008, and it was originally intended to go to Angola in West Africa. Now, Petrobras America doesn't operate

in Angola, so it wasn't going to go to them.

13:44:05 But then, as we heard from Petrobras's counsel, they had a string of bad results and well failures in Angola. That's unfortunate, but nobody's -- nobody's contending that that was Samsung's fault. So then the decision was made, Well, we've got to send it somewhere; we're not sending it to Angola. What are we going to do with it?

13:44:25 And so if we take Petrobras -- I'm going to skip ahead a little bit here to save time, but if we take Petrobras's corporate representative at his word, Mr. Albuquerque, in his latest declaration -- and the Court knows we have some issues with his declaration, but if we take him at his word, in paragraph nine of his declaration, Mr. Albuquerque says, following the failure in Angola, the company had to decide what to do with this rig because it was no longer needed where it had been intended to go.

13:45:02 And so according to him --

13:45:03 **THE COURT:** But according to the other side, it was not needed even when it was first assigned to Angola.

13:45:08 **MR. ODELL:** That's what they said. But even if that were true --

13:45:11 **THE COURT:** And they're right.

13:45:13 **MR. ODELL:** We actually disagree with that, and I'll come to the study in a moment.

13:45:16 **THE COURT:** Well, at least --

**MR. ODELL:** But I don't think it matters.

**THE COURT:** -- there was no success in Angola.

**MR. ODELL:** Right.

I don't think it matters because at the time that they contracted for it, there was perceived need in Angola. That evaporated due to bad results.

So then they look, company wide, where do they need this rig. And Mr. Albuquerque describes this in paragraph nine of his latest declaration. He says, "PAI" -- his word -- "conducted the analysis described above at the direction of Braspetro, which, with PBSA's support and recommendations, had to evaluate each of its subsidiaries' drillship needs in order to find the most cost-effective assignment for an unnecessary drillship."

That decision-making, that process cuts off the causal chain, and there is no way to reconcile another conclusion with *Anza*, with *Hemi Group*, or with the Fifth Circuit's decisions in *Molina* and in *Jackson versus NAACP* because those intervening causal factors cut off RICO causation.

It could have gone to a different subsidiary in a different part of the world, as Mr. Albuquerque says. It ended up going to Petrobras America, but that nexus of decision-making cuts off the direct relationship between the harm and the injury.

Additionally, we know --

13:46:53 **THE COURT:** Between the harm and the injury?

13:46:54 **MR. ODELL:** Sorry. Between the -- well, the RICO violation and the injury.

13:46:58 **THE COURT:** Okay.

13:46:58 **MR. ODELL:** Pardon me.

13:47:00 We know, from Mr. Albuquerque's deposition testimony, when he was designated as the representative of Petrobras America on, specifically, the topic of how Petrobras America came to be a party to the assignment and amendment agreement and the rationale for doing so -- we know that his original testimony, as the corporate representative, is that Petrobras America wanted the drillship, and so let's take a look -- and it was suggested both in the briefing and by Petrobras America's counsel today that we've cherry-picked the testimony and that we're taking it out of context. So I'd like the Court to have the context.

13:47:44 This is from page 388 and 389 of Mr. Albuquerque's deposition as a corporate representative of Petrobras America, and the -- the context for the question is set out in lines 23 to 2 [sic]. "Mr. Albuquerque, I'd like to talk about any kind of internal decision-making and approval that happens in Petrobras America, Inc., in connection with deciding to enter into the assignment and amendment agreement."

13:48:13 So this isn't abstract. This isn't, "What's your usual process?" This is specifically, "How'd you get into this

contract?"

13:48:21 And Mr. Hartman asked Mr. Albuquerque, "In doing that, PAI looks at its anticipated drilling program and needs, correct?

13:48:28 "Answer: Correct.

13:48:29 "PAI would consider other drillships in the market that fulfill those needs, correct?

13:48:34 "Answer: If it doesn't have contracted capacity, yes.

13:48:38 "Question: If PAI doesn't" -- "does not have its own contracted capacity, it would look at -- or consider other drillships in the market that could fulfill those needs, correct?

13:48:47 "Yes."

13:48:49 And then he goes on to talk about how they would evaluate the contract terms.

13:48:57 And let's go to the next slide, please, Ms. Hodges.

13:49:01 Okay. So we're told that Petrobras America -- and this is slide No. 9 in our presentation, Your Honor. It's from page 390, continuing in the same line of questioning.

13:49:13 We're told by Petrobras America that Petrobras America had no choice but to accept this, and that they had -- they made no independent decision here. But what they said under oath through their corporate representative was, in answer to the question: (Reading) At the time PAI decided to enter into the assignment and amendment agreement for the DS-5 drillship,

Petrobras -- parent company -- would have expected PAI to act in its best interest in deciding that this is the right drillship for PAI, correct?

13:49:45 And his answer under oath was, "Correct."

13:49:48 He could have said, Well, it doesn't really matter what we think because the company's just going to cram it down our throats, but he didn't say that. That wasn't his testimony under oath at the time. And why? Let's take a look at the next excerpt.

13:50:03 And I believe this is from page 368 of the same deposition. Mr. Albuquerque was asked, "As the corporate representative on this topic, is it your understanding that at the time PAI signed the Assignment and Amendment Agreement, PAI wished to use the DS-5 to carry out operations in the Gulf of Mexico pursuant to the terms and conditions of the DS-5 Drilling Services Contract?

13:50:29 "Answer: Yes."

13:50:32 So, obviously, the Court knows from the prior motion practice on this we think that there is material conflict between the sworn testimony of Petrobras America here and the gloss that they are now trying to make whereby this decision was crammed down on them. They said, under oath, that they wished to use the DS-5, and that is why they entered into the agreement.

13:50:58 But even if the Court decides to push aside the

evidentiary problems with their latest approach to the facts, even then, under the April 2023 declaration from Mr. Albuquerque, they still can't make the proximate cause connection because under their version of events, what happened was Bras- -- Petrobras International enters into the contract to use the rig in Angola. Circumstances change Angola.

13:51:33 Petrobras International decides to find something else to do with the contract and the drillship. They do, according to Mr. Albuquerque, an evaluation of all of its subsidiaries' drillship needs to determine where best to send this, and according to Petrobras Inter- -- or Petrobras America's sworn testimony, it was Petrobras America who wished to use the DS-5.

13:52:03 Under the case law, this very clearly cuts off the direct relationship between the RICO violation and the injury. This is a much clearer case than *Anza* or *Jackson* or --

13:52:19 **THE COURT:** It's not a question of when, but whether.

13:52:21 **MR. ODELL:** Correct. Correct.

13:52:25 And so -- I don't think that we can elide or breeze past all of the Supreme Court's more recent rulings after *Holmes* because what they make very clear is that the direct relationship is the key. And in its briefing, although not today, Petrobras America relies on an out-of-circuit case from the Ninth Circuit from 2002, the *Mendoza* case. And that case, of course, predates the Supreme Court's rulings in *Anza* and *Hemi Group*, as well as the controlling Fifth Circuit precedent

on this issue.

But, most importantly, it's not even good law in the Ninth Circuit anymore because in that case, they failed -- the Ninth Circuit failed to apply the direct relationship test, and if we look at more recent Ninth Circuit case law, they brush right past it. They don't use that case anymore, and it's never been the law in the Fifth Circuit.

In fact, in *Jackson*, the Fifth Circuit expressly rejected its use.

**THE COURT:** So -- and I don't mean this to be a glib formulation of the question, but is your argument that there was an indirect relationship or no relationship --

**MR. ODELL:** So --

**THE COURT:** -- between the alleged violation and the --

**MR. ODELL:** We would concede, for the purposes of argument, Your Honor, that the bribery is a cause in fact of --

**THE COURT:** A cause in fact.

**MR. ODELL:** A cause in fact, but one of many. And as Mr. Walsh conceded, as he must --

**THE COURT:** So is that the same as an indirect relationship, or --

**MR. ODELL:** It is. It is. It's an indirect relationship.

Mr. Walsh concedes, as he must in light of the case

law, that the golden ticket is proximate cause, not cause in fact. And here the proximate cause of Petrobras America's assumption of the contract is Petrobras America's decision to take on the contract.

13:54:23 **THE COURT:** So what do we do with foreseeability -- and I think I've asked this question before -- when the market is unpredictable at best? What's the foreseeability of the harm if it's predicated on the absence of need, which is, in turn, predicated on fluctuating world circumstances?

13:54:42 **MR. ODELL:** And we heard about foreseeability both in the briefing and in the argument of Petrobras America, but the Supreme Court, in *Hemi Group*, makes it very clear that's not part of the RICO proximate cause analysis. It doesn't matter whether it's foreseeable or not. What matters is the directness of the injury.

13:54:59 And so here, whether it was foreseeable that some subsidiary would take on the contract once the Angola prospect failed or not doesn't matter. *Hemi Group* is very clear, and in -- if I'm recalling it correctly, the dissent in that case had said, Well, we should look to foreseeability, and the majority said, We're not going to do that because foreseeability is not a substitution for the direct relationship.

13:55:30 So that argument has been raised and rejected by the Supreme Court of the United States.

13:55:37 And I promised the Court that I'd come back to this

study that Petrobras America is so fond of. The study was one of the bases for the decision by Petrobras International, a more direct victim and, therefore, more proper plaintiff in this action, to sanction the drilling services contract for the DS-5. The problem with using that as liability evidence as Petrobras America wants to do is that there's zero evidence in the case that Samsung Heavy Industries had any impact on either that study's existence or its use.

13:56:17 There is no evidence in the case that Samsung or its bribes had any impact on the content of that study, and I've asked that question to Mr. Albuquerque in deposition, I've asked it of their expert, Mr. Reiter, in deposition, and the answer is always, We have no evidence that Samsung had anything to do with that study.

13:56:39 And, obviously, the Court can draw this connection itself, but if the decision was made by Petrobras International to rely on a study that has flawed premises, that may be bad management, but it is not Samsung Heavy Industries' fault, and it is not even -- it is certainly not a direct relationship between that decision and the bribery of Mr. Cervero and Mr. Duque. So it doesn't get them anywhere.

13:57:08 **THE COURT:** What happens, according to your version of events, between the third amendment and the fourth amendment of the assignment agreement that matters?

13:57:18 **MR. ODELL:** So what happens there is the basis for our

ratification argument, and I think this -- Mr. Walsh doesn't think much of my ratification argument, and I -- I'd like to convince the Court, however, that it's actually important here, and I think that we can go to slide 15 -- 16 -- probably the time for bifocals.

13:57:48 Why this matters, Your Honor, is that it does -- the ratification issue addresses two problems. One, if the Court finds that Petrobras America ratified the drilling services contract with knowledge of the bribery scheme, then that undoes their entire claim. It is not limited to damages going forward as Mr. Walsh suggested. It means that when they have full knowledge of all of the facts of the bribery scheme, they shrugged and continued with the contract. Under Texas ratification law, that means that you don't get to sue for fraud.

13:58:27 But it also is an independent -- yet another independent causal event that cuts off the direct relationship between the bribery scheme, the RICO predicate under the RICO claim, and any damages that follow. And this gets back to the factors in *Holmes* that we've been talking about; the complexity of trying to apportion damages based on intervening causal events.

13:58:56 Well, here's just one example, and our briefing is full of others. But in August of 2015, on the 7th, the legal department rec- -- at Petrobras SA receives an e-mail from our

friend, Mr. Albuquerque, who says -- and this is on the following page and reflected in Exhibit 67 to our summary judgment motion. Mr. Albuquerque says: (Reading) Gentlemen, attached is a complaint for the arrest of Mr. Zelada -- who's one of a number of Petrobras SA executives who are arrested by this indictment -- that mentions corruption in connection with the Ensco DS-5 drillship.

13:59:41 And that, of course, is our rig.

13:59:43 And Mr. Albuquerque goes on to say: (Reading) This was obtained from the Consultor Juridico (Legal Adviser) website.

13:59:51 So he's pulled this off of a public website and is sending it to the legal department. This is important because, as we'll see, it -- this document contains all of the material facts necessary to understand that there was alleged to be corruption and bribery in connection with the DS-5 contract.

14:00:12 And let's see what the legal department's response was to Mr. Albuquerque's e-mail. Branca Rio Branco De Gouvea -- I'm sure I am butchering the pronunciation -- on the same day responds and says, "Pedro, thank you. We've also received a copy of this complaint from the Legal Department Coordinator who's working with the Operation Car Wash prosecutors." And that, of course, is the name for the massive investigation into the culture of corruption at Petrobras.

14:00:43 And she goes on to say, "We've already forwarded this

document to Mario Benvenuto from the PAI for forwarding to the U.S. office." Mr. Benvenuto is the general counsel for Petrobras America. So at latest, on August 7th of 2015, Petrobras America's general counsel has the indictment for the arrest of Petrobras SA hiring executives and Hamylton Padilha in connection with bribery in the procurement of the DS-5.

14:01:20 And just so it's clear, let's go to the next slide, please, Ms. Hodges.

14:01:23 **THE COURT:** This drillship contract or a different one?

14:01:26 **MR. ODELL:** This one. This one right here, DS-5.

14:01:29 Exhibit 68 is just -- is an excerpt of just one page from the indictment that was attached to Mr. Albuquerque's e-mail, and here it all is. It describes how, in 2008, the international area -- that's Petrobras International -- signed the contract to charter the vessel DS-5 from Pride, slash, Ensco whose representative was the accused Hamylton Padilha, and the construction took place at Korean shipyard Samsung Heavy Industries.

14:02:03 Next paragraph, according to Hamylton Padilha, while Pride/Ensco negotiated with the international area of Petrobras, he was approached by Raul Schmidt, who presented himself as the agent of then directors Nestor Cervero and Renato Duque, explaining that to close the deal with Pride/Ensco, it would need the payment of undue advantage -- which is a nicer way of

14:02:29 saying bribe -- to public servants of the Brazilian state company.

And the last paragraph goes on to say there was, in fact, payment of undue advantage by representatives of Samsung to directors of Petrobras. And the context of the e-mail makes it clear that they knew what this was about. This was about corruption in connection with the DS-5.

14:02:42 And so ten days before Petrobras America signs the fourth amendment to the assignment and amendment agreement extending the assignment of the DS-5 through the contractual term of the underlying drilling services contract, they learn all of these facts. The general counsel of the company receives an e-mail that says all of these facts, and it was downloaded from a public website, and yet they decide to go forward and sign the amendment anyway.

14:03:15 If they had not signed it, the contract would have reverted to Petrobras International, and Petrobras America is off the hook, but they decide, with full knowledge, that they're going to go forward.

14:03:28 **THE COURT:** Were there any -- is there an argument that all the conditions precedent for signature were met, the absence of an indictment of some of those involved in the procurement of the contract not being among them?

14:03:44 **MR. ODELL:** It -- that might be a clever argument; they haven't made it. Their argument is that, well, not all of

the facts are really spelled out here. Although, in their briefing, they don't say what they were missing. And they say, Well, we can't find proof that this e-mail was received in the E&P division of Petrobras America, and that's in an affidavit filed by Fernando Gama.

14:04:09 But what they don't have and what they haven't offered to the Court is an affidavit from Mr. Benvenuto saying, "I didn't get this, and I didn't know any of these facts at the time." They could have done that, and that would have at least created a fact issue, but they didn't do that, and I think that's telling.

14:04:30 If -- if the Court has any other questions on proximate cause, I'm happy to answer those; otherwise, I'd like to talk briefly about the limitations issue.

14:04:39 **THE COURT:** All right. Which, in turn, is from the knowledge issue, who knew what, when.

14:04:43 **MR. ODELL:** Right. No, this is really -- this is really an imputation issue, and it goes to whether the -- the knowledge of Mr. Cervero and Mr. Duque about the bribery scheme, of which they knew a lot, needs to be imputed to Petrobras America and its parent. And, obviously, the context here, as the Court knows, is that under Texas law, the assumption is that the knowledge of a company's officers and directors will be imputed to the corporation unless an exception applies. And the exception, which has been raised by Petrobras America and is

their burden to prove here is the adverse interest exception.

And so as the Court discussed with Mr. Walsh, in order to prevail there, they have to show, they have to confirm with evidence, which we suggest they have not, that Mr. Duque and Mr. Cervero had totally abandoned their interest -- or their loyalty to their principals and were serving only their own interests, and it's kind of a zero sum game.

If their actions benefited both themselves and Petrobras SA --

**THE COURT:** Regardless of degree?

**MR. ODELL:** Regardless of degree.

**THE COURT:** One percent Petrobras --

**MR. ODELL:** We think it's a lot more than 1 percent --

**THE COURT:** -- 99 percent individual benefit.

**MR. ODELL:** -- but that's right. As long as they haven't totally abandon -- and totally abandon is the language from the case law -- then the adverse interest doesn't apply. And here there's no question, and we have -- I apologize for this -- completely flooded the summary judgment record with evidence that at this time, Petrobras was on an unprecedented buying spree trying to increase the size of its ultra deepwater drilling rig fleet.

And they said this at every level of the company. The CEO says it. They say it in their 20-Fs. They say it in negotiating with drilling services contractors. We have a ton

of evidence in the record about this.

14:06:44 But when Mr. Cervero and Mr. Duque, whom Petrobras concedes were authorized to enter into these kinds of contracts, go out and contract for the DS-5 that suits these purposes, they're not totally abandoning their principals' interests. And when Petrobras America then uses that rig to drill ultra deepwater wells in the Gulf of Mexico, as it did in the Cascade No. 5 and No. 6 wells, and produces oil and gas, sells the oil, and gas and keeps the money, then they have benefited from the actions of Cervero and Duque.

14:07:23 **THE COURT:** They argue that that's just mitigation.

14:07:26 **MR. ODELL:** And it is definitely also mitigation. I agree with them that it is also mitigation, but the problem that they have is that it shows that the interests of the company had not been entirely abandoned.

14:07:39 And there's a second issue here, which was not discussed earlier but I want to just raise in case the Court has questions about it, and that is the second level of imputation. So we think it's pretty simple math that the knowledge of Cervero and Duque must be imputed to Petrobras SA, the company that employed them and for which they conducted this transaction.

14:08:03 Petrobras America, in their briefing, although not today, objects to the further imputation of that knowledge to Petrobras America. The problem -- they're on the horns of a

dilemma here because on the one hand, they want to assert corporate separateness and say, Well, Petrobras America and Petrobras SA are different companies, although there seems to be some wiggle room in that based on their latest arguments. But the problem that they've got is that Petrobras America necessarily piggybacks on the injury to their corporate parent as the basis for their claim.

**THE COURT:** Tell me what you mean by "piggyback" here.

**MR. ODELL:** Sure. So the allegation here is not that Samsung Heavy Industries bribed any officers, directors, or employees of Petrobras America. They don't contend that at all. That's not in the case.

It is undisputed that the only bribes at issue here were ones that were paid to Mr. Cervero and Mr. Duque, who are Petrobras SA employees. So if that's the RICO violation, that's the predicate act, then Petrobras America is relying on an injury to a third party, which all the case law says you can't do, but they have to, or they don't have a claim.

And so then, for imputation, they say, Well, it's not fair to impute their knowledge to Petrobras America because we're a different company. If you're a different company, then this injury is indirect, and you can't establish -- can't establish proximate cause. So they're trying to have their cake and eat it, and they can't do that.

Either Petrobras America is -- takes the imputation

knowledge of Cervero and Duque, in which case this case was time barred years before it was filed, or they don't take that, and then the injury's too indirect for them to establish proximate cause. But one way or the other, this case can't go forward either because it is barred by limitations or because they can't establish proximate cause.

14:10:21 **THE COURT:** All right. Let me hear from the other side in response, and then we'll move on to the second set of issues.

14:10:27 **MR. ODELL:** Thank you, Your Honor.

14:10:32 **MR. WALSH:** Thank you, Your Honor. Again, Jonathan Walsh.

14:10:36 I just want to point the Court again to the direct relationship test from *Holmes*, which is set forth in page 7 of our slides. It's 503 U.S. 258 at pages 269 to -70. I did not hear counsel for Samsung address any of the factors.

14:10:52 They tried to address the first factor: Who is the most direct plaintiff here? Their argument is that Braspetro should have brought this claim. If Braspetro had brought this claim, they would have quickly moved to dismiss it because Braspetro didn't pay any amounts under the drilling services contract. The only party that did that was Petrobras America.

14:11:13 Likewise, they're trying to argue that PBSA has a claim here. They're misconstruing the damages. We're not seeking to get the bribes returned to us. We're suing for the

amounts paid under the drilling services contract. The only party that paid those amounts was Petrobras America.

14:11:30 Where Mr. Odell turned to the statute of limitations and talked about benefit, he naturally went to whether Petrobras America could have used this drillship and, if not, it could have been assigned to the Gulf -- it could have been assigned to Brazil, where they have this huge need. Mr. Odell seems to be conceding my point.

14:11:47 This was a contract that could be assigned to any different entity, and it was known from the very beginning that it would be assigned to an entity. So, again, I ask the Court to go back to the *Holmes* test. They really haven't responded to those three points.

14:11:58 They showed the Court Mr. Albuquerque's testimony, but, again, in page 11 of our opposition brief, we make clear that -- exactly what Mr. Albuquerque said and what I mentioned in my earlier presentation, that the executive board ultimately determined where drillships would be assigned. There is no independent decision here about where this drillship would go. There may be an independent decision about where in the Gulf of Mexico it goes, but Petrobras America, as Mr. Albuquerque has testified, has -- had to accept the contract.

14:12:31 [redacted] Well,

that's clear. [redacted]

[redacted]

I also want to address this idea about whether the contract was entirely against the -- against the interest of Petrobras America. The drillship ultimately ended up on standby. There was no study to support, basically, a five-year contract, the injury here, and the amounts paid under a five-year contract.

Whether it was initially used, whether it was initially placed in the Gulf of Mexico is beside the point. The contract is a five-year contract. We've pled this from the very beginning in both our amended complaint and in the summary judgment papers. The injury is the $600 million that we had to pay under this contract.

Their expert, in fact, Dr. Jacobs, actually calculates it as 700. He's identified, basically, the injury here is the contract itself and the five-year term. So there shouldn't be any dispute about that.

And, finally, they asked about whether there was any

reason for the board to accept this problemistic [sic] study that we've talked about quite a bit. Well, there's a reason Mr. Cervero and Mr. Duque put forth this problemistic study, which was not supported by any technical survey or other information that would support the need. They were bribed $60 million.

14:14:26 I just want to correct the record, too. The problemistic study was presented in 2005, 2006, and 2007. I think I mentioned later years. But, again, they haven't rebutted that either through their experts or in any evidence in the case. So I submit, Your Honor, that there shouldn't be any genuine issue of material fact with respect to RICO liability.

14:14:46 **THE COURT:** All right. Did you want to respond at all?

14:14:49 **MR. ODELL:** Nothing further from us, Your Honor --

14:14:50 **THE COURT:** Okay.

14:14:51 **MR. ODELL:** -- on the RICO issue.

14:14:52 **THE COURT:** Next issue.

14:14:56 **MR. GARCIA:** Your Honor, could we take a short restroom break?

14:14:58 **THE COURT:** Sure. Sure. How about 1:30 -- or 2:30, rather -- 2:30 resumption?

14:15:03 Very good. Thank you.

14:15:05 *(Recess taken from 2:15 p.m. to 2:33 p.m.)*

14:33:22 **THE COURT:** Go ahead and be seated, please.

14:33:24 Before we move on to the next issue, let me ask the parties, at the risk of repetition, to summarize and point to the record cites that support your arguments on imputing Cervero's knowledge of the scheme to Petrobras. I don't care who goes first.

14:33:52 Best arguments and best record cites, and cases in support besides the ones that you've relied on.

14:34:13 Or emphasizing the ones that best support your arguments.

14:34:48 Go ahead. Then we can talk about English law.

14:34:52 **MR. ODELL:** Christopher Odell on behalf of Samsung.

14:34:54 So there are a few elements to the imputation issues. So I'll -- and I won't list all of the ones that we've got in our briefing, but the most important parts for establishing the imputation of Cervero and Duque's knowledge to Petrobras SA, [redacted]; the bylaws, which are Exhibit 4, which show that the board of the executive officers are authorized to acquire ships in maritime drilling and production units, which, of course, is what Cervero and Duque did; Petrobras America's answer as -- particularly at paragraph 25, concedes that Mr. Cervero was an employee of Petrobras SA, an officer and member of its executive board

during the time period in question; [redacted]

14:36:43 With respect to Duque, Petrobras's answer at paragraph 26 establishes his rank and role during the time in question; [redacted] Then, in Exhibit 9, which is the deposition of Mr. Barroso, a 30(b)(6) deposition, at lines 232 -- or, pardon me, at page 232, line 2, to page 233, line 15, which describes Cervero and Duque's role in acquiring drillships; the heads of agreement that were approved by the Petrobras executive board for entering into the DS-5, which is Exhibit 28 to our summary judgment motion; Exhibit 34 to our summary judgment motion, which explains -- which is the approval of the drilling services contract and was made by not only the executive board, including Cervero and Duque, but other executives who didn't receive any bribes.

14:38:21 And then we have -- I mentioned some of these to the Court earlier in my argument. There's a lot of record evidence about the demand for drillships and deepwater drilling rigs. I will not mention all of those, but Odell Declaration, Exhibit 1 to the summary judgment motion; Exhibit 16; Exhibit 8;

Exhibit 10; and Exhibit 11 are all instructive on that.

14:38:55 And on the point that the DS-5 conferred benefits on Petrobras America, Exhibit 19, which is the expert report of James Harden, and the deposition of Steven Reiter, which I discussed a little bit with the Court earlier today, which is Exhibit 6 at lines -- page 192-8, to line 12, and page 212, line 7 to 9; and the Pedro Albuquerque e-mail outlining places where the DS-5 may be needed, Exhibit 44 to our summary judgment motion.

14:40:25 And on imputation, I think those are the key documents -- I think those are the key documents that -- obviously, we would still encourage the Court to look at all of the evidence that we put into the record, but if the Court is asking for a selection of those, those are the ones that Samsung would identify.

14:41:01 **THE COURT:** I'm asking for the most important of those.

14:41:04 **MR. ODELL:** And I think that covers the landscape, Your Honor.

14:41:06 **THE COURT:** All right. Thank you.

14:41:07 Response?

14:41:10 **MR. WALSH:** This is actually a good segue to the next section because it's -- the presentation has a slide that addresses all of these points.

14:41:19 *(Document handed to the Court.)*

14:41:31 **MR. WALSH:** Your Honor, if you could turn to page 7 of the presentation I just handed up?

14:41:36 **THE COURT:** Okay.

14:41:42 **MR. WALSH:** Their entire argument on proximate cause -- I'll wait till you're ready, Your Honor.

14:41:48 Their entire argument on proximate cause is based on the premise that Petrobras America is a separate and distinct corporate entity. They have argued multiple places in their brief, but especially in the opposition brief -- and these are the citations to the opposition brief, which I won't read every one of them, but I encourage Your Honor to refer to that brief.

14:42:09 That Samsung paper applies only to PBSA. They did not pay any bribes to PAI. And I want to highlight the third bullet point and make sure I go slowly because this is really the end of the imputation argument, I believe.

14:42:22 There is no evidence Petrobras America officials received any bribes in connection with the DSC. When bribes were paid to Cervero and Duque, these Petrobras SA executives were acting exclusively on behalf of the other Petrobras entities and not Petrobras America. They've abandoned the imputation argument in order to make this proximate cause argument. So those are the best cites.

14:42:53 I would also refer the Court to Walsh Affidavit, Exhibit 51, which is the audit report that goes through the lack of need. And if the Court is going to refer to the

nonprosecution -- prosecution agreement, I want to remind the Court that Petrobras America is not a party to that agreement; is not mentioned in the agreement; the DS-5 is not referred to in it; and there is no reference to any bribes that Samsung paid in that -- in that agreement.

14:43:22 So our view is the Fifth Circuit found it's completely irrelevant for the purposes of imputation.

14:43:28 **THE COURT:** Thank you.

14:43:30 Yes, sir?

14:43:40 **MR. GARCIA:** Good afternoon, Your Honor. Robert Garcia for Petrobras America. The Court already has my -- a copy of my presentation.

14:43:53 Your Honor, in its counterclaim, Samsung seeks to hold Petrobras America liable for Samsung's bribery scheme to procure the DS-5 transaction, the very same bribery scheme for which Samsung has admitted culpability to both U.S. and Brazilian authorities. [redacted]

[redacted] Samsung, however, has been unable to articulate a coherent theory of PAI's liability.

14:45:01 Its current theory is different from the one it asserted in its counterclaim. In its counterclaim, filed in November 2021, Samsung's theory of PAI's liability was premised on the assertion that PAI had acted as the alter ego of Petrobras SA. Therefore, Samsung argued that PAI -- that Petrobras America should be vicariously liable for the misconduct of Petrobras SA's employees in accepting Samsung's bribes, or that the misconduct of those Petrobras SA employees should be attributed to Petrobras America.

14:45:32 Samsung maintained the same theory at the motion to dismiss stage, and because Samsung could not establish its theory of vicarious liability or attribution, Petrobras America moved for summary judgment seeking the dismissal of the counterclaim. As explained in Petrobras America's motion, Samsung's theory of vicarious liability and attribution failed because the officials of Petrobras SA who accepted Samsung's bribes were not acting as employees, officers, or agents of Petrobras America in connection with the procurement of the DSC.

14:46:04 Samsung then changed its theory at the motion for summary judgment stage.

14:46:08 First, in its own motion for summary judgment in

relation to Petrobras America's RICO claim, Samsung recognized for the first time that Petrobras America, Petrobras International, and Petrobras SA are separate and distinct corporate entities. It also recognized that Petrobras America received no bribe from Samsung or anyone else related to the drillship. This is reflected in one of the slides -- actually, the slide that Mr. Walsh just pointed out to you, slide 7.

14:46:41 Samsung made those concessions in an attempt to support its standing and proximate cause arguments. Then, in its opposition to Petrobras's -- Petrobras America's motion for summary judgment, Samsung abandoned its theory of vicarious liability and attribution. It did not respond to any of Petrobras America's arguments on those issues.

14:47:00 It confirmed once again that PAI -- that Petrobras America is separate and distinct from the other entities. It confirmed that, quote, Petrobras America was not involved in the procurement of the DSC, end quote. It confirmed that, quote, there is no evidence that Petrobras America officials received any bribes in connection with the DSC, end quote, and asserted that when bribes were paid to Cervero and Duque, these executives were not acting for Petrobras America.

14:47:29 **THE COURT:** At all.

14:47:30 **MR. GARCIA:** At all.

14:47:30 **THE COURT:** 100 percent self-interest.

14:47:32 **MR. GARCIA:** Well, they asserted -- what Samsung

asserted is that they were acting for other Petrobras entities, not Petrobras America.

**THE COURT:** Okay.

**MR. GARCIA:** We dispute that issue, but --

**THE COURT:** Does it matter?

**MR. GARCIA:** -- it's immaterial for the purposes of Petrobras America's motion for summary judgment on the counterclaim.

Samsung then articulated a theory that's nowhere in the counterclaim. Samsung's new theory is that Petrobras America became liable for the bribery scheme in July or August 2015 after -- years after the bribes were paid. Samsung now claims that Petrobras America became liable by reading about the bribery in the newspapers or in an indictment, and then performing the drilling services contract.

In its recent 15-page supplemental memorandum of July 10th, Samsung made no effort to revive its prior theory of vicarious liability or attribution. Samsung is now bound by those concessions as it waived any argument that Petrobras America became liable as of the signing of the DSC in 2008, whether on a vicarious liability basis, on an attribution basis, or on an alter ego basis or any other basis.

Courts have held that a failure to respond to an argument for summary judgment results in waiver. Samsung has not responded to PAI's -- to Petrobras America's arguments on

vicarious liability or attribution. It should not be permitted to revive them, and that's all the more so since Samsung's concessions appear to have been tactical.

14:49:02 Samsung's defense to Petrobras America's RICO claim is based primarily on the assertion that PAI lacked standing or proximate cause because Samsung bribed the officials of Petrobras America's parent companies, not the officials of Petrobras America. Those arguments assume that Petrobras America has a separate legal personality that is distinct from its parent companies.

14:49:25 Samsung could not make those arguments while maintaining its prior theory that Petrobras America acted as the alter ego of its parent companies and that Petrobras America should be vicariously liable for the conduct of Cervero and Duque or imputed with their conduct. Samsung changed positions in an attempt to support its standing and proximate cause arguments. It should not be permitted to switch back.

14:49:48 In any event, Samsung's argument should not proceed because its new theory makes no sense, even on its own version of the facts.

14:49:54 I will now turn to the relevant law.

14:49:59 Parties agree that Samsung's counterclaim is governed by English law. In deciding questions of foreign law, federal court can look at opinions of foreign law experts. Samsung has submitted four reports by its English law expert, Steven Gee.

Petrobras America submitted two reports by his English law expert, Richard Millett.

14:50:19 Mr. Millett and Mr. Gee agree on most questions of English law. To the extent they disagree on any issue, their disagreements are immaterial to this motion. And in any event, their disagreements do not provide a basis for denying summary judgment.

14:50:33 Questions of foreign law are matters of law and not fact. Rule 41- -- 44.1 provides that the Court's determination of foreign law must be treated as a ruling on a question of law. As the Fifth Circuit has stated, quote, differences of opinion regarding the content, applicability, or interpretation of foreign law do not create a genuine issue as to any material fact under Rule 56, end quote. Therefore, summary judgment is appropriate to determine the content of foreign law.

14:51:03 The parties agree that Samsung's contribution counterclaim under English law is governed by -- specifically by the Civil Liability (Contribution) Act of 1979 [sic]. Under Section 1 of the act, the claimant must establish, first, its own liability to the original claimant. Where a contribution claimant has settled its claims with the original claimant, as here, the contribution claimant may establish a settlement by making a showing that in the absence of the settlement, it would have been liable to the original claimant. [redacted]

[redacted]

14:51:45 Next, under Section 1 of the act, the contribution claimant must establish that the defendant is, quote, liable in respect to the same damage, end quote, to the original claimant. This element has two components, liability and same damage. Thus, in this case, Samsung, as the contribution claimant, must establish that PAI is liable to the original claimant, Pride, and that such liability is for the same damage for which Samsung was held liable to Pride.

14:52:14 So liability and same damage.

14:52:17 Slide 2 of our presentation summarizes these elements.

14:52:20 Samsung has the burden of establishing them. I don't think Samsung disagrees on these principles.

14:52:26 However, Samsung cannot establish Petrobras America's liability or [sic] Pride and that any such liability to Pride is in respect to the same damage for which Samsung was liable to Pride. Samsung's theory is that in 2015, PAI somehow became a joint tortfeasor in the torts that Samsung committed against Pride in 2007 and 2008: Bribery, conspiracy, and dishonest assistance.

14:52:57 There appears to be no dispute between the parties and their experts regarding the applicable standard for determining joint liability for tort. Both parties and their experts rely on the standards set forth by the UK Supreme Court in the case entitled *Fish & Fish versus Sea Shepherd*. The standard -- that

standard -- the standard in that case is set out in paragraphs 55 to 60 of the decision in *Fish & Fish*, and I've included the standard in slide 3 of our presentation.

14:53:30 As set out in that slide, three conditions must be established. First, the defendant must have assisted in the commission of an act by the primary tortfeasor. The assistance provided by the defendant must be substantial in the sense of not being *de minimis* or trivial; second, the assistant [sic] must have been pursuant to a common design on the part of the defendant in the primary tortfeasor that the act be committed. Mere assistance by the defendant to the primary tortfeasor or facilitation of the tortious act will not do.

14:54:01 There must be a common design between the defendant and the primary tortfeasor that the tortious act be carried out. A common design will normally be expressly communicated between the defendant and the other person, but it can be inferred.

14:54:18 Thirdly, the act must constitute a tort as against the claimant. Therefore, the defendant must have assisted in and been a party to a common design to commit the act that constituted or gave rise to the tort, and I emphasize the assistant must -- the assistance in the common design must be to the act that gave rise to the tort.

14:54:41 The parties' experts agree that where a defendant is shown to be jointly liable for a tort, it could be liable only for loss caused by the implementation of the tort from the date

the defendant joined. Loss may include lost opportunity to mitigate.

14:54:56 **THE COURT:** So what's the date the defendant joined, according to your version?

14:54:59 **MR. GARCIA:** Well, it -- as I will explain, it doesn't matter because there's -- that dispute is immaterial. Samsung claims that Petrobras America joined in July or August 2015 either by learning it -- learning about it from the -- from the -- from the press or by learning about it from the indictment. It's Petrobras -- Petrobras America's position that it first learned about it when it obtained a copy of Padilha's statement in October 2015. But as I will explain, this is immaterial.

14:55:36 Samsung cannot show that PAI -- Petrobras America assisted in any act that constituted or gave rise to any of the torts it alleges: Bribery, conspiracy to injure, and dishonest assistance. Samsung also cannot show that PAI -- that Petrobras America was a party to a common design to commit any of those torts or that Pride suffered any harm from the date when Petrobras America is alleged to have assisted the torts.

14:56:02 I'm going to go through each tort, but I -- before I do, I want to emphasize that with respect to each tort, Samsung must establish assistance, common design, and harm. Samsung relies on the same facts for all three torts, the bribery scheme. Thus, with respect to all the torts, Samsung must

establish assistance in common design in the bribery. For conspiracy to injure and dishonest assistance, as I will explain, Samsung must establish additional elements.

I'm going to focus, first, on the bribery. As set out in slide 4, under English law, a bribe consists of commission or other inducement which is given by the third party to an agent as such and which is secret from the principal. In short, a bribe is a secret payment to an agent. Samsung's agreement to pay commissions or bribes to Padilha was in 2007. Samsung's payment of those commissions was from March 2008 to April 2011.

Samsung has not identified any evidence showing that PAI assisted in the payment or acceptance of any of those commissions or any other commission or inducement, nor has Samsung identified any evidence that PAI shared in any common design to make or accept any such payment. On the contrary, Samsung has acknowledged that no Petrobras America employee participated in the bribery and that Petrobras America had no knowledge of the bribery until July 2015.

And it's important to remember that Samsung has conceded that Petrobras America is separate and distinct from Petrobras International and from Petrobras SA, and that the bribe takers, Cervero and Duque, were not acting for Petrobras America. Thus, no conduct by those employees of -- of Petrobras SA may be imputed to Petrobras America.

Petrobras America cannot be vicariously liable for

their conduct, and all the allegations about corruption at Petrobras America's parent companies are irrelevant. Because it's indisputable that Petrobras America took no part in the bribery, Samsung has concocted a theory that Petrobras America joined the scheme years after it ended by purportedly learning about it in the press and from an indictment.

14:58:28 As I indicated, Petrobras America disputes that it learned about the schemes on those dates, but it's immaterial. Even if Samsung's allegations are assumed to be true, Samsung cannot establish assistance, common design, or harm.

14:58:41 Samsung alleges that after learning about the bribery scheme in the summer of 2015, PAI assisted the bribery by failing to disclose the scheme to Pride; accepting an extension of the assignment; acting like the DSC was, quote, not corrupt, end quote; continuing to maintain use and affirm the DSC; performing under the DSC; extending the DSC's term; and accepting invoices from Pride.

14:59:13 As I will explain, the allegations that the DSC was extended and corrupt are not true. All the other allegations -- maintaining, using, performing, and accepting invoices under the DSC -- refer to the same thing, which is performance of the DSC.

14:59:30 In any event, none of the alleged conduct constitutes assistance in the tort or a common design to commit the bribery, nor did any of the alleged conduct cause harm to Pride. First of all, the assertion that Petrobras America extended the DSC's

term is a misrepresentation. Petrobras America never extended the term of the drilling services contract. This is an indisputable fact. Accordingly, Samsung can't point to a shred of evidence reflecting any such extension.

14:59:58 PAI only took assignments of the DSC. The assignments of the DSC merely assigned Petrobras International's rights and obligations under the DSC to Petrobras America. The assignments did not extend, affect, or in any way alter Pride's obligations or rights. Pride was already locked into the DSC, a five-year contract. But for the assignments, the DSC would have reverted back to Petrobras International, and International -- and Petrobras International and Pride would have been required to finish out the term of the DSC. This is undisputed, and Mr. Odell acknowledged that today.

15:00:40 Samsung's assertion that the DSC was corrupt is misleading. There is no evidence that the DSC contained any corrupt or harmful terms to Pride. Accordingly, Samsung has not alleged the DSC contained any terms unfavorable to Pride. [redacted]

15:01:05 [redacted]

15:01:24

[redacted]

15:01:50

[redacted]

15:02:22

Given that the terms of the DSC were not harmful to Pride, Petrobras America's performance of the DSC could not have caused any harm to Pride. Accordingly, Pride never asserted a claim for damages resulting from PAI's performance under the DSC or from Petrobras America's payment of invoices. On the contrary, when Petrobras America terminated the DSC, Pride demanded that Petrobras America continue to perform the DSC, [redacted]

15:03:00 [redacted].

15:03:34 In its opposition, Samsung has attempted to analogize Petrobras America's performance of the DSC to that of a holder of stolen property, but that analogy fails. A knowing holder of stolen property con- -- contributes to the injury by depriving the owner of its right to use and enjoy its property. Petrobras America's performance of the DSC actually reduced Pride's injuries.

15:04:02 Petrobras America's performance consisted of paying a daily fee for the DS-5 of $430,000 a day, regardless of whether it was using the DSC -- the DS-5. Thus, each day that Petrobras America performed the DSC, Pride's losses were reduced by approximately 430,000. Had Pride not performed the DSC after the dates when Samsung says that PAI learned of the scheme, July and August 2015, Pride would have suffered more losses, and

Pride's claim against Samsung would have been bigger.

15:04:35 Indeed, if PAI had fully performed the DSC, Samsung would have owed Pride no damages in connection with the DSC.

15:04:48 **THE COURT:** So to sum it up, no liability; no damages?

15:04:52 **MR. GARCIA:** Correct. They cannot establish any liability by Petrobras America. They've acknowledged, as reflected in the slides in our presentation, that Petrobras America took no part in the bribery. After having conceded that, they cannot establish that Petrobras America assisted in the bribery.

15:05:12 Furthermore, there is no authority under English law for the proposition that performance of a contract, which contains no fraudulent terms, can give rise to any tortious conduct to a contractual party. Indeed, the notion that a contractual party can commit tort against its contractual party by simply performing the contract that they agreed to seems absurd, and that is what Samsung's positing here.

15:05:37 Samsung's theory is that Petrobras America committed a tort against Pride by performing their contract, the DSC. Samsung cannot argue that Petrobras America's further performance prevented Pride from mitigating its damages. There is no evidence to support that argument.

15:05:54 The undisputed evidence in the record contradicts any argument that Pride could have mitigated. As Samsung has admitted, the market had begun collapsing in 2014. As of 2014,

the industry experienced a surplus of rigs. Operators throughout the country had a surplus of rigs and were putting rigs on standby. By April 2015, PAI had no work for the DS-5, and the DS-5 was on permanent standby.

15:06:23 At the time that Samsung says Petrobras America learned of the scheme, July and August 2015, the DSC's rates were above market. That's been recognized by Samsung's expert on damages, the Jacobs report, paragraph 55. He also recognized it in the deposition.

15:06:49 Accordingly, when Petrobras America terminated the DSC, Pride rejected the termination, demanded performance, [redacted]

15:07:01 Finally, Samsung tries to suggest that there was some malicious intent when Petrobras America terminated the DSC in January 2016 or that Petrobras America only sought to terminate the DSC when it was disadvantageous economically, but it's undisputed that by April 2015, Petrobras America had no work for the DS-5 and that the DS-5 was on permanent -- on permanent standby. This -- this concession is on page 9 of Samsung's opposition. Thus, Petrobras America already had no use for the DS-5 when Petrobras America allegedly learned of the bribery in July or August 2015.

15:07:49 Additionally, Samsung cannot establish any harm to Pride from the date that Petrobras America allegedly became an

accessory to the bribery. The experts agree that even if Petrobras America were shown to have joined the bribery, Petrobras America could be liable only for lost cost to Pride by the implementation of the bribery from -- from that date.

15:08:12 Samsung can't show any such loss. Pride's loss, [redacted] was that Pride entered into a tainted contract that was susceptible to challenge. Petrobras America's continued performance of the DSC after having purportedly learned about the scheme did not cause any damage. As I explained already, it reduced Pride's losses.

15:08:35 I'm going to turn to the remaining torts.

15:08:37 **THE COURT:** Okay.

15:08:45 **MR. GARCIA:** So, in sum, just to sum up the issues on -- on -- on bribery, Samsung cannot show that Petrobras America assisted in the bribery, that Petrobras acted with any common design in the bribery, and that Pride suffered any harm from the date when Petrobras America's alleged to have joined the scheme.

15:09:08 Similarly, Samsung cannot show that Petrobras America is liable to Pride for the same -- for the second tort it alleges, conspiracy to injure by unlawful means. The elements of that tort are set out in slide 5 of our presentation.

15:09:26 Under English law, conspiracy to injure by unlawful means requires a combination, arrangement, or understanding between two or more people; two, an intention to injure another

individual or separate legal entity; three, concerted action, in the sense of active participation, consequent upon the combination or understanding -- this is sort of akin to common design -- four, useful [sic] of unlawful means as part of the concerted action; and, finally, loss being caused to the target of the conspiracy.

15:10:11 For this theory, Samsung relies on the same facts that I've already addressed; the same facts regarding the allegation of bribery. It relies on the allegation that in July or August 2015, after having learned about the bribery from the papers or from an indictment, PAI joined the scheme by performing the DSC.

15:10:38 But PAI -- but Samsung cannot point to any evidence reflecting any intention by Petrobras America to injure Pride, any agreement or concerted action with another party to injure Pride, or any loss as a result of any purported conspiracy that -- that Petrobras America is alleged to have joined. On the contrary, Samsung recognizes that Petrobras America did not participate in the giving or taking of bribes to Petrobras officials, and PAI's -- Petrobras America's performance reduced Pride's losses.

15:11:12 Now I'm going to turn to the final tort, dishonest assistance. The elements of that tort are set out in slide 6.

15:11:20 **THE COURT:** Essentially, the same facts underlie all the --

15:11:23 **MR. GARCIA:** Exactly, but there are additional elements to dishonest assistance. There, as I set out in slide 6, there must be a trust or fiduciary -- fiduciary duty -- fiduciary obligation owed by the trustee/fiduciary to the claim; two, there must be a breach of that duty; the third -- a third party must have assisted in, induced, or produced the breach -- this is sort of akin to assistance that I explained with respect to the bribery -- and, four, the third party must have acted dishonestly in providing the assistance.

15:11:57 Now, Samsung has asserted that it has established the two [redacted]

15:12:17 There is no admissible evidence in the record to establish that Padilha owed a fiduciary duty to Pride. [redacted]. Thus, even if Samsung could establish that Padilha owed a fiduciary duty to Pride, which it cannot, it cannot establish a breach of the duty.

15:12:39 Furthermore, even assuming that Samsung could establish a breach of fiduciary duty, Samsung also cannot

establish that PAI assisted in, induced, or procured the breach. Samsung's agreement to pay commissions was in 2007. Samsung's payment of those commissions to Padilha was from March 2008 to April 2011. Thus, the breach of Padilha's alleged fiduciary duty first occurred in 2007 and ended in April 2011.

15:13:08 It is undisputed that from 2007 to April 2011, Petrobras America had no involvement at all with the transaction. Indeed, it is undisputed that from 2007 to June 2015, Petrobras America was entirely innocent of any misconduct. Now, Samsung argues that Petrobras America somehow assisted Padilha to breach his fiduciary duty by assisting the bribery, but there is no evidence that Petrobras America assisted the bribery.

15:13:39 Samsung also points to the same facts that, after having learned about the bribery from the press and the indictment, Petrobras continued to perform the DSC. But as I explained previously, performance of the contract cannot be assistance in the bribery and did not give rise to any damages. It actually reduced Pride's damages.

15:13:59 In short, Samsung cannot establish Samsung's [sic] liability for any of the alleged torts.

15:14:05 Now, the final point.

15:14:09 Even if Samsung could somehow establish Petrobras America's liability to Pride, Samsung's counterclaim must fail because it cannot establish that Petrobras America could be

liable to Pride for the same damage for which Samsung was held liable. This is a separate basis for dismissing Samsung's counterclaim.

15:14:27 As I explained previously, under the contribution act, Samsung must not only establish Petrobras America's liability to Pride, it must also establish that Petrobras America's liability to Pride is for the same damage for which Samsung was liable to Pride.

15:14:45 Now, the -- the parties agree that -- that the governing case on the issue of what "same damage" means is -- is *Royal Brompton*, and that's a UK Supreme Court case. And I think the parties agree that no restrictive loss -- no restrictive gloss and no expansive gloss can be given to the term "same damage." It just means -- it should be given only its natural meaning.

15:15:12 [redacted]

15:15:37 [redacted]

[redacted]

As Mr. Millett explains in his report, that determination is premised on Petrobras America being legally entitled to avoid the drilling services contract. Pride could not have -- could not have had a claim against Samsung for those damages if Petrobras America had improperly avoided the DSC. If PAI had improperly avoided the DSC, Pride would have had a claim for breach of contract against Petrobras America.

[redacted]

The two harms are mutually exclusive. Either Pride had a contract that Petrobras America was required to perform and a claim for breach of contract against Petrobras America, or Pride had a contract that was tainted due to the bribery for which it could not demand performance from PAI on account of the bribery. Another way to look at this is to focus on what

Samsung is alleging in this case.

Samsung is alleging that Petrobras America assisted in the commission of the tort of bribery against Pride by performing the DSC. In other words, according to Samsung, Pride's damage was Petrobras America's performance of the DSC. That's the opposite of the damages that were awarded to Pride. [redacted]. Therefore, Samsung cannot establish the same damage.

Now, Petrobras America has asserted addition- -- additional bases for dismissing Samsung's counterclaim based on the English law principle of --

**THE REPORTER:** I'm sorry?

**MR. GARCIA:** I'm sorry. I'll start over there.

Now, finally, Samsung has alleged, also, an additional basis for dismissing Samsung's counterclaim based on the English law principle of *ex turpi causa*, which is akin to unclean hands. Unless the Court has questions on that issue, I will defer to Petrobras America's motion and reply and rest, while reserving time for rebuttal.

**THE COURT:** All right.

Go ahead, please.

**MR. HARTMAN:** Your Honor, may I approach with the PowerPoint?

**THE COURT:** Hand it to my clerk.

**MR. HARTMAN:** Thank you.

*(Document handed to the Court.)*

**MR. HARTMAN:** Your Honor, Ryan Hartman for Samsung Heavy Industries.

Just starting with something that counsel for Petrobras America said in saying that our -- we had not pled what he called a new theory of liability under the counterclaim, while it is certainly true that the parties' theories of their claims in this case have evolved since the pleadings stage -- and that's not unusual, especially after more than a year in fact and expert discovery. And while I don't think it matters for summary judgment purposes, I will be clear, for the record, that we certainly pled, in our counterclaim, two alternatives, and one was that either PAI was liable in contribution because Mr. Cervero or Mr. Duque were acting on their behalf, or that Petrobras America, PAI -- sorry, Your Honor -- was liable for entering into amendment four to the drilling services contract for the DS-5 drillship after it knew of the bribery and, thus, became a party to the scheme. And that -- the Court's reference is at paragraphs 184 to 215 of our counterclaim.

Now, getting to the heart of it, starting on page 2 of the presentation, I think counsel for Petrobras America and I agree on the applicable standard here and that it really turns on Section 1(1) of the contribution act. That's on the slide in front of the Court at slide 2, and, fundamentally, our claim,

Your Honor, is that in August of 2015 -- or, excuse me, in July of 2015, PAI started getting information that would, effectively, inform it that the DSC was procured by bribery, and, ultimately, in August of 2015, PAI signed the contract with Ensco knowing that it was tainted by bribery and then, six months later, attempted to cancel that contract and refused to pay Ensco $152 million by claiming to have just discovered this bribery.

SHI [redacted] now seeks contribution of those amounts from Petrobras America. Now, Samsung's contribution claim ultimately comes down to a very simple question under these 32 words in the contribution act, and that question is: Is Petrobras America liable, whether jointly or otherwise, to Ensco for any of the same damage for which Samsung was liable?

Now, there are three ways in which Petrobras America can be liable. The first is as a joint tortfeasor; the second is for joining a conspiracy to injure by unlawful means; and the third is for dishonest assistance. Any of these are sufficient to establish liability for contribution on the part of Petrobras America, and once Petrobras America joined this scheme, it became liable for all damage thereafter caused by the scheme, the same damage for which Samsung was found liable to Ensco.

Now, if I could drill down --

**THE COURT:** So when you say joined the scheme --

15:22:53 **MR. HARTMAN:** Yes, Your Honor.

15:22:53 **THE COURT:** -- do you mean imputed knowledge, do you mean actual knowledge, do you mean -- what trigger are you pointing to?

15:23:02 **MR. HARTMAN:** I will cover exactly that on the next slide, Your Honor.

15:23:05 **THE COURT:** Okay.

15:23:07 **MR. HARTMAN:** So on slide 3 here, what happened is when PAI -- or Petrobras America entered into the fourth amendment -- this is the August 2015 amendment to the drilling services contract for the DS-5 that Mr. Odell talked about.

15:23:23 When Petrobras America entered into that fourth amendment on August 17, 2015, it had actual or blind-eye knowledge that the drilling services contract was a tainted contract procured by bribery. It knew that from the indictment its general counsel had received ten days earlier.

15:23:41 It did not disclose what it knew at that time to Ensco, thus depriving Ensco of the ability to sign an untainted contract with Petrobras America. Petrobras America, nevertheless, signed amendment four with Ensco and with Petrobras International, agreeing to take the drilling services contract for the DS-5 from Petrobras International, which was itself a participant in the bribery scheme, in exchange for Petrobras International's payment of all costs under that contract worth over $100 million plus a 1 percent markup that

Petrobras America got to pocket.

15:24:18 Now, under English law, Petrobras America's entry into amendment four with actual or, as they call it, blind-eye knowledge that the drilling services contract was procured by bribery, while failing to disclose that, what it knew to Ensco, is sufficient for a trier of fact to conclude that Petrobras America became a participant in that scheme and became liable for any damage caused by the scheme after that date.

15:24:43 Very simply, Your Honor, the damage caused after that date included the $152 million that Petrobras America refused to pay Ensco when it claimed to have just recently discovered this bribery and then attempted to cancel the DS-5 drilling services contract. SHI [redacted] seeks contribution from PAI for that same damage.

15:25:06 Looking at slide 4, I won't belabor the timeline because I'm sure the Court's quite familiar with it by now, but at a high level, of course, in January 2008, Mr. Cervero signed the drilling services contract on behalf of Petrobras International, also sometimes called Braspetro, as you see on the slides.

15:25:29 Ultimately, that contract was extended by -- or I should say Petrobras America decided to become a party to that contract three and a half years later. It signed the assignment agreement. It then amended that agreement four times, on four separate occasions, to extend its initial three-year assignment

to the full five-year term of -- of the drilling services contract. As Mr. Odell talked about, it used -- the drilling services contract used the DS-5 drillship to drill wells that produced hundreds of million dollars of oil.

15:26:02 But then, in January 2016, when oil prices hit their lowest level in over a decade, Petrobras America suddenly claimed to have discovered bribery on the DS-5, purported to cancel its contract with Ensco, and refused to pay $152 million that it owed Ensco. Now, PAI did this despite claiming, in this lawsuit in the very papers before the Court, that it was a complete stranger to the 2008 drilling services contract and admitting that nobody at Petrobras America was bribed in connection with that contract or the assignment agreement or any of the four amendments to that agreement.

15:26:38 Now, most important for purposes -- our purposes today, though, Petrobras America signed that fourth amendment on August 17th, 2015, after it had actual or, at minimum, constructive knowledge that the drilling services contract was a tainted contract procured by the bribery of Cervero and Duque, and rather than disclose that information to Ensco before entering into that amendment and, thereby, remove the taint from the drilling services contract, Petrobras America kept that information secret from Ensco; they agreed with Ensco and Petrobras International to take on the DSC that would have otherwise reverted to Petrobras International; and they received

millions of dollars under that agreement in markups that they charged to Petrobras International.

15:27:26 Let's flip, if we could, Your Honor, to the timeline on slide 5, just to put it in more context of what Petrobras America knew and when they knew it.

15:27:38 So by late 2014, Operation Car Wash, the sprawling global investigation of Petrobras's corrupt practices, is in full swing. By early 2015 -- in the first half of 2015, Mr. Cervero and Mr. Duque have been arrested. They've been charged with allegedly accepting bribes in connection with two SHI -- or Samsung drillships. Petrobras SA has issued the audit report that you heard referred to earlier, and that audit report was about the DS-5. And it was apparently so concerning that the auditors recommended forwarding it to the Operation Car Wash criminal investigators, which Petrobras SA did the next day.

15:28:17 There's no dispute Petrobras America was aware of that report. It's cited throughout their complaint.

15:28:23 Petrobras SA executives are, even during this time, circulating Brazilian media reports that say Samsung bribed Mr. Duque on the DS-5, while asking if this would give them a basis for getting out of the contract. Now, by the end of July, all of this is continuing. Somebody even at Petrobras America, senior vice president, gets an article saying that Hamylton Padilha, who was the broker on the DS-5 and another drillship, has confessed to paying bribes to Mr. Cervero and Mr. Duque on

that other drillship and a yet-to-be-unnamed [sic] drillship.

15:29:02 And then, on August 7th, ultimately, Petrobras America finds out exactly what happened when its general counsel receives the indictment that we've discussed.

15:29:14 I won't go through the e-mails or the content of the indictment, which the Court has already seen at slide 8, but suffice it to say that the indictment says that Mr. Padilha, once again, confessed in his plea bargain to being involved in a grand scheme of corruption and money laundering that involved SHI using Pride's agent, Hamylton Padilha, to pay bribes to Mr. Cervero and Mr. Duque in order to get Petrobras International's division to sign the contract to charter the DS-5 from Pride.

15:29:50 In fact, Your Honor, this information is so material to Petrobras America that, if you turn slide 9, this is precisely the information that Petrobras America claims in its amended complaint in this lawsuit caused it to terminate the drilling services contract. They just falsely suggest that they did not get this information until October 2015.

15:30:12 If you see the left-hand column, those are quotes from Petrobras America's amended complaint. The right-hand column are quotes from the indictment, and you can see it's talking about, literally, the same facts: The confession by Mr. Padilha; the fact that he confessed to bribes going to Cervero and Duque for the DS-5. The wording, in fact, regarding

15:30:40 15:31:11 15:31:40 15:31:44 15:31:51 15:31:54 15:31:57

Mr. -- Mr. Schmidt Felippe, Jr., is -- is virtually the same.

This is the same information that Petrobras claims -- Petrobras America claims, in its complaint, was precisely what got it to cancel the drilling services contract when it did so in January 2016, but they claim to have first gotten this in October of 2015. The reality is their general counsel had it in July -- or, excuse me, in October 2015, 10 days before they signed the amendment number four to the drilling services contract.

Now, what does that ultimately mean for Petrobras America's liability? Well, if we go to slide 11, as I said at the outset, there are three independent ways in which Petrobras America can be liable to Ensco, and, thus, liable in contribution to SHI. One is as a joint tortfeasor; two is for conspiracy to injure by unlawful means; and, three, is for dishonest assistance in Mr. Padilha's breaches of his fiduciary duties.

**THE COURT:** What's the *mens rea* difference among these, if any?

**MR. HARTMAN:** So there actually reasonably similar.

**THE COURT:** *Mens rea* and causation.

**MR. HARTMAN:** Let me go to the first one. I can show you, Your Honor, on slide 12.

All that liability as a joint tortfeasor requires is that the defendant -- in this case, Petrobras America -- has to

assist the commission of an act by the primary tortfeasor pursuant to a common design. It just has to be pursuant to a common design, and that -- that means that the defendant in this case, Petrobras America, they don't have to actually join in the tort itself.

15:32:24 They can -- they can participate as an accessory. They don't have to explicitly map out a plan; tacit agreement is television. They don't have to have any kind of common design to infringe Ensco's rights. They just have to combine to secure the doing of acts which, in the event, prove to be infringements.

15:32:46 So, really, in this case --

15:32:47 **THE COURT:** So what's the *mens rea* requirement for combining? Knowingly assisted?

15:32:54 **MR. HARTMAN:** They have to understand that they are, ultimately, becoming part of an agreement that will cause damage -- a conspiracy or an agreement that will cause damage to somebody else, and that's, in fact, what happened.

15:33:12 **THE COURT:** So they need to know about the scheme.

15:33:16 **MR. HARTMAN:** Well, they need to have actual or blind-eye knowledge, as the English call it. And if we go to the -- if we go to slide 10, that actually, I think, covers the Court's point.

15:33:28 Actual knowledge or blind-eye knowledge is sufficient to establish knowledge for purposes of all three of these

theories of liability. And what blind-eye knowledge means is someone blindly or blandly ignored the facts and refrained from asking relevant questions regarding them in the hope that, by his lack of inquiry, he will not know for certain that which any inquiry must have made plain beyond possibility of doubt.

15:33:55 Well, Your Honor, I would respectfully submit, by the time that indictment was sitting in the general counsel's mailbox in his hands, it could not have been any clearer. The indictment expressly says that Hamylton Padilha worked together with SHI to pay bribes to Mr. Cervero and Mr. Duque to get Petrobras's international division to charter the -- charter the DS-5 drillship.

15:34:24 So I don't think it's actually a question of whether we're dealing with actual or blind-eye knowledge, but if -- if there were any question, I would respectfully submit that, you know, this most certainly qualifies as blind-eye knowledge that the DS-5 was procured by bribery when you're the general counsel of, and you have an indictment from Brazilian authorities saying the DS-5 was procured by bribery.

15:34:59 So going back to PAI's liability as a joint tortfeasor on slide 12, again, I'll show the Court what the elements are and then demonstrate how Petrobras America satisfies them.

15:35:23 So, again, all Petrobras has to do -- Petrobras America has to do is assist the commission of a tortious act pursuant to a common design, and what did Petrobras America

actually do here? Well, we have it on the next slide.

15:35:40 What Petrobras America did is that it knew the material facts of the DS-5 bribery at least ten days before it entered into amendment No. 4 with Petrobras International and Ensco. It did not disclose that knowledge to Ensco. It entered into amendment four with Petrobras International which, itself, was a participant in the scheme because Mr. Cervero negotiated and signed the drilling services contract on behalf of Petrobras International.

15:36:08 And what Petrobras America did is it prolonged the scheme, and it contributed to the damage Ensco suffered by, first, entering into amendment four with this knowledge, with its general counsel having been told that the DS-5 was procured by bribery, and then using the scheme that it already knew about as a pretext in an attempt to avoid $152 million in payments that it owed to Ensco.

15:36:34 PAI deprived Ensco of the opportunity to enter into an untainted contract -- an untainted contract with PAI. Now, PAI's argument earlier -- and this is the point -- by claiming that, well, the market was already down, so Pride could not have entered into some other contract at that point, what Petrobras America did was it deprived Ensco of the opportunity to enter into an untainted amendment No. 4 with Petrobras America.

15:37:01 Had Petrobras America disclosed its knowledge of the bribery scheme to Ensco, they could have entered into amendment

four on the basis that it was no longer tainted so that Petrobras America could not then pull the rug out from under Ensco six months later by refusing to perform a contract and refusing to pay $152 million in invoices by claiming to have just discovered bribery that it knew about the whole time.

15:37:26 Second, Your Honor, just leaving that aside, there was, at minimum, a genuine dispute of material fact as to whether Ensco could have entered into an untainted contract with somebody else. As the figures in the expert reports we've cited show, the oil price went down roughly 35 percent between July of 2015, when PAI knew about the scheme, and January of 2016, when PAI canceled. You know, the market for deepwater drillships was in a materially different position in July 2015 than January 2016. And Ensco might not have gotten the full $410,000 a day, but I submit they certainly would not have gotten zero.

15:38:05 In any event, the broader point is that -- the broader point is that PAI deprived, through its actions, Ensco of the opportunity to have an untainted contract with PAI. It hid what it knew; it didn't disclose it to Ensco; and then it used that knowledge it already had at the time it signed the contract as a pretext for getting out of the contract six months later by claiming it had just discovered it.

15:38:36 That, Your Honor, is just one of the three independent bases for liability. Any one of them do. That is just one.

15:38:43 If we could turn to conspiracy to injure by unlawful

means, what this -- on slide 14. What this requires is for Ensco to have suffered a loss or some damage as a result of unlawful action taken pursuant to a combination or an agreement, or as Mr. Garcia actually says in his slide, even an understanding will suffice between the defendant and another person to injure him by unlawful means whether or not that's the predominant purpose of the defendant to do so.

15:39:19 To show the agreement, all you need is that two or more people combined with a common intention or that they deliberately combined tacitly to achieve some common end. They don't have to join the conspiracy at the same time or have exactly the same aim in mind, and the intent to injure is satisfied simply by showing that the gain to the conspirators, i.e., Petrobras America, was necessarily at the expense or loss of the victim, in this case Ensco.

15:39:47 And even passive participation in the conspiracy in the form of consent and not then intervening is sufficient for liability. In other words, a participant is liable even if they did not undertake the unlawful action themselves. They just need to join in the conspiracy, and as we show on slide 15, that's --

15:40:06 **THE COURT:** How do you join the conspiracy without taking or participating in the unlawful action?

15:40:13 **MR. HARTMAN:** Well, you --

15:40:14 **THE COURT:** Through omission?

**MR. HARTMAN:** Sorry, Your Honor. What was the last?

**THE COURT:** Is it omission?

**MR. HARTMAN:** So you join the conspiracy by entering into an agreement or an understanding, and that is what PAI did. In fact, there's an actual physical agreement here.

**THE COURT:** Even if they didn't do anything to act on it?

**MR. HARTMAN:** They -- well, actually, in this case they did.

**THE COURT:** All right. So --

**MR. HARTMAN:** PAI --

**THE COURT:** Rephrase your argument based on these facts, because I understood you to be making a broader argument, and maybe I misunderstood. And if so, I apologize.

**MR. HARTMAN:** Very well. My argument, Your Honor, is that PAI -- Petrobras America became a coconspirator in the bribery scheme by entering into amendment four with Petrobras International and Ensco knowing that the drilling services was a tainted contract procured by bribery, and that conspiracy -- not only the conspiracy, but, actually, Petrobras America's own actions subsequently caused a loss to Ensco as a result of those -- those actions when PAI used -- when Petrobras America used the bribery it already knew about at the time it entered into amendment four to purportedly terminate the drilling services contract and refused to pay the $152 million to Ensco.

15:41:30 So that's the conspiracy, Your Honor. I'll cover the last one -- the last basis for liability, and that's the tort of dishonest assistance. And I think Mr. Garcia and I are largely in agreement on this one on the elements of this tort.

15:41:46 Somebody has to have a fiduciary duty. They have to have breached that duty. The defendant in this case, Petrobras America, has to assist in the breach by playing a more-than-minimal role in it being carried out, and the defendant -- again, in this case Petrobras America's -- conduct has to be dishonest.

15:42:04 Well, in this case, the fiduciary is Mr. Padilha. Mr. Padilha's the agent of Ensco who was bribed in connection with this transaction and who paid bribes, unbeknownst to Ensco, to Mr. Cervero and Mr. Duque. A fiduciary has an ongoing duty of disclosure to his principal. Mr. Padilha has an ongoing duty of disclosure, under English law, to Ensco, and assistance in his breach of that duty can include keeping the breach secret.

15:42:36 Somebody can be liable for dishonest assistance under English law even when the assistance happens after the breach, and that -- and the question of whether someone's actions -- whether Petrobras America's actions are dishonest is determined simply under an objective standard, which is a question by -- that's answered by the fact finder.

15:42:56 If we go to the next slide, I think Mr. Gee, our English law expert, explains it quite capably, and that is that

once PAI had actual or blind-eye knowledge -- coming back to the Court's question about the level of knowledge required -- once Petrobras America had actual or blind-eye knowledge that the drilling services contract had been obtained as part of a bribery scheme involving Mr. Padilha, it could not enter into amendment four while keeping that information secret from Ensco.

15:43:27 And by doing so, Petrobras America was assisting Mr. Padilha with his continuing breach of his obligation to make full disclosure to Ensco by keeping that breach secret from Ensco. And in terms of PAI's actions in which Petrobras America took the contract from Petrobras International in exchange for millions of dollars in markups, and then purported to cancel the contract on the basis of bribery that it knew about at the time it entered into amendment four, I'd respectfully submit that those are more than sufficient for a trier of fact to conclude that Petrobras America acted dishonestly.

15:44:04 **THE COURT:** But not before amendment four.

15:44:07 **MR. HARTMAN:** No. This would be based on Petrobras America's actions in entering into amendment four and the damage that those actions thereafter caused, which was precisely the same damage [redacted] that Samsung seeks in contribution.

15:44:23 Now, to touch on one point, Mr. Garcia, counsel for Petrobras America, made a comment about there being no evidence in the record that Mr. Padilha owed fiduciary duties to Pride

[redacted] I would simply point the Court to Petrobras America's own statement of undisputed fact at paragraph 152 where Petrobras America is the one who actually puts this point in the record.

15:44:51 [redacted] So in response to counsel for Petrobras America's point, this point is in the record, and Petrobras America was the one who put it in the record.

15:45:31 Now, factually, Judge, on Petrobras's liability for dishonest assistance, I think we've covered that. So I'll move on to this point on the same damage, and that's on slide 18. I propose we start with where the parties agree and the experts agree and -- but the experts, from what I heard from Petrobras America's counsel, agree that the term "same damage" under the act should take its ordinary meaning as the same harm or same loss. In fact, that's what Petrobras America says in the response to the supplemental memorandum on English law.

15:46:11 As Mr. Gee points out, our English law expert, parties can be liable for the same damage even when their liabilities involve different theories; different rules governing causation or remoteness of loss; different measures of damages; different

categories of loss; different amounts. The question is: Ultimately, what was the damage for which Samsung was found liable or is liable, and is that the same damage Samsung seeks in contribution against Petrobras America?

15:46:40 And as Mr. Gee has testified, as we've cited in our supplement, this is actually a very easy question because we are dealing with one dishonest scheme, and what is really in dispute is when Petrobras America became a party to it. [redacted]

15:47:15 [redacted] As we've discussed, in January 2016, Petrobras America sought to terminate the drilling services contract, and they refused to pay that $152 million by claiming to have recently discovered bribery on the drilling services contract.

15:47:38 [redacted]

15:47:59 [redacted]

15:48:42 [redacted]

15:49:13 Now, while Ensco had undoubtedly suffered damage sufficient to allow it to bring a claim at the moment it signed the drilling services contract, that was not the only damage that Ensco suffered. Ensco did not suffer the $152 million loss until Petrobras America claimed, in early 2016, that the contract was tainted. It refused to pay invoices and, ultimately, [redacted]

15:49:41 In other words, Your Honor, the scheme did not cause that damage until 2016 after Petrobras America joined the scheme. And to look at it differently, what if Petrobras America had never attempted to walk away from the drilling services contract, but continued to perform through the very end? Ensco would have suffered some kind of at least nominal loss in 2008 at the time it signed the tainted contract, but it would not have suffered the $152 million loss it suffered in 2016 when PAI attempted to get out of that contract on the basis of bribery it already knew about.

15:50:18 The scheme only caused that loss in or after 2016 because that is when Petrobras America refused to pay invoices on the basis of bribery it already knew about.

15:50:33 [redacted]

15:51:17 If we go to slide 21, Your Honor, first, as I

mentioned, Petrobras America says that it cannot be the same damage [redacted] but even Petrobras America's English law expert concedes that this is not accurate. Mr. Millett, who's quoted on the top line on slide 21, says: (Reading) [redacted]

15:51:53 [redacted]

15:52:14 [redacted]

15:52:37 In other words, on slide 22, [redacted]

100

[redacted]

15:53:10 Petrobras America's expert has conceded that [redacted]

15:53:32 [redacted]

15:53:49 [redacted]

15:53:58 **THE COURT:** Could or had, or both?

15:54:00 **MR. HARTMAN:** Neither. [redacted]

15:54:03 **THE COURT:** Did it make a negative finding on either of those?

15:54:06 **MR. HARTMAN:** [redacted]

15:54:14 [redacted]

15:54:40 I'll touch on one final point in response to Petrobras America's argument on slide 23. Petrobras America also claims it can't be liable for the scheme because [redacted]

15:55:10 [redacted] Ensco's cause of action accrued, at the latest, in January 2008 when it entered into the tainted contract and that from that moment, Ensco suffered quantifiable damage. Not at that moment, not only at that moment, but from that moment. In other words, from that moment going forward, Ensco suffered damage.

15:55:36 The harm that Ensco ultimately suffered, [redacted] included the $152 million that

Petrobras America attempted to avoid paying in January 2016, well after Petrobras America joined the scheme in August of 2015.

15:55:52 I did have a number of slides, Your Honor, covering a point from Petrobras America's briefing on Ensco's awareness where Petrobras America tried to suggest that Ensco was actually aware of the scheme and, therefore, we could not recover in contribution. I was going to discuss those points until I heard Mr. Walsh's concession earlier that Ensco did not know about and was entirely innocent of the DS-5 bribery. And so on that basis, I will not cover those points and assume -- take it as read that Ensco was not aware of the bribery.

15:56:32 That leads me to one final point on their defense of *ex turpi causa*. I know Mr. Garcia decided to rest on their papers on that. What I respectfully say to the Court is that Petrobras America has not shown that there is no genuine issue of material fact, and it's entitled to judgment as a matter of law on its defense of *ex turpi causa*. That's on slide 29, Your Honor.

15:56:56 *Ex turpi causa* is an affirmative defense that Petrobras America bears the burden to prove. It relies entirely on Petrobras America's claim that it could somehow demonstrate Ensco's knowledge of the bribery scheme, and because Mr. Walsh has conceded that Ensco had no knowledge of the bribery scheme and was an innocent victim, this defense must necessarily fail.

15:57:23 In conclusion, Your Honor, to put a very fine point on it, when Petrobras America entered into that fourth amendment to the assignment agreement on August 17, 2015, it knew -- its general counsel knew; it had the indictment. They knew it was a tainted contract procured by bribery. At minimum, they had blind-eye knowledge.

15:57:42 They didn't disclose that to Ensco. They deprived, thereby, Ensco of its ability to sign an untainted contract at that time with PAI -- or Petrobras America. Petrobras America then signed amendment four with Ensco and Petrobras International. It agreed to take the DS-5 drillship from Petrobras International, which was a participant in this bribery scheme by virtue of the actions of Mr. Cervero, who negotiated and signed this contract for Petrobras International, and in exchange for that, Petrobras America got payment of all its costs from Petrobras International under this contract, plus a 1 percent markup that resulted in making millions of dollars.

15:58:21 Six months later, when oil prices drop 35 percent, it pulled the rug out from under Ensco by purporting to walk away from this contract on the basis of bribery it already knew about six months earlier when it signed amendment four. It's a case study in dishonesty on how PAI can be liable as a joint tortfeasor for joining a conspiracy to injure Ensco by unlawful means or for dishonestly assisting Mr. Padilha's continuing breach of his fiduciary duties, and the damage caused by that

scheme, after Petrobras America joined, included precisely the $152 million that Petrobras America refused to pay to Ensco when it claimed it recently discovered this bribery and attempted to cancel the contract. [redacted]

15:59:17 I respectfully submit that Petrobras America's failed to demonstrate that there is no genuine dispute of material fact, and it's entitled to judgment as a matter of law that it has no liability in contribution to Samsung.

15:59:34 **THE COURT:** Just so I'm clear, a question for both sides: The words "waiver" and "estoppel" should not be part of the Court's analysis?

15:59:45 **MR. HARTMAN:** Not on the counterclaim, Your Honor. I don't think on anything else either.

15:59:49 **THE COURT:** Is that --

15:59:51 **MR. ODELL:** I think that's right, Your Honor.

15:59:52 **THE COURT:** All right. Everybody agree with that?

15:59:55 **MR. GARCIA:** Well, actually, there is an issue of waiver with respect to the counterclaim as I explained it previously. I'll explain it.

16:00:02 **THE COURT:** All right. And your record cites that are most persuasive on the waiver issue on the counterclaim are...?

16:00:09 **MR. GARCIA:** Well, the record cites are --

16:00:12 **THE COURT:** On this narrower point. And if I'm being

repetitive, I apologize. It's a lot of information.

**MR. GARCIA:** Can I also respond to some points?

**THE COURT:** Sure.

**MR. GARCIA:** Robert Garcia for Petrobras America.

On the waiver issue, as I explained when I opened, it's PAI's position that Samsung has waived any argument of vicarious liability or attribution based on Cervero and Duque's conduct. And the relevant cites in the record are set forth, in slide 7 of our presentation.

As I explained in the opening, they've abandoned their theory that Petrobras America acted as an alter ego for the parent companies, and they abandoned the theory that Petrobras America is vicariously liable for the conduct of Cervero and Duque or should be imputed with their conduct.

And they've recognized that there's no evidence that PAI officials received any bribes in connection with the DSC, and they further admitted that when bribes were paid to Cervero and Duque, these PBSA executives were acting exclusively on behalf of other Petrobras entities and not PAI. And they further recognize that it's undisputed that PAI received no bribe from Samsung or anyone else related to the drillship.

**THE COURT:** So these are factual concessions?

**MR. GARCIA:** Yes.

**THE COURT:** All right.

**MR. GARCIA:** Yes. And today, again, I did not hear,

with respect to the counterclaim, any argument on vicarious liability or attribution. Mr. Hartman's arguments have centered only on -- on the assertion that Petrobras America learned about the bribery from the press or from an indictment in the summer of 2015, and then somehow assisted the bribery that occurred years before by continuing to perform the contract and signing on to the amendment No. 4, which is, as I will explain, just an assignment of -- of Petrobras International -- International's rights and obligations under the DSC to Petrobras America.

16:02:45 Now, if I may, I'd like to respond to some of the points that Mr. Hartman made.

16:02:54 **THE COURT:** Sure.

16:02:56 **MR. GARCIA:** First, I want to clarify -- and I'll go into it a little bit in more depth. Petrobras America has not conceded that Pride was unaware of the bribery scheme. Mr. Walsh did not concede that fact, and he did not intend to -- to assert that, and I will --

16:03:08 **THE COURT:** It's a double negative, at least. Can you state it positively?

16:03:11 **MR. GARCIA:** Okay. Yes. Petrobras America -- it is PAI -- Petrobras America's position, based on Samsung's own admissions, that Petrobras -- that Pride knew about the scheme from the beginning. In fact, based on Samsung's own admissions, which is -- has not retracted, [redacted]

[redacted]. Samsung has -- Samsung's corporate representative, in his deposition, admitted that all the facts set forth [redacted] are true and accurate. Samsung again confirmed those facts in response to Petrobras America's statement of undisputed facts.

So -- and I still have not heard any statement from Samsung taking back those admissions, which is that [redacted].

Now, I want to -- I want to address this point by Mr. Hartman, that somehow Petrobras America deprived Samsung of an opportunity -- no, deprived Pride of an opportunity to enter into an untainted contract. Now, as I indicated previously, there is no evidence that Pride could have entered into another contract at that time. In fact, the evidence -- there is no --

**THE COURT:** What?

**MR. GARCIA:** There is no evidence --

16:05:24 **THE COURT:** "Could" as in having the ability to?

16:05:27 **MR. GARCIA:** Having the opportunity.

16:05:28 **THE COURT:** Opportunity.

16:05:29 **MR. GARCIA:** Yes. There is no evidence that it had the opportunity to enter into another contract.

16:05:33 **THE COURT:** Thank you.

16:05:34 **MR. GARCIA:** And the evidence reflects that it would have been less favorable if it would have been able to enter into the contract. Now, Samsung has tried to suggest that Petrobras America harbored some malicious intent by delaying the termination until January of '16, but as I pointed out earlier, it is undisputed that Petrobras America had no work from the -- for the DS-5 as of April 2015. No work whatsoever.

16:06:07 It's not like it obtained any additional rights or benefits from having retained the DSC during those months. The amendment No. 4 on which Samsung relies heavily on, that was merely an assignment of Braspetro's rights and obligations to Petrobras America. It did not alter, affect, or impact in any way Pride's rights -- rights or obligations under the DSC.

16:06:32 Had Petrobras America not entered into amendment No. 4, what would have happened? Well, the DSC would have referred it back to Pride and Petrobras International. Pride wouldn't have had the option of entering into another contract. It would have still been stuck with the DSC. It would have still -- and Petrobras International would have had to pay for

the daily rate of $430,000 a day to use the DS-5 even though it had no use for it.

16:07:07 I heard Mr. Hartman also refer to the fact that amendment No. 4 contained provisions which entitled Petrobras America to reimbursement of certain costs and to an administration fee, but what Mr. Hartman omitted was that those rights or obligations was between -- were between Petrobras International and Petrobras America. It did not impact or benefit or affect Pride.

16:07:38 And what -- what -- and what -- what Mr. Hartman has omitted, that in continuing to perform the drilling services contract, what Petrobras America did was actually reduce Pride's damages. Now, Petrobras America's performance consisted of only paying invoices at that time for a drillship it was not using, $430,000 a day. That's about -- that's over $10 million a month. So by continuing to perform the contract, Petrobras America reduced Pride's damages by over $10 million a month.

16:08:23 Now, I want to address the point of disclosure. As I indicated previously, it is immaterial on what date Petrobras America learned, but let's -- let's -- I want to touch on some of these slides that --

16:08:39 **THE COURT:** Petrobras America...?

16:08:41 **MR. GARCIA:** When Petrobras America learned of the bribe. It's immaterial. Whether it's July, August, October 2015, none of -- it did not constitute assistance, it

did not constitute common design, and it resulted in no harm. And I will address also, as well, the point of harm, but I want to get into the issue of disclosure.

16:09:28 Now, in slide 5 of Samsung's presentation, it includes a timeline, and it lists a number of dates -- number of dates which purportedly -- which reflect, purportedly, when PAI should have learned about the bribery scheme. Now, pretty much a lot of these, right, refer to press reports or public indictments.

16:09:52 Now, to the extent anything was public and that Petrobras America should be imputed with knowledge based on the fact that this knowledge was known in the press, that's a self-defeating argument because to the extent that Petrobras America should be imputed with knowledge by virtue of any misconduct being reported in the press, Pride should be also imputed with that knowledge.

16:10:15 Now, what this timeline omits is what happened -- what happened in May and June of 2015.

16:10:44 In May 2015, Petrobras SA concluded its audit report. In that audit, in that report, Petrobras America -- Petrobras SA stated that -- that an explanation should be sought from Pride for Padilha's involvement in the procurement of the DSC and considered taking steps to terminate the DSC. This -- this audit report became public, and Pride obtained a copy of it. Thus, on June 18th, 2015, Pride responded to that audit denying the existence of any collusion or any misconduct on the part of

bribe -- Pride.

**THE COURT:** I'm sorry. June of 2018?

**MR. GARCIA:** I'm sorry. June 18, 2015.

**THE COURT:** And the date of the audit?

**MR. GARCIA:** No. The date -- the -- the -- the audit report was issued in May 2015.

**THE COURT:** Okay.

**MR. GARCIA:** That's Exhibit --

**THE COURT:** So A month later?

**MR. GARCIA:** That's Exhibit 51 of the -- of the Walsh affidavit.

**THE COURT:** Yeah. That's just -- so a month later, there was a response?

**MR. GARCIA:** A month later -- yeah. About a month -- a few weeks later, there was a response from Pride denying misconduct. Thus, by June 2015 at the latest, Pride knew that PBSA was seeking explanation for Padilha's involvement in the procurement of the DSC and that the -- depending on the answers or information it received, it would consider -- Braspetro and Petrobras America would consider terminating the DSC.

In light of those discussions and Pride's denials, it's difficult to understand how Pride -- PAI could be liable for not disclosing the indictment.

Now, on disclosure, I want to point out some things.

16:12:31 First of all, Samsung has cited no authority under English law for the proposition that in an arm's length transaction, like the DSC, a party has a duty to inform its counterparty that the contract was procured by bribery, whereas here the contract imposes no such duty. And there is no authority. Mr. Millett has affirmed that. Mr. Gee did not dispute it.

16:12:54 Now, in his deposition he cited some cases -- some cases that could -- that a duty arose out of a fiduciary relationship, but he was unable to cite any authority for the proposition that a party in an arm's length transaction has -- has a duty to disclose any misconduct regarding the procurement of the DSC.

16:13:19 Furthermore, a failure to disclose is -- to disclose is not enough. The test in *Fish & Fish*, as I explained previously, is assistance, common design, and harm. Now, the -- and I want -- I want to zero in on the standard because in -- in using the term "scheme," Samsung confuses the issue, and we have to go back to the actual elements for establishing joint liability.

16:13:51 And the key quote is in *Fish & Fish*, and it's in relation to the third element, and it's reflected in slide 3. As stated in *Fish & Fish*, the defendant must have assisted in and been a party to a common design to commit the act that constituted or gave rise to the tort. What Samsung has to

establish is that somehow Petrobras America assisted in the tort -- in the act that gave rise to the tort -- in the act -- the very act that gave rise to the tort.

16:14:24 Now, bribery is the payment -- is a secret payment. So what Samsung has to establish is that Petrobras America has assisted the payment -- the secret payment. They've recognized that Petrobras America took no part in the bribery. All they did was, after having learned of the scheme years later -- now, remember, the bribery -- the bribery scheme is not an ongoing scheme. The bribery -- the purpose of the bribery, as Samsung recognized in its deferred prosecution agreement with the DOJ, the purpose of the scream [sic] was to procure the signing of the DSC.

16:15:05 In 2007, Samsung agreed to pay the commissions to procure the signing of the DSC. The DSC was signed in January 2008, and then the commissions were paid from March 2008 through April 2011. It's undisputed that Pride -- that PAI was not even involved; was a complete stranger to those dealings.

16:15:35 And performance -- or accepting an assignment of the DSC could not have furthered that in any way because performance, as I explained, of the DSC could not cause any harm. There's no -- there's no evidence that the terms of the DSC were harmful to Pride. On the contrary, every day that Pride -- that PAI performed the DSC, it reduced the damages suffered by Pride.

16:16:02 Now, on the same damage issue, it's never been -- PAI has -- Petrobras America has never asserted -- [redacted]

16:16:46 [redacted]

16:17:22 Now, as I explained previously, PAI -- Pride couldn't have had a claim for those damages against Petrobras America -- against Petrobras America. It would have -- if Petrobras America had improperly avoided the contract, they would have had a claim for breach of contract. The two claim -- the two damages are exclusive of each other, and I want to reiterate a point that I made previously because Mr. Hartman did not respond to it.

16:17:49 Their theory is that PAI harmed Pride by continuing to perform the contract. [redacted]

16:18:06 And Mr. Hartman has pointed out that, somehow, Petrobras America deprived Pride of an opportunity to enter into an untainted contract. Again, as I stated before, there's no evidence to reflect that Pride could have entered into a contract. The evidence actually reflects that it couldn't have -- and that it would have entered into a less favorable contract because the rates that were set forth in the DSC were above market.

16:18:41 Now, let me -- if I could have one second.

16:18:43 **THE COURT:** Sure.

16:19:10 **MR. GARCIA:** Okay. I'm going to conclude.

16:19:12 **THE COURT:** Good.

16:19:12 **MR. GARCIA:** As I explained, there's no dispute about the applicable standard for joint liability. Those elements are set forth in slide 3. Samsung must show that PAI assisted in and was a party to a common design to commit the act that gave rise to the tort and that PAI caused some loss from the date that PAI purportedly assisted the tort.

16:19:32 There's no dispute about the elements of the torts either. Those are set forth in slides 4 through 6, and there's no dispute about the material facts. There's no dispute that

from 2008 to 2011, Samsung paid bribes to Pride's agent and two directors of Petrobras SA, and that the purpose of those bribes was to procure the signing of the DSC.

There's no dispute that Petrobras America's separate and distinct from Braspetro and Petrobras SA. There's no dispute that Petrobras America was not involved in the procurement of the DSC, and there's no dispute that there's no evidence that Petrobras -- sorry for the double negative.

**THE COURT:** It's all right. I'm keeping up.

**MR. GARCIA:** It's undisputed that there's no evidence that Petrobras America officials received no bribes in connection -- well, in connection with the DSC. I did it again.

And there's no dispute that when the bribes were paid by Samsung to Cervero and Duque, Cervero and Duque were not acting for PAI. Petrobras America received no bribe from Samsung or anyone else related to the drillship. Petrobras America was unaware of any bribery until at least July 2015 when it read -- purportedly read about it in the papers.

And as I explained before, if Petrobras America read about it in the papers or should be imputed with that knowledge, so should Pride.

**THE COURT:** All right. Did you want a very, very brief response, or are we done?

**MR. HARTMAN:** Yes, Your Honor.

**THE COURT:** Okay. Brief is key.

16:21:09 **MR. HARTMAN:** Yes, Judge. To the Court's earlier question, we're not arguing that Mr. Cervero or Mr. Duque's conduct in 2008 is the basis for Petrobras America's liability on the counterclaim. That liability comes from joining the scheme in 2015.

16:21:23 Now, Mr. Garcia says there was no evidence that Pride had the opportunity to enter into another contract at the time of amendment four. That is wrong and misapprehends our counterclaim. The evidence is that, in fact, it entered into a contract with Petrobras America, amendment four. That is what it did.

16:21:42 It entered into a tainted contract with Petrobras America because Petrobras America didn't disclose to Ensco that it knew about this bribery in July of 2015 -- August 2015 before it entered into the contract.

16:21:55 Now, as for Ensco's alleged knowledge of this bribery, the record will reflect what Mr. Walsh said earlier in argument, but what I heard him say is that there's no dispute that Ensco had no knowledge of this bribery, and I think -- I won't go -- belabor it at this point, Your Honor, but in our brief, I think we cover in depth that Ensco is not aware of this bribery. PAI has acknowledged, [redacted] that Ensco was not aware of this bribery.

16:22:28 [redacted]

[redacted]

16:23:00 I think, really, a last point I'll say is that Petrobras America started by telling the Court that the parties' English law experts agree in all material respects, and in that case, Petrobras America must agree with Mr. Gee that by joining the conspiracy after the DSC was signed, it can, nonetheless, be liable for the harm resulting from that conspiracy after that date. [redacted]

16:23:37 [redacted]

That is the same conspiracy that caused harm in 2016 when, after Petrobras America joined it in 2015 by signing the drilling services contract, amendment four, with knowledge of it, they then purported to get out of that contract on that basis claiming they didn't know about it, [redacted]

16:24:14 And while Mr. Garcia has said that, according to the experts, a party does not have a general duty to disclose, under the facts of the case, the English law experts have testified that you become a party to a dishonest scheme by not disclosing. Even if you don't have a general commercial duty to disclose in an arm's length transaction, you become a party to a dishonest scheme under the facts of this case by not disclosing.

16:24:43 Your Honor, unless the Court has questions, that's all I have.

16:24:46 **THE COURT:** I think we've flogged the horse.

16:24:50 Did you want one point?

16:24:52 **MR. GARCIA:** Just one small point -- a couple of small points. First, I want to emphasize that the question isn't joining a scheme. The question is assisting in the act that gave rise to the tort. The scheme is not a tort. The tort here is bribery, dishonest assistance, or conspiracy to injure.

16:25:09 Now, I heard Mr. Hartman say that what PAI deprived Ensco of was an untainted contract with PAI itself, and that argument basically amounts to saying that, in effect, that Petrobras America had a duty, after having learned of the bribery, to give Pride the option of entering into a ratified nonterminable contract with Petrobras America.

16:25:36 **THE COURT:** That would be different in price?

16:25:42 **MR. GARCIA:** Different in price?

16:25:43 **THE COURT:** Different in price.

16:25:45 **MR. GARCIA:** Well, there was -- I don't understand what the Court --

16:25:47 **THE COURT:** Okay. This new contract that there would have been an option to enter, what do you understand to be the difference between the two contracts?

16:25:59 **MR. GARCIA:** Well, the evidence reflects that if -- if Petrobras -- if Pride would have tried to enter into a new contract, it would have been less favorable to Pride.

16:26:08 **THE COURT:** And that's -- for the present purposes, that's enough.

16:26:13 **MR. GARCIA:** And the experts -- and Mr. Millett testified as an English -- as an expert on English law that when a party to a contract learns that it was procured by bribery, it is entitled to either ratify the contract, continue performing, or declare the contract void. And what they're -- what Samsung is -- is arguing, effectively, by saying that Petrobras America had a duty to disclose the bribery and give Pride the opportunity to perform the contract without the taint, is that Petrobras America was -- was obligated to give up its right to ratify the contract, and there's no support for that.

16:26:55 Now, there is no support for that authority -- for that point proposition --

16:26:59 **THE COURT:** Is there a right of ratification?

16:27:02 **MR. GARCIA:** Under English law, according to Mr. Millett, yes.

16:27:05 **THE COURT:** Okay.

16:27:07 **MR. GARCIA:** Now, we have -- we can't forget --

16:27:10 **THE COURT:** Would the choice of law difference matter there?

16:27:14 **MR. GARCIA:** Well --

16:27:15 **THE COURT:** If it wasn't English law --

16:27:17 **MR. GARCIA:** Well, that's --

16:27:18 **THE COURT:** -- would there be a right to ratification?

16:27:21 **MR. GARCIA:** That's not relevant for this point.

16:27:23 **THE COURT:** All right.

16:27:27 **MR. GARCIA:** Now --

16:27:28 **THE COURT:** That's a nice way of saying it's a dumb question. Go ahead.

16:27:34 **MR. GARCIA:** I will move on.

16:27:36 Now -- but this is all immaterial because if -- if -- if Petrobras America had not signed amendment four, the contract would have reverted back to Braspetro and Pride, and Pride would have still been stuck with the same contract. Now, Mr. Hartman said that its expert has opined that the facts are sufficient and, actually, he has not. He doesn't understand the facts.

16:28:11 He has -- for example, in his reports, he hasn't -- he's actually said that that's an issue for the Court to decide. He hasn't really analyzed the facts or Samsung's theory of the case. If the Court will review, it's his fourth report,

which is the one report which was submitted by Samsung after it changed its theory.

16:28:32 In that report, Mr. Gee doesn't analyze Samsung's new theory. What Mr. Gee posits are hypothetical situations, and those hypothetical situations are wrong. For example, in slide 17, Samsung is pointing out that he said that PAI could not have negotiated or agreed to extend the term of the DSC. Well, PAI never did. PAI never extended the term of the DSC.

16:29:01 And they're saying -- he says that PAI could not have made or received payments. Well, Mr. -- Mr. -- Mr. Millett disputes that PAI could not have made payments, and the issue of whether Petrobras America received payments is -- it's just not -- it's a nonissue because Petrobras America received no payments from Pride under the DSC.

16:29:27 Petrobras America's only -- Petrobras America's performance consisted of only making payments to Pride.

16:29:38 Now, on this last point about Samsung -- [redacted]

16:29:53 **THE COURT:** As part of the settlement --

16:29:55 **MR. GARCIA:** As part of the settlement.

16:29:57 Now, understandably, Petrobras America was unaware of whether or not Pride was a conspirator in the bribery scheme because Petrobras America took no part in the bribery scheme as Mr. -- Samsung has recognized.

16:30:13 Now, after that settlement -- after that settlement, Samsung entered into [redacted] Samsung's corporate representative reaffirmed those facts in his deposition in this very same case, and in -- in -- Samsung relied on those statements in response to Petrobras America's statement of undisputed facts.

16:30:57 **THE COURT:** I think I have now heard enough.

16:31:01 **MR. GARCIA:** Okay.

16:31:01 **THE COURT:** I will get you an opinion as quickly as I can. I'm going to probably issue it in parts and carve out aspects that might make it possible for a renewed effort at just resolving the rest, but if I can define, maybe, the upside and the downside, that would help guide the parties to resolve some of the details in between.

16:31:34 That's how I plan to proceed. If that makes no sense, you should let me know now.

16:31:40 **MR. ODELL:** I think it makes sense to -- to us, Your Honor, or at least we understand the Court's intention.

16:31:45 **THE COURT:** Okay. Good.

16:31:48 **MR. WALSH:** Yeah. We do as well, Your Honor.

16:31:49 **THE COURT:** Good.

16:31:49 All right. Well, this has been very helpful and interesting. I have learned a lot. I'm not sure what use I will make of it after this case, but I've learned a lot. Thank you all.

16:32:02 **MR. WALSH:** Thank you, Your Honor.

16:32:02 **MR. ODELL:** Thank you, Your Honor. Appreciate it.

16:32:05 **THE COURT:** Have safe travels back to where you came from.

16:32:07 *(Proceedings concluded at 4:32 p.m.)*

*-o0o-*

I certify that the foregoing is a correct transcript from the record of proceedings in the above matter.

Date: July 31, 2023

*/s/ Heather Alcaraz*
Signature of Court Reporter

I certify that the foregoing is a true and correct copy of the transcript originally filed with the clerk of court on July 31, 2023, incorporating redactions or personal identifiers requested by the following parties: Plaintiff and Defendant, in accordance with Judicial Conference policy. Redacted characters appear as a black box in the transcript.

**MR. GARCIA: [46]** 51/19 56/10 58/23 58/25 59/4 59/6 64/5 70/5 72/13 74/1 78/14 104/19 104/24 105/2 105/4 105/23 105/25 106/13 106/20 107/25 108/2 108/4 108/7 109/23 111/3 111/5 111/8 111/10 111/14 115/15 115/17 116/10 119/12 119/24 120/1 120/6 120/11 120/24 121/2 121/5 121/7 121/9 121/11 121/14 122/21 123/12
**MR. HARTMAN: [22]** 78/23 79/1 79/3 81/1 81/5 81/8 86/20 86/22 87/15 87/20 91/24 92/1 92/3 92/8 92/11 92/15 94/18 100/21 100/25 104/14 116/24 117/1
**MR. MCCOLLUM: [2]** 4/6 4/12
**MR. ODELL: [45]** 3/9 4/2 4/16 4/21 4/23 25/23 26/4 26/8 26/11 26/17 26/19 26/21 26/23 28/1 28/23 30/1 31/20 31/23 32/1 32/3 33/2 33/5 36/17 37/13 37/16 37/19 37/23 38/10 39/25 42/11 43/24 44/17 45/11 45/13 45/15 46/12 47/9 48/10 51/15 51/17 52/11 54/18 104/17 123/21 124/6
**MR. WALSH: [55]** 3/5 3/16 3/21 3/24 5/2 5/5 5/8 5/13 5/17 6/9 6/11 6/14 6/17 6/23 7/2 7/13 7/17 7/19 8/4 10/10 10/13 11/17 13/11 13/14 13/17 13/19 15/4 15/19 16/14 17/14 19/23 20/8 20/10 20/14 20/16 20/18 20/22 21/18 21/21 22/21 22/25 23/8 23/10 24/5 24/10 25/10 25/15 25/20 26/20 48/11 54/22 55/1 55/4 123/24 124/5
**THE COURT: [165]**
**THE REPORTER: [1]** 78/13

**$**

**$10 [2]** 109/15 109/17
**$10 million [2]** 109/15 109/17
**$100 [1]** 81/25
**$100 million [1]** 81/25
**$152 [11]** 80/7 82/10 83/8 89/15 90/4 92/25 96/17 97/22 98/8 101/25 104/2
**$152 million [11]** 80/7 82/10 83/8 89/15 90/4 92/25 96/17 97/22 98/8 101/25 104/2
**$410,000 [1]** 90/14
**$430,000 [3]** 69/20 109/1 109/15
**$500,000 [3]** 12/19 15/9 24/12
**$60 [1]** 51/6
**$60 million [1]** 51/6
**$600 [2]** 6/2 50/19
**$600 million [1]** 50/19

**'**

**'16 [1]** 108/11
**'led [1]** 29/20

**-**

**-- additional [1]** 78/11
**-- at [1]** 40/25
**-- Braspetro [1]** 111/20
**-- he's [1]** 121/23
**-- if [1]** 121/16
**-- or [1]** 36/11
**-- pardon [1]** 30/8
**-- Samsung's [1]** 107/8
**-- the [1]** 63/21
**-- to [1]** 106/17
**-70 [1]** 48/15
**-oOo [1]** 124/10

**/**

**/s [1]** 124/15

**1**

**1 percent [2]** 81/25 103/17
**10 [4]** 13/9 54/1 86/8 87/22
**100 percent [1]** 58/24
**10000 [6]** 16/25 17/1 18/10 18/10 22/3 22/3
**101 [1]** 1/16
**10178 [1]** 1/17
**10th [1]** 59/17
**11 [3]** 49/15 54/1 86/11
**12 [3]** 54/6 86/23 88/21
**14 [1]** 91/1
**1410 [1]** 1/5
**15 [2]** 53/12 91/20
**15 -- 16 -- probably [1]** 40/4
**15 percent [1]** 17/15
**15-page [1]** 59/16
**152 [1]** 95/4
**16 [1]** 53/25
**17 [3]** 81/13 103/3 122/6
**17th [1]** 83/17
**18 [2]** 95/15 111/3
**184 [1]** 79/20
**18th [1]** 110/24
**19 [1]** 54/3
**1979 [1]** 61/18
**1:08 [1]** 1/7
**1:30 -- or [1]** 51/21

**2**

**20-Fs [1]** 45/24
**2002 [1]** 36/23
**2005 [1]** 51/8
**2006 [1]** 51/8
**2007 [8]** 51/8 62/19 65/9 75/2 75/5 75/6 75/8 113/14
**2008 [15]** 14/14 30/24 42/14 59/20 62/19 65/10 75/3 82/17 83/11 98/7 101/19

## 2

**2008... [4]** 113/16 113/16 116/1 117/3
**2011 [10]** 7/4 7/21 12/21 14/17 65/10 75/4 75/5 75/6 113/17 116/1
**2014 [3]** 70/25 70/25 84/6
**2014 -- 2015 [1]** 16/20
**2015 [49]** 16/20 16/23 18/13 19/12 19/15 25/2 40/24 42/3 59/12 62/17 64/7 64/12 65/18 66/12 69/25 71/3 71/6 71/18 71/23 73/10 75/9 80/1 80/2 80/4 81/10 81/13 83/17 84/8 84/8 85/19 86/6 86/7 90/11 90/13 102/3 103/3 106/5 108/13 109/25 110/17 110/18 110/24 111/3 111/6 111/16 116/17 117/5 117/14 118/20
**2015 -- August 2015 [1]** 117/14
**2016 [13]** 25/3 71/16 83/5 86/5 90/11 90/14 96/16 97/23 98/2 98/9 98/11 102/1 118/19
**2017 [1]** 25/3
**2018 [1]** 111/2
**2019 [1]** 19/17
**2021 [1]** 57/7
**2023 [4]** 1/11 36/2 124/14 124/19
**21 [2]** 98/25 99/6
**212 [2]** 1/17 54/6
**215 [1]** 79/20
**22 [1]** 99/22
**23 [2]** 33/19 101/10
**232 [1]** 53/11
**232 -- or [1]** 53/11
**233 [1]** 53/12
**24 [1]** 1/11
**2401 [1]** 1/25
**25 [1]** 52/24
**250-5584 [1]** 2/6
**258 [1]** 48/15
**26 [1]** 53/7
**269 [1]** 48/15
**28 [1]** 53/15
**29 [1]** 102/18
**2:15 [1]** 51/24
**2:30 [1]** 51/21
**2:30 resumption [1]** 51/22
**2:33 [1]** 51/24

## 3

**30 [1]** 53/10
**30 percent [3]** 17/10 17/12 24/24
**31 [2]** 124/14 124/19
**32 [1]** 80/12
**331-6778 [1]** 1/21
**34 [1]** 53/16
**35 percent [2]** 90/10 103/18
**368 [1]** 35/10
**3800 [1]** 1/20
**388 [1]** 33/17
**389 [1]** 33/17
**390 [1]** 34/19

## 4

**4000 [1]** 1/24
**41 [1]** 61/9
**430,000 [1]** 69/23
**44 [1]** 54/8
**44.1 [1]** 61/9
**4:19-CV-1410 [1]** 1/5
**4:32 [1]** 124/9

## 5

**503 [1]** 48/15
**51 [2]** 55/24 111/10
**515 [1]** 2/5
**55 [2]** 63/2 71/8
**5584 [1]** 2/6
**56 [1]** 61/14
**576-2401 [1]** 1/25

## 6

**60 [1]** 63/2
**600 [1]** 9/3
**6000 [1]** 1/17
**67 [1]** 41/2
**6778 [1]** 1/21
**68 [1]** 42/12
**696-6000 [1]** 1/17

## 7

**70 [1]** 48/15
**700 [2]** 1/24 50/22
**713 [2]** 1/25 2/6
**77002 [2]** 1/25 2/5
**77010 [1]** 1/20
**7th [3]** 40/24 42/3 85/2

## 8

**8004 [1]** 2/5
**832 [1]** 1/21

## 9

**909 [1]** 1/20
**99 [1]** 45/14

## A

**abandon [2]** 45/16 45/16
**abandoned [6]** 45/5 46/15 55/20 58/11 105/10 105/12
**abandoning [1]** 46/5
**ability [4]** 21/24 81/18 103/8 108/1
**able [2]** 7/7 108/8
**about -- that's [1]** 109/15
**above [4]** 32/10 71/7 115/12 124/12
**absence [3]** 38/8 43/22 61/23
**abstract [1]** 33/24
**absurd [1]** 70/17
**accept [9]** 11/1 17/2 19/19 19/21 21/17 34/21 49/22 51/1 65/15
**acceptance [1]** 65/12
**accepted [1]** 57/20
**accepting [6]** 57/11 66/13 66/17 66/20 84/10 113/19

**A**


**accessory [2]** 72/1 87/6
**accord [1]** 21/2
**accordance [1]** 124/21
**according [11]** 30/8 31/17 31/18 36/8 36/11 39/22 42/20 64/4 78/4 119/1 120/24
**Accordingly [4]** 67/3 67/17 68/20 71/10
**account [2]** 25/1 77/24
**accrued [1]** 101/19
**accurate [3]** 9/18 99/5 107/10
**accused [1]** 42/17
**achieve [1]** 91/10
**acknowledge [1]** 15/24
**acknowledged [4]** 65/16 67/14 70/6 117/22
**acquire [1]** 52/21
**acquired [2]** 17/23 18/1
**acquiring [1]** 53/13
**acronyms [1]** 6/8
**across [1]** 17/17
**act [30]** 14/11 28/9 29/2 29/7 35/1 47/16 61/18 61/19 62/2 63/6 63/10 63/12 63/14 63/17 63/19 63/22 64/15 76/4 79/24 80/13 87/1 88/24 92/6 95/19 112/24 113/2 113/3 113/3 115/20 119/14
**act -- the [1]** 113/3
**acted [6]** 57/8 60/12 72/15 74/9 94/16 105/11
**acting [14]** 21/2 21/3 24/2 24/6 24/8 55/19 57/21 58/21 59/1 65/22 66/14 79/15 105/18 116/15
**action [9]** 1/5 39/4 73/1 73/5 73/15 91/3 91/19 91/23 101/18
**actions [11]** 45/8 46/10 90/17 92/21 92/22 93/20 93/21 94/10 94/19 94/20
103/13
**active [1]** 73/2
**activities [2]** 20/19 20/19
**acts [1]** 87/10
**actual [11]** 81/3 81/13 82/3 83/17 87/20 87/24 88/14 92/5 94/1 94/3 112/19
**actually [26]** 23/20 25/1 26/17 31/23 40/3 50/21 54/22 58/6 69/17 75/19 86/20 87/4 87/22 88/13 89/1 91/4 92/8 92/20 95/4 96/6 102/6 104/19 109/12 115/9 121/20 121/23
**addition [1]** 78/10
**additional [5]** 65/3 74/1 78/11 78/15 108/14
**Additionally [2]** 32/25 71/24
**address [12]** 10/6 13/1 16/15 17/9 24/21 25/16 48/16 48/17 50/9 107/18 109/18 110/2
**addressed [2]** 23/3 73/8
**addresses [3]** 29/16 40/7 54/24
**administration [1]** 109/6
**admissible [1]** 74/17
**admissions [3]** 106/22 106/23 107/13
**admitted [4]** 56/16 70/25 105/17 107/9
**admitting [1]** 83/12
**adopt [1]** 9/6
**advantage [2]** 42/25 43/4
**adverse [4]** 23/1 24/9 45/1 45/17
**Adviser [1]** 41/10
**affect [3]** 67/8 108/18 109/9
**affected [1]** 28/8
**affidavit [5]** 10/17 44/4 44/7 55/23 111/11
**affirm [1]** 66/15
**affirmative [1]** 102/20
**affirmed [1]** 112/6
**Africa [1]** 30/25
**after [31]** 18/1 23/14 36/19 59/12 59/12 66/5 66/11 69/23 70/8 72/8 73/10 75/14 79/10 79/18 82/8 82/9 83/17 93/19 98/2 98/11 102/2 104/1 113/8 118/11 118/12 118/19 119/20 122/1 123/1 123/1 124/3
**afternoon [4]** 3/2 3/5 3/9 56/10
**again [34]** 8/5 8/17 9/2 9/7 10/4 10/12 12/6 14/13 15/6 16/21 17/8 21/7 22/2 22/8 23/21 23/25 24/15 24/18 25/3 25/3 48/11 48/13 49/11 49/15 51/9 58/14 85/8 88/21 88/23 93/9 105/25 107/10 115/7 116/12
**against [14]** 50/10 50/10 62/18 63/17 70/1 70/15 70/19 77/6 77/9 77/22 78/3 96/4 114/19 114/20
**agent [7]** 23/1 42/23 65/6 65/8 85/10 93/12 116/1
**agent-principal [1]** 23/1
**agents [1]** 57/21
**ago [1]** 23/2
**agree [18]** 4/20 4/22 27/2 46/13 60/22 61/3 61/16 63/23 72/1 76/9 76/12 79/23 95/16 95/17 95/18 104/18 118/9 118/10
**agreed [6]** 7/22 70/16 83/23 103/11 113/14 122/7
**agreeing [1]** 81/21
**agreement [32]** 13/22 23/13 33/9 33/23 34/25 35/13 35/24 39/24 43/9 53/13 56/1 56/2 56/3 56/5 65/8 73/15 75/2 82/24 82/24 83/13 83/14 84/1 87/7 87/16 87/17 91/3 91/8 92/4 92/5 93/4

**A**

**agreement... [2]** 103/3 113/11
**agrees [1]** 26/9
**ahead [8]** 3/3 25/21 26/7 31/8 51/25 52/10 78/22 121/13
**aim [1]** 91/12
**akin [3]** 73/3 74/7 78/17
**Albuquerque [22]** 10/11 10/13 10/15 11/2 12/12 23/21 31/10 31/13 32/8 32/21 33/20 34/2 35/11 36/3 36/9 39/11 41/1 41/3 41/9 49/16 49/21 54/7
**Albuquerque's [7]** 10/23 11/9 33/6 33/17 41/18 42/13 49/14
**Alcaraz [2]** 2/4 124/15
**allegation [3]** 47/9 73/8 73/9
**allegations [4]** 66/1 66/9 66/18 66/19
**alleged [18]** 5/23 27/6 27/7 27/20 28/11 29/20 37/14 41/15 64/20 66/22 66/24 67/18 72/17 73/17 75/4 75/21 78/15 117/16
**allegedly [3]** 71/22 71/25 84/10
**alleges [3]** 64/16 66/11 72/21
**alleging [2]** 78/1 78/2
**allow [1]** 97/20
**along [1]** 26/5
**already [19]** 12/10 17/19 18/1 21/9 24/16 41/25 56/11 67/9 71/21 72/10 73/8 85/6 89/14 89/20 90/20 92/23 98/10 98/13 103/20
**alter [6]** 57/8 59/22 60/13 67/8 105/11 108/18
**alternatives [1]** 79/13
**although [5]** 4/18 36/21 44/1 46/23 47/3
**always [3]** 8/8 10/18 39/13
**amended [4]** 50/18 82/24 85/17 85/21
**amendment [40]** 33/9 33/23 34/25 35/13 39/23 39/23 43/9 43/9 43/15 79/17 81/10 81/10 81/13 81/20 82/3 83/16 83/21 86/8 89/4 89/6 89/12 89/23 89/25 92/17 92/24 94/6 94/14 94/17 94/19 103/2 103/10 103/21 106/7 108/16 108/20 109/4 117/8 117/10 118/21 121/16
**amendments [2]** 8/21 83/14
**AMERICA [272]**
**America -- against [1]** 114/20
**America -- and [1]** 34/17
**America -- it [1]** 106/20
**America -- Petrobras [1]** 110/19
**America's [62]** 16/10 27/1 27/9 27/22 30/3 30/9 30/22 33/13 36/11 38/2 38/3 42/4 52/23 57/18 58/1 58/10 58/13 59/7 59/25 60/4 60/7 62/14 64/10 66/2 68/19 68/22 69/13 69/17 69/19 70/20 72/8 72/17 73/20 75/24 76/5 76/6 78/5 78/19 82/2 85/21 86/11 92/20 93/9 93/21 94/19 95/3 95/11 95/18 99/4 100/5 101/10 102/5 102/22 104/7 106/21 107/11 109/13 116/4 117/3 122/15 122/15 123/9
**among [2]** 43/23 86/18
**amount [2]** 8/17 16/4
**amounts [7]** 48/21 49/1 49/2 50/13 80/10 96/1 119/19
**analogize [1]** 69/12
**analogy [1]** 69/14
**analysis [5]** 15/24 27/6 32/10 38/13 104/13
**analyze [1]** 122/3
**analyzed [1]** 121/24
**Angola [20]** 7/5 11/23 11/23 11/25 12/3 12/3 17/19 17/20 21/22 30/25 31/1 31/3 31/6 31/14 31/19 32/2 32/5 36/6 36/6 38/17
**another [18]** 10/20 16/25 17/1 19/12 20/24 23/22 23/23 32/16 40/16 72/25 73/15 77/25 84/24 91/5 107/22 108/5 108/23 117/7
**answer [10]** 14/6 34/5 34/8 34/23 35/4 35/17 39/12 44/13 52/23 53/6
**answered [2]** 25/13 93/23
**answers [2]** 16/9 111/19
**anticipated [1]** 34/3
**any -- is [1]** 43/20
**anymore [2]** 37/3 37/6
**anyone [3]** 58/5 105/21 116/16
**anything [5]** 4/1 39/13 92/6 104/15 110/9
**anyway [1]** 43/15
**anywhere [2]** 17/14 39/21
**Anza [7]** 27/11 28/25 29/11 29/18 32/17 36/15 36/24
**Anza's [1]** 9/16
**apologize [3]** 45/18 92/14 105/1
**apparent [1]** 21/6
**apparently [1]** 84/13
**appear [2]** 60/3 124/22
**appearances [3]** 1/12 2/1 3/3
**appears [2]** 8/20 62/21
**Apple [1]** 19/25
**applicability [1]** 61/12
**applicable [3]** 62/22 79/23 115/18
**applied [1]** 16/5

**A**

**applies [3]** 8/25 44/24 55/12
**apply [2]** 37/4 45/17
**apportion [3]** 9/6 16/5 40/21
**Appreciate [1]** 124/6
**approach [3]** 25/24 36/1 78/23
**approached [1]** 42/22
**appropriate [2]** 14/10 61/15
**approval [4]** 12/16 23/17 33/21 53/17
**approvals [1]** 12/9
**approve [1]** 21/3
**approved [2]** 17/22 53/14
**approximately [1]** 69/23
**April [9]** 36/2 65/10 71/3 71/18 75/4 75/5 75/6 108/13 113/17
**April 2011 [5]** 65/10 75/4 75/5 75/6 113/17
**April 2015 [3]** 71/3 71/18 108/13
**April 2023 [1]** 36/2
**Aranda [1]** 29/17
**area [4]** 17/16 17/18 42/15 42/21
**area -- that's [1]** 42/15
**aren't [1]** 27/12
**argue [5]** 3/15 4/2 46/11 48/23 70/20
**argued [3]** 19/6 55/8 57/9
**argues [1]** 75/10
**arguing [2]** 117/2 120/16
**argument [41]** 11/14 12/24 19/11 19/19 19/22 21/1 25/18 27/18 28/22 29/5 37/11 37/17 38/11 38/23 40/1 40/2 43/20 43/24 43/25 48/18 53/22 55/4 55/6 55/15 55/21 55/22 59/19 59/24 60/18 70/22 70/24 89/19 92/12 92/13 92/15 101/10 105/6 106/1 110/12 117/17 119/19
**arguments [12]** 7/1 47/4 52/3 52/6 52/9 58/9 58/13 59/25 60/8 60/11 60/17 106/2
**arm's [3]** 112/2 112/11 119/6
**Arnold [1]** 1/24
**arose [1]** 112/9
**around [2]** 11/13 21/10
**arrangement [1]** 72/24
**arrest [2]** 41/4 42/5
**arrested [2]** 41/5 84/9
**article [1]** 84/23
**articulate [1]** 57/4
**articulated [1]** 59/9
**as -- and [1]** 21/18
**ascertain [3]** 8/16 9/2 16/3
**aside [2]** 35/25 90/6
**ask [2]** 49/11 52/1
**asked [8]** 8/16 10/25 34/2 35/11 38/6 39/11 39/11 50/25
**asking [4]** 54/14 54/16 84/20 88/3
**asks [1]** 9/5
**aspects [1]** 123/15
**assert [2]** 47/1 106/17
**asserted [8]** 57/6 58/19 58/25 59/1 68/20 74/10 78/10 114/2
**assertion [5]** 57/8 60/5 66/25 67/15 106/3
**assign [4]** 7/22 8/9 10/20 22/12
**assigned [23]** 7/6 7/9 7/14 7/15 7/24 11/5 11/23 11/24 12/20 14/20 14/21 15/11 15/12 22/6 24/12 24/13 31/19 49/6 49/6 49/9 49/11 49/18 67/6
**assignment [25]** 7/23 8/5 10/16 11/1 11/2 19/20 19/21 21/17 22/2 32/13 33/9 33/23 34/25 35/13 39/24 43/9 43/10 66/14 82/23 82/25 83/13 103/3 106/8 108/17 113/19
**assignments [6]** 10/16 12/14 67/5 67/5 67/7 67/10
**assist [3]** 87/1 88/24 93/7
**assistance [25]** 62/20 63/6 63/11 63/21 64/17 64/23 65/1 65/2 66/10 66/23 73/23 74/2 74/7 74/9 75/18 80/19 86/16 93/3 93/16 93/18 93/19 95/14 109/25 112/16 119/16
**assistant [2]** 63/8 63/21
**assistant must [1]** 63/21
**assisted [20]** 63/5 63/18 64/15 64/20 65/12 66/12 70/9 72/15 74/6 75/1 75/11 75/13 78/2 87/14 106/5 112/23 113/1 113/6 115/19 115/22
**assisting [4]** 75/11 94/7 103/24 119/14
**associate [1]** 3/11
**assume [2]** 60/8 102/11
**assume -- take [1]** 102/11
**assumed [3]** 15/4 15/5 66/9
**assuming [2]** 15/2 74/24
**assumption [2]** 38/3 44/22
**assumptions [1]** 24/24
**attached [2]** 41/4 42/13
**attempt [3]** 58/8 60/16 89/15
**attempted [7]** 69/12 80/6 82/12 98/4 98/9 102/1 104/3
**attorney [1]** 16/2
**attributed [2]** 19/7 57/13
**attribution [8]** 57/16 57/19 58/12 59/18 59/21 60/1 105/7 106/2
**auction [1]** 9/24
**auctions [1]** 10/3
**audit [14]** 16/23 18/2 18/5

## A

**audit... [11]** 18/5 18/10 55/24 84/11 84/12 110/18 110/19 110/23 110/24 111/4 111/5
**auditors [1]** 84/14
**August [18]** 40/24 42/3 59/12 64/7 69/25 71/6 71/23 73/10 80/1 80/4 81/10 81/13 83/17 85/2 102/2 103/3 109/24 117/14
**August 17 [2]** 81/13 103/3
**August 17th [1]** 83/17
**August 2015 [7]** 59/12 64/7 69/25 71/6 71/23 73/10 81/10
**August 7th [2]** 42/3 85/2
**authorities [2]** 56/17 88/18
**authority [8]** 9/19 11/25 12/8 70/11 112/1 112/6 112/10 120/21
**authority -- for [1]** 120/21
**authorized [2]** 46/3 52/21
**Avenue [1]** 1/16
**avoid [5]** 6/9 6/10 77/5 89/15 102/1
**avoided [5]** 9/18 9/18 77/7 77/8 114/21
**avoids [1]** 11/15
**awarded [1]** 78/6
**aware [5]** 84/16 102/7 102/12 117/21 117/23
**awareness [1]** 102/5
**away [2]** 98/4 103/19

## B

**back [15]** 15/25 22/8 24/15 38/25 40/19 49/12 60/17 67/11 88/20 94/1 107/13 108/22 112/19 121/17 124/7
**bad [6]** 18/4 27/25 28/1 31/3 32/6 39/17
**bargain [1]** 85/8
**barred [2]** 48/2 48/5
**Barroso [1]** 53/10
**based [12]** 40/21 47/4 55/6 60/5 78/11 78/16 92/12 94/18 105/7 106/21 106/23 110/10
**bases [4]** 23/3 39/2 78/11 90/24
**Basic [1]** 28/22
**basically [32]** 8/6 9/17 9/24 12/15 12/17 13/4 14/5 14/9 14/12 14/18 14/22 15/5 15/10 15/23 16/1 17/4 17/10 17/25 18/3 18/8 20/1 20/21 20/23 21/3 22/9 23/17 24/20 25/4 25/5 50/12 50/22 119/19
**basis [19]** 39/25 47/7 59/21 59/21 59/22 59/22 61/6 76/2 78/16 84/21 90/1 93/2 94/13 98/9 98/13 102/11 103/20 117/3 118/22
**bears [1]** 102/21
**became [12]** 59/11 59/13 59/20 62/17 71/25 79/19 80/22 82/7 82/7 92/16 96/8 110/23
**become [4]** 16/14 82/22 119/4 119/6
**becoming [1]** 87/16
**been [36]** 11/24 14/6 14/7 14/8 17/4 17/19 31/16 37/7 38/23 40/20 44/25 46/15 49/6 49/6 57/3 60/3 61/24 63/9 63/19 67/12 70/1 71/7 84/9 84/9 88/8 89/13 94/4 108/8 108/8 108/24 112/24 114/1 120/4 120/8 121/18 124/1
**been -- PAI [1]** 114/1
**before [16]** 1/10 4/16 38/6 43/8 48/2 52/1 64/21 83/10 83/20 86/8 89/3 94/17 106/6 115/7 116/19 117/14
**before -- when [1]** 38/6
**began [1]** 4/16
**begin [3]** 25/8 26/12 26/25
**beginning [3]** 49/10 50/18 106/23
**begun [1]** 70/25
**behalf [7]** 28/20 52/11 55/19 79/15 82/18 89/8 105/19
**being [13]** 14/21 19/19 24/12 25/14 43/23 63/8 73/5 77/4 85/8 93/8 94/24 104/25 110/14
**belabor [2]** 82/15 117/20
**believe [2]** 35/10 55/15
**believes [2]** 18/21 18/22
**benefit [10]** 8/1 23/5 23/19 24/1 24/1 24/3 24/6 45/14 49/4 109/9
**benefited [2]** 45/8 46/9
**benefits [3]** 4/10 54/2 108/15
**Benvenuto [3]** 42/1 42/2 44/7
**beside [1]** 50/16
**besides [1]** 52/7
**best [14]** 10/8 10/21 11/7 11/19 12/10 12/21 14/19 35/2 36/10 38/7 52/6 52/6 52/8 55/22
**better [1]** 28/17
**between [32]** 3/19 9/14 10/1 13/5 14/12 16/11 17/14 18/20 23/6 27/6 27/15 29/6 29/7 32/23 33/1 33/2 35/20 36/14 37/14 39/20 39/23 40/18 62/21 63/13 63/15 72/25 90/10 91/5 109/7 109/7 120/5 123/18
**between -- were [1]** 109/7
**beyond [1]** 88/5
**bidders [1]** 9/24
**bids [1]** 9/25
**bifocals [1]** 40/5
**big [1]** 19/20

## B

**bigger [1]** 70/1
**bit [4]** 31/9 51/2 54/5 106/14
**black [2]** 29/17 124/22
**blandly [1]** 88/2
**blind [10]** 81/13 82/3 87/21 87/24 88/1 88/14 88/16 94/1 94/3 103/6
**blind-eye [10]** 81/13 82/3 87/21 87/24 88/1 88/14 88/16 94/1 94/3 103/6
**blindly [1]** 88/2
**block [1]** 24/25
**blocks [3]** 17/21 17/23 24/25
**board [16]** 12/14 12/15 12/16 20/5 20/8 20/10 20/13 20/19 20/20 20/23 49/17 51/1 52/20 52/25 53/14 53/18
**both [10]** 22/24 23/16 33/13 38/10 45/8 50/18 56/16 62/23 100/20 104/11
**bound [1]** 59/18
**box [1]** 124/22
**Branca [1]** 41/18
**Branco [1]** 41/18
**Bras [2]** 7/10 36/5
**Bras- -- Petrobras [1]** 36/5
**Braspetro [17]** 6/19 6/20 8/8 10/17 12/2 12/5 12/6 21/7 28/11 32/11 48/18 48/19 48/21 82/19 111/20 116/5 121/17
**Braspetro's [1]** 108/17
**Brazil [1]** 49/7
**Brazilian [4]** 43/1 56/16 84/19 88/18
**breach [18]** 13/3 74/5 74/7 74/23 74/25 75/1 75/4 75/11 77/9 77/22 93/7 93/17 93/17 93/19 94/8 94/9 103/25 114/22
**breached [1]** 93/6
**breaches [1]** 86/16
**break [1]** 51/20
**breaths [1]** 6/12
**breeze [1]** 36/18
**bribe [11]** 30/11 30/13 43/1 58/5 65/5 65/8 65/22 105/21 109/24 111/1 116/15
**bribe -- Pride [1]** 111/1
**bribed [8]** 13/25 17/2 47/10 51/5 60/6 83/12 84/19 93/12
**bribery [101]** 13/20 14/6 14/8 21/13 37/17 39/20 40/9 40/12 40/18 41/16 42/6 44/19 56/14 56/15 59/11 59/14 62/19 64/16 64/24 65/1 65/4 65/17 65/18 66/4 66/11 66/12 66/23 70/8 70/10 71/22 72/1 72/2 72/4 72/14 72/15 72/16 73/9 73/10 74/8 75/12 75/13 75/15 75/18 77/23 77/25 78/3 79/18 80/3 80/5 80/8 81/15 81/23 82/5 82/12 83/7 83/19 88/17 88/19 89/3 89/14 89/25 90/5 92/17 92/19 92/23 94/5 94/13 96/18 98/10 98/13 102/10 102/12 102/23 102/24 103/5 103/12 103/20 104/3 106/4 106/5 106/15 110/7 112/4 113/4 113/7 113/9 113/9 113/10 113/10 116/17 117/14 117/16 117/19 117/21 117/24 119/16 119/21 120/13 120/17 122/23 122/24
**bribery -- the [2]** 113/9 113/10
**bribes [33]** 18/15 21/4 28/2 28/3 28/3 28/5 39/10 47/13 48/25 53/20 55/13 55/17 55/17 56/4 57/12 57/21 58/19 58/20 59/12 65/9 73/19 84/10 84/25 85/10 85/24 88/10 93/13 105/16 105/17 116/1 116/2 116/11 116/13
**Bridge [2]** 9/20 10/5
**brief [9]** 13/9 49/15 55/9 55/9 55/10 55/11 116/23 116/25 117/20
**briefing [8]** 33/13 36/21 38/11 40/23 44/2 46/23 52/14 102/5
**briefly [1]** 44/14
**bring [3]** 28/20 29/3 97/20
**broader [3]** 90/16 90/16 92/13
**broker [2]** 18/14 84/24
**Brompton [1]** 76/11
**brought [2]** 48/19 48/19
**brush [1]** 37/5
**build [2]** 14/15 14/16
**bullet [1]** 55/13
**burden [3]** 45/1 62/12 102/21
**businesses [2]** 10/19 20/1
**butchering [1]** 41/19
**buying [1]** 45/21
**bylaws [1]** 52/19

## C

**cake [1]** 47/23
**calculates [1]** 50/21
**call [4]** 28/2 28/7 82/3 87/21
**called [3]** 5/14 79/7 82/19
**came [2]** 33/9 124/7
**can -- they [1]** 87/6
**can't [15]** 16/9 29/8 29/22 36/3 44/3 47/17 47/22 47/22 47/24 48/4 48/5 67/3 72/5 101/11 121/2
**cancel [6]** 80/6 82/12 83/8 86/4 94/12 104/4
**canceled [1]** 90/12
**cannot [20]** 62/14 64/14 64/17 65/25 66/10 70/5 70/9 70/20 71/24 72/14 72/19

## C


**cannot... [9]** 73/13 74/22 74/22 74/25 75/17 75/20 75/25 78/9 99/1
**capably [1]** 93/25
**capacity [2]** 34/8 34/10
**Car [3]** 41/22 84/6 84/14
**care [1]** 52/4
**carried [2]** 63/14 93/8
**carry [1]** 35/14
**carve [1]** 123/14
**Cascade [1]** 46/7
**case [75]** 4/1 5/14 5/14 5/19 5/24 9/13 9/17 9/19 9/20 9/21 9/22 9/22 10/1 10/4 11/18 11/21 13/3 13/4 13/4 13/15 15/22 15/23 16/11 23/4 26/10 26/25 27/2 27/4 27/11 27/11 28/13 29/19 30/15 36/13 36/15 36/22 36/23 36/23 37/3 37/5 37/6 37/25 38/19 39/6 39/9 45/17 46/17 47/12 47/17 48/1 48/1 48/4 51/11 62/6 62/24 63/1 76/10 76/11 78/1 79/9 86/25 87/4 87/12 91/15 92/8 93/6 93/9 93/11 103/21 118/10 119/3 119/7 121/25 123/8 124/3
**cases [13]** 9/8 9/10 9/15 10/5 15/6 23/16 27/10 29/9 29/11 29/12 52/6 112/8 112/9
**cases -- some [1]** 112/8
**CASSIDY [2]** 1/18 3/7
**categories [1]** 96/1
**CATHERINE [2]** 2/2 3/12
**causa [4]** 78/17 102/14 102/18 102/20
**causal [6]** 27/15 30/19 32/15 32/19 40/17 40/21
**causation [5]** 13/8 27/6 32/19 86/21 95/24
**cause [43]** 5/10 5/13 5/15 9/12 9/22 13/1 13/10 14/8 15/22 15/23 23/17 28/24 29/3 29/6 29/25 30/4 30/7 30/8 36/3 37/17 37/18 37/19 38/1 38/1 38/2 38/13 44/13 47/23 48/4 48/6 55/5 55/6 55/21 58/9 60/6 60/16 66/24 72/9 87/16 87/17 98/1 101/18 113/21
**cause -- I'll [1]** 55/5
**caused [15]** 29/21 30/11 63/25 68/20 73/5 80/22 82/8 82/9 85/17 92/21 94/20 98/11 103/25 115/21 118/19
**causes [5]** 13/12 13/14 13/16 13/17 30/4
**Center [1]** 1/19
**centered [1]** 106/2
**CEO [1]** 45/24
**certain [3]** 8/23 88/4 109/5
**certainly [7]** 28/17 30/3 39/19 79/8 79/13 88/16 90/15
**certify [2]** 124/11 124/17
**Cervero [45]** 18/8 18/16 21/2 24/2 24/5 24/7 27/24 30/6 30/11 39/20 42/23 44/19 45/5 46/2 46/10 46/20 47/14 48/1 51/3 52/15 52/22 52/24 53/12 53/19 55/18 58/20 60/14 65/22 79/15 82/17 83/19 84/9 84/25 85/11 85/25 88/10 89/7 93/14 103/13 105/7 105/13 105/17 116/14 116/14 117/2
**Cervero's [2]** 23/10 52/4
**chain [1]** 32/16
**challenge [1]** 72/7
**change [2]** 12/17 36/6
**changed [6]** 8/2 19/4 19/10 57/23 60/15 122/2
**changes [1]** 12/17
**characters [1]** 124/22
**charged [2]** 84/2 84/10
**charter [4]** 42/16 85/12 88/11 88/11
**cherry [2]** 10/24 33/14
**cherry-picked [2]** 10/24 33/14
**choice [2]** 34/21 121/3
**Chris [1]** 26/20
**CHRISTOPHER [3]** 1/22 3/10 52/11
**circuit [14]** 23/3 23/4 27/5 29/18 36/22 36/23 36/25 37/3 37/4 37/5 37/7 37/8 56/6 61/11
**Circuit's [3]** 29/12 29/16 32/17
**circulating [1]** 84/19
**circumstances [2]** 36/6 38/9
**citations [1]** 55/10
**cite [2]** 23/19 112/10
**cited [8]** 9/8 10/23 15/6 84/17 90/9 96/5 112/1 112/8
**cites [6]** 52/3 52/6 55/22 104/22 104/24 105/8
**CIVIL [2]** 1/5 61/18
**claim [32]** 4/25 5/9 19/17 25/8 25/12 28/18 28/20 29/3 29/22 40/10 40/19 47/7 47/18 48/19 48/20 48/24 58/1 60/4 68/21 70/1 74/5 77/6 77/8 77/22 79/25 80/11 86/5 97/20 102/22 114/19 114/22 114/23
**claim -- the [1]** 114/23
**claimant [11]** 61/19 61/20 61/21 61/21 61/22 61/24 62/3 62/4 62/6 62/7 63/18
**claimed [5]** 25/18 82/11 83/7 97/23 104/3
**claimed -- the [1]** 25/18
**claiming [7]** 80/7 83/9 89/19 90/4 90/22 96/18 118/23
**claims [8]** 59/13 61/21 64/7 79/9 85/16 86/3 86/3 101/10

C

**claims -- Petrobras [1]** 86/3
**clarify [1]** 106/13
**clear [15]** 6/15 7/10 14/1 18/17 23/16 27/12 36/20 38/12 38/18 42/7 43/6 49/15 50/1 79/12 104/11
**clearer [2]** 36/15 88/8
**clearly [3]** 20/18 21/3 36/13
**clerk [3]** 5/6 78/25 124/18
**clever [1]** 43/24
**client [1]** 26/22
**close [1]** 42/24
**CO [1]** 1/7
**coconspirator [1]** 92/16
**coherent [1]** 57/4
**collapsing [1]** 70/25
**collateral [1]** 8/25
**colleague [2]** 25/11 25/16
**collusion [1]** 110/25
**Colt [2]** 1/16 1/19
**column [2]** 85/20 85/21
**combination [3]** 72/24 73/3 91/3
**combine [1]** 87/9
**combined [2]** 91/9 91/10
**combining [1]** 87/14
**come [4]** 24/15 30/19 31/24 38/25
**comes [2]** 80/12 117/4
**coming [1]** 94/1
**comment [1]** 94/24
**commercial [2]** 18/3 119/5
**commission [6]** 63/6 65/5 65/13 78/3 87/1 88/24
**commissions [7]** 65/9 65/10 65/13 75/2 75/3 113/14 113/16
**commit [6]** 63/19 64/18 66/23 70/15 112/24 115/20
**commitment [2]** 21/9 21/10
**committed [3]** 62/18 63/10 70/18
**common [24]** 22/4 63/9 63/13 63/15 63/19 63/21 64/18 64/23 65/1 65/14 66/10 66/23 72/16 73/3 87/2 87/3 87/8 88/25 91/9 91/10 110/1 112/16 112/24 115/20
**communicated [1]** 63/15
**companies [8]** 11/11 19/20 47/3 60/7 60/10 60/13 66/2 105/12
**company [13]** 11/10 20/12 24/10 31/14 32/7 35/1 43/2 43/12 45/23 46/14 46/20 47/21 47/21
**company's [2]** 35/6 44/23
**competitor [1]** 9/17
**competitors [2]** 9/16 9/23
**competitors -- sorry [1]** 9/23
**complaint [8]** 19/17 41/4 41/21 50/18 84/17 85/17 85/21 86/3
**complete [2]** 83/11 113/18
**completely [4]** 24/8 24/22 45/19 56/6
**complexity [1]** 40/20
**complicated [2]** 9/6 9/7
**components [1]** 62/5
**computer [1]** 2/25
**con [1]** 69/15
**con- -- contributes [1]** 69/15
**concede [5]** 11/8 13/8 15/19 37/16 106/16
**conceded [9]** 13/21 13/22 14/2 37/20 65/20 70/8 100/5 102/24 106/15
**concedes [4]** 37/25 46/3 52/24 99/5
**conceding [1]** 49/8
**concern [1]** 5/9
**concerning [1]** 84/13
**concerted [3]** 73/1 73/5 73/15
**concession [2]** 71/20 102/9
**concessions [4]** 58/8 59/19 60/3 105/22
**conclude [3]** 82/6 94/15 115/15
**concluded [2]** 110/18 124/9
**conclusion [2]** 32/16 103/1
**conclusions [1]** 24/22
**concocted [1]** 66/4
**conditions [3]** 35/15 43/21 63/4
**CONDRO [3]** 1/15 3/7 3/18
**conduct [15]** 27/20 28/11 29/21 60/14 60/15 65/23 66/1 66/22 66/24 70/14 93/9 105/8 105/13 105/14 117/3
**conducted [2]** 32/10 46/21
**Conference [1]** 124/21
**conferred [1]** 54/2
**confessed [3]** 84/25 85/8 85/24
**confession [1]** 85/23
**confirm [1]** 45/3
**confirmed [4]** 58/14 58/16 58/17 107/10
**confirms [2]** 18/5 24/18
**conflict [1]** 35/19
**confuses [1]** 112/18
**conjunction [1]** 12/5
**connecting [1]** 26/16
**connection [22]** 3/19 3/24 10/14 14/13 16/10 33/22 36/4 39/15 41/6 41/16 42/6 43/7 55/17 57/22 58/19 70/3 83/13 84/10 93/12 105/16 116/12 116/12
**connection -- well [1]** 116/12
**consent [3]** 8/4 22/6 91/17
**consequence [2]** 14/22 21/12
**consequences [1]** 14/11
**consequent [1]** 73/2
**consider [4]** 34/6 34/10 111/19 111/20

## C


**considered [1]** 110/22
**consisted [3]** 69/19 109/13 122/16
**consistent [2]** 11/9 12/12
**consists [1]** 65/5
**conspiracy [24]** 62/19 64/16 65/2 72/21 72/23 73/6 73/16 80/18 86/15 87/17 90/25 91/11 91/16 91/20 91/22 92/3 92/19 92/20 93/1 103/23 118/11 118/12 118/19 119/16
**conspirator [1]** 122/23
**conspirators [1]** 91/13
**constitute [3]** 63/17 109/25 110/1
**constituted [3]** 63/20 64/15 112/25
**constitutes [1]** 66/22
**construction [3]** 22/5 30/5 42/18
**constructive [1]** 83/18
**Consultor [1]** 41/10
**contained [3]** 67/16 67/18 109/4
**contains [2]** 41/14 70/13
**contend [1]** 47/11
**contending [1]** 31/4
**content [4]** 39/10 61/12 61/15 85/5
**context [7]** 28/24 33/15 33/16 33/19 43/5 44/21 84/4
**continue [2]** 68/24 120/14
**continued [5]** 2/1 40/13 72/8 75/16 98/5
**continuing [9]** 34/19 66/15 84/22 94/8 103/24 106/6 109/11 109/16 115/1
**contract [172]**
**contract's [1]** 9/14
**contracted [3]** 32/5 34/8 34/10
**contractors [1]** 45/25
**contracts [5]** 7/13 22/5 22/5 46/3 120/5
**contractual [4]** 43/10 70/14 70/15 70/15
**contradicts [1]** 70/23
**contrary [4]** 65/15 68/23 73/18 113/23
**contributed [1]** 89/11
**contributes [1]** 69/15
**contribution [20]** 25/8 61/16 61/18 61/20 61/22 62/2 62/6 76/4 79/14 79/24 80/10 80/11 80/13 80/20 82/14 86/14 94/22 96/4 102/8 104/10
**control [2]** 29/11 29/11
**controlling [1]** 36/25
**controls [2]** 10/19 20/11
**convince [1]** 40/3
**Coordinator [1]** 41/21
**copy [5]** 41/21 56/12 64/11 110/23 124/18
**corporate [13]** 11/18 22/19 31/10 33/11 33/18 34/23 35/11 47/2 47/6 55/8 58/4 107/8 123/6
**corporation [1]** 44/24
**correct [13]** 11/17 34/4 34/5 34/7 34/12 35/3 35/4 36/17 36/17 51/7 70/5 124/11 124/17
**correctly [1]** 38/19
**correspondence [1]** 24/17
**corrupt [5]** 66/14 66/19 67/15 67/17 84/7
**corruption [6]** 41/6 41/16 41/24 43/7 66/1 85/9
**cost [3]** 7/7 32/13 72/3
**cost-effective [2]** 7/7 32/13
**costs [3]** 81/24 103/16 109/5
**could [57]** 3/25 5/3 12/2 12/6 13/19 15/16 21/20 21/21 21/23 22/6 24/25 32/20 34/11 35/5 44/9 49/5 49/5 49/6 49/9 51/19 55/1 57/15 60/11 63/24 68/19 70/24 72/3 74/21 74/24 75/23 75/25 77/5 77/6 77/24 80/24 84/3 88/8 89/20 89/25 90/2 90/8 90/25 94/5 100/20 102/7 102/22 107/22 108/1 111/23 112/9 113/20 113/21 115/8 115/13 122/6 122/9 122/11
**could -- that [1]** 112/9
**couldn't [2]** 114/18 115/9
**counsel [21]** 27/1 27/9 30/3 30/22 31/2 33/14 42/2 42/4 43/12 48/16 79/5 79/22 81/16 85/3 86/7 88/17 89/13 94/23 95/10 95/18 103/4
**counsel's [1]** 88/7
**counted [2]** 5/23 27/21
**counterclaim [27]** 4/21 16/15 16/17 19/4 19/5 28/4 56/13 57/6 57/6 57/18 59/8 59/10 60/22 61/17 75/24 76/3 78/11 78/16 79/7 79/13 79/20 104/14 104/20 104/23 106/1 117/4 117/9
**counterclaimant [1]** 3/10
**counterparty [4]** 7/25 18/20 22/2 112/4
**country [1]** 71/2
**couple [2]** 5/2 119/12
**course [8]** 14/7 16/3 25/25 36/24 41/8 41/23 52/22 82/17
**court [70]** 1/1 2/3 2/4 3/16 5/7 5/9 8/16 9/5 9/25 13/4 14/10 15/23 16/3 26/1 26/4 26/5 26/13 27/4 27/12 29/13 29/14 29/15 30/2 30/10 30/18 31/11 33/15 35/18 35/25 38/12 38/24 38/25 39/15 40/3 40/7 44/7 44/12 44/22 45/2 46/17 48/13 49/11 49/14 53/22 54/5

## C

**court... [25]** 54/12 54/13 54/25 55/23 55/25 56/2 56/11 60/24 62/24 76/11 78/18 79/2 79/25 83/10 85/6 88/21 95/2 102/15 118/8 119/8 120/2 121/23 121/25 124/15 124/18
**Court -- I've [1]** 29/13
**Court's [10]** 36/19 36/24 61/9 79/19 82/16 87/23 94/2 104/13 117/1 123/22
**courts [3]** 9/5 9/12 59/23
**cover [4]** 81/5 93/1 102/11 117/21
**covered [1]** 95/14
**covering [1]** 102/4
**covers [2]** 54/18 87/22
**cram [1]** 35/6
**crammed [1]** 35/22
**crash [2]** 15/15 15/15
**create [1]** 61/13
**created [1]** 44/10
**criminal [1]** 84/15
**critical [1]** 26/10
**crystal [1]** 23/16
**CSR [1]** 2/4
**culpability [1]** 56/16
**culpable [1]** 22/19
**culture [1]** 41/24
**current [1]** 57/5
**Curtis [2]** 1/16 1/19
**custom [1]** 11/14
**cut [1]** 32/19
**cuts [4]** 32/15 32/23 36/13 40/17
**CV [1]** 1/5

## D

**daily [2]** 69/20 109/1
**damage [37]** 62/4 62/5 62/8 62/10 62/16 72/10 76/1 76/7 76/10 76/14 78/5 78/9 80/15 80/22 80/23 82/8 82/9 82/14 87/17 87/17 89/11 91/2 94/19 94/21 95/15 95/18 95/23 96/2 96/3 97/19 97/21 98/2 99/2 101/21 101/23 103/25 114/1
**damages [27]** 8/17 8/24 9/2 9/6 9/15 15/1 16/3 16/5 40/10 40/19 40/21 48/24 68/21 70/3 70/4 70/21 71/8 75/18 75/19 77/7 78/6 95/25 109/13 109/17 113/24 114/19 114/23
**data [1]** 18/6
**date [14]** 63/25 64/3 64/19 71/25 72/4 72/17 82/8 82/10 109/19 111/4 111/5 115/21 118/13 124/14
**dates [4]** 66/8 69/24 110/5 110/5
**day [11]** 12/19 15/9 24/12 41/19 69/20 69/21 84/15 90/15 109/1 109/15 113/23
**days [4]** 43/8 81/16 86/8 89/3
**de [2]** 41/18 63/8
**deal [3]** 3/17 11/12 42/24
**dealing [2]** 88/14 96/7
**dealings [1]** 113/18
**dealt [1]** 11/22
**decade [1]** 83/6
**decide [4]** 31/14 43/14 43/18 121/24
**decided [3]** 34/24 82/22 102/14
**decides [4]** 11/4 12/15 35/25 36/7
**deciding [4]** 11/19 33/22 35/2 60/23
**decision [18]** 10/24 12/5 12/14 12/23 30/5 31/5 32/15 32/22 33/21 34/22 35/21 38/3 39/2 39/16 39/20 49/19 49/20 63/2
**decision-making [3]** 32/15 32/22 33/21
**decisions [1]** 32/17
**declaration [10]** 7/9 10/13 11/2 12/13 31/11 31/12 31/13 32/9 36/2 53/24
**declare [1]** 120/15
**deepwater [4]** 45/21 46/7 53/23 90/12
**defeating [1]** 110/12
**defendant [24]** 1/7 1/22 3/10 9/24 14/10 62/3 63/5 63/7 63/10 63/11 63/13 63/16 63/18 63/23 64/1 64/3 86/25 87/3 91/5 91/7 93/6 93/9 112/23 124/21
**defendant/counterclaimant [1]** 3/10
**defense [5]** 60/4 102/13 102/18 102/20 102/25
**defer [1]** 78/18
**deferred [3]** 13/22 23/13 113/11
**define [1]** 123/16
**definitely [1]** 46/12
**degree [2]** 45/10 45/11
**delaying [1]** 108/10
**delegates [1]** 14/19
**deliberately [1]** 91/10
**delicto [1]** 22/23
**delivered [1]** 12/21
**demand [3]** 15/1 53/23 77/24
**demanded [3]** 28/3 68/24 71/11
**demonstrate [4]** 29/20 88/22 102/22 104/8
**demonstrated [1]** 16/19
**denials [1]** 111/22
**deny [1]** 16/9
**denying [3]** 61/6 110/24 111/16
**department [3]** 40/25 41/13 41/21
**department's [1]** 41/17

D

**depending [3]** 4/10 17/15 111/18
**deposition [14]** 23/11 23/11 33/6 33/18 35/11 39/11 39/12 53/10 53/11 54/4 71/9 107/8 112/8 123/7
**depositions [2]** 7/9 24/18
**deprived [8]** 89/17 89/22 90/17 103/7 107/19 107/20 115/6 119/17
**depriving [2]** 69/15 81/18
**depth [2]** 106/14 117/21
**described [1]** 32/10
**describes [3]** 32/8 42/14 53/12
**design [21]** 63/9 63/13 63/15 63/19 63/21 64/18 64/23 65/1 65/15 66/10 66/23 72/16 73/4 87/2 87/3 87/8 88/25 110/1 112/16 112/24 115/20
**designated [1]** 33/7
**despite [1]** 83/9
**details [1]** 123/18
**determination [2]** 61/9 77/4
**determine [2]** 36/10 61/15
**determined [2]** 49/18 93/21
**determining [1]** 62/22
**developed [1]** 17/16
**didn't [15]** 8/15 9/4 25/1 25/6 35/7 44/8 44/8 44/10 48/21 53/19 90/19 92/6 103/7 117/13 118/23
**difference [4]** 18/19 86/18 120/5 121/3
**differences [1]** 61/11
**different [18]** 14/4 32/20 32/21 42/9 47/3 47/21 47/21 49/10 57/5 90/13 95/24 95/24 95/25 95/25 96/1 119/23 119/24 119/25
**differently [1]** 98/3
**difficult [5]** 8/16 9/2 15/20 16/5 111/23
**dig [1]** 17/6
**dilemma [1]** 47/1
**direct [44]** 5/16 5/17 5/19 5/22 5/22 5/24 8/7 8/13 10/1 10/9 13/5 13/6 13/10 13/12 13/16 13/17 14/13 16/1 16/7 16/10 21/5 27/5 27/13 27/15 27/20 27/22 28/8 28/10 28/17 29/6 29/13 29/15 29/25 30/13 32/23 36/14 36/20 37/4 38/22 39/3 39/19 40/17 48/13 48/18
**direct -- a [1]** 5/22
**directing [2]** 20/1 20/18
**direction [2]** 15/14 32/10
**directly [1]** 28/8
**directly' [1]** 29/20
**directness [1]** 38/14
**director [1]** 12/22
**directors [5]** 42/23 43/5 44/23 47/10 116/2
**disadvantageous [1]** 71/17
**disagree [2]** 31/23 61/4
**disagreements [2]** 61/5 61/6
**disagrees [1]** 62/13
**disclose [14]** 66/13 81/17 82/5 83/20 89/5 90/19 103/7 112/12 112/14 112/14 117/13 119/2 119/5 120/17
**disclosed [1]** 89/24
**disclosing [3]** 111/24 119/4 119/7
**disclosure [6]** 93/15 93/16 94/9 109/18 110/3 111/25
**discovered [7]** 80/7 82/11 83/7 90/5 90/22 96/18 104/3
**discovery [3]** 16/18 23/7 79/11
**discrete [1]** 3/18
**discuss [1]** 102/8
**discussed [5]** 45/2 46/17 54/5 85/4 96/15
**discussion [3]** 4/10 30/2 30/2
**discussions [1]** 111/22
**dishonest [16]** 62/19 64/16 65/2 73/22 74/2 80/19 86/16 93/3 93/10 93/18 93/21 95/14 96/7 119/4 119/6 119/16
**dishonestly [3]** 74/9 94/16 103/24
**dishonesty [1]** 103/22
**dismiss [4]** 23/2 23/14 48/20 57/15
**dismissal [1]** 57/17
**dismissing [3]** 76/2 78/11 78/16
**dispositive [4]** 4/14 4/18 5/14 9/21
**dispute [20]** 14/3 27/21 50/24 59/4 62/21 64/6 84/16 90/7 96/7 104/8 112/7 115/17 115/23 115/25 115/25 116/4 116/6 116/7 116/13 117/18
**disputes [2]** 66/7 122/11
**dissent [1]** 38/19
**distinct [7]** 13/11 55/7 58/3 58/15 60/9 65/20 116/5
**distracting [1]** 12/25
**DISTRICT [3]** 1/1 1/1 1/11
**division [4]** 1/2 44/4 85/12 88/11
**doctrine [1]** 14/9
**document [7]** 4/12 5/7 26/1 41/14 42/1 54/25 79/2
**documents [2]** 54/11 54/11
**documents -- I [1]** 54/11
**does [9]** 7/13 7/16 25/8 29/11 34/9 40/6 59/5 86/10 119/2
**does -- the [1]** 40/6
**doesn't [15]** 4/7 17/9 20/25 30/25 34/8 34/9 35/5 38/13 38/18 39/21 40/1 45/17 64/5

## D


**doesn't... [2]** 121/20 122/3
**doing [4]** 33/10 34/2 87/10 94/7
**DOJ [2]** 23/14 113/11
**dollars [4]** 83/4 84/1 94/12 103/17
**dominated [1]** 5/11
**done [6]** 17/7 18/2 23/6 24/23 44/9 116/23
**double [2]** 106/18 116/8
**doubt [1]** 88/5
**down [6]** 35/6 35/22 80/12 80/24 89/20 90/10
**downloaded [1]** 43/13
**downside [1]** 123/17
**Dr. [1]** 50/21
**Dr. Jacobs [1]** 50/21
**draw [1]** 39/15
**drill [3]** 46/6 80/24 83/3
**drilling [55]** 6/1 7/4 7/13 8/9 8/18 11/12 12/4 17/5 17/15 17/16 20/11 20/19 22/4 28/7 30/23 34/3 35/15 39/4 40/8 43/11 45/22 45/25 48/21 49/1 52/21 53/17 53/23 59/15 67/2 77/5 79/17 81/10 81/14 81/21 82/4 82/12 82/18 83/1 83/2 83/11 83/18 83/22 85/18 86/4 86/9 89/8 92/18 92/24 94/4 96/16 96/18 97/21 98/4 109/11 118/20
**drillship [51]** 7/6 10/20 11/6 12/3 12/7 14/16 14/17 15/8 16/25 17/2 18/1 20/24 20/25 21/3 21/8 21/11 21/14 22/5 22/9 22/11 22/13 23/23 23/24 24/11 24/11 24/17 25/6 25/7 32/12 32/14 33/12 34/25 35/2 36/8 36/10 41/7 42/9 49/5 49/19 50/11 58/6 79/18 83/3 84/24 85/1 85/1 88/12 103/11 105/21 109/14 116/16
**drillships [11]** 11/5 17/7 22/1 24/16 34/6 34/11 49/18 53/13 53/23 84/11 90/12
**drop [1]** 103/18
**DS [50]** 17/2 17/22 28/6 30/5 34/25 35/14 35/15 35/23 36/12 39/4 41/7 41/16 42/6 42/11 42/16 43/7 43/10 46/4 53/15 54/2 54/8 56/3 56/15 69/20 69/21 71/3 71/4 71/19 71/19 71/22 79/18 81/11 81/22 82/12 83/3 83/7 84/13 84/20 84/24 85/13 85/25 88/12 88/17 88/19 89/3 89/13 102/10 103/11 108/13 109/1
**DS-5 [50]** 17/2 17/22 28/6 30/5 34/25 35/14 35/15 35/23 36/12 39/4 41/7 41/16 42/6 42/11 42/16 43/7 43/10 46/4 53/15 54/2 54/8 56/3 56/15 69/20 69/21 71/3 71/4 71/19 71/19 71/22 79/18 81/11 81/22 82/12 83/3 83/7 84/13 84/20 84/24 85/13 85/25 88/12 88/17 88/19 89/3 89/13 102/10 103/11 108/13 109/1
**DSC [73]** 16/4 55/17 57/22 58/17 58/19 59/20 66/14 66/15 66/16 66/18 66/21 66/21 67/5 67/6 67/7 67/9 67/10 67/13 67/15 67/16 67/18 68/18 68/19 68/21 68/23 68/24 69/13 69/17 69/21 69/22 69/23 70/2 70/3 70/19 71/11 71/15 71/17 72/8 73/12 75/16 77/7 77/8 78/4 78/5 80/3 83/24 105/16 106/9 108/15 108/19 108/21 108/24 110/21 110/22 111/18 111/21 112/3 112/13 113/13 113/15 113/15 113/20 113/21 113/23 113/24 115/11 116/3 116/7 116/12 118/11 122/7 122/8 122/14
**DSC -- the [1]** 69/21
**DSC's [3]** 66/16 66/25 71/6
**due [2]** 32/6 77/23
**dumb [1]** 121/12
**Duque [35]** 18/16 24/2 24/5 27/24 30/11 39/21 42/23 44/19 45/4 46/2 46/10 46/20 47/14 48/1 51/3 52/22 53/6 53/19 55/18 58/20 60/15 65/22 79/15 83/19 84/9 84/20 84/25 85/11 85/25 88/10 93/14 105/14 105/18 116/14 116/14
**Duque's [5]** 23/11 52/15 53/12 105/7 117/2
**during [4]** 53/1 53/7 84/18 108/15
**duties [3]** 86/17 94/25 103/25
**duty [21]** 74/4 74/5 74/18 74/22 74/23 74/25 75/5 75/11 93/5 93/6 93/14 93/15 93/17 112/3 112/5 112/9 112/12 119/2 119/5 119/20 120/17
**duty -- fiduciary [1]** 74/4


## E


**e-mail [8]** 3/25 40/25 41/18 42/14 43/5 43/13 44/3 54/7
**e-mails [1]** 85/5
**each [9]** 12/1 16/9 17/7 27/17 32/12 64/21 64/22 69/21 114/23
**earlier [12]** 46/17 49/17 53/22 54/5 81/16 84/12 89/19 102/9 103/21 108/11 117/1 117/17
**earlier -- and [1]** 89/19
**early [2]** 84/8 97/23
**easy [2]** 16/3 96/6

# E


**eat [1]** 47/24
**economically [1]** 71/17
**effect [1]** 119/19
**effective [2]** 7/7 32/13
**effectively [2]** 80/3 120/16
**effort [2]** 59/17 123/15
**ego [4]** 57/8 59/22 60/13 105/11
**either [12]** 22/21 39/7 47/25 48/5 51/10 64/8 77/20 79/14 100/23 104/15 115/24 120/14
**element [2]** 62/5 112/22
**elements [12]** 27/17 52/12 62/11 65/3 72/21 73/23 74/2 88/21 93/4 112/19 115/18 115/23
**elide [2]** 29/9 36/18
**else [8]** 28/21 36/7 58/5 87/18 90/9 104/15 105/21 116/16
**elucidate [1]** 3/25
**emphasize [3]** 63/20 64/22 119/13
**emphasizing [1]** 52/8
**employed [1]** 46/21
**employee [2]** 52/24 65/16
**employees [7]** 28/1 47/11 47/15 57/11 57/12 57/21 65/23
**encourage [2]** 54/12 55/11
**end [10]** 14/23 55/14 58/17 58/19 61/14 62/4 66/15 84/21 91/10 98/6
**ended [6]** 14/21 24/12 32/21 50/11 66/5 75/5
**endpoint [1]** 27/3
**engage [1]** 20/2
**English [26]** 52/10 60/23 60/25 61/1 61/4 61/17 65/5 70/11 72/23 78/12 78/16 82/2 87/21 93/16 93/19 93/25 95/21 95/22 99/4 112/2 118/9 119/3 120/12 120/12 120/24 121/6
**English -- as [1]** 120/12
**enjoy [1]** 69/16
**enough [6]** 6/15 6/23 6/25 112/15 120/10 123/11
**Ensco [65]** 8/2 41/7 42/16 42/21 42/24 80/5 80/7 80/14 80/23 81/18 81/18 81/20 82/5 82/11 83/8 83/9 83/20 83/23 83/23 86/13 89/5 89/5 89/11 89/16 89/17 89/22 89/25 90/3 90/8 90/14 90/17 90/19 91/2 91/15 92/18 92/21 92/25 93/12 93/13 93/16 94/6 94/9 94/10 97/19 97/22 97/22 98/6 101/20 101/23 101/24 102/6 102/9 102/12 102/24 103/7 103/8 103/10 103/19 103/23 104/2 117/13 117/18 117/21 117/23 119/18
**Ensco's [5]** 87/9 101/18 102/5 102/23 117/16
**enter [14]** 30/12 33/22 34/24 46/3 89/17 89/22 94/5 107/20 108/5 108/8 115/6 117/7 120/4 120/7
**entered [24]** 23/14 28/6 28/9 35/23 72/6 81/9 81/12 89/4 89/5 89/21 89/25 90/8 92/23 94/14 101/19 103/2 107/22 108/20 115/8 115/10 117/9 117/12 117/15 123/2
**entering [9]** 53/14 79/17 83/21 89/12 92/3 92/17 94/19 108/23 119/21
**Enterprises [1]** 29/17
**enters [1]** 36/5
**entertaining [1]** 26/17
**entire [4]** 16/4 40/10 55/4 55/6
**entirely [6]** 11/9 46/15 50/10 75/9 102/10 102/21
**entities [7]** 6/5 20/7 55/20 58/4 58/15 59/1 105/19
**entitled [6]** 62/25 77/5 102/17 104/9 109/4 120/14
**entity [25]** 6/3 6/18 7/6 10/19 10/21 10/21 11/4 11/4 11/24 12/2 12/8 14/18 19/25 21/7 21/8 21/11 21/17 21/20 21/21 22/15 22/17 49/10 49/11 55/8 73/1
**entry [1]** 82/2
**ERIC [2]** 1/18 3/7
**especially [2]** 55/9 79/10
**essence [1]** 28/19
**Essentially [1]** 73/24
**establish [32]** 47/22 47/23 48/3 48/6 57/15 61/19 61/22 62/3 62/7 62/14 64/23 65/1 65/3 66/10 70/5 70/9 71/24 74/18 74/21 74/22 74/25 75/1 75/20 75/23 75/25 76/5 76/6 78/9 80/20 87/25 113/1 113/5
**establish -- can't [1]** 47/22
**established [2]** 63/5 74/10
**establishes [1]** 53/7
**establishing [3]** 52/14 62/12 112/19
**estoppel [1]** 104/12
**evaluate [2]** 32/12 34/15
**evaluation [1]** 36/9
**evaporated [1]** 32/6
**even [30]** 6/10 11/8 17/9 19/8 21/6 24/21 31/19 31/20 35/25 36/2 37/2 39/19 60/19 66/9 72/1 74/21 74/24 75/23 84/18 84/22 91/4 91/16 91/18 92/6 93/19 95/23 99/4 109/1 113/18 119/5
**even -- it [1]** 39/19
**event [9]** 8/6 16/16 21/5 40/17 60/18 61/5 66/22 87/10 90/16
**events [3]** 36/4 39/23 40/22

## E

**every [3]** 45/23 55/10 113/23
**Everybody [2]** 26/9 104/18
**everyone [3]** 14/20 15/19 22/7
**evidence [41]** 15/10 22/19 23/5 23/18 23/25 39/5 39/6 39/9 39/13 45/4 45/20 46/1 51/10 53/22 54/13 55/16 58/18 65/11 65/14 67/4 67/16 70/22 70/23 73/13 74/17 75/12 94/24 105/15 107/22 107/23 107/25 108/4 108/7 113/22 115/8 115/9 116/8 116/10 117/6 117/9 120/6
**evidence -- there [1]** 107/23
**evidentiary [1]** 36/1
**evolved [1]** 79/9
**ex [4]** 78/17 102/14 102/18 102/20
**exactly [8]** 5/17 10/10 15/18 49/16 74/1 81/5 85/3 91/12
**example [4]** 9/9 40/23 121/22 122/5
**exception [3]** 44/24 44/25 45/1
**excerpt [2]** 35/9 42/12
**exchange [3]** 81/23 94/11 103/15
**exclusive [2]** 77/20 114/23
**exclusively [2]** 55/19 105/18
**excuse [2]** 80/1 86/7
**executive [8]** 12/14 12/15 12/22 49/17 52/20 52/25 53/14 53/18
**executives [8]** 28/2 41/5 42/5 53/19 55/18 58/21 84/18 105/18
**Exhibit [17]** 41/2 42/12 52/20 53/10 53/15 53/16 53/24 53/25 53/25 54/1 54/1 54/3 54/6 54/8 55/24 111/8 111/10
**Exhibit 1 [1]** 53/24
**Exhibit 10 [1]** 54/1
**Exhibit 11 [1]** 54/1
**Exhibit 16 [1]** 53/25
**Exhibit 19 [1]** 54/3
**Exhibit 28 [1]** 53/15
**Exhibit 34 [1]** 53/16
**Exhibit 4 [1]** 52/20
**Exhibit 44 [1]** 54/8
**Exhibit 51 [2]** 55/24 111/10
**Exhibit 6 [1]** 54/6
**Exhibit 67 [1]** 41/2
**Exhibit 68 [1]** 42/12
**Exhibit 8 [1]** 53/25
**Exhibit 9 [1]** 53/10
**existence [2]** 39/8 110/25
**exists [1]** 5/13
**expanded [1]** 23/9
**expansive [1]** 76/13
**expected [1]** 35/1
**expecting [1]** 25/22
**expense [1]** 91/14
**experienced [1]** 71/1
**expert [20]** 11/21 17/9 17/9 17/14 24/20 24/22 39/12 50/21 54/3 60/25 61/2 71/7 79/11 90/9 93/25 95/22 99/4 100/5 120/12 121/19
**experts [12]** 51/10 60/24 62/22 62/23 63/23 72/1 95/16 95/17 118/9 119/2 119/3 120/11
**experts -- and [1]** 120/11
**explain [9]** 5/13 27/16 30/19 64/5 64/12 65/3 66/18 104/21 106/7
**explained [14]** 12/13 57/18 72/10 74/8 75/17 76/4 104/20 105/5 105/10 112/15 113/21 114/18 115/17 116/19
**explaining [1]** 42/24
**explains [3]** 53/17 77/3 93/25
**explains -- which [1]** 53/17
**explanation [2]** 110/20 111/17
**explicitly [1]** 87/7
**expressly [3]** 37/8 63/15 88/9
**extend [3]** 67/8 82/25 122/7
**extended [5]** 66/19 66/25 67/1 82/21 122/8
**extending [2]** 43/10 66/16
**extension [2]** 66/13 67/4
**extent [4]** 15/1 61/4 110/9 110/12
**extra [2]** 6/12 6/13
**Exxon [5]** 11/12 22/8 22/8 22/10 22/12
**eye [10]** 81/13 82/3 87/21 87/24 88/1 88/14 88/16 94/1 94/3 103/6

## F

**facilitation [1]** 63/12
**facilitator [1]** 18/15
**fact [40]** 7/23 15/20 18/22 20/24 24/1 27/10 30/4 30/4 37/8 37/17 37/18 37/19 38/2 43/4 44/10 50/21 51/12 61/9 61/14 67/3 79/11 82/6 85/14 85/24 85/25 87/18 90/7 92/5 93/23 94/15 95/3 95/20 102/17 104/9 106/16 106/23 107/23 109/3 110/11 117/9
**factor [1]** 48/17
**factors [10]** 5/20 5/21 8/11 27/10 27/12 27/15 30/19 32/19 40/20 48/16
**facts [32]** 10/8 25/6 29/14 30/18 36/1 40/12 41/15 43/12 43/13 44/1 44/8 60/20 64/24 73/7 73/8 73/24 75/14 85/23 88/2 89/3 92/13 107/9 107/10 107/11 115/25 119/3 119/7 121/19 121/21 121/24 123/7 123/10

**F**

**factual [2]** 14/5 105/22
**factually [1]** 95/13
**fail [2]** 75/24 102/25
**failed [5]** 37/3 37/4 38/18 57/19 104/7
**failed -- the [1]** 37/3
**failing [2]** 66/13 82/5
**fails [1]** 69/14
**failure [5]** 17/19 21/22 31/14 59/23 112/14
**failures [1]** 31/3
**fair [3]** 6/14 6/23 47/20
**fairly [1]** 3/18
**falsely [1]** 85/18
**familiar [2]** 9/22 82/16
**family [1]** 11/19
**Fannin [1]** 1/20
**fault [2]** 31/5 39/18
**favor [1]** 16/10
**favorable [3]** 108/8 115/10 120/8
**FCRR [1]** 2/4
**federal [1]** 60/23
**fee [2]** 69/20 109/6
**feed [1]** 26/16
**fees [6]** 6/1 8/10 8/18 8/23 9/8 9/10
**Felippe [1]** 86/1
**FELIX [2]** 1/15 3/7
**Fernando [1]** 44/5
**few [4]** 6/12 6/13 52/12 111/15
**fiduciary [16]** 74/3 74/3 74/4 74/4 74/18 74/22 74/25 75/4 75/11 86/16 93/5 93/11 93/14 94/25 103/25 112/9
**fiduciary -- fiduciary [1]** 74/3
**field [1]** 17/11
**Fifth [12]** 23/3 23/4 27/5 29/12 29/16 29/18 32/17 36/25 37/7 37/8 56/6 61/11
**Fifth Circuit [9]** 23/3 23/4 27/5 29/18 36/25 37/7 37/8 56/6 61/11
**Fifth Circuit's [3]** 29/12 29/16 32/17
**figures [1]** 90/9
**file [1]** 17/6
**filed [5]** 19/17 44/5 48/2 57/6 124/18
**final [4]** 73/22 75/22 101/9 102/13
**finally [6]** 9/5 15/13 50/25 71/14 73/5 78/15
**find [4]** 22/18 32/13 36/7 44/3
**finder [1]** 93/23
**finding [3]** 10/9 22/19 100/23
**finds [2]** 40/8 85/3
**fine [2]** 25/20 103/1
**finish [1]** 67/13
**finished [1]** 18/5
**first [32]** 4/4 4/19 5/22 8/12 16/13 18/17 19/15 25/2 25/17 26/15 27/19 29/14 31/19 48/17 52/5 57/25 58/2 61/19 63/5 64/11 65/4 66/24 75/5 80/17 84/8 86/5 86/22 89/12 98/25 106/13 112/1 119/13
**Fish [10]** 62/25 62/25 63/2 63/2 112/15 112/15 112/21 112/21 112/23 112/23
**five [9]** 15/5 21/10 24/11 50/12 50/14 50/17 50/23 67/9 83/1
**five-year [9]** 15/5 21/10 24/11 50/12 50/14 50/17 50/23 67/9 83/1
**fix [1]** 26/14
**flawed [1]** 39/17
**fleet [1]** 45/22
**flip [1]** 84/3
**flogged [1]** 119/10
**flooded [1]** 45/19
**fluctuating [1]** 38/9
**fluctuation [2]** 15/7 15/21
**fluctuations [2]** 15/1 15/6
**focus [2]** 65/4 77/25
**follow [5]** 20/4 26/5 27/11 29/9 40/19
**following [3]** 31/14 41/2 124/20
**fond [1]** 39/1
**forced [4]** 19/19 19/21 21/6 21/7
**foregoing [2]** 124/11 124/17
**foreign [6]** 60/23 60/24 61/8 61/10 61/13 61/15
**foreseeability [7]** 14/25 15/24 38/5 38/7 38/10 38/20 38/21
**foreseeable [3]** 15/21 38/14 38/16
**forget [1]** 121/2
**form [1]** 91/17
**formulation [1]** 37/11
**forth [8]** 48/14 51/3 62/24 105/8 107/9 115/11 115/19 115/24
**forward [5]** 40/10 43/14 43/19 48/4 101/23
**forwarded [1]** 41/25
**forwarding [2]** 42/1 84/14
**found [4]** 9/12 56/6 80/23 96/2
**four [28]** 8/10 19/18 24/25 60/25 73/4 74/8 79/17 81/20 82/3 82/24 82/24 83/14 86/8 89/6 89/12 90/1 92/17 92/24 94/6 94/14 94/17 94/19 103/10 103/21 117/8 117/10 118/21 121/16
**four-year [1]** 19/18
**fourth [8]** 8/21 39/23 43/9 81/9 81/12 83/16 103/2 121/25
**fraud [2]** 18/23 40/15
**fraudulent [4]** 14/22 16/20

**F**

**fraudulent... [2]** 18/18 70/13
**fraudulently [3]** 6/1 9/25 17/1
**friend [1]** 41/1
**front [1]** 79/25
**Fs [1]** 45/24
**fulfill [2]** 34/7 34/11
**full [7]** 40/11 40/24 43/18 83/1 84/8 90/14 94/9
**fully [1]** 70/2
**fundamentally [1]** 79/25
**further [6]** 4/10 46/24 51/15 70/20 105/17 105/20
**furthered [1]** 113/20
**Furthermore [3]** 70/11 74/24 112/14

**G**

**gain [1]** 91/13
**Gama [1]** 44/5
**game [1]** 45/7
**GARCIA [11]** 1/14 3/6 25/16 56/11 91/4 93/3 94/23 102/14 105/4 117/6 119/1
**gas [2]** 46/8 46/9
**gave [8]** 63/20 63/22 64/15 112/25 113/2 113/3 115/20 119/15
**Gee [9]** 60/25 61/3 93/24 95/22 96/5 112/6 118/10 122/3 122/4
**general [13]** 16/2 42/2 42/4 43/12 81/16 85/3 86/6 88/7 88/17 89/13 103/4 119/2 119/5
**Gentlemen [1]** 41/3
**genuine [5]** 51/12 61/13 90/7 102/16 104/8
**geological [1]** 24/24
**gets [3]** 17/9 40/19 84/23
**getting [5]** 21/9 79/21 80/2 84/21 90/21
**GILMAN [2]** 1/15 3/7
**give [8]** 8/4 26/5 70/13 75/18 84/20 119/21 120/17 120/19
**given [4]** 65/6 68/18 76/13 76/14
**gives [1]** 5/9
**giving [1]** 73/19
**glib [1]** 37/10
**global [1]** 84/7
**gloss [3]** 35/21 76/13 76/13
**go -- belabor [1]** 117/20
**go -- go [1]** 16/9
**goes [10]** 15/25 30/6 34/14 41/9 41/25 43/3 44/18 49/21 52/5 55/24
**going [42]** 3/15 4/2 5/18 7/9 8/9 10/18 11/12 11/16 11/22 12/16 14/20 17/12 17/21 20/2 21/8 21/13 21/16 21/17 22/7 22/11 22/11 25/10 25/11 31/1 31/7 31/8 32/22 35/6 38/21 40/10 43/19 55/25 64/21 65/4 72/11 73/22 85/24 88/20 101/23 102/8 115/15 123/14
**golden [1]** 38/1
**gone [2]** 15/16 32/20
**good [11]** 3/2 3/5 3/9 4/24 37/2 51/23 54/22 56/10 115/16 123/23 123/25
**got [11]** 20/15 20/20 28/19 29/13 30/21 31/5 47/5 52/13 82/1 86/4 103/15
**gotten [3]** 86/6 90/14 90/15
**Gouvea [1]** 41/18
**governed [2]** 60/22 61/17
**governing [2]** 76/10 95/24
**government [1]** 14/2
**GRACE [2]** 1/15 3/6
**grand [1]** 85/9
**Group [7]** 27/11 29/1 29/19 32/17 36/25 38/12 38/18
**guide [1]** 123/17
**Gulf [12]** 12/6 12/7 12/10 12/22 21/23 22/9 23/23 35/14 46/7 49/6 49/20 50/16
**Gulf -- it [1]** 49/6
**guys [2]** 27/25 28/1

**H**

**had -- they [1]** 34/21
**half [3]** 23/20 82/23 84/8
**Hamylton [8]** 18/13 18/15 42/5 42/17 42/20 84/23 85/10 88/9
**hand [5]** 5/6 47/1 78/25 85/20 85/21
**handed [5]** 5/7 26/1 54/25 55/2 79/2
**handouts [2]** 5/3 5/5
**hands [3]** 14/24 78/17 88/8
**hang [1]** 8/7
**happen [1]** 17/12
**happened [11]** 12/18 17/23 25/2 28/21 36/4 81/8 85/3 87/18 108/21 110/16 110/17
**happened -- what [1]** 110/16
**happening [1]** 26/19
**happens [5]** 4/11 33/21 39/22 39/25 93/19
**happy [5]** 5/8 13/1 16/15 25/15 44/13
**harbored [1]** 108/10
**hard [1]** 6/25
**Harden [1]** 54/4
**harm [22]** 10/9 16/11 29/21 30/22 32/23 33/1 38/7 64/19 64/23 66/10 66/24 68/20 71/24 72/16 95/19 101/24 110/1 110/2 112/16 113/22 118/12 118/19
**harmed [1]** 115/1
**harmful [3]** 67/17 68/18 113/23
**harms [1]** 77/20
**HARTMAN [13]** 1/23 3/11 34/2 79/3 106/11 107/19

**H**


**HARTMAN... [7]** 109/3 109/6 109/10 114/24 115/5 119/17 121/19
**Hartman's [1]** 106/2
**has -- for [1]** 121/22
**has -- had [1]** 49/22
**has -- has [1]** 112/12
**has -- Petrobras [1]** 114/2
**hasn't [3]** 17/23 121/22 121/24
**hat [1]** 8/7
**hate [1]** 6/8
**have [167]**
**have -- could [1]** 77/6
**have -- I [1]** 45/18
**have -- if [1]** 114/20
**have -- we [2]** 30/1 121/2
**haven't [7]** 21/1 24/18 43/25 44/6 45/16 49/12 51/9
**haven't -- again [1]** 24/18
**having [10]** 70/8 72/9 73/10 75/15 89/13 108/1 108/2 108/15 113/8 119/20
**he [32]** 10/17 12/13 18/15 21/2 21/4 24/8 24/10 24/10 27/9 32/9 33/7 34/14 35/5 35/7 37/20 37/25 42/22 49/4 71/8 79/7 85/24 88/4 106/16 112/8 112/10 121/20 121/20 121/22 121/22 121/24 122/6 122/9
**he's [3]** 41/12 50/22 121/23
**headed [1]** 10/10
**heads [1]** 53/13
**hear [5]** 19/5 19/10 48/7 48/16 105/25
**heard [15]** 19/16 27/1 27/8 27/22 30/22 31/2 38/10 84/12 95/17 102/8 107/12 109/3 117/18 119/17 123/11
**HEARING [1]** 1/10
**hearings [1]** 26/23
**heart [1]** 79/21
**Heather [2]** 2/4 124/15
**heavily [1]** 108/16
**HEAVY [7]** 1/6 3/10 39/7 39/18 42/18 47/10 79/4
**held [3]** 59/23 62/9 76/1
**help [1]** 123/17
**helpful [2]** 27/18 124/1
**Hemi [8]** 15/22 27/11 29/1 29/19 32/17 36/25 38/12 38/18
**here [59]** 4/18 5/14 6/18 8/17 9/3 9/6 9/16 12/18 13/6 13/13 13/19 14/24 15/4 15/19 16/15 18/20 20/15 23/4 26/19 27/21 28/8 28/10 28/18 28/19 29/5 29/11 29/11 30/4 30/20 31/9 34/22 35/20 38/2 38/16 40/3 42/11 42/14 44/1 44/21 45/1 45/18 46/16 47/1 47/8 47/9 47/13 48/18 48/24 49/19 50/13 50/22 61/22 70/17 79/23 81/8 89/1 92/5 112/5 119/15
**here's [1]** 40/23
**hid [1]** 90/18
**high [2]** 26/23 82/17
**high-tech [1]** 26/23
**higher [1]** 17/17
**highlight [2]** 18/19 55/13
**highlighted [2]** 8/12 9/21
**him [5]** 10/25 31/12 31/17 91/6 117/18
**himself [1]** 42/22
**hire [1]** 30/5
**hiring [1]** 42/5
**his [37]** 10/17 11/2 12/12 12/13 12/23 14/11 21/2 24/8 31/10 31/10 31/12 31/12 31/13 32/9 32/9 33/10 35/4 35/7 53/7 61/1 75/11 77/3 85/8 86/16 88/4 88/8 91/4 93/15 93/17 94/8 94/8 103/25 107/8 112/8 121/22 121/25 123/7
**hit [1]** 83/5
**HODGES [4]** 2/2 3/12 34/16 42/8
**hold [2]** 14/10 56/13
**holder [2]** 69/13 69/14
**Holmes [18]** 5/14 5/19 8/11 9/5 15/25 16/8 26/9 27/2 27/2 27/8 27/10 29/1 29/9 29/19 36/19 40/20 48/14 49/12
**Holmes -- or [1]** 27/8
**honest [1]** 3/21
**Honor [73]** 3/5 3/9 3/16 4/6 4/12 4/16 5/2 5/8 5/18 5/24 6/14 6/20 7/3 8/1 8/24 9/16 9/22 10/6 12/25 13/1 13/8 16/22 19/23 23/1 25/11 25/23 26/8 26/12 26/24 34/18 37/17 40/6 48/10 48/11 51/11 51/15 51/19 54/19 55/1 55/5 55/11 56/10 56/13 78/23 79/3 79/16 80/1 81/1 81/6 82/9 84/3 85/14 86/23 88/6 90/6 90/23 92/1 92/15 93/1 98/1 98/25 102/4 102/19 103/1 104/14 104/17 116/24 117/20 119/8 123/22 123/24 124/5 124/6
**Honor's [2]** 6/4 8/1
**HONORABLE [1]** 1/10
**hook [1]** 43/18
**hope [1]** 88/3
**horns [1]** 46/25
**horse [1]** 119/10
**HOUSTON [5]** 1/2 1/19 1/20 1/25 2/5
**How'd [1]** 33/25
**however [4]** 27/3 40/3 57/3 62/14
**huge [1]** 49/7
**hundreds [2]** 8/14 83/4
**hypothetical [2]** 122/4 122/5

# I

**I -- I'd [1]** 40/2
**I'd [8]** 29/14 33/15 33/20 38/25 40/2 44/13 94/14 106/10
**I'll [16]** 6/9 6/20 8/2 22/8 26/12 31/23 52/13 55/5 78/14 88/21 93/1 95/14 101/9 104/21 106/13 118/7
**I'll -- and [1]** 52/13
**I'm [32]** 3/23 5/1 5/8 6/5 6/6 13/1 16/15 24/4 25/10 25/15 26/18 26/19 31/8 38/19 41/18 44/13 54/16 64/21 65/4 72/11 73/22 78/13 78/14 82/16 104/11 104/25 111/2 111/3 115/15 116/9 123/14 124/2
**I've [7]** 29/13 38/6 39/10 39/11 63/2 73/8 124/3
**i.e [1]** 91/14
**idea [2]** 24/15 50/9
**identified [3]** 50/22 65/11 65/14
**identifiers [1]** 124/20
**identify [1]** 54/15
**ignored [1]** 88/2
**imagine [1]** 11/25
**immaterial [8]** 59/6 61/5 64/6 64/13 66/8 109/19 109/24 121/15
**immediately [2]** 15/11 24/13
**impact [5]** 15/21 39/7 39/10 108/18 109/8
**implementation [2]** 63/25 72/4
**importance [1]** 27/5
**important [8]** 27/1 27/3 40/3 41/13 52/14 54/16 65/19 83/15
**importantly [1]** 37/2
**imposes [1]** 112/5
**improperly [3]** 77/7 77/8 114/21
**imputation [11]** 44/18 46/18 46/24 47/19 47/25 52/12 52/15 54/10 55/15 55/21 56/7
**impute [1]** 47/20
**imputed [11]** 44/20 44/24 46/20 60/15 65/24 81/2 105/14 110/10 110/13 110/15 116/20
**imputing [1]** 52/3
**inability [1]** 10/2
**INC [2]** 1/4 33/22
**include [2]** 64/1 93/17
**included [4]** 63/2 82/10 101/25 104/1
**includes [1]** 110/4
**including [2]** 27/11 53/18
**inconclusive [1]** 17/25
**inconsistent [1]** 16/16
**incorporating [1]** 124/19
**increase [1]** 45/21
**Indeed [3]** 70/2 70/14 75/8
**independent [8]** 10/24 34/22 40/16 40/17 49/19 49/20 86/12 90/23
**independent -- yet [1]** 40/16
**indicated [3]** 66/7 107/21 109/19
**indicating [1]** 26/14
**indication [2]** 18/17 18/17
**indication -- clear [1]** 18/17
**indictment [24]** 18/13 19/12 19/13 19/14 41/6 42/4 42/13 43/22 59/14 64/10 66/6 73/11 75/16 81/15 85/4 85/6 85/7 85/22 88/7 88/9 88/18 103/4 106/4 111/24
**indictments [1]** 110/8
**indirect [5]** 37/12 37/21 37/23 47/22 48/3
**indisputable [2]** 66/3 67/3
**individual [2]** 45/14 73/1
**induced [2]** 74/6 75/1
**inducement [2]** 65/6 65/13
**INDUSTRIES [6]** 1/7 3/10 39/7 42/19 47/10 79/4
**Industries' [1]** 39/18
**industry [4]** 11/14 19/24 19/24 71/1
**inferred [1]** 63/16
**inform [2]** 80/3 112/3
**information [14]** 9/18 20/23 20/25 51/5 80/2 83/20 83/23 85/14 85/16 85/19 86/2 94/6 105/1 111/19
**infringe [1]** 87/9
**infringements [1]** 87/11
**initial [1]** 82/25
**initially [2]** 50/15 50/16
**injure [14]** 64/16 65/2 72/21 72/23 72/25 73/14 73/15 80/18 86/15 90/25 91/6 91/12 103/23 119/16
**injured [1]** 29/2
**injuries [2]** 29/21 69/18
**injury [19]** 10/2 13/6 14/13 27/7 29/7 29/7 30/7 32/24 33/1 33/3 36/14 38/15 47/6 47/17 47/22 50/13 50/19 50/22 69/15
**injury's [1]** 48/3
**innocent [3]** 75/9 102/10 102/25
**input [1]** 4/18
**inquiries [1]** 28/24
**inquiry [2]** 88/4 88/5
**instructive [1]** 54/1
**insufficient [1]** 17/25
**intend [1]** 106/16
**intended [2]** 30/24 31/16
**intent [3]** 71/15 91/12 108/10
**intention [5]** 10/18 72/25 73/14 91/9 123/22
**Inter [1]** 36/11
**interest [7]** 24/9 35/2 45/1

## I

**interest... [4]** 45/5 45/17 50/10 58/24
**interesting [2]** 26/11 124/2
**interests [3]** 45/7 46/5 46/14
**internal [2]** 24/17 33/21
**international [45]** 6/19 6/22 7/3 7/11 7/20 8/22 28/6 29/8 30/12 30/14 30/14 30/23 36/5 36/7 39/2 39/16 42/15 42/15 42/21 43/17 58/3 65/21 67/11 67/11 67/12 81/21 81/22 82/19 83/24 83/25 84/2 88/11 89/4 89/6 89/9 92/18 94/11 103/11 103/12 103/14 103/16 106/8 108/22 108/25 109/8
**International -- and [1]** 67/11
**International -- International's [1]** 106/8
**International -- signed [1]** 42/15
**International's [4]** 67/6 81/24 85/12 106/8
**interpretation [2]** 29/12 61/12
**interpreting [1]** 29/18
**intervened [1]** 14/15
**intervening [4]** 8/6 32/18 40/21 91/17
**invalid [1]** 24/23
**investigation [2]** 41/23 84/7
**investigators [1]** 84/15
**invoices [7]** 66/17 66/20 68/22 90/4 97/24 98/12 109/14
**involve [1]** 95/24
**involved [7]** 16/19 43/22 58/16 85/8 85/9 113/18 116/6
**involvement [3]** 75/7 110/21 111/17
**involving [1]** 94/5
**irrelevant [3]** 9/1 56/7 66/2
**is -- has [1]** 106/24
**is -- is [3]** 76/10 86/1 120/16
**is -- it's [1]** 122/12
**is -- takes [1]** 47/25
**is -- to [1]** 112/14
**isn't [8]** 3/25 4/12 8/13 17/12 30/15 33/24 33/24 119/13
**issue [45]** 3/17 3/20 4/3 4/19 4/25 5/9 5/10 8/24 8/24 15/22 16/14 19/16 21/6 23/2 25/19 27/19 28/10 29/17 37/1 40/7 44/10 44/14 44/16 44/18 46/16 47/13 51/12 51/17 51/18 52/1 59/4 61/4 61/13 76/10 78/18 102/16 104/19 104/23 105/5 110/3 112/18 114/1 121/23 122/11 123/14
**issued [2]** 84/11 111/6
**issues [7]** 12/1 22/13 31/11 48/9 52/12 58/13 72/13
**it -- as [1]** 64/5
**it -- it's [1]** 4/13
**it -- learning [1]** 64/8
**It -- that [1]** 43/24
**it -- this [1]** 41/14
**its [63]** 8/2 8/7 11/10 15/14 32/12 34/3 34/9 35/2 36/9 36/21 37/9 39/8 39/9 44/21 45/21 52/25 56/13 57/5 57/6 57/6 57/15 57/23 57/25 58/9 58/10 58/11 59/16 59/17 60/10 60/12 60/13 60/16 60/19 60/19 60/25 61/19 61/21 69/12 69/16 69/16 70/15 70/21 76/14 81/16 82/25 83/8 85/3 85/16 86/3 89/13 89/24 90/17 95/19 102/18 103/3 103/8 103/15 110/18 112/3 113/11 120/19 121/19 122/2
**itself [8]** 7/23 25/4 39/16 50/23 81/23 87/5 89/6 119/18

## J

**Jackson [3]** 32/18 36/15 37/8
**Jacobs [2]** 50/21 71/8
**James [1]** 54/4
**January [12]** 30/24 71/16 82/17 83/5 86/5 90/11 90/14 96/16 101/19 102/1 108/11 113/16
**January 2008 [3]** 82/17 101/19 113/16
**January 2016 [6]** 71/16 83/5 86/5 90/14 96/16 102/1
**join [5]** 87/4 91/11 91/20 91/22 92/3
**joined [15]** 28/13 64/1 64/3 64/7 66/5 72/2 72/17 73/11 73/17 80/21 80/25 98/2 102/2 104/1 118/20
**joining [5]** 80/18 103/23 117/4 118/10 119/14
**joint [9]** 62/18 62/23 80/17 86/14 86/24 88/20 103/22 112/20 115/18
**jointly [2]** 63/24 80/14
**JONATHAN [3]** 1/14 3/5 48/11
**JOSHUA [2]** 1/23 3/12
**joys [1]** 26/23
**Jr [1]** 86/1
**JUDGE [3]** 1/11 95/13 117/1
**judgment [24]** 4/5 4/8 4/9 4/13 4/14 10/14 41/3 45/19 50/19 53/15 53/16 53/25 54/8 57/17 57/24 57/25 58/11 59/7 59/24 61/7 61/14 79/12 102/17 104/9
**Judicial [1]** 124/21
**JULY [21]** 1/11 19/11 19/15 59/11 59/17 64/7

## J

**JULY... [15]** 65/18 69/24 71/6 71/23 73/9 80/1 84/21 86/7 90/10 90/13 109/24 116/17 117/14 124/14 124/19
**July -- or [1]** 86/7
**July 10th [1]** 59/17
**July 2015 [4]** 19/15 65/18 90/13 116/17
**June [6]** 75/9 110/17 110/24 111/2 111/3 111/16
**June 18 [1]** 111/3
**June 18th [1]** 110/24
**June 2015 [2]** 75/9 111/16
**June of [1]** 110/17
**Juridico [1]** 41/10
**jurisdiction [1]** 12/1
**jurisdictions [2]** 11/13 22/16
**just [42]** 5/3 6/4 6/10 16/21 17/12 17/18 23/24 26/5 27/19 29/8 35/6 40/23 42/7 42/12 42/12 46/11 46/17 48/13 51/7 55/2 58/7 72/13 76/14 79/5 80/7 82/11 84/4 85/18 87/2 87/9 90/5 90/6 90/22 90/23 90/24 91/19 104/11 106/7 111/12 119/12 122/12 123/15
**just -- and [1]** 16/21
**just -- is [1]** 42/12

## K

**Kaye [1]** 1/24
**keep [1]** 6/25
**keeping [4]** 93/17 94/6 94/9 116/9
**keeps [1]** 46/9
**kept [1]** 83/22
**key [5]** 36/21 54/10 54/11 112/21 116/25
**kind [6]** 16/16 19/21 33/20 45/7 87/8 98/6
**kinds [1]** 46/3
**knew [30]** 14/20 16/13 16/19 18/22 22/7 43/6 44/16 44/20 79/18 81/15 81/17 82/5 84/5 84/5 89/2 89/14 90/5 90/11 90/19 92/23 94/13 98/10 98/13 103/3 103/4 103/4 103/20 106/22 111/17 117/14
**knew -- its [1]** 103/3
**know [23]** 4/4 6/8 15/7 17/3 17/3 17/19 17/22 19/11 21/2 21/24 30/14 32/25 33/6 33/10 44/8 87/19 88/4 88/16 90/12 102/9 102/14 118/23 123/20
**knowing [3]** 69/14 80/5 92/18
**Knowingly [1]** 87/14
**knowledge [45]** 21/16 22/20 40/9 40/12 43/18 44/16 44/19 44/23 46/19 46/24 47/20 48/1 52/4 52/15 65/18 81/2 81/3 81/14 82/4 83/18 87/21 87/24 87/24 87/25 88/1 88/14 88/16 89/5 89/12 89/24 90/20 94/1 94/2 94/3 102/23 102/24 103/6 110/10 110/11 110/13 110/15 116/20 117/16 117/19 118/21
**knowledge -- coming [1]** 94/1
**knowledgeable [1]** 10/15
**known [3]** 28/12 49/10 110/11
**knows [5]** 15/16 16/24 31/11 35/18 44/22
**Korean [1]** 42/18

## L

**lack [2]** 55/24 88/4
**lacked [1]** 60/5
**landscape [1]** 54/18
**language [2]** 11/9 45/16
**largely [1]** 93/3
**last [8]** 17/24 21/23 43/3 92/1 93/2 93/2 118/7 122/17
**late [1]** 84/6
**later [15]** 8/2 8/21 15/11 15/12 51/9 80/6 82/23 90/3 90/21 103/18 111/9 111/12 111/14 111/15 113/8
**latest [7]** 31/11 32/9 36/1 42/3 47/4 101/19 111/16
**laundering [1]** 85/9
**law [50]** 5/24 26/25 27/4 27/21 29/13 36/13 37/2 37/5 37/7 38/1 40/14 44/22 45/17 47/17 52/10 60/21 60/23 60/23 60/24 60/25 61/1 61/4 61/8 61/8 61/10 61/10 61/13 61/15 61/17 65/5 70/11 72/23 78/12 78/17 82/2 93/16 93/19 93/25 95/21 95/22 99/4 102/18 104/9 112/2 118/9 119/3 120/12 120/24 121/3 121/6
**lawsuit [2]** 83/10 85/17
**leads [1]** 102/13
**learn [1]** 43/11
**learned [16]** 64/11 66/8 69/24 71/6 71/22 72/9 73/10 75/15 106/3 109/20 109/23 110/7 113/8 119/20 124/2 124/3
**learning [5]** 64/8 64/8 64/9 66/5 66/11
**learns [1]** 120/13
**least [8]** 18/9 31/25 44/9 89/3 98/6 106/18 116/17 123/22
**leaving [1]** 90/6
**LEE [1]** 1/10
**left [2]** 25/5 85/20
**left-hand [1]** 85/20
**legal [8]** 14/9 40/24 41/10 41/13 41/17 41/21 60/9 73/1
**legally [2]** 13/11 77/4

## L

**length [3]** 112/2 112/11 119/6
**less [4]** 15/11 108/8 115/10 120/8
**let [7]** 4/24 5/13 48/7 52/1 86/22 115/13 123/20
**let's [13]** 4/7 4/9 4/15 16/12 26/25 33/12 34/16 35/8 41/17 42/7 84/3 109/20 109/20
**let's -- let's -- I [1]** 109/20
**level [6]** 20/11 45/23 46/18 82/17 83/6 94/2
**liabilities [1]** 95/23
**liability [43]** 8/24 19/6 39/5 51/12 57/4 57/7 57/16 57/19 58/12 59/18 59/21 60/1 61/18 61/20 62/5 62/8 62/10 62/15 62/15 62/23 70/4 70/6 75/21 75/24 76/5 76/6 79/7 80/20 86/11 86/24 88/1 88/20 90/24 91/18 93/2 95/13 104/10 105/7 106/2 112/20 115/18 117/3 117/4
**liable [40]** 14/10 56/14 57/10 59/11 59/13 59/20 60/14 61/24 62/3 62/7 62/9 62/16 63/24 63/24 65/25 72/3 72/20 76/1 76/2 76/7 79/14 79/16 80/14 80/15 80/17 80/22 80/23 82/7 86/13 86/13 91/18 93/18 95/23 96/3 96/3 101/11 103/22 105/13 111/23 118/12
**light [2]** 37/25 111/22
**like [13]** 11/11 11/12 11/12 14/16 29/14 33/15 33/20 40/2 44/13 66/14 106/10 108/14 112/3
**likelihood [3]** 17/11 17/12 17/17
**Likewise [2]** 15/16 48/23
**limitations [7]** 16/16 19/16 22/22 25/9 44/14 48/5 49/3
**limited [1]** 40/10
**line [7]** 27/4 34/19 53/11 53/12 54/6 54/7 99/6
**line 12 [1]** 54/6
**line 15 [1]** 53/12
**line 2 [1]** 53/11
**line 7 [1]** 54/7
**lines [3]** 33/19 53/11 54/6
**lines -- page 192-8 [1]** 54/6
**list [2]** 30/6 52/13
**lists [1]** 110/5
**literally [1]** 85/23
**little [3]** 31/9 54/5 106/14
**LLP [3]** 1/16 1/19 1/24
**local [1]** 22/13
**locate [1]** 12/21
**located [2]** 11/13 11/23
**location [2]** 7/5 12/4
**locations [2]** 11/22 21/22
**locked [1]** 67/9
**long [4]** 15/8 21/18 27/4 45/15
**long-term [1]** 15/8
**longer [3]** 12/4 31/15 90/1
**look [16]** 13/5 14/11 15/25 16/7 27/19 30/18 32/7 33/12 34/10 35/8 37/5 38/20 54/12 60/24 77/25 98/3
**looking [2]** 17/17 82/15
**looks [4]** 5/20 14/5 14/9 34/3
**loss [18]** 63/25 64/1 72/5 72/5 73/5 73/16 76/12 91/2 91/14 92/21 95/20 95/25 96/1 97/22 98/7 98/8 98/11 115/21
**loss -- no [1]** 76/12
**losses [4]** 69/22 69/25 72/10 73/21
**lost [2]** 64/1 72/3
**lot [7]** 44/20 45/13 53/22 105/1 110/7 124/2 124/3
**Louisiana [1]** 1/24
**lowest [1]** 83/6
**loyalty [1]** 45/6
**LTD [1]** 1/7

## M

**made [18]** 12/5 12/14 12/22 21/1 25/18 31/5 34/21 39/16 43/25 53/18 58/8 59/17 88/5 94/24 106/11 114/24 122/10 122/11
**Magic [1]** 29/17
**mail [8]** 3/25 40/25 41/18 42/14 43/5 43/13 44/3 54/7
**mailbox [1]** 88/8
**mails [1]** 85/5
**maintain [1]** 66/15
**maintained [1]** 57/14
**maintaining [2]** 60/12 66/20
**major [1]** 11/11
**majority [2]** 20/17 38/21
**make [16]** 4/17 6/15 11/7 23/16 35/21 36/3 36/20 49/15 55/14 55/21 60/11 65/15 94/8 100/23 123/15 124/3
**makes [7]** 20/12 27/12 38/12 43/5 60/19 123/19 123/21
**making [7]** 32/15 32/22 33/21 61/23 92/13 103/17 122/16
**malicious [2]** 71/15 108/10
**Mallet [2]** 1/16 1/19
**Mallet-Prevost [2]** 1/16 1/19
**management [1]** 39/18
**many [4]** 13/12 23/2 30/4 37/19
**map [1]** 87/7
**March [5]** 16/23 19/17 65/10 75/3 113/16
**March 2008 [3]** 65/10 75/3 113/16

**M**

**Mario [1]** 42/1
**maritime [1]** 52/21
**market [14]** 15/2 15/6 15/7 15/15 15/16 15/21 34/6 34/11 38/6 70/25 71/7 89/20 90/12 115/12
**markup [2]** 81/25 103/17
**markups [2]** 84/1 94/12
**massive [1]** 41/23
**material [11]** 35/19 41/14 51/12 61/13 85/14 89/3 90/7 102/17 104/8 115/25 118/9
**materially [1]** 90/13
**math [1]** 46/19
**matter [13]** 7/16 12/20 14/5 24/2 35/5 38/13 38/18 59/5 64/6 102/17 104/9 121/3 124/12
**matters [10]** 4/4 4/8 4/15 32/1 32/4 38/14 39/24 40/6 61/8 79/11
**may [14]** 3/13 9/22 25/24 39/17 49/20 54/8 61/22 64/1 65/24 78/23 106/10 110/17 110/18 111/6
**May 2015 [1]** 111/6
**maybe [2]** 92/14 123/16
**MCCOLLUM [3]** 1/23 3/12 4/2
**me -- if [1]** 115/13
**mean [7]** 5/15 37/10 47/8 81/2 81/3 81/3 86/10
**mean -- what [1]** 81/3
**meaning [2]** 76/15 95/19
**means [14]** 40/11 40/14 72/21 72/24 73/4 76/10 76/14 80/18 86/15 87/3 88/1 91/1 91/6 103/24
**measures [1]** 95/25
**mechanical [1]** 2/24
**media [1]** 84/19
**member [2]** 20/13 52/25
**memorandum [2]** 59/16 95/21
**Mendoza [1]** 36/23
**mens [3]** 86/18 86/21 87/13
**mention [1]** 53/24
**mentioned [7]** 8/12 19/4 49/16 51/9 53/21 56/3 99/1
**mentions [2]** 19/13 41/6
**Mere [1]** 63/11
**merely [2]** 67/6 108/17
**merged [1]** 28/25
**merits [1]** 3/20
**met [1]** 43/21
**Mexico [11]** 12/6 12/7 12/10 12/22 21/23 22/10 23/24 35/15 46/7 49/21 50/16
**Microsoft [1]** 19/25
**middle [1]** 18/14
**might [4]** 4/17 43/24 90/14 123/15
**Millett [8]** 61/2 61/3 77/3 99/5 112/6 120/11 120/25 122/10
**million [19]** 6/2 9/3 50/19 51/6 80/7 81/25 82/10 83/4 83/8 89/15 90/4 92/25 96/17 97/22 98/8 101/25 104/2 109/15 109/17
**millions [4]** 8/15 84/1 94/12 103/17
**mind [1]** 91/12
**minimal [1]** 93/8
**minimis [1]** 63/8
**minimum [4]** 17/13 83/17 90/7 103/5
**misapprehends [1]** 117/8
**misconduct [8]** 5/23 57/11 57/12 75/10 110/14 110/25 111/16 112/12
**misconstruing [1]** 48/24
**misleading [1]** 67/16
**misrepresentation [1]** 67/1
**missing [1]** 44/2
**misunderstood [1]** 92/14
**mitigate [1]** 64/2
**mitigated [1]** 70/24
**mitigating [1]** 70/21
**mitigation [3]** 46/11 46/12 46/13
**MOHR [1]** 1/22
**Molina [2]** 29/17 32/18
**Molina-Aranda [1]** 29/17
**moment [7]** 31/24 97/20 101/20 101/21 101/22 101/22 101/22
**money [2]** 46/9 85/9
**month [6]** 109/16 109/17 111/9 111/12 111/14 111/15
**month -- a [1]** 111/15
**months [6]** 80/6 90/3 90/21 103/18 103/21 108/15
**more [25]** 5/22 5/24 8/13 9/20 10/4 16/22 27/20 28/10 28/17 29/24 30/3 36/19 37/5 39/2 39/3 45/13 60/2 69/25 72/25 79/10 84/4 91/9 93/8 94/15 106/14
**more-than-minimal [1]** 93/8
**Mosle [2]** 1/16 1/19
**most [14]** 4/15 10/15 16/1 28/7 29/16 32/13 37/2 48/18 52/14 54/16 61/3 83/15 88/16 104/23
**motion [19]** 1/10 3/22 4/14 23/2 23/14 35/18 41/3 53/15 53/16 53/25 54/9 57/14 57/18 57/23 57/25 58/10 59/7 61/5 78/19
**motions [4]** 4/5 4/8 4/9 10/14
**move [5]** 12/5 48/8 52/1 95/14 121/14
**moved [2]** 48/20 57/17
**MR [13]** 1/14 1/14 1/15 1/18 1/22 1/23 1/23 82/17 84/9 86/1 122/10 122/10 122/25

## M


**Mr. [125]**
**Mr. Albuquerque [18]** 10/15 11/2 12/12 31/10 31/13 32/8 32/21 33/20 34/2 35/11 36/3 36/9 39/11 41/1 41/3 41/9 49/16 49/21
**Mr. Albuquerque's [7]** 10/23 11/9 33/6 33/17 41/18 42/13 49/14
**Mr. Barroso [1]** 53/10
**Mr. Benvenuto [2]** 42/2 44/7
**Mr. Cervero [19]** 18/8 21/2 30/6 30/11 39/20 44/19 45/5 46/2 47/14 51/3 52/24 79/15 84/25 85/11 88/10 89/7 93/14 103/13 117/2
**Mr. Duque [14]** 30/11 39/21 44/19 45/4 46/2 47/14 51/3 79/15 84/9 84/20 84/25 85/11 88/10 93/14
**Mr. Duque's [2]** 23/11 117/2
**Mr. Garcia [6]** 91/4 93/3 94/23 102/14 117/6 119/1
**Mr. Gee [8]** 61/3 93/24 95/22 96/5 112/6 118/10 122/3 122/4
**Mr. Hartman [10]** 34/2 106/11 107/19 109/3 109/6 109/10 114/24 115/5 119/17 121/19
**Mr. Hartman's [1]** 106/2
**Mr. McCollum [1]** 4/2
**Mr. Millett [7]** 61/3 77/3 99/5 112/6 120/11 120/25 122/10
**Mr. Odell [5]** 49/3 49/7 67/14 81/11 83/2
**Mr. Padilha [7]** 85/7 85/24 93/11 93/15 94/5 94/8 94/25
**Mr. Padilha's [3]** 86/16 93/12 103/24
**Mr. Reiter [1]** 39/12
**Mr. Schmidt [1]** 86/1
**Mr. Walsh [9]** 4/17 37/20 37/25 40/11 45/2 58/7 102/23 106/16 117/17
**Mr. Walsh's [1]** 102/9
**Mr. Zelada [1]** 41/4
**MS [2]** 1/15 2/2
**Ms. [3]** 3/18 34/16 42/8
**Ms. Condro [1]** 3/18
**Ms. Hodges [2]** 34/16 42/8
**much [4]** 3/13 36/15 40/2 110/7
**multiple [4]** 9/23 9/25 13/14 55/8
**Murphy [1]** 15/12
**must [32]** 29/20 37/20 37/25 46/20 61/10 61/19 62/3 62/6 63/4 63/5 63/7 63/9 63/13 63/17 63/18 63/21 63/21 64/23 64/25 65/3 74/3 74/5 74/6 74/9 75/24 76/5 76/6 88/5 102/25 112/23 115/19 118/10
**mutually [1]** 77/20
**my [14]** 3/11 5/6 5/10 15/18 25/10 25/16 40/2 49/8 49/17 53/22 56/11 56/12 78/25 92/15
**my -- a [1]** 56/11


## N


**NAACP [1]** 32/18
**name [3]** 8/2 24/8 41/23
**names [2]** 6/13 6/15
**narrower [1]** 104/25
**natural [3]** 14/22 21/12 76/14
**naturally [1]** 49/4
**necessarily [4]** 12/3 47/6 91/14 102/25
**necessary [2]** 17/5 41/15
**necessity [1]** 11/15
**need [22]** 7/25 8/15 9/4 11/17 14/17 17/5 20/24 20/25 22/6 24/11 25/6 32/5 32/7 38/8 42/25 49/7 51/5 55/25 87/19 87/20 91/8 91/20
**needed [5]** 12/16 15/10 31/15 31/19 54/8
**needs [7]** 27/14 32/12 34/3 34/7 34/11 36/10 44/20
**negative [3]** 100/23 106/18 116/8
**negotiated [4]** 42/21 89/7 103/13 122/7
**negotiating [2]** 18/8 45/25
**Neither [1]** 100/21
**Nestor [1]** 42/23
**Netherlands [1]** 12/2
**never [15]** 10/18 10/25 17/8 21/8 23/10 23/11 25/3 37/6 67/1 68/20 98/4 114/1 114/2 122/8 122/8
**nevertheless [1]** 81/20
**new [9]** 1/17 1/17 19/11 59/10 60/19 79/7 120/3 120/7 122/3
**newspapers [1]** 59/14
**next [14]** 8/16 25/19 34/16 35/8 42/7 42/20 51/18 52/1 54/22 62/2 81/5 84/15 89/1 93/24
**nexus [2]** 27/15 32/22
**nice [1]** 121/12
**nicer [1]** 42/25
**nine [2]** 31/13 32/8
**Ninth [4]** 36/23 37/3 37/4 37/5
**no [126]**
**no -- it [1]** 11/3
**no -- there [1]** 8/6
**no -- there's [1]** 113/22
**No. [11]** 29/15 30/18 34/18 46/8 46/8 89/4 89/23 106/7 108/16 108/21 109/4
**No. 4 [6]** 89/4 89/23 106/7 108/16 108/21 109/4

## N

**No. 5 [2]** 29/15 46/8
**No. 6 [2]** 30/18 46/8
**No. 9 [1]** 34/18
**nobody [1]** 83/12
**nobody's [2]** 31/4 31/4
**nobody's -- nobody's [1]** 31/4
**nominal [1]** 98/6
**none [3]** 30/13 66/22 109/25
**nonetheless [1]** 118/11
**nonissue [1]** 122/13
**nonprosecution [1]** 56/1
**nonprosecution -- prosecution [1]** 56/1
**nonterminable [1]** 119/22
**normally [1]** 63/15
**not [189]**
**not -- it's [1]** 122/13
**not -- when [1]** 12/20
**nothing [2]** 9/14 51/15
**notion [1]** 70/14
**novel [1]** 19/21
**November [1]** 57/7
**November 2021 [1]** 57/7
**now [68]** 8/20 10/23 11/8 12/12 12/24 17/17 22/22 23/6 23/11 28/12 30/25 35/21 59/13 59/18 60/21 73/22 74/10 75/10 75/22 76/9 78/10 78/15 79/21 80/10 80/11 80/16 80/24 82/2 82/16 83/9 83/15 84/21 86/10 89/18 94/23 95/13 97/19 106/10 107/18 107/21 108/9 109/13 109/18 110/4 110/7 110/9 110/16 111/25 112/8 112/16 113/4 113/8 114/1 114/18 115/13 117/6 117/16 119/17 120/21 121/2 121/11 121/15 121/18 122/17 122/22 123/1 123/11 123/20
**nowhere [1]** 59/9
**number [7]** 6/4 9/8 41/5 86/8 102/4 110/5 110/5
**numbers [1]** 26/6

## O

**o0o [1]** 124/10
**oath [4]** 34/22 35/4 35/8 35/22
**objective [1]** 93/22
**objects [1]** 46/24
**obligated [1]** 120/19
**obligation [3]** 9/14 74/4 94/8
**obligations [6]** 67/7 67/8 106/9 108/17 108/19 109/7
**obtained [5]** 41/10 64/11 94/4 108/14 110/23
**obviously [9]** 4/18 6/7 14/16 17/15 18/22 35/18 39/15 44/21 54/12
**occasions [1]** 82/25
**occur [1]** 8/5
**occurred [3]** 21/13 75/5 106/5
**October [7]** 16/20 18/12 64/12 85/19 86/6 86/7 109/25
**October 2015 [4]** 64/12 85/19 86/7 109/25
**ODELL [9]** 1/22 3/11 49/3 49/7 52/11 53/24 67/14 81/11 83/2
**off [7]** 32/15 32/19 32/23 36/13 40/17 41/12 43/18
**offered [2]** 24/20 44/6
**office [1]** 42/2
**officer [1]** 52/25
**officers [4]** 44/23 47/10 52/20 57/21
**official [2]** 2/4 19/13
**officials [13]** 6/3 13/25 17/2 18/16 24/5 55/16 57/20 58/18 60/6 60/7 73/20 105/16 116/11
**oil [9]** 11/11 15/17 15/20 46/8 46/8 83/4 83/5 90/10 103/18
**omission [2]** 91/25 92/2
**omits [1]** 110/16
**omitted [2]** 109/6 109/11
**once [6]** 38/17 58/14 80/21 85/8 94/1 94/2
**one [53]** 3/21 5/10 6/16 8/17 9/7 9/10 9/13 12/15 13/13 13/19 16/19 17/18 18/8 18/19 18/21 18/22 23/3 29/4 29/24 30/4 37/19 39/1 40/7 40/23 41/5 42/10 42/11 42/11 42/12 45/12 47/1 48/4 55/11 57/5 58/6 79/14 86/14 86/22 90/23 90/24 90/24 93/2 93/4 94/23 95/4 95/12 96/7 101/9 102/13 115/13 119/11 119/12 122/1
**One percent [1]** 45/12
**ones [6]** 28/8 47/14 52/7 52/8 52/13 54/14
**ongoing [3]** 93/14 93/15 113/9
**only [33]** 7/6 8/17 9/7 9/13 12/16 13/19 14/7 16/24 18/8 18/12 24/6 29/2 29/5 45/6 47/13 48/22 49/1 53/18 55/12 63/24 67/5 71/16 72/3 76/5 76/14 92/20 97/21 98/11 101/21 106/3 109/13 122/15 122/16
**only -- Petrobras [1]** 122/15
**opened [1]** 105/5
**opening [2]** 27/23 105/10
**operate [12]** 7/13 10/18 11/25 12/3 12/6 12/11 21/8 22/11 22/12 22/16 23/23 30/25
**operating [2]** 12/10 23/21
**Operation [3]** 41/22 84/6 84/14
**operations [2]** 20/11 35/14

## O


**Operators [1]** 71/1
**opined [1]** 121/19
**opinion [2]** 61/11 123/13
**opinions [1]** 60/24
**opportunity [12]** 64/1 89/17 89/22 90/18 107/20 107/20 108/2 108/3 108/5 115/6 117/7 120/18
**opportunity -- no [1]** 107/20
**opposite [1]** 78/6
**opposition [6]** 49/15 55/9 55/10 58/10 69/12 71/21
**option [4]** 21/23 108/23 119/21 120/4
**order [5]** 8/5 32/12 45/2 55/21 85/11
**ordinary [1]** 95/19
**original [7]** 7/5 33/10 61/20 61/21 61/24 62/4 62/7
**originally [4]** 11/23 19/6 30/24 124/18
**other [36]** 6/18 10/5 10/20 12/9 18/20 21/22 22/1 29/11 29/21 29/23 30/13 31/18 34/6 34/10 44/12 48/4 48/7 51/4 53/19 55/19 58/15 59/1 59/22 63/16 65/6 65/13 66/19 78/4 85/1 89/21 91/18 98/1 99/22 101/22 105/19 114/23
**others [1]** 40/24
**otherwise [3]** 44/13 80/14 83/25
**our [44]** 3/11 3/12 8/12 9/21 10/10 10/14 16/8 16/21 17/2 17/9 17/14 23/2 24/19 24/22 34/18 35/7 39/25 40/23 40/25 41/2 41/8 48/15 49/15 50/18 52/14 53/15 53/16 54/8 56/6 62/11 63/3 70/7 72/22 79/6 79/13 79/20 79/25 83/15 93/24 95/22 96/5 105/9 117/8 117/20
**our -- we [1]** 79/6
**out [32]** 5/19 33/15 33/19 35/14 36/22 44/1 46/4 58/7 63/1 63/4 63/14 65/4 67/13 72/22 73/23 74/2 84/21 85/3 87/7 90/2 90/21 93/8 95/22 98/9 103/19 108/11 111/25 112/9 115/5 118/22 122/6 123/14
**outline [1]** 30/10
**outlining [1]** 54/7
**outset [1]** 86/12
**over [8]** 6/2 17/8 17/8 78/14 81/25 83/6 109/15 109/17
**owed [7]** 70/3 74/4 74/18 74/21 83/9 89/16 94/25
**own [16]** 12/23 21/2 24/2 24/3 24/6 24/6 30/9 34/9 45/6 57/25 60/19 61/20 92/20 95/3 106/21 106/23
**owned [5]** 7/16 7/17 11/6 14/18 14/18
**owned -- sorry [1]** 14/18
**owner [1]** 69/16
**owns [2]** 7/20 7/20


## P


**p.m [4]** 1/7 51/24 51/24 124/9
**Padilha [22]** 18/14 18/15 19/13 19/14 42/5 42/17 42/20 65/9 74/18 74/21 75/3 75/11 84/24 85/7 85/10 85/24 88/9 93/11 93/15 94/5 94/8 94/25
**Padilha's [7]** 64/11 75/4 86/16 93/12 103/24 110/21 111/17
**page [16]** 13/9 33/17 34/19 35/10 41/2 42/12 48/14 49/15 53/11 53/12 54/6 54/6 55/1 59/16 71/20 79/21
**page 10 [1]** 13/9
**page 11 [1]** 49/15
**page 2 [1]** 79/21
**page 212 [1]** 54/6
**page 232 [1]** 53/11
**page 233 [1]** 53/12
**page 368 [1]** 35/10
**page 390 [1]** 34/19
**page 7 [2]** 48/14 55/1
**page 9 [1]** 71/20
**pages [2]** 6/13 48/15
**pages 269 [1]** 48/15
**PAI [75]** 32/9 34/3 34/6 34/9 34/24 35/1 35/3 35/13 35/13 42/1 55/13 57/8 57/9 58/14 60/5 62/7 62/17 64/14 64/17 65/12 65/14 66/12 67/5 69/24 70/2 71/3 73/11 73/13 75/1 77/8 77/24 79/14 79/16 80/2 80/4 81/9 82/14 83/9 89/17 89/18 90/11 90/12 90/17 90/18 92/4 92/11 92/16 92/22 94/1 98/9 103/9 103/22 105/16 105/19 105/20 106/21 110/6 111/23 113/17 113/24 114/1 114/18 115/1 115/19 115/21 115/22 116/15 117/22 119/17 119/18 122/6 122/8 122/8 122/9 122/11
**PAI -- but [1]** 73/13
**PAI -- Petrobras [1]** 64/14
**PAI -- Pride [1]** 114/18
**PAI -- that [3]** 57/9 58/14 64/17
**PAI's [9]** 57/4 57/7 59/25 68/21 73/20 88/20 89/19 94/10 105/6
**PAI's -- Petrobras [1]** 73/20
**PAI's -- to [1]** 59/25
**paid [22]** 6/1 6/2 8/9 8/14 8/18 9/3 9/8 9/10 16/4 47/14 49/1 49/2 50/13 55/18 56/4 58/20 59/12 93/13 105/17 113/16 116/1 116/13

**paper [2]** 10/14 55/12
**papers [10]** 5/11 8/12 9/21 11/8 50/19 73/11 83/10 102/15 116/18 116/20
**paragraph [8]** 31/13 32/8 42/20 43/3 52/24 53/7 71/8 95/4
**paragraphs [2]** 63/1 79/20
**paralegal [1]** 3/12
**pardon [3]** 30/8 33/5 53/11
**parent [18]** 6/3 7/19 10/19 11/4 11/4 11/10 11/19 14/18 19/25 20/9 35/1 44/21 47/6 60/7 60/10 60/13 66/2 105/12
**parents [1]** 15/14
**pari [2]** 22/22 22/25
**Park [1]** 1/16
**part [16]** 15/24 32/21 38/13 63/9 66/3 70/8 73/4 80/20 87/16 94/4 104/12 110/25 113/7 122/20 122/21 122/24
**participant [6]** 26/16 81/23 82/7 89/7 91/18 103/12
**participate [2]** 73/19 87/6
**participated [1]** 65/17
**participating [1]** 91/23
**participation [2]** 73/2 91/16
**particular [1]** 5/9
**particularly [1]** 52/23
**parties [15]** 7/8 7/22 24/14 29/5 52/2 60/22 61/16 62/21 62/23 76/9 76/12 95/16 95/22 123/17 124/20
**parties' [3]** 63/23 79/8 118/8
**partner [1]** 3/11
**parts [2]** 52/14 123/14
**party [34]** 5/25 7/3 8/14 8/17 9/7 9/9 9/11 9/13 19/8 33/9 47/17 48/22 49/2 56/2 63/19 64/18 65/6 70/14 70/15 70/15 73/15 74/6 74/9 79/19 82/22 96/8 112/3 112/11 112/24 115/20 119/2 119/4 119/6 120/13
**pass [2]** 5/3 9/9
**pass-through [1]** 9/9
**passive [1]** 91/16
**past [2]** 36/19 37/6
**patient [1]** 9/10
**pay [19]** 9/15 48/21 50/20 55/13 65/9 75/2 80/7 82/11 83/8 85/10 88/10 90/4 92/25 96/17 97/24 98/12 104/2 108/25 113/14
**paying [5]** 9/18 69/19 84/25 102/1 109/14
**payment [14]** 42/25 43/4 65/8 65/10 65/12 65/15 68/22 75/3 81/24 103/15 113/4 113/4 113/6 113/6
**payment -- is [1]** 113/4
**payment -- the [1]** 113/6
**payments [6]** 89/15 122/10 122/11 122/12 122/14 122/16
**payor [2]** 9/10 9/11
**PBSA [6]** 6/3 6/5 48/23 55/12 105/18 111/17
**PBSA's [1]** 32/11
**Pedro [5]** 10/11 10/13 23/21 41/20 54/7
**people [4]** 19/21 20/15 72/25 91/9
**per [1]** 24/25
**perceived [1]** 32/5
**percent [12]** 17/10 17/12 17/15 24/24 45/12 45/13 45/14 58/24 81/25 90/10 103/17 103/18
**perform [10]** 68/24 75/16 77/21 90/3 98/5 106/6 109/11 109/16 115/2 120/18
**performance [18]** 66/21 68/19 68/21 69/13 69/17 69/19 70/12 70/21 71/11 72/8 73/20 75/17 77/24 78/5 109/13 113/19 113/21 122/16
**performed [4]** 69/22 69/23 70/2 113/24
**performing [8]** 59/15 66/16 66/20 70/16 70/19 73/12 78/4 120/14
**perhaps [2]** 3/24 22/10
**period [1]** 53/1
**permanent [3]** 71/4 71/19 71/19
**permanent -- on [1]** 71/19
**permitted [3]** 22/15 60/1 60/17
**permitting [2]** 12/8 22/14
**person [3]** 10/15 63/16 91/6
**personal [1]** 124/19
**personalities [1]** 7/1
**personality [1]** 60/9
**persuasive [1]** 104/23
**Petro [1]** 6/24
**PETROBRAS [453]**
**Petrobras -- I'm [1]** 31/8
**Petrobras -- if [1]** 120/7
**Petrobras -- Petrobras [1]** 64/10
**Petrobras -- sorry [1]** 116/8
**Petrobras -- that [1]** 106/22
**Petrobras's [9]** 24/9 30/5 31/2 31/9 53/6 58/10 84/7 88/11 95/13
**Petrobras's -- Petrobras [1]** 58/10
**phase [1]** 23/15
**physical [1]** 92/5
**PI [1]** 30/8
**picked [2]** 10/24 33/14
**pierce [1]** 11/17
**piercing [1]** 11/15
**piggyback [1]** 47/8
**piggybacks [1]** 47/6
**place [4]** 12/21 21/10 21/23

## P


place... [1] 42/18
placed [1] 50/16
places [2] 54/7 55/8
plain [1] 88/5
plaintiff [12] 1/4 1/13 6/7 16/1 16/1 29/2 29/19 29/22 30/15 39/3 48/18 124/20
plaintiffs [1] 28/13
plan [2] 87/7 123/19
play [1] 30/19
playing [1] 93/7
plays [1] 11/10
plea [1] 85/8
pleadings [2] 30/9 79/9
please [6] 5/6 26/7 34/16 42/8 51/25 78/22
pled [4] 16/18 50/17 79/6 79/13
plus [2] 81/25 103/16
pocket [1] 82/1
point [42] 6/14 15/18 18/12 26/11 27/3 48/13 49/8 50/16 52/2 54/2 55/14 67/3 73/13 75/22 87/23 89/19 89/21 90/16 90/17 94/23 95/2 95/5 95/11 95/11 95/15 101/9 102/5 102/13 103/1 104/25 107/18 109/18 110/2 111/25 114/24 117/20 118/7 119/11 119/12 120/22 121/9 122/17
point -- by [1] 89/19
pointed [3] 58/7 108/11 115/5
pointing [2] 81/4 122/6
points [9] 49/13 54/24 75/14 95/22 102/8 102/11 105/2 106/11 119/13
policy [1] 124/21
Porter [1] 1/24
portfolio [1] 17/18
positing [1] 70/17
position [6] 19/5 19/10 64/10 90/13 105/6 106/21
positioned [1] 14/19
positions [1] 60/15
positively [1] 106/19
posits [1] 122/4
possibility [1] 88/5
possible [1] 123/15
posturing [1] 4/8
PowerPoint [3] 5/20 25/23 78/24
practice [2] 11/15 35/19
practices [1] 84/7
precedent [2] 36/25 43/21
precisely [4] 85/16 86/4 94/20 104/1
predates [1] 36/24
predicate [6] 27/6 28/9 29/2 29/7 40/18 47/16
predicated [2] 38/8 38/9
predict [1] 15/20
predominant [1] 91/7
prefer [1] 26/5
premise [1] 55/7
premised [2] 57/7 77/4
premises [1] 39/17
prepared [1] 25/2
present [2] 2/2 120/9
presentation [15] 16/8 16/21 25/24 34/18 49/17 54/23 55/2 56/12 62/11 63/3 70/7 72/22 79/22 105/9 110/4
presented [3] 25/3 42/22 51/8
presenting [1] 20/23
president [1] 84/23
press [7] 64/9 66/6 75/15 106/4 110/8 110/11 110/14
presumably [1] 28/17
presumption [1] 17/20
pretext [2] 89/15 90/21
pretty [2] 46/19 110/7
prevail [1] 45/3
prevented [1] 70/21
previously [8] 75/17 76/4 104/21 107/21 109/19 112/16 114/18 114/24
Prevost [2] 1/16 1/19
price [8] 12/17 15/2 15/17 15/20 90/10 119/23 119/24 119/25
prices [2] 83/5 103/18
Pride [95] 6/2 7/25 8/1 8/2 8/3 8/4 16/19 18/20 18/21 18/22 42/16 42/21 42/24 62/7 62/9 62/15 62/15 62/17 62/19 64/19 66/13 66/17 66/24 67/9 67/12 67/17 67/18 68/19 68/20 68/20 68/23 69/23 69/25 70/3 70/19 70/21 70/24 71/11 71/25 72/3 72/6 72/16 72/20 73/14 73/16 74/18 74/22 75/24 76/1 76/6 76/7 76/8 77/5 77/8 77/20 77/23 78/3 78/6 85/13 89/20 94/25 106/15 106/22 107/20 107/22 108/22 108/22 109/9 110/14 110/20 110/23 110/24 111/1 111/15 111/16 111/23 113/17 113/23 113/24 113/25 114/18 115/1 115/6 115/8 116/21 117/6 119/21 120/7 120/8 120/17 121/17 121/18 122/14 122/16 122/23
Pride -- PAI [1] 111/23
Pride -- that [2] 113/17 113/24
Pride -- there [1] 18/21
Pride's [16] 12/19 67/8 69/17 69/22 70/1 72/5 72/10 73/21 75/19 78/5 85/10 108/19 109/12 109/17 111/22 116/1
Pride/Ensco [2] 42/21 42/24
primarily [1] 60/5
primary [5] 63/6 63/10

## P


**primary... [3]** 63/11 63/14 87/1
**principal [3]** 23/1 65/7 93/15
**principals [1]** 45/6
**principals' [1]** 46/5
**principle [2]** 78/12 78/17
**principles [1]** 62/13
**prior [3]** 35/18 59/17 60/12
**private [1]** 16/2
**privilege [3]** 3/17 3/20 4/3
**probably [3]** 17/16 40/4 123/14
**problem [7]** 16/13 18/3 18/3 39/5 46/13 46/25 47/5
**problem -- they're [1]** 46/25
**problemistic [3]** 51/1 51/3 51/8
**problems [2]** 36/1 40/7
**proceed [2]** 60/18 123/19
**proceedings [4]** 2/24 3/1 124/9 124/12
**process [2]** 32/15 33/25
**procure [4]** 56/14 113/12 113/15 116/3
**procured [17]** 6/1 17/1 18/7 23/18 24/1 75/1 80/3 81/15 82/4 83/19 88/17 88/19 89/13 92/19 103/5 112/4 120/13
**procurement [9]** 14/23 42/6 43/23 57/22 58/17 110/21 111/18 112/13 116/7
**produced [3]** 2/25 74/7 83/4
**produces [1]** 46/8
**production [1]** 52/22
**profit [2]** 21/20 21/21
**program [1]** 34/3
**prolonged [1]** 89/10
**promised [2]** 21/4 38/25
**pronounce [1]** 24/8
**pronouncement [1]** 29/16
**pronunciation [1]** 41/19
**proof [1]** 44/3
**proper [1]** 39/3
**property [3]** 69/14 69/15 69/16
**propose [1]** 95/16
**proposition [4]** 70/12 112/2 112/11 120/22
**prosecution [4]** 13/22 23/13 56/1 113/11
**prosecutors [2]** 18/11 41/22
**prospect [1]** 38/17
**prove [4]** 25/6 45/1 87/10 102/21
**provide [1]** 61/6
**provided [5]** 5/21 18/11 23/19 30/10 63/7
**provides [2]** 8/22 61/9
**providing [2]** 9/18 74/9
**provision [4]** 7/23 8/20 8/22 22/4
**provisions [2]** 22/2 109/4
**proximate [28]** 5/10 5/13 5/15 9/12 9/21 12/25 14/8 15/22 15/23 28/24 29/3 29/6 30/7 30/8 36/3 38/1 38/2 38/13 44/13 47/23 48/3 48/6 55/4 55/6 55/21 58/9 60/6 60/16
**public [6]** 41/12 43/1 43/14 110/8 110/9 110/23
**pull [1]** 90/2
**pulled [2]** 41/12 103/19
**purported [4]** 73/16 83/7 94/12 118/22
**purportedly [7]** 66/5 72/9 92/24 110/6 110/6 115/22 116/18
**purportedly -- which [1]** 110/6
**purporting [1]** 103/19
**purpose [4]** 91/7 113/10 113/12 116/2
**purposes [10]** 22/21 37/16 46/4 56/7 59/6 79/12 83/15 83/15 87/25 120/9
**purposes -- our [1]** 83/15
**pursuant [6]** 35/15 63/9 87/2 87/2 88/25 91/3
**push [1]** 35/25
**put [9]** 15/13 16/8 22/9 24/14 51/3 54/13 84/4 95/12 103/1
**puts [1]** 95/5
**putting [1]** 71/2


## Q


**qualifies [1]** 88/16
**quantifiable [1]** 101/21
**question [31]** 10/7 10/25 18/2 20/3 27/19 30/16 33/19 34/9 34/24 36/16 37/11 38/6 39/11 45/18 53/1 53/8 61/10 80/12 80/13 88/13 88/15 93/20 93/22 94/2 96/1 96/6 104/11 117/2 119/13 119/14 121/13
**questioning [1]** 34/19
**questions [12]** 13/2 16/9 18/7 25/12 44/12 46/18 60/23 61/3 61/8 78/18 88/3 119/8
**quickly [2]** 48/20 123/13
**quite [3]** 51/2 82/16 93/25
**quote [11]** 58/16 58/17 58/17 58/19 61/11 61/14 62/3 62/4 66/14 66/15 112/21
**quoted [1]** 99/5
**quotes [2]** 85/20 85/22


## R


**raise [1]** 46/17
**raised [2]** 38/23 44/25
**rank [1]** 53/7
**rate [1]** 109/1
**rates [2]** 71/6 115/11
**rather [3]** 16/20 51/22 83/20

**R**

**ratification [8]** 12/24 13/3 40/1 40/2 40/7 40/14 120/23 121/8
**ratified [2]** 40/8 119/21
**ratify [2]** 120/14 120/20
**rationale [3]** 27/13 27/16 33/10
**Raul [1]** 42/22
**rea [3]** 86/18 86/21 87/13
**read [5]** 55/10 102/12 116/18 116/18 116/19
**reading [5]** 34/24 41/3 41/9 59/13 99/6
**ready [2]** 23/23 55/5
**reaffirmed [1]** 123/7
**real [1]** 4/25
**reality [1]** 86/6
**realize [1]** 17/6
**realized [1]** 7/4
**really [17]** 4/1 6/8 8/13 10/25 15/2 19/24 35/5 44/1 44/17 44/18 49/12 55/14 79/23 87/12 96/7 118/7 121/24
**reason [4]** 28/12 29/2 51/1 51/2
**reasonably [1]** 86/20
**rebuttal [1]** 78/20
**rebutted [1]** 51/10
**rec [1]** 40/25
**recalling [1]** 38/19
**receive [3]** 19/12 21/3 53/19
**received [16]** 21/12 41/20 44/3 55/17 58/5 58/18 81/16 83/25 105/16 105/20 111/19 116/11 116/15 122/10 122/12 122/13
**receives [4]** 18/13 40/25 43/12 85/4
**recent [4]** 29/16 36/19 37/5 59/16
**recently [3]** 82/11 96/18 104/3
**Recess [1]** 51/24
**recognize [1]** 105/20
**recognized [8]** 58/1 58/4 71/7 71/8 105/15 113/6 113/11 122/25
**recognizes [1]** 73/18
**recommendation [1]** 18/9
**recommendations [1]** 32/11
**recommended [1]** 84/14
**reconcile [1]** 32/16
**record [22]** 4/13 10/8 23/9 45/19 46/1 51/7 52/3 52/6 53/22 54/13 70/23 74/17 79/12 94/25 95/5 95/11 95/12 104/22 104/24 105/8 117/17 124/12
**recorded [1]** 2/24
**recover [1]** 102/7
**REDACTED [2]** 1/9 124/22
**redactions [1]** 124/19
**reduce [1]** 109/12
**reduced [7]** 69/17 69/22 72/10 73/20 75/19 109/17 113/24
**refer [12]** 6/5 6/20 6/21 8/2 16/22 22/8 55/11 55/23 55/25 66/21 109/3 110/8
**reference [3]** 6/4 56/4 79/19
**referred [4]** 27/9 56/3 84/12 108/22
**referring [3]** 6/5 6/6 6/16
**reflect [3]** 110/6 115/8 117/17
**reflected [4]** 41/2 58/6 70/7 112/22
**reflecting [2]** 67/4 73/14
**reflects [3]** 108/7 115/9 120/6
**refrained [1]** 88/2
**refused [8]** 80/6 82/10 83/8 92/25 96/17 97/24 98/12 104/2
**refusing [2]** 90/3 90/4
**regarding [7]** 19/12 61/12 62/22 73/8 85/25 88/3 112/12
**regardless [3]** 45/10 45/11 69/20
**regulatory [2]** 12/1 12/8
**reimburse [1]** 8/23
**reimbursement [4]** 8/20 8/22 9/1 109/5
**Reiter [2]** 39/12 54/4
**reiterate [1]** 114/24
**rejected [3]** 37/9 38/23 71/11
**rejecting [1]** 11/3
**related [3]** 58/5 105/21 116/16
**relates [1]** 12/25
**relation [3]** 5/19 58/1 112/22
**relationship [26]** 5/16 5/17 8/7 10/1 13/5 13/7 14/12 16/7 20/9 21/5 27/5 27/14 29/6 32/23 36/14 36/21 37/4 37/12 37/12 37/22 37/24 38/22 39/19 40/17 48/14 112/10
**relevant [8]** 4/1 6/18 9/16 9/17 60/21 88/3 105/8 121/9
**reliable [1]** 9/11
**relied [2]** 52/7 123/8
**relies [6]** 36/22 64/24 73/7 73/9 102/21 108/16
**rely [2]** 39/17 62/23
**relying [1]** 47/16
**remained [1]** 12/19
**remaining [1]** 72/11
**remember [2]** 65/19 113/9
**remind [1]** 56/1
**remoteness [1]** 95/25
**remove [1]** 83/21
**Renato [1]** 42/23
**renewed [1]** 123/15
**repeatedly [1]** 17/8

## R

**repetition [1]** 52/2
**repetitive [1]** 105/1
**Rephrase [1]** 92/12
**reply [2]** 11/8 78/19
**report [15]** 18/10 54/3 55/24 71/8 77/3 84/12 84/12 84/17 110/18 110/19 110/23 111/6 121/25 122/1 122/3
**reported [1]** 110/14
**REPORTER [3]** 2/3 2/4 124/15
**reports [7]** 11/21 60/25 61/1 84/19 90/9 110/8 121/22
**representative [9]** 31/10 33/7 33/11 33/18 34/23 35/12 42/17 107/8 123/7
**representatives [1]** 43/4
**Repsol [1]** 15/13
**requested [1]** 124/20
**require [1]** 17/21
**required [4]** 17/13 67/12 77/21 94/2
**required -- once [1]** 94/2
**requirement [3]** 21/15 27/14 87/13
**requirements [2]** 17/5 22/14
**requires [3]** 72/24 86/24 91/1
**reserving [1]** 78/19
**resolve [1]** 123/17
**resolving [1]** 123/16
**respect [11]** 18/9 20/19 51/12 53/6 62/4 62/16 64/22 64/25 74/8 104/20 106/1
**respectfully [5]** 88/6 88/15 94/14 102/15 104/7
**respects [1]** 118/9
**respond [6]** 51/13 58/12 59/23 105/2 106/10 114/25
**responded [3]** 49/12 59/25 110/24
**responds [1]** 41/20
**response [12]** 25/18 41/17 48/8 54/21 95/10 95/21 101/9 107/11 111/13 111/15 116/23 123/9
**rest [3]** 78/19 102/14 123/16
**restrictive [2]** 76/12 76/12
**restroom [1]** 51/20
**result [3]** 73/16 91/2 92/21
**resulted [2]** 103/17 110/1
**resulting [2]** 68/21 118/12
**results [3]** 31/3 32/6 59/24
**resumption [1]** 51/22
**retained [1]** 108/15
**retracted [1]** 106/24
**return [1]** 25/15
**returned [2]** 23/4 48/25
**reverted [4]** 43/17 67/10 83/25 121/17
**review [1]** 121/25
**revive [2]** 59/17 60/2
**Richard [1]** 61/2
**RICO [25]** 4/19 4/25 5/9 9/15 10/2 13/5 16/11 25/12 27/6 27/6 28/18 28/24 29/19 29/22 32/19 33/2 36/14 38/13 40/18 40/18 47/15 51/12 51/17 58/1 60/4
**rig [16]** 10/15 10/18 11/19 11/22 12/5 12/11 12/15 12/20 12/21 14/20 31/15 32/8 36/6 41/8 45/22 46/6
**right [35]** 3/19 5/4 14/9 15/4 15/17 20/12 26/12 30/1 31/22 32/3 35/2 37/6 42/11 44/15 44/17 45/15 48/7 51/13 54/20 69/16 78/21 85/21 92/10 104/17 104/18 104/22 105/24 110/8 116/9 116/22 120/19 120/23 121/8 121/10 124/1
**right-hand [1]** 85/21
**rights [10]** 16/2 67/6 67/9 87/9 106/9 108/14 108/17 108/19 108/19 109/7
**rights -- rights [1]** 108/19
**rigs [6]** 11/12 12/10 53/23 71/1 71/2 71/3
**Rio [1]** 41/18
**rise [10]** 63/20 63/22 64/15 70/13 75/18 112/25 113/2 113/3 115/21 119/15
**risk [5]** 15/3 15/5 15/15 15/21 52/2
**RMR [1]** 2/4
**ROBERT [5]** 1/14 3/6 25/16 56/10 105/4
**role [4]** 11/10 53/7 53/12 93/8
**room [1]** 47/4
**ROSENTHAL [1]** 1/10
**roughly [1]** 90/10
**routine [1]** 11/15
**Royal [1]** 76/11
**rubber [2]** 20/20 20/22
**rubber-stamping [2]** 20/20 20/22
**rug [2]** 90/2 103/19
**rule [4]** 8/25 27/13 61/9 61/14
**rules [4]** 9/6 9/7 16/5 95/24
**ruling [1]** 61/10
**rulings [2]** 36/19 36/24
**run [2]** 19/20 25/9
**Rusk [1]** 2/5
**RYAN [3]** 1/23 3/11 79/3

## S

**SA [38]** 6/6 7/19 10/19 12/4 13/25 16/24 18/17 19/7 20/11 23/22 24/1 27/23 28/2 28/11 29/8 40/25 41/5 42/5 45/9 46/20 47/3 47/15 52/15 52/25 55/18 57/9 57/12 57/20 58/3 65/21 65/24 84/11 84/15 84/18 110/18 110/19 116/2 116/5
**SA's [1]** 57/11

**S**


**saddled [1]** 24/10
**safe [1]** 124/7
**said [22]** 7/24 9/25 13/21 14/2 16/17 22/13 29/18 31/20 34/22 35/5 35/22 38/20 38/21 45/23 49/16 79/6 86/11 117/17 119/1 121/19 121/23 122/6
**sales [1]** 15/7
**same [51]** 5/15 12/19 13/10 23/1 23/22 26/2 26/4 29/4 34/19 35/10 37/21 41/19 56/15 57/14 62/4 62/5 62/8 62/10 62/16 64/24 66/21 72/20 73/7 73/8 73/24 75/14 76/1 76/7 76/10 76/13 78/9 80/15 80/23 82/14 85/23 86/1 86/2 91/11 91/12 94/21 95/15 95/18 95/19 95/19 95/23 96/3 99/1 114/1 118/19 121/18 123/8
**same -- for [1]** 72/20
**SAMSUNG [134]**
**Samsung's [38]** 3/22 27/18 31/5 56/14 57/7 57/11 57/19 57/20 59/10 60/2 60/4 60/18 60/22 61/16 62/17 65/8 65/9 66/9 67/15 70/17 70/18 71/7 71/20 75/2 75/2 75/20 75/24 76/2 78/11 78/16 80/11 106/21 106/23 107/8 110/4 121/24 122/3 123/6
**sanction [1]** 39/4
**satisfied [1]** 91/13
**satisfies [1]** 88/22
**save [1]** 31/9
**say [22]** 10/12 17/14 24/20 28/3 35/7 41/9 41/25 43/3 44/2 44/2 45/24 45/24 47/2 47/19 80/25 82/22 84/19 85/7 102/15 117/18 118/7 119/17
**saying [9]** 43/1 44/7 79/6 84/23 88/18 119/19 120/16 121/12 122/9
**saying -- he [1]** 122/9
**says [25]** 11/2 14/10 17/10 18/15 20/23 23/22 31/13 32/9 32/21 41/1 41/3 41/20 43/13 45/24 47/17 69/24 71/5 85/7 88/9 91/4 95/20 99/1 99/6 117/6 122/9
**says -- and [1]** 41/1
**scheme [62]** 13/20 18/23 19/16 21/13 40/9 40/12 40/18 44/19 52/4 56/14 56/15 59/11 64/25 66/5 66/12 66/13 69/24 71/6 72/9 72/18 73/11 79/19 80/21 80/22 80/25 81/23 82/7 82/8 85/9 87/19 89/7 89/11 89/14 89/25 90/11 92/17 94/5 96/7 98/1 98/3 98/11 101/11 102/2 102/7 102/23 102/24 103/13 104/1 106/15 106/22 110/7 112/18 113/8 113/9 113/10 117/5 119/4 119/7 119/14 119/15 122/23 122/24
**schemes [1]** 66/8
**Schmidt [2]** 42/22 86/1
**Scholer [1]** 1/24
**scream [1]** 113/12
**screenshots [1]** 26/2
**Sea [1]** 62/25
**seated [3]** 3/4 3/14 51/25
**second [8]** 46/16 46/18 48/8 63/8 72/20 80/17 90/6 115/13
**secret [8]** 65/7 65/8 83/23 93/17 94/6 94/9 113/4 113/6
**section [4]** 54/23 61/19 62/2 79/24
**Section 1 [1]** 61/19
**secure [1]** 87/9
**see [13]** 3/21 3/24 14/13 28/25 28/25 28/25 29/1 30/9 41/14 41/17 82/19 85/20 85/22
**seeking [3]** 48/25 57/17 111/17
**seeks [5]** 56/13 80/10 82/13 94/22 96/3
**seems [6]** 3/25 5/10 8/7 47/3 49/7 70/16
**seen [1]** 85/6
**segue [1]** 54/22
**selection [1]** 54/14
**self [2]** 58/24 110/12
**self-defeating [1]** 110/12
**self-interest [1]** 58/24
**sells [1]** 46/8
**send [2]** 31/6 36/10
**sending [2]** 31/6 41/13
**senior [2]** 3/12 84/23
**sense [7]** 4/18 20/12 60/19 63/7 73/2 123/19 123/21
**separate [10]** 20/6 55/7 58/3 58/15 60/9 65/20 73/1 76/2 82/25 116/4
**separateness [1]** 47/2
**servants [1]** 43/1
**services [43]** 6/1 7/4 8/10 8/18 22/5 28/7 30/23 35/16 39/4 40/8 43/11 45/25 48/21 49/1 53/17 59/15 67/2 77/5 79/17 81/11 81/14 81/21 82/4 82/12 82/18 83/1 83/3 83/11 83/18 83/22 85/18 86/4 86/9 89/8 92/18 92/25 94/4 96/17 96/19 97/21 98/5 109/11 118/21
**serving [1]** 45/6
**set [16]** 5/19 33/19 48/8 48/14 62/24 63/1 63/4 65/4 72/22 73/23 74/2 105/8 107/9 115/11 115/19 115/24
**settled [1]** 61/21
**settlement [7]** 4/8 61/22 61/23 122/20 122/21 123/1 123/1

**Seven [1]** 20/13
**Seven-member [1]** 20/13
**shall [1]** 28/1
**shared [1]** 65/14
**she [1]** 41/25
**Shell [1]** 11/12
**Shepherd [1]** 62/25
**SHI [6]** 80/9 82/13 84/11 85/10 86/14 88/10
**ship [4]** 14/19 17/1 21/25 23/20
**ships [4]** 16/24 17/3 17/4 52/21
**shipyard [1]** 42/18
**short [4]** 5/5 51/19 65/7 75/20
**should [22]** 19/7 38/20 48/19 57/10 57/13 60/1 60/14 60/17 60/18 76/14 82/22 95/19 104/12 105/14 110/6 110/10 110/13 110/14 110/20 116/20 116/21 123/20
**shouldn't [3]** 15/21 50/23 51/11
**show [14]** 22/19 45/3 52/20 64/14 64/17 72/5 72/14 72/19 86/22 88/21 90/10 91/8 91/20 115/19
**showed [1]** 49/14
**showing [3]** 61/23 65/11 91/13
**shown [3]** 63/24 72/2 102/16
**shows [1]** 46/14
**shred [1]** 67/3
**shrugged [1]** 40/13
**sic [9]** 33/20 51/1 61/18 62/15 63/8 73/4 75/20 85/1 113/12
**side [2]** 31/18 48/8
**sides [1]** 104/12
**sign [4]** 43/15 81/18 85/12 103/8
**signature [2]** 43/21 124/15
**signed [26]** 8/8 14/6 14/7 14/8 14/14 19/9 30/23 35/13 42/15 43/16 80/4 81/20 82/17 82/23 83/16 86/8 89/8 90/20 97/20 98/7 103/10 103/14 103/21 113/15 118/11 121/16
**significance [1]** 27/2
**signing [6]** 59/20 106/6 113/12 113/15 116/3 118/20
**signs [1]** 43/8
**silence [1]** 18/12
**similar [3]** 9/20 10/4 86/20
**Similarly [2]** 9/15 72/19
**simple [2]** 46/19 80/12
**simply [5]** 70/16 82/9 91/13 93/22 95/2
**since [3]** 25/22 60/2 79/9
**sir [1]** 56/9
**sitting [2]** 23/23 88/7
**situated [3]** 10/21 11/20 12/11
**situations [2]** 122/4 122/5
**six [5]** 80/5 90/3 90/21 103/18 103/21
**size [1]** 45/21
**skip [1]** 31/8
**slash [1]** 42/16
**slide [47]** 26/3 26/5 29/13 29/15 30/18 34/16 34/18 40/4 42/7 54/23 58/7 58/7 62/11 63/3 63/4 65/5 72/22 73/23 74/3 79/24 79/25 81/6 81/8 82/15 84/4 85/6 85/15 86/11 86/23 87/22 88/21 89/1 91/1 91/4 91/20 93/24 95/15 98/25 99/6 99/22 101/10 102/18 105/9 110/4 112/22 115/19 122/6
**slides [7]** 48/15 58/6 70/7 82/20 102/4 109/21 115/24
**slides -- actually [1]** 58/6
**slowly [1]** 55/14
**small [2]** 119/12 119/12
**So -- and [1]** 107/12
**so -- I [1]** 36/18
**some [22]** 21/6 21/8 29/21 31/11 38/16 43/22 47/4 53/21 71/14 89/21 91/2 91/10 98/6 105/2 106/10 108/10 109/20 111/25 112/8 112/8 115/21 123/17
**somebody [5]** 84/22 87/18 90/9 93/5 93/18
**somehow [8]** 62/17 75/10 75/23 102/22 106/5 107/19 113/1 115/5
**someone [4]** 21/13 22/7 28/21 88/2
**someone's [2]** 14/23 93/20
**something [4]** 20/3 28/20 36/7 79/5
**sometimes [1]** 82/19
**somewhere [3]** 14/21 21/11 31/6
**sophisticated [1]** 19/20
**sorry [12]** 3/23 9/23 14/18 24/4 33/2 78/13 78/14 79/16 92/1 111/2 111/3 116/8
**sort [2]** 73/3 74/7
**sought [3]** 71/16 96/16 110/20
**source [1]** 8/25
**SOUTHERN [1]** 1/1
**specifically [4]** 10/16 33/8 33/25 61/17
**spelled [1]** 44/1
**sprawling [1]** 84/6
**spree [1]** 45/21
**stage [3]** 57/15 57/24 79/9
**stamping [2]** 20/20 20/22
**standard [10]** 11/10 62/22 62/25 63/1 63/1 63/3 79/23 93/22 112/17 115/18
**standard -- that [1]** 62/25
**standards [1]** 62/24

# S

**standby [8]** 15/13 16/25 17/3 24/14 50/12 71/3 71/4 71/20
**standing [9]** 25/22 28/22 28/23 28/24 29/3 29/4 58/9 60/5 60/16
**start [5]** 3/18 4/24 5/8 78/14 95/16
**started [2]** 80/2 118/8
**starting [3]** 27/3 79/5 79/21
**state [3]** 3/3 43/1 106/19
**stated [4]** 61/11 110/20 112/23 115/7
**statement [5]** 64/12 95/3 107/11 107/12 123/9
**statements [1]** 123/9
**STATES [3]** 1/1 1/11 38/24
**status [1]** 8/11
**statute [7]** 16/16 19/16 19/18 22/21 25/9 29/1 49/3
**stenography [1]** 2/24
**steps [1]** 110/22
**Steven [2]** 54/4 60/25
**still [7]** 21/5 36/3 54/12 107/12 108/24 108/25 121/18
**still -- and [1]** 108/25
**stock [2]** 15/6 15/7
**stolen [2]** 69/14 69/15
**straightforward [3]** 11/18 13/20 16/6
**stranger [2]** 83/11 113/18
**strategy [1]** 28/12
**Street [2]** 1/20 1/24
**stretch [1]** 4/25
**string [1]** 31/3
**stuck [2]** 108/24 121/18
**study [20]** 17/7 17/10 17/10 17/25 24/19 24/20 24/22 25/4 25/4 31/24 39/1 39/1 39/10 39/14 39/17 50/12 51/1 51/3 51/8 103/22
**study's [1]** 39/8
**submit [6]** 51/11 88/6 88/15 79/12 90/15 94/14 104/7
**submitted [5]** 7/10 10/13 60/25 61/1 122/1
**submitting [1]** 9/25
**subsequently [1]** 92/21
**subsidiaries [2]** 7/14 10/20
**subsidiaries' [2]** 32/12 36/9
**subsidiary [12]** 7/24 11/6 11/11 14/19 20/1 20/2 20/3 20/9 22/6 22/12 32/20 38/17
**substantial [1]** 63/7
**substitution [1]** 38/22
**success [4]** 17/11 17/12 17/20 32/2
**such [8]** 7/14 62/8 62/15 65/7 65/15 67/4 72/5 112/5
**suddenly [1]** 83/6
**sue [1]** 40/14
**suffer [1]** 97/22
**suffered [14]** 64/19 69/25 72/16 89/11 91/2 97/19 97/22 98/6 98/8 98/8 101/20 101/23 101/24 113/25
**suffice [2]** 85/7 91/5
**sufficient [7]** 80/19 82/6 87/24 91/17 94/15 97/20 121/20
**suggest [5]** 45/4 71/14 85/18 102/6 108/9
**suggested [2]** 33/13 40/11
**suggests [2]** 29/10 30/13
**suing [1]** 48/25
**Suite [3]** 1/20 1/24 2/5
**suits [1]** 46/4
**sum [4]** 45/7 70/4 72/13 72/13
**summarize [1]** 52/2
**summarizes [1]** 62/11
**summary [22]** 4/5 4/7 4/9 4/13 4/14 10/14 41/2 45/19 50/18 53/15 53/16 53/25 54/8 57/17 57/24 57/25 58/11 59/7 59/24 61/6 61/14
**summer [2]** 66/12 106/4
**supplement [1]** 96/6
**supplemental [2]** 59/16 95/21
**support [20]** 10/9 18/1 20/25 22/19 23/19 24/16 24/21 24/23 25/5 32/11 50/12 51/5 52/3 52/7 52/8 58/9 60/16 70/22 120/20 120/21
**support -- is [1]** 24/21
**supported [4]** 17/4 18/6 24/25 51/4
**Supreme [10]** 9/25 14/9 15/23 27/4 36/19 36/24 38/12 38/24 62/24 76/11
**sure [12]** 26/18 26/19 41/19 47/9 51/21 51/21 55/14 82/16 105/3 106/12 115/14 124/2
**surplus [2]** 71/1 71/2
**surprise [1]** 7/21
**survey [3]** 24/23 24/24 51/4
**susceptible [1]** 72/7
**suspicions [1]** 18/21
**sustain [1]** 29/22
**swing [1]** 84/8
**switch [1]** 60/17
**sworn [2]** 35/20 36/11

# T

**tacit [1]** 87/7
**tacitly [1]** 91/10
**tackle [1]** 4/19
**tactical [1]** 60/3
**taint [2]** 83/21 120/18
**tainted [12]** 72/7 77/23 80/5 81/14 83/19 90/1 92/19 97/24 98/7 101/20 103/5 117/12
**take [20]** 10/22 11/6 21/9 21/13 21/24 25/1 31/8 31/9 31/12 33/12 35/8 38/4 38/17 48/2 51/19 81/21 83/24

**T**

**take... [3]** 95/19 102/11 103/11
**taken [5]** 14/1 24/18 24/19 51/24 91/3
**takers [1]** 65/22
**takes [4]** 6/12 14/14 14/16 47/25
**taking [5]** 33/15 73/19 91/23 107/13 110/22
**talk [8]** 4/9 16/12 29/14 30/17 33/20 34/14 44/14 52/10
**talked [5]** 27/8 49/4 51/2 81/11 83/2
**talking [5]** 4/17 15/2 19/25 40/20 85/22
**Tanzania [4]** 21/22 22/10 22/11 22/12
**target [1]** 73/5
**tax [2]** 9/19 12/1
**taxes [2]** 9/18 22/13
**tech [1]** 26/23
**technical [3]** 18/6 24/23 51/4
**television [1]** 87/8
**Tell [4]** 3/19 4/25 10/8 47/8
**telling [3]** 4/24 44/11 118/8
**ten [3]** 43/8 81/16 89/3
**term [13]** 15/8 43/11 50/23 66/16 67/1 67/2 67/13 76/13 83/1 95/18 112/18 122/7 122/8
**terminate [5]** 71/16 85/17 92/24 96/16 110/22
**terminated [3]** 68/23 71/10 71/15
**terminating [1]** 111/20
**termination [2]** 71/11 108/11
**terms [9]** 30/7 34/15 35/15 67/17 67/18 68/18 70/13 94/10 113/22
**test [8]** 5/17 5/19 15/25 16/7 37/4 48/14 49/12 112/15
**testified [5]** 10/17 49/22 96/5 119/3 120/12
**testimony [12]** 10/23 10/25 11/21 12/13 23/21 33/6 33/11 33/14 35/7 35/20 36/12 49/14
**TEXAS [6]** 1/1 1/20 1/25 2/5 40/13 44/22
**than [14]** 5/25 10/5 15/12 16/22 29/24 30/3 30/13 36/15 45/13 79/10 83/20 90/13 93/8 94/15
**thank [16]** 3/8 3/13 7/12 25/16 26/8 41/20 48/10 48/11 51/23 54/20 56/8 79/1 108/6 124/3 124/5 124/6
**that [714]**
**that -- and [2]** 30/9 93/20
**that -- in [1]** 56/5
**that -- that [4]** 73/17 76/9 87/3 110/20
**that -- the [1]** 90/16
**that's [63]** 4/23 5/17 6/18 8/24 9/13 9/19 12/17 13/20 14/3 15/7 18/17 20/6 24/7 25/10 25/20 26/12 26/20 26/21 28/9 30/1 31/3 31/20 38/12 42/15 44/4 44/11 45/15 46/11 47/12 47/15 47/15 50/1 59/9 60/2 71/7 76/11 78/6 79/10 79/24 87/18 91/6 91/21 93/1 93/2 93/23 95/15 95/20 102/18 104/17 109/15 109/15 110/11 111/8 111/10 111/12 119/8 120/9 120/10 121/7 121/9 121/12 121/23 123/19
**that's -- yes [1]** 20/6
**their [57]** 11/8 13/9 17/9 17/18 17/18 19/5 19/10 19/10 24/2 24/3 24/6 24/6 34/23 36/1 36/4 39/12 40/10 43/25 44/1 45/1 45/5 45/5 45/6 45/6 45/8 45/24 46/5 46/23 47/4 47/6 47/7 47/20 47/23 48/18 50/21 51/10 55/4 55/6 55/8 60/15 61/4 61/6 62/22 62/23 66/1 70/19 79/8 79/15 83/5 84/17 86/6 95/23 102/13 102/14 105/10 105/14 115/1
**their -- all [1]** 17/18
**them [20]** 5/6 6/9 6/10 25/13 27/19 28/2 31/1 35/22 39/21 43/23 46/13 46/21 48/3 55/11 60/2 62/12 84/20 88/3 88/22 90/24
**themselves [2]** 45/8 91/19
**then [50]** 3/3 4/8 4/9 4/21 4/23 15/12 15/13 23/6 24/13 24/14 25/18 29/14 30/16 31/2 31/5 32/7 34/14 36/2 40/9 42/23 45/17 46/6 46/9 47/16 47/19 47/21 48/3 48/8 52/10 53/9 53/21 57/23 58/9 59/9 59/14 80/5 82/12 82/24 83/5 85/2 88/22 89/14 90/2 90/19 91/17 94/12 103/10 106/5 113/16 118/22
**theories [3]** 79/8 88/1 95/24
**theory [24]** 57/4 57/5 57/7 57/14 57/16 57/19 57/23 58/11 59/9 59/10 59/17 60/12 60/19 62/17 66/4 70/18 73/7 79/7 105/11 105/12 115/1 121/24 122/2 122/4
**there -- was [1]** 24/7
**there's [47]** 8/20 9/7 9/11 9/12 9/14 11/17 13/19 14/3 14/3 14/17 16/23 17/16 17/20 18/2 18/9 19/17 20/5 20/8 20/9 20/10 21/15 23/25 27/21 39/6 45/18 46/16 51/2 53/22 64/6 84/16 92/5 105/15 113/22 113/22 115/7 115/17 115/23 115/24

T

**there's... [9]** 115/25 116/4 116/5 116/7 116/7 116/10 116/13 117/18 120/20
**there's -- that [1]** 64/6
**thereafter [2]** 80/22 94/20
**thereby [2]** 83/21 103/8
**therefore [7]** 14/11 39/3 57/9 61/14 63/18 78/9 102/7
**these [33]** 7/16 10/20 13/25 16/9 17/4 17/7 19/20 22/4 22/16 27/12 27/15 27/17 43/12 43/13 44/8 46/3 46/4 53/21 54/24 55/9 55/18 58/20 62/11 62/13 80/12 80/19 86/19 87/25 92/12 105/18 105/22 109/21 110/8
**they [158]**
**They -- again [1]** 24/15
**They'll [1]** 23/19
**they're [15]** 7/14 8/14 17/21 20/18 26/4 28/18 31/22 43/18 46/5 46/25 47/23 48/23 48/24 120/15 122/9
**they're -- what [1]** 120/15
**they've [21]** 9/8 10/23 10/24 13/21 14/1 14/2 15/6 16/15 17/20 18/1 19/4 19/10 23/18 24/18 47/5 55/20 70/6 84/9 105/10 105/15 113/6
**thing [3]** 5/16 16/24 66/21
**things [1]** 111/25
**think [50]** 4/13 4/25 8/25 10/4 10/24 12/24 12/25 15/19 16/18 19/23 20/12 20/22 22/25 25/13 26/25 27/18 30/17 32/1 32/4 35/6 35/19 36/18 38/6 40/1 40/2 40/4 44/10 45/13 46/19 51/9 54/10 54/11 54/18 62/13 76/11 79/11 79/22 87/22 88/13 93/3 93/24 95/14 104/15 104/17 117/19 117/21 118/7 119/10 123/11 123/21
**think -- I [1]** 117/19
**third [17]** 8/21 9/9 9/11 18/1 20/25 24/14 24/17 25/5 39/23 47/17 55/13 65/6 74/6 74/6 74/8 80/19 112/22
**third -- a [1]** 74/6
**third-party [2]** 9/9 9/11
**Thirdly [1]** 63/17
**this [220]**
**this -- are [1]** 26/2
**this -- completely [1]** 45/19
**this -- Mr. Walsh [1]** 40/1
**this -- on [1]** 91/1
**this -- this [4]** 18/18 27/18 71/20 110/22
**those [54]** 5/3 5/21 10/3 20/6 29/12 32/18 34/7 34/11 43/22 44/13 49/2 49/13 53/24 54/10 54/11 54/14 54/14 54/17 55/22 57/12 58/8 58/13 59/19 60/8 60/11 64/18 65/10 65/12 65/23 66/8 75/3 77/6 80/10 85/20 92/22 92/22 94/15 94/20 100/24 102/8 102/11 107/10 107/13 108/15 109/6 111/22 113/18 114/19 115/18 115/24 116/2 122/5 123/7 123/8
**those -- those [1]** 92/22
**though [3]** 19/8 83/16 109/1
**thought [2]** 3/17 4/17
**three [20]** 5/20 5/21 8/11 14/15 16/4 16/24 17/24 27/10 27/15 49/13 63/4 64/24 73/1 80/16 82/23 82/25 86/12 86/15 87/25 90/23
**three-year [1]** 82/25
**throats [1]** 35/7
**through [14]** 9/9 12/12 27/17 34/23 43/10 51/10 55/24 64/21 85/5 90/17 91/25 98/5 113/17 115/24
**throughout [2]** 71/2 84/17
**thus [12]** 62/6 64/25 65/23 69/21 71/21 74/21 75/4 79/18 81/18 86/13 110/24 111/16
**ticket [1]** 38/1
**tied [1]** 15/1
**till [1]** 55/5
**time [37]** 12/16 14/16 16/23 17/7 17/22 18/2 19/15 21/16 25/2 25/13 31/9 32/4 34/24 35/8 35/13 40/5 44/9 45/20 48/1 53/1 53/7 58/2 71/5 78/20 81/17 84/18 88/7 90/5 90/20 91/11 92/23 94/13 98/7 103/9 107/23 109/14 117/7
**timeline [5]** 16/21 82/15 84/3 110/5 110/16
**times [1]** 82/24
**today [8]** 4/16 33/14 36/22 46/24 54/5 67/14 83/16 105/25
**together [1]** 88/9
**told [3]** 34/17 34/20 89/13
**ton [1]** 45/25
**too [2]** 48/3 51/7
**took [14]** 15/14 15/14 23/10 23/11 28/2 28/3 28/5 42/18 66/3 67/5 70/8 94/11 113/7 122/24
**top [1]** 99/6
**topic [2]** 33/8 35/12
**tort [28]** 62/23 63/17 63/20 63/22 63/24 63/25 64/21 64/22 66/23 70/15 70/19 72/20 72/22 73/22 73/23 78/3 87/5 93/2 93/4 112/25 113/2 113/2 113/3 115/21 115/22 119/15 119/15 119/15
**tortfeasor [11]** 62/18 63/6 63/10 63/11 63/14 80/17

## T

**tortfeasor... [5]** 86/14 86/24 87/1 88/20 103/23
**tortious [4]** 63/12 63/14 70/13 88/24
**torts [9]** 62/18 64/16 64/19 64/20 64/24 64/25 72/11 75/21 115/23
**totally [4]** 45/5 45/16 45/16 46/5
**touch [3]** 94/23 101/9 109/20
**transaction [8]** 16/20 46/22 56/15 75/8 93/13 112/3 112/11 119/6
**transcript [4]** 2/24 124/11 124/18 124/22
**travels [1]** 124/7
**treated [1]** 61/10
**tremendous [1]** 17/19
**tried [6]** 24/21 30/19 48/17 102/6 108/9 120/7
**trier [2]** 82/6 94/15
**tries [1]** 71/14
**trigger [1]** 81/3
**trivial [1]** 63/8
**true [7]** 25/6 31/21 66/9 66/19 79/8 107/10 124/17
**trust [1]** 74/3
**trustee [1]** 74/4
**trustee/fiduciary [1]** 74/4
**trying [6]** 28/20 35/21 40/21 45/21 47/23 48/23
**turn [9]** 25/10 38/8 44/15 55/1 60/21 72/11 73/22 85/15 90/25
**turned [1]** 49/3
**turning [1]** 22/22
**turns [1]** 79/23
**turpi [4]** 78/17 102/14 102/18 102/20
**two [36]** 13/13 15/11 15/12 16/2 17/21 17/23 18/1 18/16 18/20 20/15 22/1 22/3 24/5 24/14 24/16 24/24 27/15 27/24 28/7 28/10 40/7 61/1 62/5 72/25 72/25 74/5 74/11 77/20 79/13 84/10 86/14 91/8 114/22 114/23 116/1 120/5
**two -- the [1]** 22/3
**types [1]** 22/4

## U

**U.S [5]** 22/9 22/10 42/2 48/15 56/16
**UK [2]** 62/24 76/11
**ultimate [1]** 7/19
**ultimately [15]** 9/11 21/12 23/3 24/13 49/17 50/11 80/4 80/11 82/21 85/2 86/10 87/16 96/2 97/25 101/24
**ultra [2]** 45/21 46/6
**unable [2]** 57/3 112/10
**unaware [3]** 106/15 116/17 122/22
**unbeknownst [2]** 6/2 93/13
**unclean [1]** 78/17
**under [50]** 6/1 8/18 16/4 28/18 29/1 34/22 35/4 35/8 35/22 36/2 36/4 36/13 40/13 40/18 44/22 48/21 49/1 50/13 50/20 61/14 61/17 61/18 62/2 65/5 66/16 66/20 67/7 68/21 70/11 72/23 76/4 79/7 80/12 81/24 82/2 84/1 90/2 93/16 93/18 93/22 95/18 103/16 103/19 106/9 108/19 112/1 119/2 119/7 120/24 122/14
**underlie [1]** 73/24
**underlying [2]** 20/24 43/11
**understand [7]** 41/15 87/15 111/23 120/1 120/4 121/20 123/22
**understandably [1]** 122/22
**understanding [5]** 35/12 72/24 73/3 91/5 92/4
**understanding -- this [1]** 73/3
**understood [4]** 6/17 7/2 7/8 92/13
**undertake [1]** 91/19
**undisputed [13]** 47/13 67/13 70/23 71/18 75/6 75/8 95/3 105/20 107/11 108/12 113/17 116/10 123/10
**undoes [1]** 40/9
**undoubtedly [1]** 97/19
**undue [2]** 42/25 43/4
**unfavorable [1]** 67/18
**unfortunate [1]** 31/4
**UNITED [3]** 1/1 1/11 38/24
**United States [1]** 38/24
**units [1]** 52/22
**unlawful [11]** 72/21 72/23 73/4 80/18 86/15 90/25 91/3 91/6 91/19 91/23 103/23
**unless [3]** 44/24 78/18 119/8
**unnamed [1]** 85/1
**unnecessary [1]** 32/13
**unprecedented [2]** 17/11 45/20
**unpredictable [1]** 38/7
**untainted [10]** 81/18 89/18 89/18 89/23 90/8 90/18 103/8 107/21 115/7 119/18
**until [10]** 16/20 18/12 19/11 65/18 85/19 97/23 98/2 102/8 108/11 116/17
**unusual [1]** 79/10
**up [14]** 5/3 6/25 14/21 14/23 15/16 24/12 25/22 32/22 50/11 55/2 70/4 72/13 116/9 120/19
**updated [2]** 17/8 25/4
**upon [1]** 73/2
**upside [1]** 123/16
**us [6]** 3/25 4/3 28/12 48/25 51/15 123/21
**use [16]** 6/13 7/7 11/7 35/14 35/23 36/6 36/12 37/6 37/9

## U

**use... [7]** 39/8 66/15 69/16 71/21 109/1 109/2 124/2
**used [9]** 17/8 23/24 49/5 50/15 83/2 83/3 90/19 92/22 92/23
**used -- when [1]** 92/22
**useful [1]** 73/4
**useless [1]** 25/4
**uses [1]** 46/6
**using [7]** 39/5 66/20 69/21 85/10 89/14 109/14 112/18
**usual [1]** 33/25
**usually [1]** 17/13

## V

**V10 [1]** 18/10
**V10 -- Vitoria [1]** 18/10
**valid [1]** 24/21
**various [2]** 11/13 11/22
**veil [2]** 11/15 11/18
**version [4]** 36/4 39/22 60/19 64/4
**versus [3]** 29/17 32/18 62/25
**very [28]** 3/13 5/5 11/18 13/20 16/6 17/16 26/17 27/18 36/13 36/20 38/12 38/18 49/10 50/17 51/23 56/15 80/12 82/9 83/10 92/15 96/6 98/5 103/1 113/3 116/22 116/22 123/8 124/1
**vessel [1]** 42/16
**viable [1]** 12/4
**vicarious [9]** 19/6 57/16 57/19 58/11 59/18 59/21 60/1 105/7 106/1
**vicariously [4]** 57/10 60/14 65/25 105/13
**vice [1]** 84/23
**victim [8]** 5/22 5/24 8/13 27/22 30/13 39/3 91/15 102/25
**victims [3]** 27/20 28/8 28/10
**video [1]** 26/16
**view [2]** 5/10 56/6
**vindicate [3]** 5/23 16/2 27/21
**violation [11]** 9/15 10/2 13/6 14/12 16/11 29/20 30/21 33/3 36/14 37/14 47/15
**virtually [1]** 86/1
**virtue [2]** 103/13 110/13
**vis [2]** 11/10 11/10
**Vitoria [3]** 17/1 18/10 22/3
**void [1]** 120/15
**VS [1]** 1/5

## W

**wait [1]** 55/5
**waived [2]** 59/19 105/6
**waiver [5]** 59/24 104/12 104/20 104/23 105/5
**walk [2]** 98/4 103/19
**WALSH [15]** 1/14 3/6 4/17 37/20 37/25 40/1 40/11 45/2 48/12 55/23 58/7 102/23 106/16 111/10 117/17
**Walsh's [1]** 102/9
**want [26]** 4/4 10/6 18/19 25/17 46/17 47/1 48/13 50/9 51/7 51/13 55/13 56/1 64/22 106/13 107/18 107/18 109/18 109/20 110/2 111/25 112/17 112/17 114/23 116/22 119/11 119/13
**want -- I [1]** 112/17
**wanted [1]** 33/12
**wants [1]** 39/6
**was -- I [1]** 120/1
**was -- was [1]** 120/19
**Wash [3]** 41/22 84/6 84/14
**wasn't [3]** 31/1 35/7 121/6
**way [14]** 7/7 11/3 14/15 18/7 21/18 24/8 32/16 42/25 48/4 67/8 77/25 108/19 113/20 121/12
**ways [2]** 80/16 86/12
**we [103]** 3/17 4/16 4/19 7/10 8/25 10/4 10/24 14/13 16/18 16/21 19/17 19/24 20/23 23/1 23/10 23/10 23/11 23/21 24/15 25/23 27/1 27/2 27/8 27/8 27/13 27/17 27/22 28/1 28/3 28/7 28/10 28/11 28/25 28/25 28/25 29/1 29/8 30/1 30/1 30/4 30/9 30/14 30/16 30/16 30/17 30/21 30/22 31/2 31/7 31/8 31/9 31/11 31/12 31/23 32/25 33/6 33/10 35/6 35/19 36/18 37/5 37/16 38/5 38/10 38/20 39/13 40/4 44/3 45/4 45/13 45/18 45/25 46/19 49/15 50/19 51/19 52/1 52/10 53/21 54/12 54/13 59/4 79/6 79/13 84/3 86/11 87/21 87/22 89/1 90/25 91/20 93/24 95/16 96/6 98/25 102/7 112/19 116/23 117/21 121/2 121/2 123/22 123/24
**we'd [1]** 3/17
**we'll [6]** 4/23 25/18 28/4 29/13 41/14 48/8
**we're [13]** 15/2 17/17 25/11 31/6 33/15 34/17 34/20 38/21 47/21 48/24 48/25 88/14 117/2
**we've [21]** 5/20 8/12 9/20 16/8 28/19 30/19 30/21 31/5 33/14 40/20 41/20 41/25 50/17 51/2 52/13 85/4 90/9 95/14 96/5 96/15 119/10
**website [3]** 41/11 41/12 43/14
**weeks [1]** 111/15
**welcome [1]** 16/22
**well [49]** 4/4 5/2 16/15 22/25 25/17 26/11 27/21 28/23 29/24 30/12 31/3 31/5 31/25 33/2 35/5 36/25 38/20

**well... [32]** 40/23 43/25 44/3 47/2 47/19 49/25 51/2 58/25 64/5 86/11 87/20 88/6 89/1 89/20 91/24 92/8 92/15 93/11 102/2 104/19 104/24 108/21 110/2 116/12 120/1 120/6 121/5 121/7 122/8 122/10 123/24 124/1
**wells [4]** 24/25 46/7 46/8 83/3
**went [2]** 49/4 90/10
**were [46]** 4/17 4/19 18/21 19/24 21/6 24/2 24/5 25/22 28/2 28/8 28/13 31/21 43/20 43/21 44/2 45/6 46/3 47/14 47/14 51/5 53/13 55/18 55/19 57/21 58/20 58/21 59/1 59/12 65/22 68/18 69/22 71/2 71/7 72/2 78/6 79/15 88/15 105/17 105/18 109/7 113/16 113/23 115/11 115/11 116/13 116/14
**weren't [1]** 21/22
**West [1]** 30/25
**what -- what [1]** 109/10
**what -- what -- and [1]** 109/10
**what's [7]** 17/13 26/19 33/24 38/7 64/3 86/18 87/13
**whatever [1]** 28/12
**whatsoever [1]** 108/13
**whereas [1]** 112/4
**whereby [1]** 35/21
**whether [23]** 4/10 9/5 20/3 36/16 38/14 38/16 44/18 49/4 50/9 50/15 50/15 50/25 59/21 69/20 80/14 88/13 90/8 91/6 93/20 93/21 109/24 122/12 122/23
**which [82]** 6/16 7/20 7/23 8/6 8/11 9/20 10/2 14/15 14/19 15/22 16/16 16/22 17/11 20/12 21/16 23/1 23/14 24/12 27/17 29/15 32/11 38/8 42/25 44/15 44/20 44/25 45/4 46/16 46/21 47/17 48/1 48/14 51/4 52/19 52/20 52/22 53/10 53/12 53/15 53/16 53/17 54/3 54/4 54/5 55/10 55/24 56/15 62/8 62/16 65/6 65/7 66/21 70/12 74/22 76/1 76/7 77/24 78/17 80/15 80/16 80/23 81/22 84/15 85/6 86/12 87/10 88/4 89/6 93/22 94/10 94/20 96/2 103/12 106/7 106/24 107/13 108/16 109/4 110/6 110/6 122/1 122/1
**while [10]** 42/20 60/11 78/19 79/8 79/11 82/5 84/20 94/6 97/19 119/1
**who [33]** 5/23 8/8 8/9 9/11 10/19 15/16 18/14 18/14 21/16 23/22 27/20 27/22 28/1 28/2 28/8 28/9 29/2 36/12 41/1 41/5 42/22 44/16 47/14 48/17 52/5 53/19 57/20 84/24 93/12 93/13 95/4 95/12 103/13
**who's [5]** 3/15 15/2 41/4 41/22 99/5
**whole [4]** 6/13 6/15 20/12 90/5
**wholly [7]** 7/16 7/17 7/20 7/20 11/6 14/17 14/18
**wholly-owned [2]** 11/6 14/18
**whom [1]** 46/2
**whose [1]** 42/17
**why [12]** 4/4 5/1 5/13 6/21 11/1 17/3 17/4 26/14 27/13 35/8 35/23 40/6
**wide [1]** 32/7
**wiggle [1]** 47/4
**will [32]** 8/23 9/6 11/5 15/19 16/14 25/16 30/18 44/23 53/24 60/21 63/12 63/15 64/5 64/12 65/2 66/18 78/18 79/12 81/5 87/16 87/17 88/4 91/5 102/11 106/7 106/17 110/2 117/17 121/14 121/25 123/13 124/3
**win [1]** 10/2
**wished [3]** 35/14 35/22 36/12
**without [4]** 22/6 22/13 91/22 120/18
**witness [3]** 10/10 23/22 24/19
**witnesses [1]** 13/21
**won't [5]** 52/13 55/10 82/15 85/5 117/19
**word [3]** 31/10 31/12 32/9
**wording [1]** 85/25
**words [8]** 29/23 78/4 80/12 91/18 98/1 99/22 101/22 104/12
**work [5]** 7/5 71/3 71/18 108/12 108/13
**worked [1]** 88/9
**working [1]** 41/22
**world [3]** 11/13 32/21 38/9
**worth [1]** 81/25
**would [68]** 11/24 14/1 14/5 14/7 14/7 14/23 15/15 17/14 22/19 23/24 26/4 29/13 29/15 34/6 34/10 34/14 35/1 37/16 38/17 42/24 43/16 44/9 48/20 49/11 49/18 49/19 51/5 54/12 54/15 55/23 61/23 67/10 67/12 69/25 70/1 70/3 77/8 80/2 83/24 84/20 88/6 88/15 90/15 94/18 95/2 98/6 98/8 108/7 108/8 108/21 108/21 108/24 108/24 108/25 111/19 111/20 114/20 114/22 115/10 119/23 120/3 120/7 120/8 121/3 121/8 121/17 121/18 123/17

## W

**wouldn't [2]** 20/2 108/23
**wrong [3]** 5/1 117/8 122/5
**wrongful [2]** 27/20 28/11

## Y

**yeah [4]** 13/12 111/12 111/14 123/24
**year [15]** 15/5 17/21 19/18 21/10 23/20 24/11 24/25 50/12 50/14 50/17 50/23 67/9 79/10 82/25 83/1
**years [14]** 8/10 8/21 14/15 15/11 15/12 17/24 23/2 48/2 51/9 59/12 66/5 82/23 106/6 113/8
**Yep [1]** 5/12
**yes [18]** 16/3 20/6 20/14 20/16 23/8 25/25 34/8 34/13 35/17 56/9 81/1 105/23 105/25 106/20 108/4 116/24 117/1 120/25
**yet [3]** 40/16 43/14 85/1
**yet-to-be-unnamed [1]** 85/1
**York [2]** 1/17 1/17
**you [74]** 3/3 3/8 3/13 3/13 4/24 5/15 6/8 6/21 7/12 10/6 11/25 15/7 15/25 16/7 20/12 21/2 21/24 22/22 23/9 24/7 25/16 25/17 25/22 26/8 26/14 26/20 33/25 40/14 41/20 47/8 47/17 47/22 48/10 48/11 51/13 51/23 54/20 55/1 56/8 58/7 79/1 80/25 81/2 81/2 81/3 81/3 82/19 84/12 85/15 85/20 85/22 86/23 88/15 88/18 90/12 91/8 91/22 91/24 92/3 92/13 106/18 108/6 116/22 119/4 119/5 119/6 119/11 120/4 123/13 123/20 124/4 124/5 124/6 124/7
**you'll [2]** 19/5 19/10
**you're [9]** 6/16 11/16 16/22 17/15 17/16 25/5 47/21 55/5 88/17
**you've [4]** 20/20 23/6 25/13 52/7
**your [89]** 3/3 3/5 3/9 3/16 4/6 4/12 4/16 4/18 5/2 5/8 5/18 5/24 6/4 6/14 6/20 7/3 8/1 8/1 8/24 9/16 9/22 10/6 11/14 12/25 13/1 13/8 16/22 19/23 23/1 25/11 25/23 26/8 26/12 26/22 26/24 28/22 33/24 34/18 35/12 37/11 37/17 39/22 40/6 48/10 48/11 51/11 51/15 51/19 52/3 52/8 54/19 55/1 55/5 55/11 56/10 56/13 64/4 78/23 79/3 79/16 80/1 81/1 81/6 82/9 84/3 85/14 86/23 88/6 90/6 90/23 92/1 92/12 92/15 93/1 98/1 98/25 102/4 102/19 103/1 104/14 104/17 104/22 116/24 117/20 119/8 123/22 123/24 124/5 124/6
**Your Honor [71]** 3/5 3/9 3/16 4/12 4/16 5/2 5/8 5/18 5/24 6/14 6/20 7/3 8/1 8/24 9/16 9/22 12/25 13/1 13/8 16/22 19/23 23/1 25/11 25/23 26/8 26/12 26/24 34/18 37/17 40/6 48/10 48/11 51/11 51/15 51/19 54/19 55/1 55/5 55/11 56/10 56/13 78/23 79/3 79/16 80/1 81/1 81/6 82/9 84/3 85/14 86/23 88/6 90/6 90/23 92/1 92/15 93/1 98/1 98/25 102/4 102/19 103/1 104/14 104/17 116/24 117/20 119/8 123/22 123/24 124/5 124/6
**Your Honor's [2]** 6/4 8/1

## Z

**Zelada [1]** 41/4
**zero [4]** 39/6 45/7 90/15
112/17
**Zoom [1]** 26/16